### UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | |
|---|---|
| WU WINFRED HUANG, Individually and on Behalf of All Others Similarly Situated, | Case No. 1:15-cv-608 |
| Plaintiff, | **CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| v. | |
| EZCORP, INC., STUART I. GRIMSHAW, and MARK E. KUCHENRITHER, | **JURY TRIAL DEMANDED** |
| Defendants. | |

## CLASS ACTION COMPLAINT

Plaintiff Wu Winfred Huang ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by EZCORP, INC. ("EZCORP" or the "Company"), with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by EZCORP; and (c) review of other publicly available information concerning EZCORP.

## NATURE OF THE ACTION AND OVERVIEW

1.      This is a class action on behalf of purchasers of EZCORP securities between October 27, 2014 and July 16, 2015, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2.      EZCORP delivers cash solutions to customers across channels, products, services and markets. With approximately 1,400 locations and branches, the Company offers customers multiple ways to access instant cash, including pawn loans and consumer loans in the United States, Mexico, Canada and the United Kingdom.  The Company offers these products through four primary channels: in-store, online, at the worksite, and through a mobile platform.  At its pawn and buy/sell stores and online, the Company also sells merchandise, primarily collateral forfeited from pawn lending operations and used merchandise purchased from customers.

3.      EZCORP owns a 76% interest in Prestaciones Finmart, S.A.P.I. de C.V., SOFOM, E.N.R. ("Grupo Finmart" doing business under the names "Crediamigo" and "Adex"), a payroll withholding lender headquartered in Mexico City.

4.      On April 30, 2015, after the market closed, the Company announced that it would delay its earnings release for the second quarter of fiscal 2015, due to an ongoing review of certain elements of its Grupo Finmart loan portfolio.  According to the Company, certain errors had been identified in a portion of the Grupo Finmart loan portfolio that could impact current and historical amounts of loan reserves and interest income, and that the Company was conducting a more thorough review to quantify the errors and assess the associated processes and controls.

5.      On this news, shares of EZCORP declined $0.79 per share, over 8%, to close on May 1, 2015, at $8.41 per share, on unusually heavy volume.

6.      On May 20, 2015, after the market closed, the Company revealed that, while the review of the Grupo Finmart loan portfolio was still ongoing, management and the Audit Committee would likely conclude that the Company had a material weakness in internal control over financial reporting and deficiencies in its disclosure controls and procedures.

CLASS ACTION COMPLAINT                                                                                      2

7.      On this news, shares of EZCORP declined $0.66 per share, over 7%, to close on May 21, 2014, at $8.33 per share, on unusually heavy volume.

8.      On July 17, 2015, the Company announced that it would restate its financial statements for fiscal 2014 (including the interim periods within that year) and the first quarter of fiscal 2015, and that the previously issued financial statements for those periods should no longer be relied upon.  According to the Company, the restatement adjustments, all of which are non-cash, will correct certain errors relating to the accounting for Grupo Finmart's structured assets sales, that, based on certain control rights, should not have been recognized as sales.  While the Company has not yet quantified the effect of reversing the sale accounting treatment, the Company's previously recognized $39.6 million of gain ($33.0 million in fiscal 2014 and $6.6 million in the first quarter of fiscal 2015) will be eliminated, but interest income in the periods subsequent to the assets sales will be increased.  Additionally, the Company identified a number of out-of-payroll loans that had not been properly classified and accounted for as such, causing an understatement of bad debt expense and an overstatement of accrued interest revenue in prior periods.  According to the Company, the review was still ongoing and financial statements for periods prior to fiscal 2014 could also require restatement.

9.      On this news, shares of EZCORP declined $0.26 per share, nearly 4%, to close on July 17, 2015, at $6.48 per share, on unusually heavy volume.

10.     Throughout the Class Period, Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose, among others: (1) that the Company improperly recognized particular structured assets sales; (2) that the Company improperly classified certain accounted for certain

out-of-payroll loans; (3) that, as a result, the Company overstated its gains on assets sales and accrued interest revenue; (4) that, as such, the Company's financial statements were not prepared in accordance with Generally Accepted Accounting Principles ("GAAP"); (5) that the Company lacked adequate internal and financial controls; and (6) that, as a result of the foregoing, Defendants' statements were materially false and misleading at all relevant times.

11.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

12.    The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

13.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and Section 27 of the Exchange Act (15 U.S.C. §78aa).

14.    Venue is proper in this Judicial District pursuant to 28 U.S.C. §1391(b) and Section 27 of the Exchange Act (15 U.S.C. §78aa(c)).  Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.  Many of the acts charged herein, including the preparation and dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District.  Additionally, EZCORP's principal executive offices are located within this Judicial District.

15.    In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the

United States mail, interstate telephone communications, and the facilities of a national securities exchange.

**PARTIES**

16.     Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased EZCORP common stock during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

17.     Defendant EZCORP is a Delaware corporation with its principal executive offices located at 1901 Capital Parkway, Austin, Texas 78746.

18.     Defendant Stuart I. Grimshaw ("Grimshaw") was, at all relevant times, Chief Executive Officer ("CEO") and a director of EZCORP since February 3, 2015.  Additionally, Defendant Grimshaw was, at all relevant Executive Chairman of the Board of EZCORP until February 3, 2015.

19.     Defendant Mark E. Kuchenrither ("Kuchenrither") was, at all relevant times, interim CEO and a director of EZCORP until February 3, 2015.  Additionally, Defendant Kuchenrither was, at all relevant times, Chief Financial Officer ("CFO")  of EZCORP until May 26, 2015.

20.     Defendants Grimshaw and Kuchenrither are collectively referred to hereinafter as the "Individual Defendants."  The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the content of EZCORP's reports to the SEC, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors, *i.e.*, the market.  Each defendant was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after,

their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, each of these defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.   The Individual Defendants are liable for the false statements pleaded herein, as those statements were each "group-published" information, the result of the collective actions of the Individual Defendants.

## SUBSTANTIVE ALLEGATIONS

### Background

21.     EZCORP delivers cash solutions to customers across channels, products, services, and markets. With approximately 1,400 locations and branches, the Company offers customers multiple ways to access instant cash, including pawn loans and consumer loans in the United States, Mexico, Canada and the United Kingdom.  The Company offers these products through four primary channels: in-store, online, at the worksite, and through a mobile platform.  At its pawn and buy/sell stores and online, the Company also sells merchandise, primarily collateral forfeited from pawn lending operations and used merchandise purchased from customers.

### Materially False and Misleading
### Statements Issued During the Class Period

22.     The Class Period begins on October 27, 2014.  On this day, the Company issued a press release entitled, "EZCORP Provides Earnings Update And Schedules Earnings Announcement."  Therein, the Company, in relevant part, stated:

> EZCORP, Inc. (NASDAQ: EZPW), a leading provider of easy cash solutions for consumers, today announced that it expects to report adjusted non-GAAP net income from continuing operations of $0.27 per share for the fourth quarter of

fiscal 2014 ended September 30. On a GAAP basis, the Company expects to report a fourth quarter net loss of $(1.65) per share.

The Company took significant steps during the quarter to discontinue, restructure and realign core aspects of its business as the direct result of a detailed review of its businesses. These strategic actions are expected to put the Company on a solid foundation for growth with a lower cost structure in fiscal year 2015.

Adjusted non-GAAP net income from continuing operations was derived by excluding the impact of the following items*:

- Previously announced charges of $1.59 per shares related to the discontinued operations of the Company's stand-alone online lending businesses in the U.S. and the U.K.
- Restructuring charges of $0.12 per share resulting from the Company's review of its businesses, including certain reorganization and management changes.
- One-time adjustments and other non-trendable items of $0.18 per share. Of this amount, reserve adjustments accounted for $0.12 per share. Adjustments were made to inventory reserves in U.S. Pawn as a result of the recent decline in gold prices, and in Empeño Fácil following a review of that business's inventory composition and value. At Grupo Finmart, bad debt reserves were increased after a government agency offered early retirement to its workers, which increased the number of loans outside of the automatic payroll deduction system.
- Operating losses of $0.03 per share related to the Company's discontinued online lending businesses.

The resulting adjusted non-GAAP net income from continuing operations of $0.27 per share reflects lower-than-expected operating results from two of the Company's reporting segments, as outlined below:

- U.S. & Canada — The normalized operating performance from the U.S. & Canada segment accounted for $0.09 of the shortfall relative to the Company's expectations. The U.S. Pawn business was impacted by lower gold prices, which fell from a high of $1,339 during the quarter to below $1,209 at quarter-end, and also recorded lower-than-expected merchandise sales volume and margin. Pawn loan demand, however, finished strong, and pawn loans outstanding were 2.5% higher on a same-store basis versus a year earlier. The U.S. Financial Services business experienced lower than expected payday loan fee revenue and an increase in reserves related to higher-than-anticipated bad debt associated with loan products recently introduced in response to ordinances enacted in several Texas cities.

- Other International — The operating performance from the Other International segment accounted for $0.03 of the shortfall to expectations, primarily related to lower-than-expected net income from the Company's strategic affiliate, Cash Converters International Limited.

In the Latin America segment, both Grupo Finmart and Empeño Fácil, when excluding the reserve adjustments discussed above and a few non-trendable items, performed slightly better than expected.

23.    On November 26, 2014, EZCORP filed its Annual Report with the SEC on Form 10-K for the 2014 fiscal year.  The Company's Form 10-K was signed by Defendants Grimshaw and Kuchenrither, and reaffirmed the Company's financial results previously announced on October 27, 2014.  The Form 10-K also contained required Sarbanes-Oxley certifications, signed by Defendant Kuchenrither, who certified:

1.    I have reviewed this Annual Report on Form 10-K of EZCORP, Inc.;

2.    Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3.    Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;

4.    The registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d-15(f)) for the registrant and have:

a.    Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

CLASS ACTION COMPLAINT                                                                                    8

b.  Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

c.  Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

d.  Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

5.  The registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

a.  All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

b.  Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

24.  On January 27, 2015, the Company issued a press release entitled, "EZCORP Reports Fiscal First Quarter 2015 Results." Therein, the Company, in relevant part, stated:

EZCORP, Inc. (NASDAQ: EZPW), a leading provider of easy cash solutions for consumers, today announced financial results for the fiscal first quarter ended December 31, 2014.

Total revenues were $252.6 million compared to $263.0 million for the same period last year. Net income from continuing operations attributable to EZCORP

was $14.2 million or $0.26 per share as compared to $26.1 million or $0.48 per share in the same period a year earlier.

Mark Kuchenrither, EZCORP's President and Chief Executive Officer, stated, "Our team delivered  a creditable performance in challenging trading conditions, with our Latin America operating segment delivering a strong performance. We continue to make progress on our operational excellence and growth initiatives with sound reductions in both administrative and operations expenses; the opening of 10 de novo locations (5 U.S. Pawn and 5 U.S. Financial Services); and the signing of a definitive agreement to acquire 12 pawn stores in the United States."

"We recognize that as a financial services company, there has to be a continual focus on improving the quality of our balance sheet which is the key to improving profitability, and positioning the company for long-term growth," continued Mr. Kuchenrither. "We have focused on growing a quality loan portfolio and increasing the velocity of inventory disposition by reducing our aged inventory. While sales unit numbers were up by 7% in the U.S., the focus on disposition activities led to a 1% growth in retail sales revenue with lower gross margins. U.S. pawn service charges were steady year-over-year despite strengthening economic conditions and lower gasoline prices. Scrap volumes were down 29% due to decreased gold inflow from both direct purchasing and lower collateral forfeitures. Empeño Fácil, our Mexico pawn business, outperformed expectations with pawn service charges up 12% in total, and 19% on a constant currency basis. Our U.S. financial services business, which has recently seen pressure from new lending ordinances in both Houston and El Paso, continues to diversify from both a product mix and geographic perspective. Our Latin America financial services operation, Grupo Finmart, experienced strong increases in new loan originations, which grew 37% on a constant-currency basis, and also had an improved bad debt experience."

The strengthening of the U.S. dollar put pressure on year-over-year comparables on both income statement and balance sheet items, mostly with respect to our Latin America segment and the Mexican peso.  The average foreign exchange rate on the Mexican peso was 13.9 in the first quarter of fiscal 2015 versus 13.0 in the comparable period a year earlier, and the month-end foreign exchange rate on the peso was 14.7 at December 31, 2014 versus 13.1 a year earlier.

Net revenues were down by $13.5 million over the same quarter in the previous year, but a tight focus on efficiencies led to a 35% reduction in administrative expenses, from $15.7 million to $10.1 million. Operations expenses were down 1% to $103.7 million compared to $105.0 million for the same period in the prior year. Total operating expenses decreased by 5% when excluding the impact of a one-time $6.3 million gain on the sale of assets in the prior year's quarter, which had the effect of reducing operating expenses in the prior year quarter.

CLASS ACTION COMPLAINT                                                                                  10

Interest expense was $9.0 million versus $4.5 million in the same quarter last year. Of the $4.5 million increase, $2.5 million (including a $2.3 million increase in non-cash interest) was as a result of the convertible bonds, which we issued in June 2014, and $1.9 million was related to Grupo Finmart due to increased borrowings.

*   *   *

### Latin America Segment

We recorded strong performance in Latin America, with impressive increases in consumer loan originations and improvement in bad debt, and solid increases in both pawn service charges and pawn loan balances. The improvements were strong in both the translated and constant currency results.

*Consumer Lending —*

- New loan originations at Grupo Finmart were $21.9 million, a year-over-year increase of 28% in total and 37% on a constant currency basis. Strength in new loan originations can be seen in both the growth in number of contracts and steady penetration rates at existing contracts.

- Structured asset sales resulted in approximately $6.6 million of gains (reported in "Consumer loan sales and other revenues"), up 43% as compared to the prior year and up 61% year-over-year on a constant currency basis. Consumer loan and interest fees on the remaining loan portfolio were $10.1 million, a year-over-year decrease of 30% (25% on a constant currency basis), primarily the result of structured asset sales over the last year.

- Reflecting the improvement of the quality of the loan portfolio, bad debt expense as a percentage of fees declined to 9%, down 100 basis points over the prior year.

- We continue to manage the growth and cost of capital at Grupo Finmart and have reduced the overall cost of debt to 9%, down from 11% in the same quarter last year. Total interest expense was up $1.9 million, up 57% year-over-year and 69% year-over-year on a constant currency basis, on a higher debt base.

*Pawn* —

- Performance at Empeño Fácil was strong, as we continued our focus on operational execution. Pawn service charges were $7.9 million, a year-over-year increase of 12%, and 19% on a constant currency basis. Average pawn loan balances of $15.7 million were up 15% year-over-year and 22% year-over-year on a constant currency basis.

- Total merchandise sales were $19.6 million, a year-over-year increase of 17% and 25% on a constant currency basis. Gross margin was 32%, as compared to 37% in the prior year which reflects our efforts to increase the velocity of inventory disposition consistent with our U.S. pawn operations.

- Despite lower redemption rates (76%, down 300 basis points year-over-year) and higher inventory levels, inventory turns held steady at 2.6 times. Inventory turns for general merchandise held for one year or more were 3.2 times versus 1.5 times in the same period a year earlier. General merchandise items held for 361+ days were reduced by 43% quarter-over-quarter.

25.     On February 6, 2015, EZCORP filed its Quarterly Report with the SEC on Form 10-Q for the 2015 fiscal first quarter.  The Company's Form 10-Q reaffirmed the Company's financial results previously announced on January 27, 2015.  The Form 10-Q also contained required Sarbanes-Oxley certifications, signed by Defendants Grimshaw and Kuchenrither, substantially similar to the certifications contained in ¶23, *supra*.

26.     On April 30, 2015, after the market closed, the Company issued a press release entitled, "EZCORP Reports Preliminary Financial Data for Second Quarter; Delays Earnings Release."  Therein, the Company, in relevant part, stated:

EZCORP, Inc. (EZPW), a leading provider of pawn and consumer loans in the United States, Mexico and Canada, today announced that it will delay its earnings release for the second quarter of fiscal 2015 (ended March 31, 2015), due to an ongoing review of certain elements of its Grupo Finmart loan portfolio, which is not yet completed. The company identified certain errors in a portion of the Grupo Finmart loan portfolio that may impact current and historical amounts of loan reserves and interest income, and is conducting a more thorough review to

quantify the errors and assess the associated processes and controls. The company will announce its second quarter earnings upon completion of that review.

In the interim, the company is today releasing preliminary selected financial data relating to the second quarter of fiscal 2015.

Stuart Grimshaw, EZCORP's Chief Executive Officer, stated, "Core pawn revenue growth (merchandise sales and pawn service charges excluding scrap) has been sound, increasing 5% on a constant currency basis (3% on a GAAP basis) over last year. Empeno Facil, our Mexico pawn operation, continued to perform particularly well, with pawn loan balances up 15% on a constant currency basis (down 1% on a GAAP basis). Domestic pawn service charges were slightly higher year-over-year, despite continued pressure on loan balances from gas prices and a strengthening job market. As expected, U.S. Financial Services revenue was negatively impacted compared to last year by a number of markets being subjected to ordinance changes.

"Grupo Finmart continued to grow its base of earning assets, with strong double digit-growth in loan originations over last year. We did not undertake any asset sales in Grupo Finmart this quarter as we have done over the past several quarters. During the quarter, we noted some differences in the performance of parts of our Grupo Finmart loan portfolio that prompted a more thorough review and analysis of our loan reserves, interest income, processes and controls. We are diligently working to complete that review as soon as possible and will delay our earnings release accordingly."

*          *          *

**Latin America Segment**

All revenue and pawn operating metrics are quoted a constant currency basis. See the accompanying table for a reconciliation of such amounts to the comparable GAAP amounts.

*Pawn*

Empeno Facil continues to show marked improvement versus the prior year, with strong pawn loan book growth, improved merchandise sales volume and a continued reduction in aged inventory.

Retail merchandise sales increased 24% in total. Pawn service charges were up 15% year-over-year driven by pawn loan balances increasing 16% versus a year earlier. The average monthly pawn loan portfolio yield was steady at 17%.

Inventory turns improved to 2.5x versus 2.3x in the prior year. Total inventory was reduced by $.9 million or 5% sequentially. Aged inventory was reduced by 39% from the prior year quarter, but still remains 11% of total inventory balances.

As was the situation in U.S. Pawn, gross margin on merchandise sales was down versus the prior year at 29%, a decrease of 5 percentage points from 34% previously, as the company continued to reduce aged inventory holdings.

*Payroll Withholding Lending*

Demand for loans at Grupo Finmart was strong with double-digit growth in loan originations compared to the same period last year. This quarter Grupo Finmart did not conduct any loan sales that would have otherwise contributed to quarterly earnings from the segment. This is a timing issue, and for comparative purposes, an asset sale in the second quarter of the prior year provided $5 million in pre-tax gains.

*        *        *

**Certain Consolidated Data**

Net income from continuing operations for the second quarter will be negatively impacted by the following after-tax charges (totaling $8.3 million):

- $5.9 million related to Cash Converters International's decision to terminate an agreement with two financial agents;
- $0.8 million interest expense on an IRS tax settlement for fiscal 2010;
- $0.6 million of legal expenses related to shareholder litigation and the SEC investigation;
- $0.5 million related to subleases as the company closed its Miami and Mexico City regional offices to increase efficiency; and
- $0.5 million from severance and expenses related to cost rationalization activities effected during the quarter.

**CEO Commentary**

EZCORP's CEO, Stuart Grimshaw, noted, "Our pawn businesses in the U.S. and Mexico are sound, and will continue to drive the growth of earnings and cash flow. We believe there is tremendous opportunity in the U.S. and Mexican marketplaces for the continued growth and evolution of our pawn businesses. In our U.S. Financial Services business, we continue to work on mitigating the effects of regulatory changes and analyzing the potential impact of any future industry rule changes.

"We are working to become a fit and focused organization. We said we would improve the balance sheet, and we are making progress. We have reduced aged inventory and are improving the quality of the earning asset portfolio, but we have more work to do.

"We are focused on a return to delivering consistent performance and quality earnings. We are nearing the completion of a thorough fact-based strategic review of the businesses and operations, and plan to disclose a three-year strategic plan in conjunction with our third fiscal quarter earnings announcement."

27.     On this news, shares of EZCORP declined $0.79 per share, over 8%, to close on May 1, 2015, at $8.41 per share, on unusually heavy volume.

28.     On May 20, 2015, after the market closed, the Company issued a press release entitled, "EZCORP Releases Selected Information For The Second Quarter Of Fiscal 2015." Therein, the Company, in relevant part, stated:

**Company receives deficiency notice from Nasdaq related to the delayed quarterly filing**

EZCORP, Inc. (Nasdaq: EZPW), a leading provider of pawn and consumer loans in the United States, Mexico and Canada, has released selected financial and operating information for the second quarter of fiscal 2015 in a Current Report on Form 8-K filed with the Securities and Exchange Commission.  As previously announced, the company delayed the filing of its Quarterly Report on Form 10-Q for the second quarter until it completes the review and analysis of certain errors identified in a portion of its Grupo Finmart loan portfolio. The Form 8-K discloses information about the second quarter that is unaffected by that review and contains more detail about the nature and scope of the Grupo Finmart review.

On May 14, 2015, the company received a written notice from The Nasdaq Stock Market stating that, due to the failure to timely file its Quarterly Report on Form 10-Q for the second quarter of fiscal 2015, the company is not currently in compliance with Nasdaq Listing Rule 5250(c)(1).  The notice gives the company 60 days to submit a plan to regain compliance, and if that plan is accepted, the Nasdaq staff can grant an exception of up to 180 calendar days from the filing's due date.  The notice was expected and has no immediate effect on the listing or trading of the company's common stock on the Nasdaq Global Select Market. The company will submit a plan of compliance within the 60-day period, and believes that its plan will be an acceptable plan to regain compliance with the Nasdaq's listing rules.

29.     On May 20, 2015, after the market closed, filed a Current Report on Form 8-K

with the SEC.  Therein, the Company, in relevant part, stated:

## ITEM 2.02 — RESULTS OF OPERATIONS AND FINANCIAL CONDITION

As previously disclosed, EZCORP, Inc. ("we" or the "Company") has delayed the filing of our Quarterly Report on Form 10-Q for the second quarter of fiscal 2015 (ended March 31, 2015) pending the completion of the review and analysis of certain accounting issues relating to our Grupo Finmart loan portfolio. We have identified certain errors in a portion of our Grupo Finmart loan portfolio that may impact current and historical amounts of loan reserves and interest income. We are conducting a thorough review to quantify the errors, evaluate the associated processes and controls and remediate the identified control deficiencies. We are also reviewing whether certain structured asset sales from Grupo Finmart met the criteria required for sale accounting treatment or whether they should have been accounted for as secured borrowings.

We have not completed our review and analysis, and therefore, no definitive conclusions have been made. However, we believe that it is likely that management and the Audit Committee will conclude that we have a material weakness in internal control over financial reporting and deficiencies in our disclosure controls and procedures. For a description of the nature and scope of the Grupo Finmart review, including the preliminary findings to date, see "Item 7.01 — Regulation FD Disclosure — Grupo Finmart Review" below.

In the interim, we are releasing the following selected unaudited financial data and information relating to the second quarter of fiscal 2015. BDO USA, LLP ("BDO") (our current independent registered public accounting firm) has not completed its review of our fiscal 2015 second quarter and year-to-date performance, amounts or financial statements required by Securities and Exchange Commission ("SEC") rules and the Public Company Accounting Oversight Board. Consequently, the amounts and results set forth and described could change based on that review.

This information contains forward-looking statements that are based on our current expectations. Actual results could differ materially from those expressed or implied by the forward-looking statements due to a number of risks, uncertainties and other factors, including those identified under "Grupo Finmart Review — Specific Risk Factors," "Legal and Regulatory Proceedings" and "Regulatory Developments" in "Item 7.01 — Regulation FD Disclosure" below and in "Part I, Item 1A — Risk Factors" of our Annual Report on Form 10-K for the year ended September 30, 2014. Additional risks and uncertainties not currently known to us or that we currently consider to be immaterial may also

materially adversely affect our business, financial condition or results of operations.

*       *       *

## ITEM 7.01 — REGULATION FD DISCLOSURE

As noted above, we have delayed the filing of our Quarterly Report on Form 10-Q for the second quarter of fiscal 2015 until we have completed the review and analysis of the Grupo Finmart loan portfolio described below, have determined the impact on our current and historical financial statements, and have evaluated the significance of identified control deficiencies. We expect to file the delinquent Quarterly Report upon completion of that review, including a review of the results by BDO (our current independent registered public accounting firm) and Deloitte & Touche LLP ("Deloitte") (our independent registered public accounting firm for fiscal 2014 and 2013), and after BDO has completed its required review of our second quarter unaudited financial statements.

Grupo Finmart Review

_Background Description of Grupo Finmart Business and Accounting Policies_

We own a 76% interest in Prestaciones Finmart, S.A.P.I. de C.V., SOFOM, E.N.R. ("Grupo Finmart"), a payroll withholding lender headquartered in Mexico City. We acquired a controlling interest in Grupo Finmart in January 2012, and its financial results are consolidated and reported as part of our Latin America segment.

Grupo Finmart enters into payroll withholding agreements ("convenios") with Mexican employers, primarily federal, state and local governments and agencies, and provides unsecured, multiple-payment consumer loans to employees of those various employers. Interest and principal payments are collected by the employers through payroll deductions and remitted to Grupo Finmart. As of March 31, 2015, Grupo Finmart had over 100 active convenios and a total of 101,800 consumer loans outstanding. Those loans had an average principal balance per loan of approximately $900 and an average term per loan of 30 months.

We accrue and recognize interest revenue ratably over the life of all loans that are in current status, and we reserve the percentage of interest revenue that we expect not to collect (based on historical experience). We also reserve against the loan principal based on the percentage of loans that we expect not to collect (again, based on historical experience).

Grupo Finmart's loans are considered in current status as long as the customer remains employed ("in-payroll" loans). Loans outstanding from customers who are no longer employed ("out-of-payroll" loans) are considered current if

---

payments are made by the due date. If one payment of an out-of-payroll loan is delinquent, that one payment is considered in default; if two or more payments are delinquent at any time, the entire loan is considered in default. Upon default, we charge the loan principal to consumer loan bad debt expense, reduce interest revenue by the amount of unpaid interest accrued on the loan prior to default and cease accruing future interest revenue. If we subsequently collect some or all of the defaulted loan, we reduce consumer loan bad debt expense by the amount of collected principal and increase interest revenue by the amount of collected interest.

Under Grupo Finmart's current policy, only defaulted out-of-payroll loans are considered in nonaccrual status. Due to the likelihood of ultimately receiving payment if the customer remains employed, we continue to accrue interest on all in-payroll loans, even though Grupo Finmart may not be currently receiving installment payments. It is not uncommon for payments to be temporarily interrupted. For example, it typically takes up to 90 days for the employer to set up initial payroll withholding and begin submitting payments to Grupo Finmart. Further, it is not unusual to have an interruption in payments for a number of reasons, such as holidays, summer vacations, illness, convenio renewals, union permits and political elections. In addition, issues with employer systems or payment consolidation processes sometimes cause interruptions in payments.

### Review of "Non-Performing" Loans

During the second quarter of fiscal 2015, we began a review of the loans that were being carried as active loans but with respect to which Grupo Finmart was not currently receiving payments ("non-performing" loans). During this review, we identified a number of out-of-payroll loans that had not been properly coded and recognized as such. The failure to properly account for these out-of-payroll loans results in an understatement of bad debt expense and an overstatement of accrued interest revenue. We are in the process of quantifying the magnitude of the error and determining the periods affected by the required adjustments.

In our review of the aging characteristics of the non-performing loans, we noted that many of these loans, while still in-payroll, have been in non-performing status for some time. Even though we have accounted for these loans in accordance with Grupo Finmart's current revenue recognition and bad debt policies, we are reviewing those policies to ensure they comply with generally accepted accounting principles in the United States of America ("GAAP"). If we determine that those policies do not comply with GAAP, we will resolve the extent to which we have understated bad debt expense and overstated interest revenue in prior periods.

In addition to our review of the non-performing loans, we are also evaluating associated processes and controls. We believe that failure to identify out-of-

payroll loans and failure to adequately track the aging of non-performing loans are control deficiencies that likely constitute a material weakness in our internal control over financial reporting. We also believe that these failures likely constitute deficiencies in our disclosure controls and procedures. We have not yet completed our evaluation of the processes and controls, and there can be no assurance that we will not identify other deficiencies in our controls or that those deficiencies, if identified, will not constitute additional material weaknesses.

We are conducting our review and evaluation under the supervision of the Audit Committee of our Board of Directors and in consultation with BDO and Deloitte. The Audit Committee has also engaged PricewaterhouseCoopers LLP to assist management with the review of the non-performing loans, the evaluation of associated processes and controls, and the design and implementation of an appropriate remediation plan, as well as to provide objective advice to the Audit Committee.

We have recently created the position of Chief Risk Officer of EZCORP and filled that position with an experienced executive with industry-related background and expertise. The Chief Risk Officer will report to the EZCORP Chief Executive Officer and will be responsible for the design, implementation and oversight of a comprehensive, enterprise-wide risk management program, which will analyze and seek to manage and mitigate internal and external risks, including loan portfolio risks, for Grupo Finmart and EZCORP's other businesses.

Review of Accounting Treatment of Prior Asset Sales

During fiscal 2014 and the first quarter of fiscal 2015, Grupo Finmart entered into structured asset sales pursuant to which a portion of the consumer loan portfolio was sold to third parties. These transactions were accounted for as sales, and we recognized gain on these sales. We are reviewing these transactions to confirm that they have met the criteria required for sale accounting treatment or whether they should have been accounted for as secured borrowings.

_Impact on Financial Statements_

In accordance with Staff Accounting Bulletin ("SAB") No. 99, Materiality, and SAB No. 108, Considering the Effects of Prior Year Misstatements when Quantifying Misstatements in Current Year Financial Statements, we will assess the materiality of the identified errors on our consolidated financial statements for the first quarter of fiscal 2015 and for the fiscal years ended September 30, 2014, 2013 and 2012 (and the quarterly periods within those years). At this point, we have not completed our review and analysis and, thus, have reached no definitive conclusions regarding whether correction of the identified accounting errors will require a restatement of prior period financial statements.

*Specific Risk Factors*

**Our failure to timely file our Quarterly Report on Form 10-Q for the second quarter of fiscal 2015 could have material adverse effects on our results of operations, financial condition, liquidity, and the market for and market price of our Class A Non-Voting Common Stock.**

- Our failure to timely file our Quarterly Report on Form 10-Q constitutes a violation of Rule 5250(c)(1) of the Nasdaq listing rules. Therefore, our Class A Non-Voting Common Stock, which is currently listed on the Nasdaq Global Select Market, is subject to being delisted. We have received a written notice from Nasdaq that we are no longer in compliance with the Nasdaq listing rules. See "Item 3.01 — Notice of Delisting or Failure to Satisfy a Continued Listing Rule or Standard; Transfer of Listing" above. The notice gives us 60 days to submit a plan to regain compliance. We believe that we will be able to submit an acceptable plan to regain compliance.

- Our failure to timely file our Quarterly Report on Form 10-Q could give rise to additional litigation and regulatory investigations or proceedings, which could result in substantial costs or liabilities. We are currently subject to legal proceedings and regulatory investigations described in "Legal and Regulatory Proceedings" below. Additional litigation or regulatory investigations could result in costs or liabilities in excess of the current limits of our insurance policies.

- The indenture governing our Cash Convertible Notes provides that if we fail to timely file a required SEC report, we must pay additional interest on the Cash Convertible Notes at the rate of 0.5% per annum until the earlier of June 23, 2015 or the date on which our failure to file has been cured. In addition, the indenture requires us to file with the trustee copies of our SEC reports within 15 days after the date they are required to be filed with the SEC. Consequently, our failure to timely file our Quarterly Report may give rise to an event of default on the Cash Convertible Notes. We have the right to elect, as sole remedy for the default, to pay additional interest for up to 180 days after the event of default. If we have not cured the event of default by that time, the Cash Convertible Notes will be subject to acceleration. The acceleration of the Cash Convertible Notes would have a material adverse effect on our liquidity and our financial condition. No assurance can be given that we would be able to obtain other financing to fund repayment of the Cash Convertible Notes.

**The outcome of our review of the accounting and financial reporting matters described above (including the possible restatement of prior period financial statements and the identification of a material weakness in internal controls)**

---

CLASS ACTION COMPLAINT                                                    20

***could have material adverse effects on our results of operations, financial condition, liquidity, and the market for and market price of our Class A Non-Voting Common Stock.***

- Possible outcomes of the ongoing review of accounting and financial reporting matters described above could include the following:

  o A determination that a restatement of prior period financial statements is required;

  o A determination that some of our previously issued financial statements may not be relied upon;

  o A conclusion that there is a material weakness in our internal control over financial reporting; and

  o A determination that disclosure controls and procedures are not effective.

As described above, we have not completed our review and analysis, and therefore, no such determinations or definitive conclusions have been made, although (as stated above) we believe that it is likely that management and the Audit Committee will conclude that we have a material weakness in internal control over financial reporting and deficiencies in our disclosure controls and procedures.

- The outcome of our review of the accounting and financial reporting matters described above (including the possible restatement of prior period financial statements and the identification of a material weakness in internal control over financial reporting) could give rise to additional litigation and regulatory investigations or proceedings, which could result in substantial costs and liabilities. We are currently subject to legal proceedings and regulatory investigations described in "Legal and Regulatory Proceedings" below. Additional litigation or regulatory investigations could result in costs or liabilities in excess of the current limits of our insurance policies.

30.     On this news, shares of EZCORP declined $0.66 per share, over 7%, to close on May 21, 2014, at $8.33 per share, on unusually heavy volume.

31.     The statements contained in ¶¶22-26; 28-29 were materially false and/or misleading when made because defendants failed to disclose or indicate the following: (1) that

the Company improperly recognized certain structured assets sales; (2) that the Company improperly classified certain accounted for certain out-of-payroll loans; (3) that, as a result, the Company overstated its gains on assets sales and accrued interest revenue; (4) that, as such, the Company's financial statements were not prepared in accordance with GAAP; (5) that the Company lacked adequate internal and financial controls; and (6) that, as a result of the foregoing, Defendants' statements were materially false and misleading at all relevant times.

### Disclosures at the End of the Class Period

32.     On July 17, 2015, the Company issued a press release entitled, "EZCORP to Restate Certain Financial Results."  Therein, the Company, in relevant part, stated:

> EZCORP, Inc. (Nasdaq:EZPW), a leading provider of pawn and consumer loans in the United States, Mexico and Canada, today announced that it will restate its financial statements for fiscal 2014 (including the interim periods within that year) and the first quarter of fiscal 2015. This decision to restate was made by the company's board of directors, upon the recommendation of management and the audit committee and in consultation with the company's independent registered public accounting firms.
>
> **Structured Asset Sales**
> The restatement adjustments, all of which are non-cash, will correct certain errors relating to the accounting for Grupo Finmart's structured assets sales in fiscal 2014 and the first quarter of fiscal 2015. Following a comprehensive review of the terms and conditions of each of the structured asset sales, management has determined that the asset sales should not have been accounted for as sales, principally due to certain control rights that Grupo Finmart retained as servicer of the loans.  Because of these control rights, the trusts to which the loans were sold should be accounted for as "variable interest entities" and consolidated pursuant to ASC 810-10 (Consolidation and the Variable Interest Model), and therefore, the sales should not have been recognized for accounting purposes.
>
> As a result of the consolidation, the prior gains on sale will be eliminated, the assets and liabilities of the trusts will be included in the company's consolidated balance sheet and interest income (along with related expenses) will be recognized over the life of the loans. This process will result in a reduction in net income in the periods during which a structured asset sale occurred (due to the reversal of the gain on sale) and an increase in net income thereafter (due to the

accrual and recognition of interest income, net of related expenses, over the life of the loans).

Although the company has not yet quantified the effect of reversing the sale accounting treatment, it should be noted that, as a result of the asset sales, the company previously recognized $39.6 million of gain ($33.0 million in fiscal 2014 and $6.6 million in the first quarter of fiscal 2015). That gain will be eliminated, but interest income in the periods subsequent to the assets sales will be increased.   Grupo Finmart's Mexican GAAP financial statements are unaffected by this adjustment.

**Grupo Finmart Loan Portfolio**
As previously disclosed, the company is also reviewing the Grupo Finmart loan portfolio to quantify errors that may impact current and historical amounts of loan reserves and interest income.  The company has identified a number of out-of-payroll loans that had not been properly classified and accounted for as such, causing an understatement of bad debt expense and an overstatement of accrued interest revenue in prior periods.   In addition, after reviewing the aging characteristics of the non-performing loans, the company, in consultation with Deloitte & Touche LLP, the company's independent registered public accounting firm for fiscal 2014 and 2013, and BDO USA, LLP, the company's current independent registered public accounting firm, has determined that it is more appropriate to accrue and recognize interest income over the period that payments are actually received rather than over the stated term of the loans (as has been Grupo Finmart's historic policy).  That policy has caused interest income to be recognized earlier than will be the case by recognizing interest income over the actual term.

Although these issues could be material, the company has not fully quantified the impact on bad debt reserves and accrued interest and, therefore, has not yet determined which prior reporting periods have been affected.  Identified errors that relate to fiscal 2014 or the first quarter of fiscal 2015 will be corrected as part of the restatement described above.  Based on the outcome of our review of the loan portfolio, we may determine that the financial statements for periods prior to fiscal 2014 should also be restated.

Additional information about these matters can be found in the company's Current Report on Form 8-K filed with the Securities and Exchange Commission contemporaneous with the issuance of this release.

**Nasdaq Plan Of Compliance**
The company submitted a plan of compliance to The Nasdaq Stock Market on July 13, 2015, and continues to work diligently to complete the review and restatement and regain compliance with its reporting and listing requirements.

33.     On this news, shares of EZCORP declined $0.26 per share, nearly 4%, to close on July 17, 2015, at $6.48 per share, on unusually heavy volume.

## EZCORP'S VIOLATION OF GAAP RULES
## IN ITS FINANCIAL STATEMENTS
## FILED WITH THE SEC

34.     These financial statements and the statements about the Company's financial results were false and misleading, as such financial information was not prepared in conformity with GAAP, nor was the financial information a fair presentation of the Company's operations due to the Company's improper accounting of Grupo Finmart's structured asset sales, in violation of GAAP rules.

35.     GAAP are those principles recognized by the accounting profession as the conventions, rules and procedures necessary to define accepted accounting practice at a particular time.  Regulation S-X (17 C.F.R. § 210.4-01(a)(1)) states that financial statements filed with the SEC which are not prepared in compliance with GAAP are presumed to be misleading and inaccurate.  Regulation S-X requires that interim financial statements must also comply with GAAP, with the exception that interim financial statements need not include disclosure which would be duplicative of disclosures accompanying annual financial statements. 17 C.F.R. § 210.10-01(a).

36.     The fact that EZCORP announced that its financial statements will need to be restated, and informed investors that these financial statements should not be relied upon is an admission that they were false and misleading when originally issued (APB No. 20, 7-13; SFAS No. 154, 25).

37.     Given these accounting irregularities, the Company announced financial results that were in violation of GAAP and the following principles:

(a)      The principle that "interim financial reporting should be based upon the same accounting principles and practices used to prepare annual financial statements" was violated (APB No. 28, 10);

(b)      The principle that "financial reporting should provide information that is useful to present to potential investors and creditors and other users in making rational investment, credit, and similar decisions" was violated (FASB Statement of Concepts No. 1, 34);

(c)      The principle that "financial reporting should provide information about the economic resources of EZCORP, the claims to those resources, and effects of transactions, events, and circumstances that change resources and claims to those resources" was violated (FASB Statement of Concepts No. 1, 40);

(d)      The principle that "financial reporting should provide information about EZCORP's financial performance during a period" was violated (FASB Statement of Concepts No. 1, 42);

(e)      The principle that "financial reporting should provide information about how management of EZCORP has discharged its stewardship responsibility to owners (stockholders) for the use of EZCORP resources entrusted to it" was violated (FASB Statement of Concepts No. 1, 50);

(f)      The principle that "financial reporting should be reliable in that it represents what it purports to represent" was violated (FASB Statement of Concepts No. 2, 58-59);

(g)      The principle that "completeness, meaning that nothing is left out of the information that may be necessary to insure that it validly represents underlying events and conditions" was violated (FASB Statement of Concepts No. 2, 79); and

(h)     The principle that "conservatism be used as a prudent reaction to uncertainty to try to ensure that uncertainties and risks inherent in business situations are adequately considered" was violated (FASB Statement of Concepts No. 2, 95).

38.     The adverse information concealed by Defendants during the Class Period and detailed above was in violation of Item 303 of Regulation S-K under the federal securities law (17 C.F.R. §229.303).

## CLASS ACTION ALLEGATIONS

39.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all those who purchased EZCORP's securities between October 27, 2014 and July 16, 2015, inclusive (the "Class Period") and who were damaged thereby (the "Class").  Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

40.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, EZCORP's securities were actively traded on the Nasdaq Stock Market (the "NASDAQ").  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Millions of EZCORP shares were traded publicly during the Class Period on the NASDAQ.  As of December 31, 2014, EZCORP had 50,680,358 shares of Class A Non-voting common stock outstanding and 2,970,171 shares of Class B Voting common stock outstanding.  Record owners and other members of the Class may be identified from records maintained by EZCORP or its

transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

41.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

42.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

43.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)     whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of EZCORP; and

(c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

44.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

45.     The market for EZCORP's securities was open, well-developed and efficient at all relevant times.  As a result of these materially false and/or misleading statements, and/or failures to disclose, EZCORP's securities traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired EZCORP's securities relying upon the integrity of the market price of the Company's securities and market information relating to EZCORP, and have been damaged thereby.

46.     During the Class Period, Defendants materially misled the investing public, thereby inflating the price of EZCORP's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading.  Said statements and omissions were materially false and/or misleading in that they failed to disclose material adverse information and/or misrepresented the truth about EZCORP's business, operations, and prospects as alleged herein.

47.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about EZCORP's financial well-being and prospects.  These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times.  Defendants' materially false and/or misleading statements during the Class Period

resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein.

## LOSS CAUSATION

48.     Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

49.     During the Class Period, Plaintiff and the Class purchased EZCORP's securities at artificially inflated prices and were damaged thereby.  The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

50.     As alleged herein, Defendants acted with scienter in that Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, Defendants, by virtue of their receipt of information reflecting the true facts regarding EZCORP, his/her control over, and/or receipt and/or modification of EZCORP's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning EZCORP, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
## (FRAUD-ON-THE-MARKET DOCTRINE)

51.     The market for EZCORP's securities was open, well-developed and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures to disclose, EZCORP's securities traded at artificially inflated prices during the Class Period.  On January 26, 2015, the Company's stock closed at a Class Period high of $12.25 per share. Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of EZCORP's securities and market information relating to EZCORP, and have been damaged thereby.

52.     During the Class Period, the artificial inflation of EZCORP's stock was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about EZCORP's business, prospects, and operations.  These material misstatements and/or omissions created an unrealistically positive assessment of EZCORP and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company stock.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

53.     At all relevant times, the market for EZCORP's securities was an efficient market for the following reasons, among others:

(a)      EZCORP stock met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b)      As a regulated issuer, EZCORP filed periodic public reports with the SEC and/or the NASDAQ;

(c)      EZCORP regularly communicated with public investors *via* established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d)      EZCORP was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace.

54.     As a result of the foregoing, the market for EZCORP's securities promptly digested current information regarding EZCORP from all publicly available sources and reflected such information in EZCORP's stock price. Under these circumstances, all purchasers of EZCORP's securities during the Class Period suffered similar injury through their purchase of EZCORP's securities at artificially inflated prices and a presumption of reliance applies.

## NO SAFE HARBOR

55.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be

characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of EZCORP who knew that the statement was false when made.

**FIRST CLAIM**
**Violation of Section 10(b) of**
**The Exchange Act and Rule 10b-5**
**Promulgated Thereunder Against All Defendants**

56.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

57.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase EZCORP's securities at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

58.     Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which

operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for EZCORP's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5.  All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

59.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about EZCORP's financial well-being and prospects, as specified herein.

60.     These defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of EZCORP's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about EZCORP and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

61.     Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and

participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

62.     The defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them, including, among other things, that certain of the Company's subsidiaries or business units were engaged in improper business practices and misrepresented the financial results, performance, and value of the Company's business units and equity investments. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing EZCORP's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities.  As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

63.     As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of

EZCORP's securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired EZCORP's securities during the Class Period at artificially high prices and were damaged thereby.

64.    At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that EZCORP was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their EZCORP securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

65.    By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

66.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

**SECOND CLAIM**
**Violation of Section 20(a) of**
**The Exchange Act Against the Individual Defendants**

67.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

68.     The Individual Defendants acted as controlling persons of EZCORP within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.  The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

69.     In particular, each of these Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

70.     As set forth above, EZCORP and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and/or omissions as alleged in this Complaint.  By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section

20(a) of the Exchange Act.  As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)     Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.


DATED:  July 20, 2015                      Respectfully submitted,

                                           **THE KENDALL LAW GROUP, LLP**

                                           /s/ Joe Kendall
                                           JOE KENDALL
                                           Texas Bar No. 11260700
                                           jkendall@kendalllawgroup.com
                                           JAMIE J. MCKEY
                                           Texas Bar No. 24045262
                                           jmckey@kendalllawgroup.com

---

3232 McKinney Avenue, Suite 700
Dallas, Texas 75204
Telephone:  214-744-3000
Facsimile:  214-744-3015 (Facsimile)

*Liaison Counsel for Plaintiff*

**GLANCY BINKOW & GOLDBERG LLP**
Lionel Z. Glancy
Robert V. Prongay
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone:  (310) 201-9150
Facsimile:   (310) 201-9160

*Attorneys for Plaintiff*