**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**

In re EZCORP, Inc. Securities Litigation | Master File No. 1:15-cv-00608-SS

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
**MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF**
<u>**CLASS REPRESENTATIVE AND CLASS COUNSEL**</u>

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES.................................................................................................................iii

PRELIMINARY STATEMENT ...........................................................................................................1

STATEMENT OF FACTS ...................................................................................................................2

ARGUMENT .....................................................................................................................................3

      I.      The Applicable Standards Favor Class Certification in This Securities Action.....3

      II.     The Requirements of Rule 23(a) Are Satisfied......................................................4

           A.     Numerosity Is Established ........................................................................4

           B.     Commonality Is Established .....................................................................5

           C.     Typicality Is Established...........................................................................6

           D.     Adequacy Is Established ...........................................................................7

      III.    The Requirements Of Rule 23(b)(3), Predominance and Superiority, Are Satisfied
               .................................................................................................................................9

           A.     Common Questions of Law and Fact Predominate ...................................9

           B.     Plaintiffs Are Entitled to a Presumption of Reliance Under *Basic* .............9

           C.     Potential Individual Questions of Damages Do Not Predominate............18

           D.     The Same Common Issues Predominate as To The § 20(a) Claims.........19

           E.     A Class Action Is Superior to Other Available Methods for The Fair and
                 Efficient Adjudication of This Action .....................................................19

CONCLUSION..................................................................................................................................20

# TABLE OF AUTHORITIES

**Cases**

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
  572 F.3d 221 (5th Cir. 2009) ............................................................................ 4

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) ............................................................................... 3, 7, 9

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
  133 S. Ct. 1184 (2013) ..................................................................... 4, 9, 10, 14

*Basic Inc. v. Levinson*,
  485 U.S. 224 (1988) ................................................................................ 9, 18

*Brown v. Kelly*,
  609 F.3d 467 (2d Cir. 2010) ............................................................................ 9

*Buettgen v. Harless*,
  3:09-CV-1049-K, 2011 WL 1938130 (N.D. Tex. May 19, 2011) ....................................... 8, 20

*Cammer v. Bloom*,
  711 F. Supp. 1264 (D.N.J. 1989) .............................................................. passim

*Carpenters Pension Trust Fund of St. Louis v. Barclays PLC*,
  310 F.R.D. 69 (S.D.N.Y. 2015) ....................................................................... 14

*Erica P. John Fund, Inc. v. Halliburton Co.* ("*Halliburton I*"),
  563 U.S. 804 (2011) .................................................................................. 3, 9

*Erica P. John Fund, Inc. v. Halliburton Co.*,
  718 F.3d 423 (5th Cir. 2013) .......................................................................... 9

*Forbush v. J.C. Penney Co.*,
  994 F.2d 1101 (5th Cir.1993) .......................................................................... 5

*Gen. Tel. Co. of Sw. v. Falcon*,
  457 U.S. 147 (1982) ................................................................................... 6

*Halliburton Co. v. Erica P. John Fund, Inc.* ("*Halliburton II*"),
  134 S. Ct. 2398 (2014) ............................................................................. 9, 10

*Henry v. Cash Today, Inc.*,
  199 F.R.D. 566 (S.D. Tex. 2000) ...................................................................... 19

*Hodges v. Akeena Solar, Inc.*,
   274 F.R.D. 259 (N.D. Cal. 2011) ................................................................ 10

*In re Accredo Health, Inc. Sec. Litig.*,
   03-2216 DP, 2006 WL 1716910 (W.D. Tenn. Apr. 19, 2006) ............................... 11

*In re Alstom SA Sec. Litig.*,
   253 F.R.D. 266 (S.D.N.Y. 2008) ................................................................. 17

*In re Arthrocare Corp. Sec. Litig.*,
   A-08-CA-574-SS, 2011 WL 13175766 (W.D. Tex. Aug. 30, 2011) .................... 6, 18

*In re Barrick Gold Sec. Litig.*,
   314 F.R.D. 91 (S.D.N.Y. 2016) .................................................................... 18

*In re Blech Sec. Litig.*,
   187 F.R.D. 97 (S.D.N.Y. 1999) .................................................................... 20

*In re Deepwater Horizon*, 7
   85 F.3d 1003 (5th Cir. 2015) ........................................................................ 7

*In re Dell Inc.*,
   A-06-CA-726-SS, 2010 WL 2371834 (W.D. Tex. June 11, 2010) ......................... 6

*In re DVI Inc. Sec. Litig.*,
   249 F.R.D. 196 (E.D. Penn. 2008) ...................................................... 13, 14, 17

*In re Dynegy, Inc., Sec. Litig.*,
   226 F.R.D. 263 (S.D. Tex. 2005) ............................................................ 4, 7, 19

*In re Elec. Data Sys. Corp. Sec. Litig.*,
   226 F.R.D. 559 (S.D. Tex. 2005). .................................................................. 6

*In re Enron Corp. Sec. Deriv. & "ERISA" Litig.*,
   529 F. Supp. 2d 644 (S.D. Tex. 2006) .............................................................. 4

*In re First RepublicBank Sec. Litig.*,
   CIV. A. 3-88-0641-H, 1989 WL 108795 (N.D. Tex. Aug. 1, 1989) ...................... 18

*In re HealthSouth Corp. Sec. Litig.*,
   257 F.R.D. 260 (N.D. Ala. 2009) ................................................................. 10

*In re Initial Public Offering Sec. Litig.*,
   544 F. Supp. 2d 277 (S.D.N.Y. 2008) ............................................................ 11

*In re Merck & Co., Inc. Sec., Deriv. & "ERISA" Litig.*,
  CIV.A. 05-1151 SRC, 2013 WL 396117 (D.N.J. Jan. 30, 2013) ............................................ 19

*In re Nature's Sunshine Prod's., Sec. Litig.*,
  251 F.R.D. 656 (D. Utah 2008) ................................................................................................ 13

*In re NII Holdings, Inc. Sec. Litig.*,
  311 F.R.D. 401 (E.D. Va. 2015) ............................................................................................. 15

*In re Winstar Commc'ns Sec. Litig.*,
  290 F.R.D. 437 (S.D.N.Y. 2013) ..................................................................................... 12, 13

*In re Xcelera.com Sec. Litig.*,
  430 F.3d 503 (1st Cir. 2005) ................................................................................................... 12

*James v. City of Dallas*,
  254 F.3d 551 (5th Cir. 2001) ................................................................................................. 4, 7

*KB Partners I, L.P. v. Barbier*,
  A-11-CA-1034-SS, 2013 WL 2443217 (W.D. Tex. June 4, 2013) ............................................ 7

*Keasler v. Natural Gas Pipeline Co.*,
  84 F.R.D. 364 (E.D. Tex. 1979) ............................................................................................. 19

*Krogman v. Sterritt*,
  202 F.R.D. 467 (N.D. Tex. 2001) ..................................................................................... 11, 16

*Lehocky v. Tidel Techs., Inc.*,
  220 F.R.D. 491 (S.D. Tex. 2004) ..................................................................................... 12, 15

*Lightbourn v. Cnty. of El Paso*,
  118 F.3d 421 (5th Cir. 1997) ................................................................................................. 5, 6

*Longden v. Sunderman*,
  123 F.R.D. 547 (N.D. Tex. 1988) ........................................................................................... 19

*Ludlow v. BP, P.L.C.*,
  800 F.3d 674 (5th Cir. 2015) ............................................................................................... 9, 18

*Lumen v. Anderson*,
  280 F.R.D. 451 (W.D. Mo. 2012) ........................................................................................... 10

*McIntire v. China MediaExpress Holdings, Inc.*,
  38 F. Supp. 3d 415 (S.D.N.Y. 2014) ................................................................................. 16, 17

*Mullen v. Treasure Chest Casino, LLC*,
186 F.3d 620 (5th Cir. 1999) .................................................................. 5, 6

*Phillips Petroleum Co. v. Shutts*,
472 U.S. 797 (1985) ................................................................................ 19

*Ramirez v. J.C. Penney Corp., Inc.*,
6:14-CV-601, 2017 WL 6462355 (E.D. Tex. Nov. 30, 2017) ................... 7

*Simms v. Jones*,
296 F.R.D. 485 (N.D. Tex. 2013) ............................................................. 5

*Smilovits v. First Solar, Inc.*,
295 F.R.D. 423 (D. Ariz. 2013) .............................................................. 14

*Tatz v. Nanophase Tech. Corp.*,
01 C 8440, 2003 WL 21372471 (N.D. Ill. 2003) .................................... 17

*Todd v. STAAR Surgical Co.*,
CV-14-05263-MWF-RZ, 2017 WL 821662 (C.D. Cal. Jan. 5, 2017) ........ 10, 12, 13

*Torres v. S.G.E. Mgmt., L.L.C.*,
838 F.3d 629 (5th Cir. 2016) .................................................................... 4

*Unger v. Amedisys, Inc.*,
401 F.3d 316 (5th Cir. 2005) ................................................................... 11

*W. Palm Beach Police Pension Fund v. DFC Glob. Corp.*,
CV 13-6731, 2016 WL 4138613 (E.D. Pa. Aug. 4, 2016) ...................... 11

*Zeidman v. J. Ray McDermott & Co., Inc.*,
651 F.2d 1030 (5th Cir. 1981) .................................................................. 5

**Rules**

Fed. R. Civ. P. Rule 23
(a) ..................................................................................................... passim
(b) ..................................................................................................... passim

**Other Authorities**

Bromberg & Lowenfels,
4 *Securities Fraud and Commodities Fraud*, § 8.6 (Aug. 1988) ............. 14

Lead Plaintiff John Rooney ("Plaintiff")[1] respectfully submits this memorandum in support of his motion for class certification pursuant to Federal Rule of Civil Procedure 23, seeking: (i) certification of a class consisting of all persons and entities that purchased or otherwise acquired EZCORP, Inc. Class A common stock between January 28, 2014 and October 20, 2015, inclusive, and were damaged thereby (the "Class")[2]; (ii) the appointment of Plaintiff as Class Representative; and (iii) the appointment of Block & Leviton LLP ("B&L") and Glancy Prongay & Murray LLP ("GPM") as Class Counsel and Kendall Law Group, PLLC (the "Kendall Firm") as Liaison Counsel.

## PRELIMINARY STATEMENT

This action asserts claims on behalf of the Class pursuant to §§ 10(b) and 20(a) of the Securities Exchange Act of 1934, and Rule 10b-5 promulgated thereunder, against defendants EZCORP, Inc. ("EZCORP" or the "Company") and Mark E. Kuchenrither ("Kuchenrither") (collectively, "Defendants"). Kuchenrither served as EZCORP's CFO until May 26, 2015 and CEO from July 18, 2014 through February 1, 2015.

Class certification is appropriate as the proposed Class satisfies all of the requirements of certification under Fed. R. Civ. P. 23(a) and 23(b)(3). Further, common questions predominate as EZCORP shares traded on an efficient market during the class period, allowing the Class to rely on the "fraud-on-the-market" presumption. Finally, a class action is a superior means of

---

[1] On November 16, 2017, Co-Lead Plaintiff Wu Winfred Huang filed a motion seeking to be withdrawn as a lead plaintiff, which was granted on December 21, 2017. Dkt. No. 75. Mr. Huang therefore does not seek appointment as a class representative.
[2] Excluded from the Class are Defendants (as defined herein), the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

litigating Class members' claims because it is easily manageable, provides redress to investors who would otherwise be unable to pursue individual claims, and least taxes judicial resources.

## STATEMENT OF FACTS

During the Class Period, EZCORP issued financial results which overstated the true revenues and earnings for the Company during the period. In particular, EZCORP's financial results included revenues and earnings from the sale of six Grupo Finmart[3] loan receivables (the "Loan Sale(s)") during the Class Period.[4] In their SEC filings, EZCORP represented that the Loan Sales were true sales and properly recorded as revenue. The Company expressly stated in its earnings releases that the Grupo Finmart third-party debt from their respective periods were "non-recourse to EZCORP." *See, e.g.*, ¶¶60, 66-67, 70-71, 78. Defendant Kuchenrither also expressly told research analysts and investors on conference calls that the Loan Sales were "true asset sales," and that "the risk associated with the loans passed to the buyer of the loans." ¶¶11, 70-74. These statements were all false and materially misleading when made. As EZCORP admitted in statements associated with its Restatement, because Grupo Finmart retained certain control rights, the Loan Sales were actually *with* recourse to EZCORP, and should not have been recorded as sales, and thus EZCORP improperly recognized revenue on the Loan Sales. ¶¶96-104. As a result, EZCORP's class period financial results were materially misrepresented.

Defendants' fraud was revealed in a series of disclosures beginning on April 30, 2015, when the Company announced that it would delay its earnings and "identified certain errors in a

---

[3] Grupo Finmart was EZCORP's Mexican pay-day loan subsidiary. *See* Second Amended Class Action Complaint for Violations of the Federal Securities Laws ("SAC"), at ¶4.  All citations to "¶ __" in this memorandum refer to paragraphs in the SAC.

[4] On May 8, 2017, the Court denied Defendants' motion to dismiss Plaintiff's claims regarding the Loan Sales and dismissed certain other claims related to the performance of Grupo Finmart's loan portfolio without prejudice. *See* Dkt. No. 54.

portion of the Grupo Finmart Loan Portfolio," that required further analysis. ¶¶158-59.   The April 30, 2015 disclosure linked this discovery of errors in the Grupo Finmart Loan Portfolio with EZCORP's simultaneous decision to stop conducting Loan Sales, which the market had come to rely on as a major driver of EZCORP earnings over the prior five quarters:

> "We did not undertake any asset sales in Grupo Finmart this quarter as we have done over the past several quarters. During the quarter, we noted some differences in the performance of parts of our Grupo Finmart loan portfolio that prompted a more thorough review and analysis of our loan reserves, interest income, processes and controls."

¶ 96. On May 1, 2015, the stock fell over 8% in response. ¶¶97, 159. On May 20, 2015, the Company revealed it was "reviewing whether certain structured asset sales from Grupo Finmart met the criteria required for sale accounting," causing the stock to drop over 7% the next day. ¶¶99-100, 160. On July 17, 2015, EZCORP announced that it would restate its 2014 and 1Q 2015 financial results due to errors identified in the Grupo Finmart loan portfolio and to reverse the asset sales from Grupo Finmart. ¶¶101, 161. The stock dropped nearly 3.9% that day. ¶¶103, 161. On October 20, 2015, EZCORP announced that its Restatement would also include fiscal 2012 and 2013 financial results, causing a 4.4% stock drop. ¶¶105, 162. The Restatement was filed on November 9, 2015, causing a nearly 4.5% drop. ¶¶107, 163.

## ARGUMENT

## I.    The Applicable Standards Favor Class Certification in This Securities Action

The Supreme Court has long recognized that securities fraud claims are particularly well-suited for class treatment. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997) (noting that predominance of common issues "is a test readily met in certain cases alleging . . . securities fraud"). And the Supreme Court continues to favor class certification in securities fraud cases. *See Erica P. John Fund, Inc. v. Halliburton Co.* ("*Halliburton I*"), 563 U.S. 804, 812-13 (2011)

(vacating appellate court denial of class certification); *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 133 S. Ct. 1184, 1193-96 (2013) (affirming class certification).

To be certified, a proposed class must satisfy the four prerequisites of Rule 23(a)—numerosity, commonality, typicality, and adequacy—as well as one of the three provisions in Rule 23(b). *See Torres v. S.G.E. Mgmt., L.L.C.*, 838 F.3d 629, 635 (5th Cir. 2016) (*en banc*). Rule 23 is "'a remedial rule which should be construed liberally to permit class actions, especially in the context of securities fraud suits, where the class action device can prove effective in deterring illegal activity.'" *In re Enron Corp. Sec. Deriv. & "ERISA" Litig.*, 529 F. Supp. 2d 644, 670 (S.D. Tex. 2006). Under Rule 23(b)(3), a plaintiff must establish "that 'the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.'" *Amgen*, 133 S. Ct. at 1191. "[T]he question is not whether the plaintiff or plaintiffs . . . will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 229 (5th Cir. 2009); *see also Amgen*, 133 S. Ct. at 1194-95 (2013).

## II.     The Requirements of Rule 23(a) Are Satisfied

### A.     Numerosity Is Established

Rule 23(a)(1) is satisfied when a class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). A "plaintiff need not show the precise number of persons in the class to satisfy the requirement that joinder is impracticable where such a conclusion is clear from reasonable estimates." *In re Dynegy, Inc., Sec. Litig.*, 226 F.R.D. 263, 268 (S.D. Tex. 2005). Instead, a "reasonable estimate" of the number of purported class members satisfies the numerosity requirement. *James v. City of Dallas*, 254 F.3d 551, 570 (5th

Cir. 2001).

It is generally presumed that Rule 23(a)(1) has been met in suits involving nationally traded securities. *Zeidman v. J. Ray McDermott & Co., Inc.*, 651 F.2d 1030, 1039 (5th Cir. 1981). The proposed class consists of purchasers EZCORP's publicly-traded securities during the Class Period. While the exact number of class members is presently unknown, EZCORP had more than 50 million outstanding Class A shares of common stock that were regularly traded on the NASDAQ Stock Market during the Class Period. ¶152. Moreover, the average weekly trading volume during the Class Period was approximately 2.7 million shares. Expert Report of Chad Coffman, CFA ("Coffman Report")[5], at ¶26. These facts establish numerosity.

### B.      Commonality Is Established

Rule 23(a)(2) is satisfied when "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This "commonality" threshold is not high. *Simms v. Jones*, 296 F.R.D. 485, 497 (N.D. Tex. 2013); *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 625 (5th Cir. 1999); *Forbush v. J.C. Penney Co.*, 994 F.2d 1101, 1106 (5th Cir.1993). Commonality is satisfied "when there is at least one issue, the resolution of which will affect all or a significant number of the putative class members." *Lightbourn v. Cnty. of El Paso*, 118 F.3d 421, 426 (5th Cir. 1997); *Simms*, 296 F.R.D. at 497 ("Even a single common question of law or fact can suffice"). In securities fraud cases, commonality is satisfied when claims are based upon "[d]efendants['] . . . uniform misrepresentations to the investing public in [company] filings with the SEC and in press releases; [and] these material misrepresentations and omissions artificially inflated the market price of [company] securities, injuring each class member who purchased the artificially priced [company] securities." *In re Elec. Data Sys. Corp. Sec. Litig.*, 226 F.R.D. 559,

---

[5] The Coffman Report is attached as Exhibit A to the Declaration of Joe Kendall ("Kendall Decl."), which is filed concurrently herewith.

564 (S.D. Tex. 2005).

Here, Defendants made uniform misrepresentations and omissions to the Class concerning the accuracy of EZCORP's publicly reported financial results during the class period. Common questions include:

- whether Defendants' statements or omissions violated the Exchange Act;

- whether Defendants' statements and omissions were material and misleading;

- whether and to what extent the market price of EZCORP's Class A shares were artificially inflated during the Class Period due to Defendants' misrepresentations and omissions;

- whether Defendants acted with scienter; and

- whether the members of the Class have sustained damages as a result of the alleged misconduct, and, if so, the proper measure thereof.

Accordingly, commonality is readily established. *In re Arthrocare Corp. Sec. Litig.*, A-08-CA-574-SS, 2011 WL 13175766, at *7 (W.D. Tex. Aug. 30, 2011).

### C.     Typicality Is Established

Rule 23(a)(3) is satisfied when the claims of the representative parties are "typical" of those of the class. Fed. R. Civ. P. 23(a)(3). "The test for typicality, like the test for commonality, is not demanding." *Lightbourn*, 118 F.3d at 426.[6] The typicality analysis "focuses on the similarity between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent." *In re Dell Inc.*, A-06-CA-726-SS, 2010 WL 2371834, at *4 (W.D. Tex. June 11, 2010) *aff'd, appeal dism'd sub nom. Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632 (5th Cir. 2012) quoting *Mullen*, 186 F.3d at 625. "Typicality is satisfied when the named plaintiffs' claims for relief arise from the same common nucleus of operative

---

[6] The Supreme Court has recognized, the "commonality and typicality requirements of Rule 23(a) tend to merge." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982).

facts as the claims of absent class members. *Id.*[7] "If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality.'" *James*, 254 F.3d at 571.

Here, Plaintiff's claims and legal theories are typical of the Class. As with the other members of the Class, Plaintiff's claims are based on the alleged inflation of the price of EZCORP Class A shares based on Defendants' material misrepresentations and omissions. Therefore, the typicality requirement is satisfied. *Dynegy*, 226 F.R.D. at 287-88 (typicality satisfied based on defendants' "conduct that would have injured all members of the putative class").

### D.     Adequacy Is Established

Rule 23(a) requires that "the class representatives. . . fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The relevant factors are the 'zeal and competence' of counsel and the willingness and ability of the plaintiff to take an active role in controlling the litigation." *KB Partners I, L.P. v. Barbier*, A-11-CA-1034-SS, 2013 WL 2443217, at *11 (W.D. Tex. June 4, 2013) (citing cases). Both factors are met here.

The central purpose of the inquiry regarding the adequacy of a proposed class representative is whether they are "part of the class and possess the same interest and suffer the same injury as the class members" and whether they have any interests that are antagonistic to the rest of the class. *In re Deepwater Horizon*, 785 F.3d 1003, 1015 (5th Cir. 2015) (quoting *Amchem Prods. v. Windsor*, 521 U.S. 591, 625 (1997). Here, the interests of Plaintiff are entirely aligned with those of the class. His claims are predicated on the same wrongful conduct that

---

[7] *See also Ramirez v. J.C. Penney Corp., Inc.*, 6:14-CV-601, 2017 WL 6462355, at *2 (E.D. Tex. Nov. 30, 2017), *report and recommendation adopted*, 2017 WL 6453012 (E.D. Tex. Dec. 18, 2017).

gives rise to the claims of the Class, *i.e.* his purchase of EZCORP stock at prices artificially inflated by Defendants' false and misleading statements. Moreover, Plaintiff has no interests that are in conflict with the rest of the Class. Just as the members of the Class he seeks to represent, Plaintiff has a strong interest in proving that the alleged statements were material, made with scienter, and caused damages to investors of EZCORP during the class period.

Plaintiff has also demonstrated a commitment to vigorously prosecuting this action on behalf of absent Class members. Plaintiff has overseen this case since its inception, resulting in (i) his appointment as Plaintiff; (ii) the drafting of two comprehensive amended complaints and briefing on two motions to dismiss those complaint, (iii) the defeat (in part) of Defendants' second motion to dismiss; and (iv) the instant motion to serve as Class Representative. Additionally, Plaintiff has made himself available for deposition (scheduled to occur on February 9, 2018), has produced documents, and has responded to discovery requests. Plaintiff is therefore adequate. *See, e.g.*, *Buettgen v. Harless*, 3:09-CV-1049-K, 2011 WL 1938130, at *5 (N.D. Tex. May 19, 2011).

Lead Counsel have extensive experience in the field of securities litigation, and their vigorous pursuit of the Class's interests has already been demonstrated in its advancement of the Class's claims before this Court. *See* Kendall Decl., Exs. B & C (Firm résumés of GPM & B&L). For these reasons, and because Lead Counsel have devoted substantial time and resources to the litigation,[8] and will continue to do so, Lead Counsel also satisfies the considerations of

---

[8] Lead Counsel have performed substantial work and committed substantial resources litigating this action, including defeating a motion to dismiss, drafting two substantial amended complaints, conducting substantial discovery, retaining relevant experts, and drafting the instant motion.

Rule 23(g) and should be appointed Class Counsel.[9]

### III.   The Requirements Of Rule 23(b)(3), Predominance and Superiority, Are Satisfied

#### A.   Common Questions of Law and Fact Predominate

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. "[T]he predominance requirement is met if the plaintiff can establish that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, . . . predominate over those issues that are subject only to individualized proof." *Brown v. Kelly*, 609 F.3d 467, 483 (2d Cir. 2010); *Erica P. John Fund, Inc. v. Halliburton Co.*, 718 F.3d 423, 431 (5th Cir. 2013) (predominance inquiry asks "not whether the plaintiffs will fail or succeed, but whether they will fail or succeed together.") *vacated on other grounds*, 134 S. Ct. 2398 (2014).

"Predominance is a test readily met in certain cases alleging securities fraud." *Amchem*, 521 U.S. at 625. In cases under §10(b) of the Exchange Act and SEC Rule 10b-5, the elements of falsity, materiality, scienter, and loss causation are subject to class-wide proof.[10] Therefore, "[w]hether common questions of law or fact predominate in a securities fraud action often turns on the element of reliance." *See Halliburton I*, 563 U.S. at 810. Here, reliance may be presumed class-wide pursuant to the fraud-on-the-market presumption under *Basic*, 485 U.S. at 224.

#### B.   Plaintiffs Are Entitled to a Presumption of Reliance Under *Basic*

Pursuant to the *Basic* fraud-on-the-market doctrine, a proposed class representative may:

---

[9] *Buettgen*, 2011 WL 1938130, at *10 (appointing firm as class counsel where it "has substantial experience in class actions in general and securities class actions in particular. The firm has demonstrated its knowledge of securities law and its willingness to expend resources to properly pursue this action.").

[10] *See, e.g.*, *Amgen*, 133 S. Ct. at 1190 (materiality "is question common to all members of the class"); *Basic Inc. v. Levinson*, 485 U.S. 224, 241 (1988) (reliance); *Halliburton I*, 563 U.S. at 812 (loss causation); *Ludlow v. BP, P.L.C.*, 800 F.3d 674, 687 (5th Cir. 2015), cert. denied, 136 S. Ct. 1824 (2016) (damages).

satisfy the reliance element of the Rule 10b–5 cause of action by invoking a presumption that a public, material misrepresentation will distort the price of stock traded in an efficient market, and that anyone who purchases the stock at the market price may be considered to have done so in reliance on the misrepresentation.

*Halliburton Co. v. Erica P. John Fund, Inc. ("Halliburton II")*, 134 S. Ct. 2398, 2417 (2014). To invoke this presumption, a plaintiff must show: "(1) that the alleged misrepresentations were publicly known, (2) that they were material, (3) that the stock traded in an efficient market, and (4) that the plaintiff traded the stock between the time the misrepresentations were made and when the truth was revealed." *Id.* at 2408.

Here, three of the four elements are easily satisfied.  There is no dispute that EZCORP publicly revealed its materially overstated financial results during the class period, which were ultimately restated. A company only restates its financial results if the changes are material, *see also Amgen*, 133 S. Ct. at 1190 (materiality to be presumed at class certification), and Plaintiff purchased his EZCORP stock during the class period. Thus, the only element at issue can be that of market efficiency. The preponderance of the evidence, however, establishes that EZCORP's stock traded in an efficient market, and Plaintiff is therefore entitled to a presumption of reliance under *Basic*.

**(a)      Presumption of NASDAQ's Efficiency**

EZCORP's common stock is listed on NASDAQ and courts have found that if a stock is listed on NASDAQ, one of the largest stock exchanges in the world, then there is a rebuttable presumption that the stock trades in an efficient market. *E.g.*, *Todd v. STAAR Surgical Co.*, CV-14-05263-MWF-RZ, 2017 WL 821662, at *10 (C.D. Cal. Jan. 5, 2017) (stating that "there a presumption that stocks traded on the NASDAQ are efficient"); *Lumen v. Anderson*, 280 F.R.D. 451, 459 (W.D. Mo. 2012) ("It would be remarkable for a court to conclude NASDAQ is not an

efficient market—which is why securities traded on NASDAQ are often presumed to be traded on an efficient market.").[11]

At the very least, NASDAQ listing strongly supports finding market efficiency. *See W. Palm Beach Police Pension Fund v. DFC Glob. Corp.*, CV 13-6731, 2016 WL 4138613, at *12 (E.D. Pa. Aug. 4, 2016) (collecting cases); *In re Initial Public Offering Sec. Litig.*, 544 F. Supp. 2d 277, 296 n.133 (S.D.N.Y. 2008) ("the federal courts are unanimous in their agreement that a listing on the NASDAQ or a similar national market is a good indicator of efficiency"); *In re Accredo Health, Inc. Sec. Litig.*, 03-2216 DP, 2006 WL 1716910, at *8 (W.D. Tenn. Apr. 19, 2006) ("the overwhelming case authority holds that securities listed on the NASDAQ trade in an efficient market").

### (b)    Market Efficiency Factors

Neither the Supreme Court nor the Fifth Circuit has adopted a formal test for market efficiency. *Unger v. Amedisys, Inc.*, 401 F.3d 316, 324 (5th Cir. 2005). District courts in this Circuit and elsewhere, however, routinely consider the non-exhaustive factors derived from *Cammer v. Bloom*, 711 F. Supp. 1264 (D.N.J. 1989) and *Krogman v. Sterritt*, 202 F.R.D. 467, 478 (N.D. Tex. 2001), in determining whether a security trades in an efficient market:

> (1) the average weekly trading volume expressed as a percentage of total outstanding shares; (2) the number of securities analysts following and reporting on the stock; (3) the extent to which market makers and arbitrageurs trade in the stock; (4) the company's eligibility to file SEC registration Form S-3 (as opposed to Form S-1 or S-2); (5) the existence of empirical facts "showing a cause and effect relationship between unexpected corporate events or financial releases and an immediate response in the stock price"; (6) the company's market capitalization; (7) the bid-ask spread for stock sales; and (8) float, the stock's trading volume without counting insider-owned stock.

---

[11] See also *Hodges v. Akeena Solar, Inc.*, 274 F.R.D. 259, 269 (N.D. Cal. 2011); *In re HealthSouth Corp. Sec. Litig.*, 257 F.R.D. 260, 281 (N.D. Ala. 2009).

*Unger*, 401 F.3d at 323 (citing *Cammer*, 711 F. Supp. at 1286-87, *Krogman*, 202 F.R.D. at 478).

Here, each factor demonstrates that EZCORP stock traded in an efficient market.

### (i)      EZCORP Stock's High Weekly Trading Volume

During the Class Period, EZCORP common stock had an average weekly trading volume

of 2.7 million shares, which translated to an average weekly turnover of 5.23% of the

outstanding shares available for trade. Coffman Report ¶29.[12] That turnover rate is more than

double the 2% threshold set by *Cammer* as giving rise to a "strong presumption" of market

efficiency. *See Cammer*, 711 F. Supp. 2d at 1286; *Lehocky v. Tidel Techs., Inc.*, 220 F.R.D. 491,

508 (S.D. Tex. 2004) ("there is a substantial presumption of an efficient market if the securities'

average weekly trading volume is 1% or more of the total outstanding shares and an even greater

presumption of market efficiency if the percentage is 2%."). Accordingly, EZCORP's weekly

trading volume supports a strong presumption that its common stock traded in an efficient

market.

### (ii)      Sufficient Financial Analysts and Reports

Substantial analyst coverage of a security "supports a finding of market efficiency

because it permits an inference that financial statements relating to a security are closely watched

by investment professionals, who in turn inject their views on the company and the security into

the market." *In re Winstar Commc'ns Sec. Litig.*, 290 F.R.D. 437, 446 (S.D.N.Y. 2013). Courts

also consider the extent of analyst coverage in connection with related factors, including the

---

[12] Trading volume can also be measured by considered annualized turnover velocity, which is
essentially this factor expressed in dollar terms. Coffman Report ¶30. Under this measurement,
EZCORP's annualized turnover velocity ratio was 255.16%, compared with the NYSE and
NASDAQ average of 112.75% for the Class Period. Thus, EZCORP stock had an average
annualized turnover that was substantially higher than the average stock trading on the NYSE
and NASDAQ, further supporting that it traded in an efficient market. *Id.*

amount of news coverage on a company and the degree of institutional ownership.[13]

Here, eight analyst firms published reports on EZCORP during the Class Period, issuing at least 79 reports on the Company during that timeframe. These firms included major firms such as Jefferies, Stephens, and Wells Fargo. Coffman Report ¶34. In this case, the level of analyst coverage surpasses the minimum threshold under *Cammer* and is well in line with the level of coverage found by other courts to support a finding of efficiency. *See, e.g.*, *Cammer*, 711 F. Supp. at 1283 n.30 (publication of 15 research reports by an undisclosed number of analysts over roughly one year period supported efficiency); *In re DVI Inc. Sec. Litig.*, 249 F.R.D. 196, 209-10 (E.D. Penn. 2008) (three analysts issuing more than 80 reports supported efficiency); *In re Nature's Sunshine Prod's., Sec. Litig.*, 251 F.R.D. 656, 662-63 (D. Utah 2008) (four analysts supported efficiency).

Information about EZCORP was also disseminated to the market through a variety of other means, including buy-side analysis by major institutions,[14] news articles,[15] press releases, SEC filings, public investor presentations, and conference calls attended by major analyst firms. *See* Coffman Report ¶¶34-37. These facts further support the conclusion that EZCORP's financial performance was "closely watched by investment professionals," whose views were

---

[13] *E.g.*, *In re Xcelera.com Sec. Litig.*, 430 F.3d 503, 514-15 (1st Cir. 2005) (affirming district court's determination of market efficiency, where only one analyst followed the company's stock and issued only one report during a 16 month class period, but information about the company was widely distributed through other sources, including news articles, press releases, and SEC filings, and institutional investors invested in the stock); *Todd*, 2017 WL 821662, at *7 (ownership of company's stock by major institutions bolstered determination that efficiency was indicated by second *Cammer* factor).

[14] At least 292 major institutions owned EZCORP stock during the Class Period. Coffman Report ¶72. This implies that significant buy-side analysis was likely available to institutional investors and bolsters the conclusion that EZCORP's stock traded in an efficient market. *See id.*; *Todd*, 2017 WL 821662, at *7 (finding of efficiency strengthened where 122 major institutions owned company's stock during class period).

[15] Over 806 articles were published about EZCORP during the Class Period. Coffman Report ¶36.

rapidly incorporated into the stock price. *Winstar*, 290 F.R.D. at 446.

### (iii)    The Number of Market Makers for EZCORP Stock

"The existence of market makers and arbitrageurs would ensure completion of the market mechanism; these individuals would react swiftly to company news and reported financial results by buying or selling stock and driving it to a changed price level." *Cammer*, 711 F. Supp. at 1286-87. NASDAQ is a modern market that uses a centralized computer system to match orders and to provide quotes for the stocks that it lists on a continuous and public basis. Markets with such characteristics are often assumed to be efficient, and the NASDAQ is in fact one of the largest and most liquid markets in the world. Coffman Decl. ¶¶41-42. In fact, Courts have found the fact that a security trades on the NASDAQ is in itself sufficient to satisfy this factor.[16] But even setting that aside, there were 97 market makers for EZCORP stock. Coffman Report ¶42. That number more than exceeds the eleven market makers the *Cammer* court found to be sufficient.[17] Therefore, the third *Cammer* factor supports efficiency.

### (iv)    EZCORP Was Eligible to File Form S-3s

Eligibility for S-3 registration with the SEC is an indicator of market efficiency, because it is associated with other characteristics that correlate with efficiency, including size, transparency, and the availability of relevant financial information. *See Cammer*, 711 F. Supp. at

---

[16] *DVI, Inc.*, 639 F.3d at 634 ("the listing of a security on a major exchange such as the NYSE or the NASDAQ weighs in favor of a finding of market efficiency"), *abrogated on other grounds by Amgen*, 133 S. Ct. at 1184; *Carpenters Pension Trust Fund of St. Louis v. Barclays PLC*, 310 F.R.D. 69, 81 (S.D.N.Y. 2015) (trading of a stock on the NYSE or NASDAQ is a "good indicator of efficiency"); *Smilovits v. First Solar, Inc.*, 295 F.R.D. 423, 431 (D. Ariz. 2013) ("[T]he Court concludes that the trading of First Solar stock on NASDAQ--a major, well-developed stock exchange--weighs in favor of finding market efficiency.").

[17] *See Cammer*, 711 F. Supp. at 1283 n.30 (noting stock at issue had eleven market makers); *see also id.* at 1293 ("'Ten market makers for a security would justify a substantial presumption that the market for the security is an efficient one; five market makers would justify a more modest presumption.'") (quoting Bromberg & Lowenfels, 4 *Securities Fraud and Commodities Fraud*, § 8.6 (Aug. 1988)).

1284-85; *Enron*, 529 F. Supp. 2d at 693 n.72 ("Generally speaking it is the largest and most well-known companies which register equity securities on Form S-3"); Coffman Report ¶¶44-45. In order to be eligible for an S-3 registration, a company must be "seasoned," *i.e.*, it must have filed Exchange Act reports with the SEC for a specified length of time, and it must meet a certain minimum threshold for public float. *See Cammer*, 711 F. Supp. at 1284-85, Coffman Report ¶¶44-45. EZCORP met the important eligibility criteria for filing Form S-3 and did in fact file Form S-3s and Form S-3 ASRs[18] before and during the Class Period.

### (v)   EZCORP's Stock Price Reacted to New, Company-Specific Information During the Class Period

That the price of a security regularly reacts to news about the issuer is strong evidence of an efficient market. *E.g.*, *Cammer*, 711 F. Supp. at 1291. "[O]ne of the most convincing ways to demonstrate [market] efficiency would be to illustrate, over time, a cause and effect relationship between company disclosures and resulting movements in stock price." *Id.* at 1287.

Here, the event study conducted by Mr. Coffman demonstrates that EZCORP's common stock reacted rapidly to new and unexpected information. Coffman Report ¶¶46-65.[19] Mr. Coffman's event study determined whether EZCORP's stock reacted to earnings announcements in a manner significantly different from how the stock moved on days with no EZCORP-related news. *Id.* at. 49. Mr. Coffman performed the event study through the use of a regression model to observe the relationship between the market price of EZCORP stock and both a market index and an index of EZCORP's peers for both days on which there was EZCORP specific news and days for which there was no EZCORP specific news. Coffman Report ¶¶50-65. The event study

---

[18] A Form S-3 ASR is a type of Form S-3, but only "well-known seasoned issuers" are eligible to file S-3 ASRs. Coffman Report ¶45.

[19] *Lehocky*, 220 F.R.D. at 507 (event study was "sufficient to demonstrate, for class certification purposes, that a cause and effect relationship between company-specific announcements and stock price may exist").

analysis demonstrates a clear cause-and-effect relationship between new material news concerning EZCORP and change in the market price of EZCORP common stock, and thereby satisfies this factor. *Id.* at ¶¶60-65; *see In re NII Holdings, Inc. Sec. Litig.*, 311 F.R.D. 401, 413 (E.D. Va. 2015) (agreeing with Mr. Coffman's similar analysis of the fifth Cammer factor over objection and competing expert analysis).

### (vi)    EZCORP's Large Market Capitalization

"Market capitalization, calculated as the number of shares multiplied by the prevailing share price, may be an indicator of market efficiency because there is a greater incentive for stock purchasers to invest in more highly capitalized corporations." *Krogman*, 202 F.R.D. at 478. During the Class Period, the aggregate market value of EZCORP's common stock averaged $501.4 million, which put it between the 35th and 47th percentile of the combined NYSE and NASDAQ markets for the applicable quarters during the Class Period. This meant that EZCORP stock had a higher market capitalization than at least 42% of the firms on the combined NYSE and NASDAQ exchanges. Coffman Report ¶68. EZCORP's market capitalization was sufficiently large to attract analyst and news coverage, and gain the attention of greater numbers of investors, all of which further promotes market efficiency. Coffman Report ¶¶66-69; *McIntire v. China MediaExpress Holdings, Inc.*, 38 F. Supp. 3d 415, 433 (S.D.N.Y. 2014) (market capitalization from $292 million to $585 million favored finding an efficient market).

### (vii)    EZCORP Had a Narrow Bid-Ask Spread

Courts have found that evidence of a small spread between bid and ask prices supports market efficiency.[20] *E.g.*, *Krogman*, 202 F.R.D. at 474,478. During the Class Period, the time-

---

[20] The bid-ask spread, which is the difference between the price at which market makers are offering to buy/sell the security. The bid-ask spread will tend to be narrow for actively traded securities where information is readily available. Moreover, a narrow bid-ask spread makes trading in the security less costly for investors. Coffman Report. ¶70.

weighted average percentage bid-ask spread for EZCORP common stock in each month was between 0.0876% and 0.3323%, well below the average bid-ask spread of a random sample of 100 other stocks trading on the NYSE and NASDAQ in August 2015 (the full month during the Class Period when EZCORP had the largest percentage bid-ask spread). Coffman Report ¶ 71.

### (viii)   Large Institutional Ownership

Courts look to the percentage of institutional investors holding a stock, because they "facilitate[] the efficiency of the market." *In re Alstom SA Sec. Litig.*, 253 F.R.D. 266, 280 (S.D.N.Y. 2008). During the Class Period, 292 institutions owned EZCORP common stock, holding, on average, over 85.4% of the public float. Coffman Report ¶72. Accordingly, the public float and institutional ownership of EZCORP common stock supports a finding of market efficiency. *See Tatz v. Nanophase Tech. Corp.*, 01 C 8440, 2003 WL 21372471, at *7 (N.D. Ill. 2003) (institutional ownership of 11-13% supported market efficiency); *see also McIntire*, 38 F. Supp. 3d at 433 (finding that a public float of only 31 to 43 percent supported a finding of efficiency).

### (ix)   EZCORP Stock Was Not Autocorrelated

"If new information about a company is incorporated slowly into the price of a security, then the security will exhibit autocorrelation, suggesting an inefficient market." *DVI Inc.*, 249 F.R.D. at 213. Here, the autocorrelation coefficient during the Class Period was not statistically significant at the 95% confidence level, meaning there is no evidence of autocorrelation – further supporting market efficiency. Coffman Report ¶¶73-76.

### (x)   There Was Robust Trading of EZCORP Options

Options trading is associated with a decrease in bid-ask spread and increase in quoted depth, trading volume, trading frequency, and transaction size, which can improve the efficiency of the market for the underlying security. Coffman Report ¶77. There were 68,334 EZCORP

common stock put contracts and 52,640 EZCORP call contracts that were traded during the Class Period, further supporting that EZCORP traded in an efficient market. *Id.* at Ex. 1.

### (xi)   All Factors Support Market Efficiency

In sum, each of the above factors supports a finding that EZCORP stock was efficient throughout the Class Period. Accordingly, the members of the Class are entitled to a presumption that they relied upon each of the false and misleading statements and omissions at issue. *E.g.*, *Basic*, 485 U.S. at 247. Thus, there is no requirement for individual proof of reliance. Common issues will predominate, and this action properly should proceed as a class. *Id.*

### C.   Potential Individual Questions of Damages Do Not Predominate

Courts routinely find that damages in securities cases present common questions because they can be calculated by measuring the price impact of company-specific information alleged to be a corrective disclosure on a class-wide basis. *Ludlow*, 800 F.3d at 683-85 (approving Mr. Coffman's damages model in a securities class action); *see In re Barrick Gold Sec. Litig.*, 314 F.R.D. 91, 106 (S.D.N.Y. 2016) (finding that damages issues did not defeat predominance because calculation of damages called for the application of a damages model across the entire class).[21] Here, damages can be readily calculated on a class-wide basis in this action using the same kind of generally accepted event study methodology. Coffman Report ¶¶78-79. Using such an event study, the artificial inflation caused by false statements and omissions can be measured on a class-wide basis by analyzing the change in the stock price caused by a corrective disclosure. *Id.* at ¶79. Once the daily levels of price inflation have been calculated throughout the Class Period, a Class member's actual trading activity in the security can be used to

---

[21] *See also Arthrocare*, 2011 WL 13175766, at *8 ("Although class members will have to separately establish how much ArthroCare stock they owned, when they owned it, and the damages they suffered, the common questions identified above can be fairly said to predominate over the individual questions.").

mechanically calculate damages on an individual basis. *Id.*; *In re First RepublicBank Sec. Litig.*, CIV. A. 3-88-0641-H, 1989 WL 108795, at *17 (N.D. Tex. Aug. 1, 1989) ("Differences among class members' damages is inherent in securities litigation, but do not render individual questions predominate nor defeat class action treatment."). Since this methodology is consistent with the class-wide theory of liability[22] and allows class-wide damages measurement, common issues predominate.

### D.      The Same Common Issues Predominate as To The § 20(a) Claims

Plaintiff's showing above that the § 10(b) claim meets the reliance presumption likewise shows that Plaintiff's claim under § 20(a) is also satisfied. *In re Merck & Co., Inc. Sec., Deriv. & "ERISA" Litig.*, CIV.A. 05-1151 SRC, 2013 WL 396117, at *13 (D.N.J. Jan. 30, 2013) (finding that the same predominance analysis applies to § 20(a) claims as for Rule 10b-5 violations); *see also In re Dynergy, Inc. Sec. Litig.*, 226 F.R.D. 263, 286, n. 69 (S.D. Tex. 2005).

### E.      A Class Action Is Superior to Other Available Methods for The Fair and Efficient Adjudication of This Action

A class action is the superior method for resolving the claims at issue because it will provide the most fair and efficient method of adjudication. Courts in this Circuit recognize the efficiency of the class action device for redressing injury to large groups of individuals harmed by a common set of operative facts. *See, e.g.*, *Keasler v. Natural Gas Pipeline Co.*, 84 F.R.D. 364, 368 (E.D. Tex. 1979) ("It is desirable that securities fraud cases involving a large number of

---

[22] Plaintiff's theory of liability is that Defendants' materially false and misleading statements and omissions artificially inflated the price of EZCORP's common stock, that Class members then relied on the inflated market price in purchasing that stock and were then damaged when the truth was disclosed as the artificial stock price inflation dissipated.

plaintiffs with small individual claims proceed as class actions."); *Longden v. Sunderman*, 123 F.R.D. 547, 551 (N.D. Tex. 1988).[23]

> In considering superiority under Rule 23(b)(3), courts analyze four factors:
>
> A) the class members' interests in individually controlling the prosecution . . . of separate actions; B) the extent and nature of any litigation concerning the controversy already begun by . . . class members; C) the desirability…of concentrating the litigation of the claims in the particular forum; and D) the likely difficulties to be encountered in managing a class action.

Fed. R. Civ. P. 23(b)(3). These factors all weigh in favor of class certification in this case.

There is no indication that members of the proposed Class would prefer to prosecute their claims individually, and Lead Counsel are unaware of any other case involving the same claims. The fraud here, like "[m]ost violations of the federal securities laws . . . inflict economic injury on large numbers of geographically dispersed persons such that the cost of pursuing individual litigation to seek recovery is often not feasible." *In re Blech Sec. Litig.*, 187 F.R.D. 97, 107 (S.D.N.Y. 1999); *Buettgen*, 2011 WL 1938130 at *9. Finally, securities class actions, like here, generally raise no unusual manageability issues. *See, e.g.*, *id.* ("The same types and methods of proof would be used in a case with a single plaintiff or one with hundreds of plaintiffs."). Thus, a class action is the superior method for the efficient adjudication of the Class's claims.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant his motion.

---

[23] Superiority is also typically found in cases in which each individual class member's interest in the litigation is less than the anticipated cost of litigating individually. *Henry v. Cash Today, Inc.*, 199 F.R.D. 566, 573 (S.D. Tex. 2000). The Supreme Court has recognized that "[c]lass actions . . . permit the plaintiffs to pool claims which would be uneconomical to litigate individually. . . . [M]ost of the plaintiffs would have no realistic day in court if a class action were not available." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985).

Dated: January 31, 2018        **KENDALL LAW GROUP, PLLC**

By: */s/ Joe Kendall*         
Joe Kendall
State Bar No. 11260700
Jamie J. McKey
State Bar No. 24045262
3232 McKinney Avenue, Suite 700
Dallas, Texas 75204
Telephone: (214) 744-3000
Facsimile: (214) 744-3015
jkendall@kendalllawgroup.com
jmckey@kendalllawgroup.com

*Liaison Counsel for the Class*

**BLOCK & LEVITON LLP**
Jeffrey C. Block (pro hac vice)
Jacob A. Walker (pro hac vice)
155 Federal Street, Suite 400
Boston, Massachusetts 02110
Telephone: (617) 398-5600
Facsimile: (617) 507-6020
Jeff@blockesq.com
Jake@blockesq.com

**GLANCY PRONGAY & MURRAY LLP**
Lionel Z. Glancy
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile:  (310) 201-9160
lglancy@glancylaw.com

*Co-Lead Counsel for the Class*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was served upon its filing via this Court's CM/ECF system on this 31st day of January, 2018 to all counsel of record.

*/s/ Jamie J. McKey*         
JAMIE J. MCKEY