# Exhibit 6

Page 1

UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF TEXAS

* * * * * * * * * * * * *

In Re:                        *        Master File

EZCORP, Inc.                  *   No. 1:15-cv-00608-SS

Securities Litigation         *

* * * * * * * * * * * * *

Videotaped Deposition of JOHN ROONEY

Friday, February 9, 2018

9:29 a.m.

Block & Leviton, LLP

155 Federal Street - 4th Floor

Boston, Massachusetts 02110

----------- J. Edward Varallo, RMR, CRR ----------

Registered Professional Reporter

Attorneys for Plaintiff John Rooney and the class:

Jeffrey C. Block, Esq.

Jacob A. Walker, Esq.

Block & Leviton, LLP

155 Federal Street - 4th Floor

Boston, Massachusetts 02110

jeff@blockesq.com; jake@blockesq.com

Attorneys for Defendant Mark E. Kuchenrither:

Alithea Z. Sullivan, Esq.

Ewell Brown Blanke & Knight LLP

One Congress Plaza - 28th Floor

111 Congress Avenue

Austin, Texas 78701

asullivan@ebbklaw.com

Attorneys for Defendant EZCORP:

Stephen S. Gilstrap, Esq.

Vinson & Elkins LLP

3700 Trammell Crow Center

2001 Ross Avenue

Dallas, Texas 75201-2975

sgilstrap@velaw.com

Videographer:

Patrick Blaskopf, CLVS, Video Specialist

Page 9

is our first deposition, so I assume that all objections are reserved except as to form.

MR. GILSTRAP:  That's my understanding.

MR. WALKER:  Great, thanks.

EXAMINATION

BY MR. GILSTRAP:

Q.    Good morning, Mr. Rooney.

A.    Good morning.

Q.    Will you please state your name for the record.

A.    My name is John Rooney.

Q.    And where do you currently live, Mr. Rooney?

A.    I live in Dublin City, Ireland.

Q.    Are you an Irish citizen?

A.    I am, yes.

Q.    Have you lived in Dublin your entire life?

A.    Pretty much all but maybe two, two years in Manchester in England and two years in Sydney, Australia.

Q.    You've never lived in the U.S.?

A.    Apart from the J1 college visa for a few months in New York, yeah, back in 1988, for about three months.

Q.    Since you were appointed lead plaintiff, what actions have you taken as a lead plaintiff?

A.    Well, merely just consulting with Block & Leviton, just typically by email or the odd phone call.  So it's really more discussions.  There haven't been actions that they have -- They've kept me updated on where things are, about the judge giving the go-ahead to proceed with an exchange, for example.  So I've had a discussion through a series of emails just on that.  And then at a certain point around about last fall, I'd say, Block & Leviton said, look, the next stage might require you to come over to, well, the United States, perhaps, possibly, whatever, would you be comfortable with that?  So I suppose the conversations would have then become a little bit more frequent after that.

Q.    Have you done anything else other than confer with your counsel as a lead plaintiff?

A.    No.

Q.    And I'm not asking for the substance of those conversations with you and Block & Leviton, but roughly how often are you in communication with them?

A.    It's mostly by email and I would say, well, in the last two weeks, probably every second

day.  But over the course of the last six months, perhaps a total of maybe eighteen, twenty emails. But six of those could be in a day.  You know?  Just confirming flight times and stuff.

Q.    Sure.

Did you review the complaint, your complaint in this lawsuit, before it was filed?

A.    Yes.

Q.    Did you review any briefing in this lawsuit before it was filed?

A.    Sorry.  I'm not clear what you mean by that, what you mean by a briefing.

Q.    Do you understand that there was briefing on the motion to dismiss in this lawsuit?

A.    But what do you mean by briefing? Sorry.

Q.    Filings with the court.

A.    Yeah?

Q.    Have you reviewed any filings with the court as a lead plaintiff?

A.    Yes, yes, yeah.

Q.    Which filings?

A.    Oh, it was -- Gosh, up to -- I don't know -- last -- Trying to think if it was....  Was it March last year, something like that, when -- ?

Was it March when -- ?

MR. WALKER:  We can't help you answer. Again, if you don't know the answer, you can say "I don't know."  It's fine.

THE WITNESS:  Okay, sure, right.

A.      Yeah, I couldn't be sure which precise filings because, to be honest, in most of these instances of correspondence I really just defer to my legal advisers on this and leave that to them. I'm not -- First of all, I'm not a resident of the States or understand necessarily the law and I'm not a lawyer anyway, so....  I sell propane.  So I just left it to them, so....

But they've just kept me in touch and then we have conversations about -- So in terms of at what stage I was approving something or not, I couldn't be sure, so I wouldn't like to give a precise date because I just couldn't be sure.

Q.      Okay.  Have you signed anything in your role as lead plaintiff?

A.      Yes, I have, yeah.

Q.      What have you signed?

A.      I've signed, gosh, first of all, obviously authorizing Block & Leviton to act in my behalf.  That was some time ago.  I would've signed

Q.    Did you have to ask for permission to get off from work to come to this deposition?

A.    I just took two days' annual leave. That was it.

Q.    How much annual leave do you get in your job?

A.    25 days.

Q.    Are there times, any specific time of year -- Strike that.  Are there any times of year where it's difficult for you to travel because of job responsibilities?

A.    Yeah, there would be.  In particular December-January would be our busiest months of the year, so I had to sort of delay this trip until this date at the earliest.  And then there would be other dates that are blocked in my diary from, I get a diary provided to me by DCC and there are meetings, it's business reviews, it's board meetings, it's health and safety review meetings, et cetera.  So they're all blocked into my diary at the beginning of each calendar year and they're not movable.  I work my holidays around them and everything.

Q.    Understood.  If the trial in this case was in December or January, would you be able to attend?

Page 24

A.    Where?  Well, how long would it be likely to last or -- ?

Q.    Just assume a week.

MR. WALKER:  Object to the form.

MR. GILSTRAP:  You can answer.

THE WITNESS:  Yeah, sure.

A.    Yeah, I could.  It would be -- It would be -- It could be tricky, you know, just because it's such a busy time of year.  It's the coldest months of the year, the biggest numbers are required for the budget for the new financial year, but given sufficient notice, yeah, I'd just put it in.  I mean, I always take Christmas week off, for example, so I could still do that.  You know?  Everybody else does.

Q.    What if the trial was a month in this case?

MR. WALKER:  Object to form.

BY MR. GILSTRAP:

Q.    Could you attend if it was a monthlong trial?

A.    Yeah, I wouldn't -- I wouldn't like to say definitively one way or the other.  It just depends on so much, when it's going to be.  I'd have to -- You know, it's a paid leave for me from work.

You know, there's so many things that I would just need to consider and understand before I could.... So I couldn't say definitively yes or no.  I just couldn't.

Q.    Would you need to get approval from Mr. Coven?

MR. WALKER:  Objection.  I'm not sure. There's an assumption embedded in all this that he would have to be present for the entire trial.  I mean, it's just, I don't understand what the --

MR. GILSTRAP:  I'm just asking if he would be available.

A.    Well, yeah, I've made myself available for this so, yeah, I would.  Well, I just can't say definitively that I'll be there, because I don't know when it's going to be and how long it's going to be for, et cetera.

Q.    Okay.  Where did you work before you began working at Flogas?

A.    In a bread company called, they're just an Irish company called Johnston Mooney & O'Brien. I was the managing director there as well.  So they're a bread company, a bit like, oh, just normal slice pans, you know, found in shops, supermarkets.

Q.    What made you switch from a bread

Page 32

which would be, I think I had mentioned 5,000, in my head it's 5,000 euro, but it's probably just about under $6,000, euro being the currency that I use at home.

Q.      Right.  And so is it fair to say that you're representing your own interest in this lawsuit?

MR. WALKER:  Object to form.

A.      Yes, in one sense.  But would I be pursuing this on my own if this company -- ?  You know, perhaps not.  So when I heard there was a class action, I was quite happy to take the lead on it.  But, yeah, I mean, my objective is to recover any amount lost.

Q.      For yourself?

A.      Yes.

Q.      Who is the judge in this case?

A.      I can't --

MR. WALKER:  Object to form.

A.      Can't remember his name.

Q.      And do you --

A.      I saw it in one of the papers, but I can't remember now.

Q.      Sure.  And do you know where this lawsuit is pending?

A.      It's in Texas.  Isn't it in Austin?

Q.      It is in Austin.

A.      Yeah.

Q.      Why did you bring this lawsuit in Austin?

MR. WALKER:  Object to form.

A.      Sorry.  I didn't choose Austin, but that's where EZCORP are headquartered, so that's my understanding.  But I didn't choose Austin.

Q.      You didn't make the decision to file your complaint in Austin?

MR. WALKER:  Object to form.

A.      I consulted with my --

MR. WALKER:  I just instruct you not to discuss what you discussed with your attorneys.

THE WITNESS:  Yeah, sure, sure, okay.

BY MR. GILSTRAP:

Q.      Who are you suing in this lawsuit?

A.      Well, EZCORP, but I believe also their former CEO who was CEO at the time of the, well, at the time that I purchased the shares.

Q.      Do you remember that person's name?

A.      No.  If you said it I'd remember it, but I don't.

Q.      Do you think you ought to know the names

Page 34

of the people that you are suing?

MR. WALKER:  Object to form.  It's argumentative.

MR. GILSTRAP:  You can answer.

A.     No, because this is not a personal lawsuit; it's the company.  I remember the company. As far as I'm concerned, it's the company that I'm suing.  It's EZCORP.  I believe through law you have to name somebody.  Is that right?  I don't know. But that's beside the point as far as I'm concerned. This is not personal against me and the former CEO. This is I just want to recover my money from EZCORP.

Q.     But you understand that the former CEO is a defendant in this case?

MR. WALKER:  Object to form.

A.     Yes.

Q.     Have there been other defendants in this case?

MR. WALKER:  Object to form.

A.     I think is there one other former executive?  I think there's one other former executive.  Again, whose name I don't recall.

Q.     Is that other former executive still a defendant in this case?

MR. WALKER:  Object to form.

A.      I think so.

Q.      So you just testified that EZCORP is a defendant in this case.  Correct?

MR. WALKER:  Object to form.

A.      Yes.

Q.      What is EZCORP?

MR. WALKER:  Object to form.

A.      What is it?  They are a company that specialize in loans in the southern part of the United States and into Mexico and they, well, they sell loans, you know.

Q.      In your view, what actions has EZCORP taken that have violated the federal securities laws?

MR. WALKER:  Object to form and to the extent it calls for a legal conclusion as well.  And I would also instruct you not to discuss our conversations.  You can explain to the best of your understanding to the extent you have any.

A.      So say your question again, please?

Q.      Sure.

In your view, what actions has EZCORP taken that have violated the federal securities laws?

MR. WALKER:  Same objections.

Page 38

A.    I guess he was CEO at the time.  I'm CEO of a company; I'm responsible for everything to do with it.  Even if I don't cause a gas leak and there is a gas leak that injures people, I'm responsible.  It's what we get paid for.

Q.    Have you ever spoken with Mr. Kuchenrither?

A.    No.

Q.    Have you ever spoken to anyone at EZCORP?

A.    No.

Q.    Have you ever spoken to any former employees of EZCORP?

A.    No, never.

Q.    Are there any other named plaintiffs in this case besides you?

MR. WALKER:  Object to form.

A.    Yes, there's one other, and again I know I should remember it.  It's a she, a Chinese name, Wu, Wi, Wendy.  But I don't know, so....

Q.    And is that other named plaintiff still a plaintiff in this case?

MR. WALKER:  Object to form.

A.    Yes.

Q.    Mr. Rooney, do you know if there have

been any hearings before the court in this case?

A.    Yes.

Q.    Do you know what that hearing or those hearings were about?

A.    Yes, there were -- It's allowed this case to proceed for depositions to be taken after the last period.

Q.    What do you mean by it allowed this to proceed?

A.    That the judge approved, he thought there was enough in the case that would warrant the next stage, which is the stage we're at now.

Q.    Did you attend any hearings in this case?

A.    No.

Q.    To your knowledge, has this case ever been mediated before a mediator?

MR. WALKER:  Object to form.

A.    Not to my knowledge.

Q.    We talked a little bit about the restatement earlier.  What is your understanding as to the cause of EZCORP's restatement?

MR. WALKER:  Object to form.

A.    That's the -- Well, they had to restate the accounts based on the income that they derived

from loans that were -- that they had sold.  They just had to restate the income for a whole variety of reasons, delays in their payments or bad debts or just general valuations, so....

Q.    Do you know the reason why they had to restate?

MR. WALKER:  Object to form.  It's asked and answered.

A.    That was the -- That was my understanding.  So therefore the accounts that they had published, and that's the bit that I'm most concerned about, that I bought the shares on the basis of published accounts in quarter three, quarter four -- quarter two, quarter three of, say, 2014, and then when they announced in February or March of '15 that, oh, actually we have to restate those accounts, which immediately caused the stock price to fall.  That's -- That's my concern.

Q.    Do you know what the size of the restatement was?

MR. WALKER:  Object to form.

A.    No, I don't.  I know, well, it varied in one quarter from maybe -- I don't know -- it could be 8 to 10 percent up to 40 percent.  You know what? I actually don't know, but it was significant, I'd

Page 41

say, yeah.

Q.    Do you know if there was one reason for the restatement or multiple reasons?

MR. WALKER:  Object to form.

A.    My understanding is multiple reasons. But, again, I wasn't -- You know, my concern is not what were those reasons; it's just that it happened.

Q.    What are the dates of the purported class period?

MR. WALKER:  Object to form.

A.    I don't know.

Q.    Do you know if the purported class period dates have changed in this litigation?

MR. WALKER:  Object to form.

A.    I don't know.

Q.    Mr. Rooney, who is included in the class that you are seeking to certify?

MR. WALKER:  Object to form.  Another question that calls for a legal conclusion.

A.    I don't know.

Q.    Mr. Rooney, I'm handing you what's being marked as Exhibit 2.  Please take your time to look it over and let me know when you've had a chance to do that.

A.    To read all of it?

in a specific document?  Were they in a press release?

MR. WALKER:  Object to form.

A.   I can't recall.

Q.   You can't recall, okay.

In paragraph 3 it says that you are willing to serve as a representative party on behalf of the class in this action.  Did I read that correctly?

MR. WALKER:  Object to form.

A.   Yeah.

Q.   What are the duties of a class representative?

MR. WALKER:  Object to form.  You can answer to the extent you know.  It's another legal question.

A.   Yeah, I don't -- Well, this is one of them.  You know?  Come along just representing the class.  But in terms of the actual duties, I don't know.

Q.   Has anyone explained to you what the duties of a class representative are?

MR. WALKER:  Object to form.  To the extent that we have had a conversation, you shouldn't disclose the contents of our conversation.

THE WITNESS:  Yeah.

A.      I'm aware of the responsibilities and what's entailed, but you asked me about specific duties.  And, yeah, I'm aware of that, but, and I've discussed it with my advisers over the last few years.

Q.      Well, you just said you're aware of the responsibilities.  What are those responsibilities?

A.      Well, I'm the lead plaintiff.

Q.      And what are the responsibilities of a class representative?

MR. WALKER:  Object to form.

A.      For example, to give a deposition.

Q.      Anything else?

A.      I actually don't know because I'm not a lawyer.  I don't know, but....

Q.      So to your understanding giving a deposition is your only responsibility as a class representative?

MR. WALKER:  Object to form, misstates his testimony.

A.      No, there would be others, I'm sure.  But again I keep those -- Sorry.  I'm not sure about -- Can you say it again?  I don't know where you're going with this.

Page 47

Q.    So I believe you testified that one of your responsibilities as a class representative is to give a deposition like you're doing today.  Is that correct?

A.    Yeah, yeah.

Q.    Beyond giving a deposition today, what other responsibilities do you have as a class representative, in your view?

MR. WALKER:  Object to form, asked and answered.

A.    Yeah, I don't know.

Q.    So on this certification that we've been looking at, Exhibit 2, it shows, I believe, a chart of your transactions in EZCORP as of August 12, 2015.  Is that correct?

A.    Mm-hmm.

Q.    And so am I correct that on November 5, 2014, you purchased 1,000 shares of EZCORP common stock?

A.    Correct.

Q.    And am I correct that the price per share of that purchase was 10.89995?

A.    Correct.

Q.    Do you currently own those thousand shares of EZCORP stock that you purchased in

A.      Yes, I have, yeah.

Q.      And what is Deposition Exhibit 6?

MR. WALKER:  Object to form.  The document speaks for itself.  You can answer if you're able.

A.      It's the detail behind the -- It's the background and I suppose the arguments behind the case.

Q.      And on page 1 it states class action complaint.  Was this class action complaint filed on your behalf?

A.      Yes, it was.

Q.      And up in the top, what was the date that this document was filed?

MR. WALKER:  Objection.  The document speaks for itself.  You can answer if you're able to.

A.      I don't know the exact date and I don't see it.  Is it on it?  Oh, there it is.  14th of August, yep.

Q.      Of 2015?

A.      Of 2015, yes.

Q.      If I can direct your attention to page 36.

A.      Yep.

Page 68

Q.     Are you there?  This document was signed by Joe Kendall.  Who is Joe Kendall?

MR. WALKER:  Object to form, asked and answered.  You can answer if you know.

A.     I don't know.  I don't know.  Never met him.

Q.     Mr. Rooney, do you know if this complaint was the first complaint filed against EZCORP?

MR. WALKER:  Object to form.

A.     I don't know.

Q.     Did you review this complaint before it was filed?

MR. WALKER:  Object to form, asked and answered.

A.     Yes.

Q.     Do you remember when you reviewed it?

A.     No.

Q.     Did you offer any comments or edits on the complaint?  I'm not asking for the substance of those.

MR. WALKER:  I'm objecting, instructing you to not answer about our conversations.  You can answer yes or no, if you remember.

A.     No.

Page 76

what you want to waste your time on, go ahead, but

we're not going to sit here all day and just have

you reask question after question after question,

the same one.  Move on.

BY MR. GILSTRAP:

Q.    Mr. Rooney, I'm handing you what's being

marked as Deposition Exhibit 7.  (Pause)  Have you

had a chance to --

A.    Well, yeah, glance through it, but....

Let's see how we go.

Q.    Sure.  Have you seen Deposition Exhibit

7 before?

A.    Yes, I have.

Q.    Do you remember when the first time you

saw Deposition Exhibit 7 was?

MR. WALKER:  Object to form.

A.    No, I don't remember when I first saw

it, no.

Q.    Did you --

A.    I know when I last saw it:  last night.

Q.    Did you review Deposition Exhibit 7

before it was filed?

MR. WALKER:  Object to form.

A.    Yes, I did.

Q.    Did you provide any comments on

Page 77

Deposition Exhibit 7 before it was filed?  And, again, I'm not asking for the substance of those comments or any conversations between you and counsel.

MR. WALKER:  And I'll instruct you not to answer unless you can answer it with a yes or no. If you don't remember, you don't remember.

A.    I don't remember.

Q.    I would like to direct your attention to paragraph 1 on page 1 of Deposition Exhibit 7, which states "This is a securities class action on behalf of purchasers of EZCORP Class A common stock between November 6, 2012, and October 20, 2015, inclusive, the class period."  Did I read that correctly?

A.    Yes.

Q.    Was this the same class period as was alleged in your initial complaint?

MR. WALKER:  Objection.  The documents speak for themselves.  What's the point of asking him?  I mean, can he compare the documents?

BY MR. GILSTRAP:

Q.    Do you know?

A.    It's a different period.

Q.    And, again, I'm not asking you to reveal any conversations with counsel.  But do you have an

A.    I can't remember.

Q.    If I can direct your attention to page 24 of Deposition Exhibit 8, it states under Conclusion "Because plaintiffs failed to properly allege a violation of the federal securities laws, plaintiffs' claims against EZCORP and Kuchenrither are properly dismissed."  Did I read that correctly?

A.    Yes.

Q.    Were you aware that the claims in the amended complaint, Deposition Exhibit 7 that we just looked at, were dismissed?

MR. WALKER:  Object to form.

A.    I can't be sure.

Q.    But in looking at this document, you're aware of that fact now?

MR. WALKER:  Object to form.

A.    Well, not just now for the first time, no.  I was aware.  But I just can't be sure of when I was aware for sure, yeah, but I am aware.

Q.    Mr. Rooney, I'm handing you what's being marked as Deposition Exhibit 9.

MR. WALKER:  You're just getting rid of all your heavy paper before you fly back to Texas.

MR. GILSTRAP:  Exactly, exactly.

A.    (Pause)  Sure, okay, let's go again.

Page 81

Q.      Have you seen Deposition Exhibit Number 9 before today?

A.      Yes, I have.

Q.      Do you remember the first time you saw Deposition Exhibit 9?

A.      No.

Q.      Do you know if you saw Deposition Exhibit 9 before it was filed?

A.      I can't be sure, no, can't remember.

Q.      So am I correct that you're unsure whether you provided any comments or edits to Deposition Exhibit 9?  And again I'm not asking for the substance.

MR. WALKER:  Object to form, misstates his testimony, and that's right.  Well, just hold on a second.  (Pause)  Can you ask the question again?  It's very unclear.

MR. GILSTRAP:  Sure.  I'll take a step back.

BY MR. GILSTRAP:

Q.      So did I understand you correctly that you're not sure the first time you reviewed Deposition Exhibit 9?

A.      Correct, yeah, you understood me.

Q.      If I can direct your attention to page

stand?  Yeah.

Q.      That's correct, yes.

And in the response to interrogatory number 4 in kind of the middle of that paragraph, it states that "Plaintiff further states that all confidential witnesses relied upon in the complaint have already been disclosed in plaintiffs' initial disclosures pursuant to Rule 26 of the Federal Rules of Civil Procedure."  Do you see that?

A.      Yes.

Q.      Who are the confidential witnesses relied on in the complaint?

MR. WALKER:  Object to form.  First of all, the interrogatory is addressed not just to Mr. Rooney but to his counsel, if you read the substance of the interrogatory.  Second of all, if you understand, you can answer the question but you shouldn't reveal the conversations that we had in doing so.

BY MR. GILSTRAP:

Q.      I'm just asking, my question is, do you know who the confidential witnesses are in this litigation?

A.      I'm aware of one.  Would've been an auditor.  But there may be others that I'm not

Page 88

necessarily aware of.

Q.     Do you know the name of that auditor?

MR. WALKER:  Object to form.

A.     I can't remember.

Q.     Mr. Rooney, on the last page of Deposition Exhibit 11 is a verification.  Is that your signature?

A.     That's my signature, yes.

Q.     And you signed this on November 29, 2017.  Is that correct?

A.     That's correct, yeah.

Q.     Did you review these -- Did you review this document prior to November 29th of 2017?

A.     Yes.

Q.     How far before?  Do you recall?

A.     I, I can't recall.

Q.     Mr. Rooney, I'm handing you what's being marked as Deposition Exhibit 12.

MR. BLOCK:  How much longer do you plan to go?

MR. GILSTRAP:  I was planning to go maybe another five or ten minutes and then we could maybe take a lunch break, if that works.

MR. BLOCK:  Okay.

(Pause)

apply here as well.  I just can't be sure, so I don't know.

Q.    Mr. Rooney, can you describe the alleged misstatements that are remaining in this action?

MR. WALKER:  Object to form.

MR. BLOCK:  You've asked and answered this like five times.

MR. GILSTRAP:  You can answer.

THE WITNESS:  Say the question again?

BY MR. GILSTRAP:

Q.    Can you describe the alleged misstatements that are currently remaining in this action?

MR. WALKER:  Object to form.

A.    No, I can't describe it, no.  Describe means detailed description?  No, I can't do that.

Q.    Can you provide any detail?

A.    Well, I can go find it if you'd like.

Q.    I mean, can you provide any detail about the alleged misstatements that remain in this case?

MR. WALKER:  Object to form.  It's argumentative.  It's asked and answered.  We talked about this for half an hour this morning.

MR. BLOCK:  Are you asking him in addition to what he's already testified?  Because he

Page 112

COURT REPORTER'S CERTIFICATE

I, J. Edward Varallo, RMR, CRR, Registered Professional Reporter and Notary Public in the Commonwealth of Massachusetts (my commission expires 12/09/2022), hereby certify that the deposition of John Rooney taken on February 9, 2018, in the matter of In Re:  EZCORP, Inc. Securities Litigation, was recorded by me stenographically and transcribed; that before being sworn by me, the deponent provided satisfactory evidence of identification as required by Executive Order 455 (03-13) of the Governor.

I certify that the deposition transcript produced by me is true and accurate to the best of my ability.

I certify further that I am not counsel, attorney, or relative of any party litigant, and have no interest, financial or otherwise, in the outcome of this suit.

DATED:  2/16/2018                    J. Edward Varallo

**Page 113**

ACKNOWLEDGMENT OF DEPONENT

I, JOHN ROONEY, do hereby certify that I have read the foregoing transcript of my testimony taken on 2/9/18, and further certify that it is a true and accurate record of my testimony (with the exception of the corrections listed below):

Page    Line                    Correction

____|_____|_____|_____
____|_____|_____|_____
____|_____|_____|_____
____|_____|_____|_____
____|_____|_____|_____
____|_____|_____|_____
____|_____|_____|_____
____|_____|_____|_____
____|_____|_____|_____
____|_____|_____|_____
____|_____|_____|_____
____|_____|_____|_____

_____
JOHN ROONEY

SUBSCRIBED AND SWORN TO BEFORE ME THIS _____ DAY OF _____, 20___.

_____        _____
(NOTARY PUBLIC)             MY COMMISSION EXPIRES: