IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

JOHN ROONEY, Individually and on
Behalf of All Others Similarly Situated,
                Plaintiff,[1]

-vs-

EZCORP, INC. and MARK E.
KUCHENRITHER,
                Defendants.

CAUSE NO.:
A-15-CA-00608-SS

## ORDER

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Plaintiff John Rooney's Motion to File Third Amended Class Action Complaint [#84], Defendants EZCORP, Inc. (EZCORP) and Mark Kuchenrither (collectively, Defendants)' Response [#88-1] in opposition, and Plaintiff's Reply [#91-1] in support.[2] Having reviewed the documents, the arguments of the parties at the hearing, the governing law, and the file as a whole, the Court now enters the following opinion and orders.

### Background[3]

This is a securities fraud class action brought on behalf of all persons who purchased Class A common stock[4] of Defendant EZCORP—a company which provides "instant cash"

---

[1] Wu Winfred Huang has been removed from the case caption as he is no longer a plaintiff in this case. Order of Dec. 21, 2017 [#75].

[2] The Court GRANTS Plaintiff's motions to file under seal [#91, #98] as well as Defendants' motion to file under seal [#88].

[3] The following is taken from the allegations in Plaintiff's Second Amended Complaint [#47] except as otherwise indicated.

[4] EZCORP has two classes of common stock, Class A Non-Voting Common Stock, which is publicly traded on the NASDAQ, and Class B Voting Stock, all of which is beneficially owned by Phillip E. Cohen. Second Am. Compl. [#47] ¶ 33.

1

services like payday loans and pawn loans—between November 7, 2013 and October 20, 2015 (the Class Period). Lead Plaintiff John Rooney, on behalf of the plaintiff class, alleges that during the Class Period, Defendant Mark Kuchenrither, EZCORP's CFO, CEO, and the only individual defendant,[5] made material misrepresentations to shareholders in violation of §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 and SEC Rule 10b-5. Though this order assumes familiarity with Plaintiff's allegations, *see* Order of May 8, 2017 [#54], the Court briefly recounts the facts pertinent to this motion.

## I.    Alleged Accounting Failures

Between January 2012 and June 2014, EZCORP acquired a 94 percent ownership interest in Grupo Finmart. Grupo Finmart is a Mexican company which issues small consumer loans to Mexican governmental employees. The loans issued by Grupo Finmart are backed by payroll withholding agreements ("convenios") with Mexican employers, and under these agreements, interest and principal payments are collected by the employers through payroll deductions and then remitted to Grupo Finmart. Plaintiff alleges that throughout the Class Period, EZCORP's lack of internal controls over financial reporting gave rise to two primary accounting errors in connection with Grupo Finmart's loans.

First, Plaintiff alleges EZCORP failed to properly account for Grupo Finmart's non-performing payroll loans (Non-Performing Loans). Non-Performing Loans are "loans that were being carried as active loans but with respect to which Grupo Finmart was not currently receiving payments." Second Am. Compl. [#47] ¶ 99. Further, there are two types of Non-

---

[5] Kuchenrither has served in several executive positions for EZCORP from the time he was hired as Senior Vice President, Strategic Development in March 2010. Second. Am. Compl. [#47] ¶ 34. In October 2012, Kuchenrither assumed the role of CFO, and served as EZCORP's CFO until May 26, 2015. *Id.* ¶¶ 34, 149. Kuchenrither also served as EZCORP's CEO from July 18, 2014, to February 1, 2015, and as a director from August 12, 2014, to February 3, 2015. *Id.* ¶ 34. Moreover, Kuchenrither was appointed as a member of both EZCORP's and Grupo Finmart's Board of Directors during the Class Period. *Id.* ¶ 5.

2

Performing Loans: in-payroll loans and out-of-payroll loans. Out-of-payroll loans are outstanding loans from customers who are no longer employed. "Under Grupo Finmart's historic accounting policy," "[i]f one payment of an out-of-payroll loan is delinquent, that one payment is considered in default; if two or more payments are delinquent at any time, the entire loan is considered in default." *Id.* Upon default of an out-of-payroll loan, EZCORP ceased accruing future interest revenue. *Id.* However, "[d]ue to the likelihood of ultimately receiving payment if the customer remains employed, [Grupo Finmart] continue[d] to accrue interest on all in-payroll loans, even though Grupo Finmart may not be currently receiving payments." *Id.* In its corrective disclosures, EZCORP determined Grupo Finmart's Non-Performing Loans included a number of out-of-payroll loans that had not been properly classified as such, and some in-payroll loans that had been in non-performing status for some time. *Id.* By failing to properly account for the Non-Performing Loans, Plaintiff argues, EZCORP was able "to artificially maintain its ratio of bad debt expense to consumer loan fees and interest – a measure of health of the underlying loan portfolio." *Id.* ¶ 108.

Second, Plaintiff contends EZCORP failed to properly account for the sale of Grupo Finmart loans (Loan Sales). Between 2014 and 2015, EZCORP executed five separate sales of Grupo Finmart loans. Under the terms of the Loan Sales, third-party purchasers retained a right to return non-performing loans to EZCORP. And because the loan sales were conditional on the performance of the loans, generally accepted accounting principles (GAAP) prohibited EZCORP from recognizing any revenue from these loan sales. EZCORP disregarded this prohibition and recognized tens of millions of dollars in gains on the sales. Plaintiff claims the improper accounting for the sale of the loans had the effect of artificially boosting EZCORP's reported

3

income in the 2014 fiscal year by 45% and its reported income during the first quarter of 2015 by 32%.

## II. Alleged False and Misleading Misstatements

The statements Plaintiff identifies as misleading are taken from EZCORP's press releases, conference calls, and SEC forms disclosing EZCORP's financial results during the Class Period. These statements deal with EZCORP's financial results during the fourth quarter of 2013 (4Q13), the 2014 fiscal year (FY2014), and the first quarter of 2015 (1Q15). In general, the statements fall into two categories (1) statements relating to the overstatement of EZCORP's financial results, as a result of EZCORP's failure to properly account for the Loan Sales and Non-Performing Loans, and (2) statements relating to the nature of the Loan Sales. According to Plaintiff, Kuchenrither knew all of the statements described above were materially false and misleading at the time they were made.

Eventually, Defendants issued a series of corrective disclosures between April 2015 and November 2015. For example, on April 30, 2015, EZCORP announced the release of its 2Q15 financial results would be delayed "due to an ongoing review of certain elements of its Grupo Finmart loan portfolio, which is not yet completed." *Id.* ¶ 96. In that same press release, EZCORP further stated it "did not undertake any asset sales in Grupo Finmart this quarter" and "noted some differences in the performance of parts of our Grupo Finmart loan portfolio that prompted a more thorough review and analysis of our loan reserves[.]"*Id.* ¶ 96. Following this announcement, EZCORP's stock fell $0.79 per share to close at $8.41 per share on May 1, 2015. *Id.* ¶ 97. Further corrective disclosures also coincided with declines in the value of EZCORP's stock.

4

On November 9, 2015, EZCORP filed its restated financials from 2Q12 through 1Q15. The Restatement revealed, among other things, EZCORP's operating income was overstated by $90.7 million, or 27.3%, during the restated periods, and its earnings per share were overstated by $0.78, or 36.8%, during the restated periods. Following the filing of its restated financial results, EZCORP's stock declined $0.29 per share to close at $6.51 per share on November 9, 2015.

### III. Procedural History

Plaintiff filed this lawsuit on July 20, 2015, alleging Defendants false and misleading statements caused EZCORP's stock to trade at artificially inflated prices and Plaintiff suffered financial losses as a result of EZCORP's restated financial reports. *See* Compl. [#1]. The Court granted Defendants' first motion to dismiss, concluding Plaintiff failed to plead facts demonstrating a strong inference that Kuchenrither possessed the requisite scienter when the statements were made. Order of Oct. 18, 2016 [#44] at 1, 14–24. The Court's dismissal was without prejudice, and Plaintiff filed his second amended complaint on November 4, 2016. *See* Second Am. Compl. [#47].

In the second amended complaint, Plaintiff again alleged Defendants violated federal securities law by making false and misleading statements designed to artificially inflate the price of EZCORP's stock. *Id.* ¶ 157. And again, Defendants moved to dismiss. Second Mot. Dismiss [#50]. This time, the Court found Plaintiff had adequately pled facts giving rise to a strong inference of scienter as to the Loan Sale statements, but not as to the Non-Performing Loan statements. Order of May 8, 2017 [#54] at 25.

Discovery proceeded on Plaintiff's surviving claims. During the course of discovery, Plaintiff uncovered documents allegedly bolstering Plaintiff's allegations of scienter as to

misstatements made about the Non-Performing Loans. Plaintiff now seeks to file a third amended complaint containing new allegations based on these documents. Motion Leave [#84-1] at 5–6. Because the deadline for the filing of amended pleadings has passed, Plaintiff also seeks leave to amend the scheduling order. *Id.* at 8–9.

## Analysis

Defendants argue the Court should deny Plaintiff's motion because the Private Securities Litigation Reform Act (PSLRA) bars the use of discovery materials to revive previously dismissed claims. Resp. [#88-1] at 10–12. Defendants also argue the Court should deny Plaintiff's motion because Plaintiff cannot demonstrate good cause to amend the scheduling order under Rule 16(b) and because there is substantial reason to deny leave to amend under Rule 15(a)(2). *Id.* at 18–21. The Court addresses each argument in turn.

### I. PSLRA

Defendants first argue the PSLRA bars Plaintiff from using information uncovered during discovery to revive previously dismissed claims. Resp. [#88-1] at 10–11.

This argument fails. Defendants have not pointed to any provision of the PSLRA barring the amendment sought by Plaintiff. Instead, Defendants allude to a single provision of the PSLRA providing discovery must be stayed during the pendency of any motion to dismiss. *That provision,* 15 U.S.C. § 78u-4(b)(3)(B), provides that "all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss." Yet no discovery stay is at issue here, and neither party disputes Plaintiff was entitled to discovery on his claims surviving Defendants' previous motion to dismiss. Because there is no discovery stay, the discovery stay provision is inapplicable. And Defendants have not identified any other statutory basis for concluding the PSLRA bars the amendment.

6

In lieu of statutory support, Defendants argue allowing amendment here will frustrate the purposes of the discovery stay provision. Resp. [#88-1] at 10–11. The Court disagrees. The purpose of the PSLRA is "'to prevent unnecessary imposition of discovery costs on defendants,' not to preclude parties from using legitimately obtained discovery to refine their case." *In re Silver Wheaton Corp. Sec. Litig.*, Nos. 2:15–cv–5146, 2:15–cv–5173, 2018 WL 1517130, at *5 (C.D. Cal. Mar. 26, 2018) (quoting *Petrie v. Elec. Game Card, Inc.*, 761 F.3d 959, 970 (9th Cir. 2014)); *cf. WPP Luxembourg Gamma Three Sarl v. Spot Runner, Inc.*, 655 F.3d 1039, 1059 (9th Cir. 2011) (suggesting courts' ability to revive previously dismissed claims on the basis of newly discovered information should "temper[] the heightened pleading standards of the PSLRA"); *In re Allstate Life Ins. Co. Litig.*, Nos. CV–09–8162, CV–09–8174, 2012 WL 176497, at *6 (D. Ariz. Jan. 23, 2012) ("[N]o court within the Ninth Circuit has held that amendments in PSLRA cases are necessarily barred once discovery commences."). In any event, Defendants' appeal to the purposes of the PSLRA is futile because Defendants have failed to identify any ambiguity or inconsistency in the statutory scheme. Thus, the Court's inquiry begins and ends with the statutory text of the discovery stay provision. *See Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997) ("Our inquiry must cease if the statutory language is unambiguous and the statutory scheme is coherent and consistent." (internal quotation marks and citations omitted)).

II.  **Scheduling Order Modification**

Defendants next argue Plaintiff cannot amend his complaint because the deadline for amended pleadings has passed and Plaintiff cannot show good cause to modify the scheduling order. Resp. [#88-1] at 18–20.

"Rule 16(b) governs amendment of pleadings after a scheduling order deadline has expired." *S&W Enters., LLC v. Southtrust Bank of Ala., N.A.*, 315 F.3d 533 (5th Cir. 2003).

7

Thus, where the scheduling order precludes the filing of an amended pleading, the movant must first demonstrate good cause for modification of the order. FED. R. CIV. P. 16(b)(4). Only then may the court consider whether leave to amend should be granted or withheld under the more liberal pleading standard of Rule 15(a)(2). *See* FED. R. CIV. P. 15(a)(2) ("The court should freely give leave when justice so requires.").

The Fifth Circuit considers four factors in determining whether good cause exists to modify a scheduling order: (1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) the potential prejudice to the nonmoving party; and (4) the availability of a continuance to cure prejudice. *S&W Enters.*, 315 F.3d at 536. Consideration of these four factors demonstrates good cause exists here.

First, Plaintiff has provided an adequate explanation of his delay in moving to amend. Plaintiff did not receive the documents in question until February 8, 2018, less than three weeks before the deadline for filing amended pleadings. Mot. Leave [#84-1] at 12; Scheduling Order [#61] at 1. Then, prior to filing the motion for leave to amend, Plaintiff received an additional 21,000 pages of documents from Defendants on March 9, 2018. Mot. Leave [#91-1] at 7. Rather than submit an amended complaint based on incomplete information, Plaintiff reviewed this second document production as well before eventually filing his motion for leave to amend on April 20, 2018. *Id.* By waiting until he received the remainder of Defendants' discovery, Plaintiff reduced the likelihood he might need to file yet another motion for leave to amend in order to incorporate information uncovered in the later document production. This strikes the Court as a reasonable effort to avoid submitting duplicative and unnecessary filings and, on the whole, the Court concludes Plaintiff did not unduly delay in moving for leave to amend.

Second, Plaintiff's proposed amendment is quite important. The Court's prior motion to dismiss found Plaintiff had not pled sufficient facts to demonstrate scienter in connection with the misstatements made about the Non-Performing Loans. Order of May 8, 2017 [#54] at 25. Plaintiff now seeks to amend his claims to add additional facts showing scienter, and these facts may mean the difference between viability and failure for Plaintiff's previously dismissed claims. Mot. Leave [#84-1] at 5–6.

Third, the proposed amendments are not so prejudicial as to justify denying Plaintiff leave to amend. Defendants argue the amendments are prejudicial because they will protract this litigation and increase Defendants' costs. Resp. [#88-1] at 8–9. Yet the Court concludes these effects will be minimal. Plaintiff filed his motion seeking to revive his dismissed claims less than two months after the deadline for the filing of amended pleadings, and this case does not go to trial until June 2019. Scheduling Order [#61] at 3. Further, Plaintiff's amended complaint does not seek to add any new parties or claims—it seeks only to revive a claim which Defendants previously moved to dismiss and with which Defendants are intimately familiar. As a result, the Court anticipates that the parties will be able to adapt their pleadings and arguments to take into account Plaintiff's revived claim with relative ease.

Fourth, the Court retains the ability to issue a continuance if necessary. The Court does not believe a continuance is needed at this time but will entertain future requests from the parties.

In sum, the Court finds good cause exists to modify the scheduling order to allow Plaintiff to file his amended complaint.

### III. Leave to Amend

As an initial matter, Defendants contend Plaintiff's motion to amend must meet the standard for reconsideration set out in Rule 54(b) because, according to Defendants, the Court

previously dismissed Plaintiff's Non-Performing Loan claims with prejudice. Resp. [#88-1] at 8–9. But the Court's prior dismissal of Plaintiff's claims was not with prejudice. *See* Order of May 8, 2017 [#54] at 24–25. Indeed, the Court's order made no mention of prejudice, nor did it give any other indication it intended its dismissal to be with prejudice.[6] Thus, Rule 54(b) does not apply.

Plaintiff's motion for leave to amend is correctly considered under Rule 15(a)(2), which states the court "should freely give leave when justice so requires." Unlike Rule 16(b)(4), this standard "evinces a bias in favor of granting leave to amend," and courts may only deny leave when faced with a substantial reason for doing so, such as undue delay, bad faith, dilatory motive, repeated failures to cure deficiencies, futility, or undue prejudice to the opposing party. *Mayeaux v. La. Health Serv. & Indem. Co.*, 376 F.3d 420, 425 (5th Cir. 2004); *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 873 (5th Cir. 2000). Here, Defendants suggest there are three substantial reasons to deny Plaintiff leave to amend.

Defendants' first two arguments against granting leave to amend are easily disposed of. First, Defendants argue Plaintiff unduly delayed before filing his motion for leave to amend. Resp. [#88-1] at 18–22. But as addressed above, the Court finds Plaintiff did not unnecessarily dawdle in filing their motion for leave to amend. Second, Defendants assert Plaintiff seeks the amendment in bad faith. *Id.* at 20–21. Yet Defendants point to no evidence supporting this accusation, and the Court thus lacks sufficient basis to deny the amendment on this basis.

Third and finally, Defendants argue amendment would be futile. A motion for leave to amend is futile under Rule 15(a)(2) if the amended complaint would fail to state a claim upon which relief could be granted. *Stripling*, 234 F.3d at 873. The Court proceeds by first laying out

---

[6] Tellingly, the Court did not address whether further amendment would be futile. *Cf. Richter v. Nationstar Mortg., LLC*, No. H-17-2021, 2017 WL 4155477, at *1 (S.D. Tex. Sept. 19, 2017) (granting motion to dismiss with prejudice "because further amendment would be futile").

the applicable legal standards. It then reviews the pleading deficiencies previously identified by the Court in connection with the Non-Performing Loan statements and considers whether Plaintiff's new allegations remedy those deficiencies.

A. **Legal Standard—Futility**

In determining whether the amended complaint would fail to state a claim upon which relief could be granted, courts apply "the same standard of legal sufficiency as applies under Rule 12(b)(6)." *Id.* (internal quotation marks and citations omitted). Thus, the court must assess "whether in the light most favorable to the plaintiff and with every doubt resolved in his behalf, the complaint states any valid claim for relief." *Id.* (internal quotation marks and citation omitted). As applied here, this standard requires the court deny a motion for leave to amend on the basis of futility only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* (internal quotation marks and citation omitted).

In addition to the general Rule 12(b)(6) standard, Plaintiff must also meet two heightened pleading requirements. *See* Order of May 8, 2017 [#54] at 13–16 (concluding Plaintiff's § 10(b) claims must meet heightened pleadings standards). First, under Rule 9(b), plaintiffs alleging fraud or mistake must "state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). Second, the PSLRA imposes heightened pleading requirements in securities fraud actions. 15 U.S.C. § 78u-4(b). Relevant here, if the plaintiff's claims require proof of the defendant's state of mind, the plaintiff must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Id.* § 78u-4(b)(2)(A). The scienter inference need not be irrefutable, nor even the most compelling of all competing inferences, but must be "cogent and at least as compelling as any opposing inference one could

11

draw from the facts alleged." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007).

### B. The Previous Order

In its previous order, the Court concluded Plaintiff had failed to allege specific facts giving rise to a strong inference Kuchenrither acted knowingly or recklessly in connection with the Non-Performing Loan misstatements made between 2013 and 2015. Order of May 8, 2017 [#54] at 21–25. Plaintiff had primarily alleged Kuchenrither knew of accounting concerns regarding the Non-Performing Loans because CW1 had informed Kuchenrither of these concerns in a "series of meetings" held at EZCORP headquarters between October 2013 and November 2013. *Id.* at 23–24. Plaintiff further alleged CW1 had been informed of these accounting concerns by CW2. *Id.* The Court found these allegations unreliable because Plaintiff did not adequately explain what CW2 told CW1 and because the allegations were "hearsay-within-hearsay." *Id.*

### C. The New Allegations

Plaintiff's new allegations attempt to remedy these deficiencies. Though many of the new allegations are of little value, at least two of the allegations are sufficient to give rise to a strong inference that Kuchenrither acted knowingly or recklessly when he certified the accuracy of statements made in EZCORP's financials relating to Grupo Finmart's loan portfolio.

First, Plaintiff alleges Kuchenrither received an email from Jeff Byal in April 2014 which discussed Grupo Finmart's accounting deficiencies. Third Am. Compl. [#84-3] at 10–11. Byal's email informed Kuchenrither that Grupo Finmart was in many instances "not even keeping their books according to Mexican GAAP." *Id.* Byal also told Kuchenrither that EZCORP was "working on getting the data pulled together so we have a better view on what our bad debt

12

reserves should be." *Id.* Finally, Byal stated Grupo Finmart would likely need to increase its bad debt reserves because Byal believed Grupo Finmart was understating the number of non-performing loans in the company's loan portfolio. *Id.*

Second, Plaintiff alleges Kuchenrither likely received a report on accounting shortcomings at Grupo Finmart before making at least some of the misstatements identified by Plaintiff. *Id.* at 17–18. EZCORP commissioned this report—the "Minglewood Assessment"—from Minglewood Administrative Services in July 2014 after learning EZCORP had inadvertently sold non-performing Grupo Finmart loans to a third party. *Id.* at 10, 12–13, 72. After conducting an on-site visit to Grupo Finmart's headquarters in August, Minglewood issued its assessment sometime in October 2014. *Id.* at 13.

The Minglewood Assessment raised serious questions regarding the health of Grupo Finmart's loan portfolio and the integrity of the company's accounting practices. For example, the Assessment found Grupo Finmart was not keeping adequate "aging" or "vintage reports" on its loan portfolio. *Id.* at 13. The absence of these reports inhibited Grupo Finmart's ability to track and write off Non-Performing Loans. *Id.* at 13, 15–16. More generally, the Minglewood Assessment concluded Grupo Finmart's "credit quality indicators do not appear to accurately reflect the true performance of the loan portfolio." *Id.*

Moreover, there is reason to believe Kuchenrither received the Minglewood Assessment shortly after it was issued. For one, Kuchenrither exchanged emails with Minglewood in July 2014 regarding the scheduling of the on-site assessment. *Id.* at 12. This indicates Kuchenrither was aware of Minglewood's involvement and actively facilitating the assessment prior to issuance of the final report. What's more, at the time of the assessment Kuchenrither was serving on the Board of Directors of Grupo Finmart in addition to his role as CEO of EZCORP. *Id.* at

13

23–24. Together, Kuchenrither's positions with the two companies and prior involvement in scheduling the assessment support the inference that Kuchenrither was likely informed of Minglewood's findings either prior to or shortly after issuance of the report.[7]

In sum, Plaintiff's new allegations have remedied the pleading shortcomings previously identified by the Court. The new allegations support a strong inference that Kuchenrither knew or had reason to believe that deficiencies in Grupo Finmart's accounting practices were obscuring weaknesses in the company's loan portfolio. The allegations also suggest Kuchenrither knew of these deficiencies prior to making at least some of the misstatements identified by Plaintiff in late 2014 and early 2015. Thus, because Plaintiff's new allegations succeed in establishing a strong inference of scienter, the Court concludes amendment would not be futile. Further, because the Court finds there is no substantial reason to deny leave to amend, it GRANTS Plaintiff's Motion for Leave to File Third Amended Class Action Complaint [#84].

## Conclusion

Though the Court grants Plaintiff's motion for leave to amend, it is mindful of Defendants' desire to avoid unduly delaying this litigation. Therefore, as laid out in the orders below, the Court establishes a number of briefing deadlines aimed at keeping this litigation on schedule.

Accordingly,

IT IS ORDERED that Defendants shall have until **August 3, 2018** to file an amended answer, if necessary; and

---

[7] Subsequent discovery confirms Kuchenrither discussed the report with Minglewood in October 2014 in New Orleans. *See* Advisory [#98-2] at 2. However, because Plaintiff has not amended his complaint to incorporate this new information, the Court does not consider it here.

IT IS FURTHER ORDERED that Plaintiff's pending motion for class certification is DISMISSED WITHOUT PREJUDICE and that Plaintiff shall have until **August 31, 2018** to file an amended motion for class certification.

SIGNED this the 25th day of July 2018.

/s/ Sam Sparks
SAM SPARKS
SENIOR UNITED STATES DISTRICT JUDGE