**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**

| | |
|---|---|
| *In re EZCORP, Inc. Securities Litigation* | Master File No. 1:15-cv-00608-SS |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LEAD PLAINTIFF JOHN ROONEY'S UNOPPOSED MOTION FOR (I) PRELIMINARY APPROVAL OF THE SETTLEMENT AND (II) APPROVAL OF NOTICE TO THE SETTLEMENT CLASS**

Lead Plaintiff and Class Representative John Rooney ("Lead Plaintiff"), on behalf of himself and all others similarly situated, respectfully submits this memorandum of law in support of his unopposed motion seeking: (i) preliminary approval to the proposed Settlement set forth in the Stipulation and Agreement of Settlement dated July 18, 2019 (the "Stipulation")[1]; (ii) approval of the Notice to the Settlement Class[2]; and (iii) the scheduling of a hearing date ("Final Approval Hearing" or "Settlement Hearing") at which the Court will consider (a) final approval of the settlement and entry of the proposed Final Judgment, (b) the Plan of Allocation, and (c) Class Counsel's application for an award of attorneys' fees and expenses.

## I. INTRODUCTION

Lead Plaintiff has reached an agreement with Defendants to settle the above-captioned action (the "Action") for $4,875,000 in cash (the "Settlement"). The terms of the Settlement are set forth in the Stipulation.

The Settlement follows several years of hard-fought litigation. By the time the Settlement was reached, Lead Plaintiff and Class Counsel were well informed about the strengths and weaknesses of the claims and Defendants' defenses. Indeed, prior to reaching the Settlement, Class Counsel: (i) conducted a comprehensive investigation into the allegedly

[1] Unless otherwise defined, all capitalized terms herein have the same meanings as set forth in the Stipulation, which is attached hereto as Exhibit 1.

[2] The "Settlement Class" or "Class" is defined as all persons and entities that purchased or otherwise acquired EZCORP, Inc. Class A common stock between January 28, 2014 and October 20, 2015, inclusive, and were damaged thereby. Excluded from the Settlement Class are Defendants; the officers and directors of the Company during the Settlement Class Period (the "Excluded Officers and Directors"); members of the Immediate Families of the Individual Defendant and of the Excluded Officers and Directors; any entity in which any Defendant, any Excluded Officer or Director, or any of their respective Immediate Family members had during the Settlement Class Period and/or has a controlling interest; and the legal representatives, heirs, successors or assigns of any excluded person or entity, in their respective capacity as such. Also excluded from the Settlement Class are the persons and entities who or which timely and validly seek exclusion from the Settlement Class or whose request for exclusion is accepted by the Court. The Settlement Class definition differs slightly from the Class certified by the Court.

wrongful acts, which included, among other things, a review and analysis of EZCORP, Inc.'s ("EZCORP") filings with the U.S. Securities and Exchange Commission ("SEC"), public reports and news articles concerning EZCORP, and transcripts of EZCORP's investor calls, interviews with former employees and other potential witnesses with relevant information, and consultation with accounting, damages and market efficiency experts; (ii) drafted three consolidated complaints, including the operative 94-page Third Amended Class Action Complaint for Violations of the Federal Securities Laws (the "TAC"), based on the investigation; (iii) engaged in voluminous briefing related to Defendants' motions to dismiss the Amended Class Action Complaint ("Amended Complaint") and Second Amended Class Action Complaint ("SAC"), and related to class certification; (iv) drafted and exchanged two sets of extensive mediation statements; (vi) participated in two separate, full-day mediation sessions before mediator Robert A. Meyer, Esq., of JAMS; and (vii) engaged in negotiations regarding the terms of the proposed Settlement. The Settlement is, therefore, the result of arms-length negotiations, conducted by informed and experience counsel, in conjunction with a well-respected mediator. As discussed in greater detail below, Lead Plaintiff and Class Counsel believe that the proposed Settlement meets the standards for preliminary approval and is in the best interests of the putative Class. Accordingly, Lead Plaintiff respectfully requests that the Court grant preliminary approval.

## II. PROCEDURAL HISTORY AND CLAIMS

On July 20, 2015, plaintiff Wu Huang initiated this Action by filing a Class Action Complaint for Violations of the Federal Securities Laws in the Western District of Texas, Austin Division, styled *Huang v. EZCORP, Inc., et al.*, Case No. 1:15-cv-608. Dkt. 1. The Action was assigned to the Honorable Sam Sparks, District Judge.

On August 14, 2015, Plaintiff John Rooney filed a related action captioned *Rooney v.*

*EZCORP, Inc., et al.*, Case No. 1:15-cv-700. By Order dated November 3, 2015, Judge Sparks appointed Wu Huang and John Rooney as Co-Lead Plaintiffs, approved their selection of Glancy Prongay & Murray LLP and Block & Leviton LLP as Co-Lead Counsel and The Kendall Law Group, PLLC as Liaison Counsel, and ordered that the cases be consolidated and recaptioned as *In re EZCORP, Inc. Securities Litigation*, No. 1:15-cv-608-SS. Dkt. 24.

On January 11, 2016, Huang and Rooney filed their Amended Complaint, asserting claims against all Defendants under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, and against Defendant Mark E. Kuchenrither under Section 20(a) of the Exchange Act. Dkt. 29. On February 25, 2016, Defendants filed a motion to dismiss the Amended Complaint. Dkt. 32. After the motion was fully briefed and the Court held oral argument, the Court granted Defendants' motion to dismiss, without prejudice by Order dated October 18, 2016. Dkt. 44.

Huang and Rooney filed their SAC on November 4, 2016, again asserting claims against all Defendants under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, and against Defendant Kuchenrither under Section 20(a) of the Exchange Act. Dkt. 47. Specifically, Plaintiffs alleged that Defendants made material misstatements and omissions in connection with the sale of six Grupo Finmart loan receivables, including that the loan sales were "true asset sales" and "non-recourse to EZCORP." Plaintiffs alleged that, in fact, the loan sales were *with* recourse to EZCORP, should not have been recorded as sales, and, thus, resulted in EZCORP improperly recognizing revenue on the sales. Plaintiffs also alleged that EZCORP failed to properly write down Grupo Finmart's non-performing loans. Finally, Plaintiffs alleged that as a result of these false and misleading statements, the price of EZCORP's common stock was artificially inflated during the Class

Period and declined when the truth was revealed.

On December 5, 2016, Defendants filed and served a motion to dismiss the SAC. Following briefing on Defendants' motion, by Order dated May 8, 2017, the Court granted the motion to dismiss the SAC in part and denied it in part. The Court concluded that Plaintiffs' allegations concerning Grupo Finmart's non-performing loans failed to raise a strong inference of scienter, but it permitted Plaintiffs' claims regarding the Grupo Finmart loan sales to proceed. Dkt. 54. Defendants filed answers on June 9, 2017. Dkts. 64-65.

Thereafter, the Parties agreed to participate in mediation to attempt to reach a resolution of the Action. In advance of the mediation, the Parties prepared and exchanged detailed mediation statements. On July 20, 2017, the Parties participated in a full-day mediation session before Robert A. Meyer, Esq. of JAMS, which ended without any agreement being reached.

On December 21, 2017, the Court granted plaintiff Wu Huang's motion to withdraw as Co-Lead Plaintiff. Dkt. 75. On January 31, 2018, Lead Plaintiff John Rooney moved for class certification (Dkt. 77)[3] and for leave to file a Third Amended Complaint ("TAC") (Dkt. 83). The proposed TAC incorporated additional allegations regarding Defendants' purported failure to properly account for non-performing payroll loans—a theory the Court had previously dismissed on scienter grounds—based on documentation obtained during discovery. Defendants filed answers to the TAC on August 3, 2018. Dkts. 109-10. Following the Court's decision to grant the motion to amend, the Court instructed the parties to re-brief class certification. Dkt. No. 102. On August 31, 2018, Lead Plaintiff filed an amended motion for class certification. Dkt. 113.

[3] During the class certification process, Lead Plaintiff Rooney and his market efficiency expert were both deposed by counsel for Defendants.

The Parties again attempted to resolve the Action through mediation. In advance of another full-day mediation session on November 1, 2018, the Parties again exchanged detailed briefs concerning liability and damages issues. The session ended without an agreement.

By Order dated February 19, 2019, the Court granted Lead Plaintiff's amended motion for class certification, certifying a class consisting of "all persons and entities that purchased or otherwise acquired EZCORP, Inc. Class A common stock between January 28, 2014 and October 20, 2015, inclusive, and were damaged thereby." The Court further appointed John Rooney as Class Representative, appointed Lead Counsel as Class Counsel, and appointed The Kendall Law Group, PLLC as Liaison Counsel. Dkt. 120.

On March 25, 2019, the Fifth Circuit granted Defendants leave to file an interlocutory appeal of the class certification order under Fed. R. Civ. P. 23(f). Dkt. 127.

While Defendants' appeal was pending before the Fifth Circuit, the Parties continued to conduct discussions with each other directly and through Mediator Robert A. Meyer, Esq. Those discussions ultimately resulted in an agreement in principle to settle the Action, which the Parties memorialized in a Memorandum of Understanding ("MOU") executed on May 30, 2019. The Parties then negotiated the Stipulation and supporting documents. Pursuant to the MOU and the Stipulation, which is attached as Exhibit 1, the Parties have agreed to settle and release all claims asserted against Defendants in the Action in return for a cash payment of $4,875,000 by or on behalf of Defendants for the benefit of the Settlement Class.

At the time the MOU was executed, Class Counsel had engaged in substantial discovery, including the review of 38,549 documents produced by Defendants, the issuance of 17 subpoenas on third parties (who produced 10,079 documents that were reviewed by Class Counsel), and the taking of four fact depositions of EZCORP employees and other third party

witnesses. Based upon their investigation, prosecution and mediation of the case, Lead Plaintiff and Class Counsel have concluded that the terms and conditions of this Stipulation are fair, reasonable and adequate to Lead Plaintiff and the other members of the Settlement Class, and in their best interests.

## III. ARGUMENT

### A. THE SETTLEMENT MEETS THE CRITERIA FOR PRELIMINARY APPROVAL

Rule 23(e) of the Federal Rules of Civil Procedure provides that before a class action may be dismissed or compromised, notice of the proposed dismissal or compromise must be given in the manner directed by the court, and judicial approval must be obtained. The issue of whether a proposed settlement should be granted preliminary approval is a matter within the sound discretion of the district court, which should be exercised in the context of public policy strongly favoring the pretrial settlement of class action lawsuits. *See, e.g.*, *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977) ("Particularly in class action suits, there is an overriding public interest in favor of settlement."); *In re Enron Corp. Sec., Deriv. & "ERISA" Litig.*, No. H-01-3624, 2003 WL 22962792, at *4 (S.D. Tex. Nov. 5, 2003) (same).[4] "[C]ourts are to adhere to a strong presumption that an arms-length class action settlement is fair—especially when doing so will result in significant economies of judicial resources—absent evidence weighing against approval." *Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 650 (N.D. Tex. 2010). Thus, "[w]here the court finds that counsel have adequately represented the interests of the class, 'the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel.'" *Id.* (quoting *Cotton*, 559 F.2d at 1330); *Maher v. Zapata Corp.*, 714 F.2d 436, 455 (5th Cir. 1983) ("the court should not decide the merits of the action or attempt to substitute its

[4] Unless otherwise indicated, all internal citations are omitted and emphasis is added.

own judgment for that of the parties.").

Preliminary approval of a proposed settlement is the first step in a two-step process required before a class action may be settled. *See McNamara v. Bre-X Minerals Ltd.*, 214 F.R.D. 424, 426 (E.D. Tex. 2002). "In considering preliminary approval, courts make a preliminary evaluation of the fairness of the settlement[.]" *In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997) (citing MANUAL FOR COMPLEX LITIGATION §30.41 (3d ed. 1995)). Rule 23(e)(1) provides that preliminary approval should be granted where "the parties show[] that the Court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." This Court has already certified the Class and, thus, this unopposed motion concerns the likelihood of approval under Rule 23(e)(2).

With respect to that Rule—which governs final approval—courts are required to consider the following factors in determining whether a proposed settlement is fair, reasonable, and adequate:

(A) have the class representatives and class counsel adequately represented the class;

(B) was the proposal negotiated at arm's length;

(C) is the relief provided for the class adequate, taking into account:

- (i) the costs, risks, and delay of trial and appeal;
- (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
- (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and
- (iv) any agreement required to be identified under Rule 23(e)(3); and

(D) does the proposal treat class members equitable relative to each other.

Fed. R. Civ. P. 23(e)(2).

These factors are not, however, exclusive. The four factors set forth in Rule 23(e)(2) are not intended to "displace" any factor previously adopted by the courts, but "rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the

decision whether to approve the proposal." Advisory Committee Notes to 2018 Amendments (324 F.R.D. 904, at 919); *see also Swinton v. SquareTrade, Inc.*, 2019 WL 617791, at *5 (S.D. Iowa Feb. 14, 2019) ("The specific considerations in Rule 23(e)(2)(A)–(D) were part of the 2018 Amendments. However, they were not intended to displace the various factors that courts have developed in assessing the fairness of a settlement."). For this reason, the traditional Fifth Circuit factors (certain of which overlap with Rule 23(e)(2)) are still relevant. *Al's Pals Pet Care v. Woodforest Nat'l Bank, NA*, No. 4:17-CV-3852, 2019 WL 387409, at *3 (S.D. Tex. Jan. 30, 2019) (considering "the criteria set forth in Fed. R. Civ. P. 23 (e)(2) as well as the Fifth Circuit's '*Reed* factors'"). Accordingly, in addition to the factors included in Rule 23(e)(2), courts within the Fifth Circuit have also considered the following non-overlapping factors: (1) the factual and legal obstacles to prevailing on the merits; (2) the stage of the proceedings and the amount of discovery completed; (3) the possible range of recovery; and (4) the respective opinions of the participants, including class counsel, the class representative, and the absent class members. *Id.* at *10-12 (citing *Reed v. Gen Motors. Corp.*, 703 F.3d 170, 172 (5th Cir. 1983); *see also Swinton*, 2019 WL 617791, at *5 (stating that "[t]hese changes are mostly form over substance, but they do focus the Court's analysis" and that "[t]he requirement that a settlement be 'fair, reasonable, and adequate' is nothing new.").

As set forth below, the proposed Settlement satisfies the criteria for preliminary approval under the four Rule 23(e)(2) factors, as well as the relevant, non-duplicative Fifth Circuit factors.

**1. Lead Plaintiff And Class Counsel Have Adequately Represented The Class**

Here, Lead Plaintiff and Class Counsel adequately represented the Settlement Class during both the litigation of this Action and its settlement. Lead Plaintiff's claims are typical of and coextensive with the claims of the Settlement Class, and he has no antagonistic interests;

rather, Lead Plaintiff's interest in obtaining the largest possible recovery is aligned with the other Settlement Class Members. *See In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006) ("Where plaintiffs and class members share the common goal of maximizing recovery, there is no conflict of interest between the class representatives and other class members.").

Lead Plaintiff also retained counsel who are highly experienced in securities litigation, and who have a long and successful track record of representing investors in such cases. Class Counsel and Liaison Counsel have successfully prosecuted securities class actions and complex litigation in federal and state courts throughout the country. *See* Kendall Declaration, Ex. A-C. Class Counsel pursued this Action vigorously as well. By the time the Settlement was reached, Class Counsel had, among other things: (i) reviewed and analyzed EZCORP's U.S. Securities and Exchange Commission ("SEC") filings, press releases, investor conference call transcripts, blog posts, and other public statements, as well as (a) publicly available documents, reports, announcements, and news articles concerning EZCORP, and (b) research reports prepared by securities and financial analysts regarding EZCORP; (ii) worked with a damages and loss causation expert to analyze EZCORP's stock price movement; (iii) retained and worked with a private investigator who conducted numerous interviews with former employees and other third parties; (iv) drafted three comprehensive, factually-detailed complaints against the Defendants, including the operative TAC; (v) engaged in multiple rounds of briefing related to Defendants' motions to dismiss and Lead Plaintiff's motions for class certification; (vi) drafted detailed mediation statements that set forth the facts of the case and analyzed the strengths of the Action and potential damages; (vii) engaged in two separate, full-day mediation sessions overseen by Mr. Meyer; (viii) conducted protracted and time-intensive negotiations regarding the terms of the proposed Settlement; and (ix) drafted the initial versions of the Stipulation and exhibits.

Lead Plaintiff and Class Counsel have, therefore, adequately represented the Settlement Class. *See Hays*, 2019 WL 427331, at *9 (representation adequate where proposed settlement was "negotiated by experienced, informed counsel … with substantial experienced in litigating complex class actions" and where lead plaintiff was "familiar with the factual and legal issues").

### 2. The Settlement Is The Product Of Arm's Length Negotiations Between Experienced Counsel

Rule 23(e)(2)(B) evaluates whether the proposed settlement "was negotiated at arm's length." As noted above, the proposed Settlement was achieved only after ***two*** all-day, in-person mediation sessions, followed by additional arm's length negotiations, overseen by a well-respected third-party mediator, Mr. Meyer. As part of those discussions, Class Counsel and Defendants' Counsel prepared submissions concerning, among other things, their respective views of the Action's merits and damages on a class-wide basis. The negotiations focused on heavily disputed issues. Specifically, the parties disputed whether: (1) Lead Plaintiff adequately alleged scienter and loss causation; (2) Lead Plaintiff's claims would survive summary judgment or at trial; and (3) the Settlement Class suffered damages and, if so, the amount of damages. These, as well as many other issues, were explored in-depth and with substantial input from Mr. Meyer. The parties also conducted substantial discovery prior to finally reaching an agreement to settle. The negotiations were conducted at arm's length by experienced counsel who were well-aware of the strengths and weaknesses of the case. Accordingly, this factor weighs in favor of preliminary approval. *In re Xerox Corp. Erisa Litig.*, 2009 WL 10687750, at *1 (D. Conn. Jan. 28, 2009) ("[T]he proposed Settlement resulted from informed, extensive noncollusive arm's-length negotiations and numerous mediation sessions over a period of seven months before Robert Meyer[.]").

### 3. The Relief Provided For The Class Is Adequate

Under Rule 23(e)(2)(C), when evaluating the fairness, reasonableness, and adequacy of a settlement, the Court must also consider whether "the relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal" along with other relevant factors. Fed. R. Civ. P. 23(e)(2)(C). This factor is satisfied where the settlement provides significant immediate relief for the Class and where "a trial would be lengthy, burdensome, [] would consume tremendous time and resources of the Parties and the Court [and] any judgment would likely be appealed." *Hays*, 2019 WL 427331, at *10. That is certainly the case here, where the Parties have not only a potential trial and subsequent appeal to consider but also Defendants' current interlocutory appeal, which would significantly add to the length and resources required to resolve the Action on the merits.

The $4.875 million cash Settlement Amount is well within the range of reasonableness under the circumstances, warranting preliminary approval and the issuance of notice to the Settlement Class. Here, Lead Plaintiff's damages expert estimates that if Lead Plaintiff had fully prevailed on each of his claims at both summary judgment and after a jury trial, and if the Court and jury accepted Lead Plaintiff's damages theory (including proof of loss causation, which was hotly contested)—*i.e.*, Lead Plaintiff's ***best case scenario***—the total ***maximum*** damages would be approximately $62 million. Thus, the Settlement Amount represents approximately 7.9% of the total ***maximum*** damages ***potentially*** available in this Action. In comparison, the median recovery in securities class actions in 2018 was approximately 2.6% of estimated damages. *See* Kendall Declaration, Ex. D (Stefan Boettrich and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2018 Full-Year Review* (NERA Jan. 29, 2019) at p. 36, Fig. 28.

Moreover, had Defendants prevailed on any motion(s) for summary judgment—or had the Court or a jury later accept Defendants' loss causation arguments—recoverable damages would have been substantially diminished or completely eliminated. As evidenced by the fact that the Court had already dismissed the Action with leave to amend and the Fifth Circuit had granted Defendants' 23(f) petition, these were not hypothetical risks. *See In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980, 1003 (D. Minn. 2005) ("The court needs to look no further than its own order dismissing the shareholder derivative litigation to assess the risks involved."). Consequently, the amount recovered, when balanced against the risks of continued litigation, weighs strongly in favor of preliminary approval.

**a) The Cost, Risk, And Delay Of Trial And Appeal**

"Even where the claims are not particularly complex, approval of settlement is favored where settling avoids the risks and burdens of potentially protracted litigation." *Hays*, 2019 WL 427331, at *10. Securities fraud cases are inherently complex and frequently take an exceptionally long time to litigate, in part because they often involve significant post-trial motions and appeals. *See*, *e.g.*, *In re Vivendi Universal, S.A., Sec. Litig.*, 2012 WL 362028, at *1 (S.D.N.Y. Feb. 6, 2012) (noting that, two years after jury verdict in plaintiffs' favor and ten years after the case was filed, shareholders had still received no recovery). Given the "notorious complexity" of securities class actions, settlement is often appropriate because it "circumvents the difficulty and uncertainty inherent in long, costly trials." *In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, 2006 WL 903236, at *8 (S.D.N.Y. Apr. 6, 2006).

Here, there is no question that continued litigation would have been costly, risky and drawn out. Although Lead Plaintiff had succeeded in obtaining class certification, he faced the immediate concern of prevailing in Defendants' interlocutory appeal of that decision. After that, Lead Plaintiff faced the burden of demonstrating liability and damages at trial (and on any

subsequent appeal), while Defendants had already raised reasonable arguments regarding loss causation—specifically, calling into question two of Lead Plaintiff's alleged corrective disclosures. If Defendants had been successful at any of these stages, the amount of any potential recovery would have been sharply limited, or even foreclosed altogether. While Lead Plaintiff was confident in the arguments presented, success is never guaranteed. *See Goldstein v. MCI WorldCom*, 340 F.3d 238 (5th Cir. 2003) (affirming dismissal with prejudice of securities fraud class action against Bernard Ebbers and WorldCom arising out of a massive securities fraud that resulted in a $685 million write-off of accounts receivable, for which Ebbers was later convicted). Lead Plaintiff and Class Counsel recognize the significant risk, time and expense involved in prosecuting the claims against Defendants through the appeal on class certification, completion of fact and expert discovery, summary judgment, trial, and subsequent appeals, as well as the inherent difficulties and delays complex litigation like this entails. *See, e.g.*, *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408 (7th Cir. 2015) (reversing and remanding jury verdict of $2.46 billion after 13 years of litigation on loss causation grounds and error in jury instruction).[5]

There was, therefore, a very significant risk that continued litigation might yield a smaller recovery—or indeed no recovery at all—several years in the future.

#### b) Other Factors Established By Rule 23(e)(2)(C) Support Final Approval

Under Rule 23(e)(2)(C), courts also must consider whether the relief provided for the class is adequate in light of "the effectiveness of any proposed method of distributing relief to the

[5] *See also Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (reversing jury verdict of $81 million for plaintiffs); *In re BankAtlantic Bancorp, Inc. Sec. Litig.*, 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) (granting defendants' motion for judgment as a matter of law following plaintiffs' verdict); *In re Apple Computer Sec. Litig.*, 1991 WL 238298 (N.D. Cal. Sept. 6, 1991) (overturning jury verdict for plaintiffs after extended trial).

class, including the method of processing class-member claims," "the terms of any proposed award of attorneys' fees, including timing of payment," and "any agreement required to be identified under Rule 23(e)(2)." Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv). Each of these factors supports the Settlement's approval or is neutral; thus, they do not suggest any basis for concluding the Settlement is inadequate.

First, the method for processing Settlement Class Members' claims and distributing relief to eligible claimants includes well-established, effective procedures for processing claims and efficiently distributing the Net Settlement Fund. Here KCC LLC ("KCC"), the Claims Administrator selected by Class Counsel (subject to Court approval), will process claims under the guidance of Class Counsel, allow claimants an opportunity to cure any deficiencies in their claims or request the Court to review a denial of their claims, and, lastly, mail or wire Authorized Claimants their *pro rata* share of the Net Settlement Fund (per the Plan of Allocation), after Court-approval. Claims processing like the method proposed here is standard in securities class action settlements as it has been long found to be effective, as well as necessary insofar as neither Lead Plaintiff nor Defendants possess the individual investor trading data required for a claims-free process to distribute the Net Settlement Fund.[6]

Second, as disclosed in the Notice, Class Counsel will be applying for a percentage of the common fund fee award in an amount not to exceed one-third to compensate them for the services they have rendered on behalf of the Settlement Class. A proposed attorneys' fee of up to one-third of the Settlement Fund (which, by definition, includes interest earned on the Settlement Amount) is reasonable in light of the work performed and the results obtained. It is

[6] This is not a claims-made settlement. If the Settlement is approved, Defendants will not have any right to the return of a portion of the Settlement based on the number or value of the claims submitted. *See* Stipulation ¶12.

also consistent with awards in similar complex class action cases. *See Jenkins v. Trustmark Nat. Bank*, 300 F.R.D. 291, 302 (S.D. Miss. 2014) (approving settlement including award of up to 33-1/3% of $4 million settlement fund). More importantly, approval of the requested attorneys' fees is separate from approval of the Settlement, and the Settlement may not be terminated based on any ruling with respect to attorneys' fees. *See* Stipulation ¶15.

Third, with respect to Rule 23(e)(2)(C)(iv), the Parties have entered into a confidential agreement which establishes certain conditions under which EZCORP may terminate the Settlement if Settlement Class Members, who collectively purchased a specific number of shares of EZCORP common stock, request exclusion (or "opt out") from the Settlement. This type of agreement is standard in securities class action settlements and has no negative impact on the fairness of the Settlement. *See, e.g.*, *In re Carrier IQ, Inc., Consumer Privacy Litig.*, 2016 WL 4474366, at *5 (N.D. Cal. Aug. 25, 2016) (observing that such "opt-out deals are not uncommon as they are designed to ensure that an objector cannot try to hijack a settlement in his or her own self-interest," and granting final approval of class action settlement).

**4. All Settlement Class Members Are Treated Equitably**

Rule 23(e)(2)(D) requires courts to evaluate whether the settlement treats class members equitably relative to one another. Fed. R. Civ. P. 23(e)(2)(D). Under the proposed Plan of Allocation, each Authorized Claimant will receive his, her, or its *pro rata* share of the Net Settlement Fund. Specifically, an Authorized Claimant's *pro rata* share shall be the Authorized Claimant's Recognized Claim divided by the total of Recognized Claims of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund. Because the proposed Plan of Allocation does not provide preferential treatment to any Settlement Class member, segment of the Settlement Class, or to Lead Plaintiff, this factor supports preliminary approval of

the proposed Settlement.[7] *Hays*, 2019 WL 427331, at *13 (factor "easily met" where "each class member, save the class representative, will receive the same amount").

**5. The Remaining Fifth Circuit Factors Are Satisfied**

**a) The Opinions of Class Counsel, the Class Representative, and Absent Class Members**

"Counsel are the Court's 'main source of information about the settlement' . . . and therefore the Court will give weight to class counsel's opinion regarding the fairness of settlement." *Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830, 852 (E.D. La. 2007). "[W]here the parties have conducted an extensive investigation, engaged in significant fact-finding and Class Counsel is experienced in class-action litigation, courts typically 'defer to the judgment of experienced trial counsel who has evaluated the strength of his case.'" *Schwartz v. TXU Corp.*, Case No. 3:02-CV-2243-K, 2005 WL 3148350, at *21 (N.D. Tex. Nov. 8, 2005).

Here, Class Counsel has considerable experience in complex class action and securities litigation and believes the settlement merits approval. Lead Plaintiff also supports the proposed Settlement.[8] Accordingly, this factor weighs in favor of preliminary approval.

**b) The Stage of the Proceedings and the Amount of Discovery Completed**

This action has been actively litigated since its commencement in 2015, through the negotiation of the Stipulation. As discussed herein, Class Counsel has conducted a thorough investigation and substantial discovery during the Action, there has been briefing on two motions to dismiss and two motion for class certification, and three substantial amended complaint have

[7] Pursuant to the PSLRA, Lead Plaintiff will separately seek reimbursement of costs and expenses incurred as result of his representation of the Settlement Class in an amount not to exceed $10,000. *See* 15 U.S.C. §78u-4(a)(4).

[8] Settlement Class Members have not yet had the opportunity to review the terms of the settlement. Therefore, Lead Counsel will advise the Court of the Settlement Class Members' reaction to the settlement following completion of the notice process, as part of the analysis presented in support of final approval of the settlement.

been filed. Thus, by the time settlement discussions proved fruitful, Class Counsel had a solid understanding of the strengths and weaknesses of the claims, both legally and factually, and were able to engage in a rigorous negotiation process with Defendants. There can be no doubt that the Parties reached the instant settlement with a "full understanding of the legal and factual issues surrounding this case." *Manchaca v. Chater*, 927 F. Supp. 962, 967 (E.D. Tex. 1996).

**c) Obstacles to, and the Range of Possible, Recovery**

As in every complex case of this kind, Lead Plaintiff and the Class faced formidable obstacles to recovery at trial, both with respect to liability and damages. Although Lead Plaintiff believes that he would be successful and that the allegations of the TAC would ultimately be borne out by the evidence, he also recognizes that he faced significant hurdles to proving liability and damages at trial. For example, Defendants have hotly contested scienter in prior motions to dismiss, with Defendants claiming that they did not have the requisite motive to make false or misleading statements and that they did not act intentionally or recklessly. While Lead Plaintiff believes that he would have prevailed, there nevertheless existed a very real risk that he would not be able to establish scienter. Indeed, Defendants had already prevailed in motions to dismiss certain of Lead Plaintiff's claims based on failure to allege scienter.

Even if Plaintiffs were successful in establishing liability at trial, they would still face substantial risks in ***proving*** loss causation and damages. Defendants disputed, and would have continued to dispute, several of Lead Plaintiff's alleged partial corrective disclosures. Issues relating to loss causation and damages would also have likely come down to a contested and unpredictable "battle of the experts." In fact, the Fifth Circuit has already agreed to hear Defendants' Rule 23(f) petition on these exact issues. Accordingly, in the absence of a settlement, there was a very real risk that the Class would have recovered an amount

significantly less than the total settlement amount – or even nothing at all. *See In re Cendant Corp. Litig.*, 264 F.3d 201, 239 (3d Cir. 2001) ("[E]stablishing damages at trial would lead to a 'battle of experts' with each side presenting its figures to the jury and with no guarantee whom the jury would believe."). Thus, the substantial payment of $4,875,000 by the Defendants, particularly when viewed in the context of the risks and the uncertainties involved in this litigation, clearly weighs heavily in favor of approving the Settlement.

For all of the foregoing reasons, Lead Plaintiff respectfully submits that the proposed Settlement falls within the range of what could be found to be fair, reasonable, and adequate and warrants this Court's preliminary approval.

### B. THE PROPOSED FORM AND METHOD OF NOTICE TO THE CLASS IS APPROPRIATE

Proper notice "may consist of a very general description of the proposal together with a summary of the monetary benefits to flow therefrom to the class, and an estimate of attorneys' fees and other expenses claimed against the recovery. The class members are not expected to rely on the notice as a complete source of the settlement information, especially where any ambiguity therein can be cleared up by obtaining a copy of the agreement or an inspection thereof." *Rubenstein v. Republic Nat. Life Ins. Co.*, 74 F.R.D. 337, 348 (N.D. Tex. 1976). In securities class actions, it is "more than sufficient" to use "a combination of a mailed post card directing class members to a more detailed online notice." *In re Advanced Battery Technologies, Inc. Sec. Litig.,* 298 F.R.D. 171, 182 n.3 (S.D.N.Y. 2014) (citing *In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.,* 789 F. Supp. 2d 935, 973 (N.D. Ill. 2011)).[9]

---

[9] *See also, e.g., In re Provectus Biopharmaceuticals, Inc. Sec. Litig.,* No. 3:14-cv-00338-PLR-HBG, 2016 WL 7670857, at *2 (E.D. Tenn. Apr. 7, 2016) (approving an "Internet Long Form Notice," a "Proof of Claim," a "Summary Notice," and a "Postcard Notice" as "the best notice practicable under the circumstances and shall constitute due and sufficient notice to all Persons entitled thereto").

The proposed Preliminary Approval Order, attached as Exhibit A to the Stipulation, requires Class Counsel to provide notice to Class Members through mailing of the proposed Postcard Notice, substantially in the form annexed as Exhibit A-4, to all identifiable Class members. The Postcard Notice will direct potential Settlement Class Members to the Claims Administrator's website, which will contain information regarding the Settlement, a detailed Notice, and a Claim Form, substantially in the form annexed as Exhibit A-2, along with instructions on how to submit a Claim Form or objection or request exclusion from the Settlement. Pursuant to the Preliminary Approval Order, the Claims Administrator also shall cause a Summary Notice, substantially in the form annexed as Exhibit A-3, to be published on the internet on *PR Newswire* and published once in *Investor's Business Daily*.

The proposed Notice, annexed as Exhibit A-1, also meets the requirements of the PSLRA, 15 U.S.C. § 78u-4(a)(7). The Notice provides detailed information concerning: (i) the rights of Settlement Class Members, including the right to accept, object, or opt out of the Settlement; (ii) the nature, history, and progress of the litigation; (iii) the proposed Settlement; (iv) the process for filing a proof of claim; (v) a description of the Plan of Allocation; (vi) the fees and expenses to be sought by Lead Counsel and awards to certain Lead Plaintiffs; and (vii) the necessary information for any Settlement Class Member to examine the Court records should they desire to do so. The Notice also sets forth instructions to securities brokers and other nominee holders for forwarding the Notice to those persons for whom the nominees held shares in street name. Additionally, the proposed Notice explains procedures and deadlines for opting out of the Settlement or submitting comments or objections.

The proposed Notice is "reasonably calculated under all of the circumstances to apprise interested parties of the pendency of the action and to afford them an opportunity to present their

objections." *Rubenstein,* 74 F.R.D. at 348. Thus, the proposed method of notice described above satisfies the requirements of due process and the PSLRA. *See*, *e.g.*, *Eisen v. Carlisle & Jacqueline*, 417 U.S. 156, 173 (1974).

### C. PROPOSED SCHEDULE

If the Court grants preliminary approval to the proposed Settlement, the Parties respectfully submit the following procedural schedule for the Court's consideration. The proposed Notice Order includes blank dates that must be established by the Court to properly effectuate the Settlement. In this regard, the Parties present the following general timeline:

| **Event** | **Proposed Timing** |
|---|---|
| Deadline for mailing the Postcard Notice to Settlement Class Members (which date shall be the "Notice Date") (Preliminary Approval Order ¶ 4(b)) | At least 70 days prior to the Settlement Hearing |
| Deadline for publishing the Summary Notice (Preliminary Approval Order ¶ 4(d)) | Within 10 business days of the Notice Date |
| Deadline for filing of papers in support of final approval of the Settlement, Plan of Allocation, and Class Counsel's application for attorneys' fees and expenses (Preliminary Approval Order ¶ 23) | 35 calendar days prior to the Settlement Hearing |
| Deadline for receipt of exclusion requests or objections (Preliminary Approval Order ¶¶ 10, 13) | 21 calendar days prior to the Settlement Hearing |
| Deadline for filing reply papers (Preliminary Approval Order ¶ 23) | 7 calendar days prior to the Settlement Hearing |
| Settlement Hearing (Preliminary Approval Order ¶ 2) | At least 100 days after Preliminary Approval if granted |
| Deadline for submitting Claim Forms (Preliminary Approval Order ¶ 7 | 120 calendar days after the Notice Date |

The Court need only schedule a Settlement Hearing at least 100 days after granting preliminary approval; all other deadlines flow from those two dates. If this schedule is not convenient for the Court, Lead Plaintiff respectfully requests that the Court use at least the same or greater intervals between each event listed in the proposed schedule to provide all parties sufficient time to comply with the proposed Preliminary Approval Order.

## IV. CONCLUSION

For the foregoing reasons, Lead Plaintiff respectfully requests that the Court grant the unopposed Motion.

July 18, 2019

By: */s/ Joe Kendall*
**Kendall Law Group, LLP**
Joe Kendall (SBN 11260700)
3811 Turtle Creek Blvd.
Suite 1450
Dallas, TX 75219
(214) 744-3000 phone
(214) 744-3015 fax
jkendall@kendalllawgroup.com

*Liaison Counsel for the Class*

Jeffrey C. Block, *pro hac vice*
Jacob A. Walker, *pro hac vice*
**Block & Leviton LLP**
155 Federal Street, Suite 400
Boston, Massachusetts 02110
(617) 398-5600 phone
jeff@blockesq.com
jake@blockesq.com

Lionel Z. Glancy, *pro hac vice*
Joseph D. Cohen, *pro hac vice*
**Glancy Prongay & Murray LLP**
1925 Century Park East, Suite 2100
Los Angeles, California 90067
(310) 201-9150 phone
lglancy@glancylaw.com
jcohen@glancylaw.com

*Class Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was served upon its filing via this Court's CM/ECF system on this 18th day of July 2019 to all counsel of record.

By: *s/ Joe Kendall*
Joe Kendall