**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| *In re EZCORP, Inc. Securities Litigation* | Master File No. 1:15-cv-00608-SS<br>Honorable Sam Sparks |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LEAD
COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND
REIMBURSEMENT OF LITIGATION EXPENSES**

## I.      INTRODUCTION

Plaintiff's Counsel[1] have succeeded in obtaining $4,875,000 in cash (the "Settlement") for the benefit of the Settlement Class in the above-captioned action (the "Action").[2] This is a highly favorable recovery in the face of substantial risk and is the result of Plaintiff's Counsel's vigorous, persistent, and skilled efforts. As compensation for these efforts, Lead Counsel respectfully request: (1) an award of attorneys' fees in the amount of 33 1/3% of the Settlement Fund on behalf of Plaintiff's Counsel; (2) reimbursement of litigation expenses incurred by Plaintiff's Counsel in prosecuting this Action in the amount of $258,570.95; and (3) reimbursement of $7,500 to Lead Plaintiff and Class Representative John Rooney ("Lead Plaintiff") to compensate him for the time he spent on this litigation on behalf of the Settlement Class.

## II.     FACTUAL AND PROCEDURAL HISTORY

The Block Declaration is an integral part of this submission. The Court is respectfully referred to it for a detailed description of the factual and procedural history of the litigation, the claims asserted, the extensive work performed by Plaintiff's Counsel, the settlement negotiations, and the numerous risks and uncertainties presented in this litigation.

---

[1] Plaintiff's Counsel consists of Lead Counsel, Block & Leviton LLP ("B&L") and Glancy Prongay & Murray LLP ("GPM"), and Liaison Counsel, The Kendall Law Group, PLLC.

[2] Unless otherwise defined, all capitalized terms herein have the same meanings as set forth in the Stipulation and Agreement of Settlement dated July 18, 2019 (ECF No. 137-1), or the concurrently-filed Declaration of Jeffrey C. Block in Support of: (I) Lead Plaintiff's Motion for: Final Approval of Class Action Settlement and Plan of Allocation of Settlement Proceeds; and (II) Lead Counsel's Motion for Award of Attorneys' Fees and Reimbursement of Litigation Expenses (the "Block Declaration" or "Block Decl."). Unless otherwise noted, all citations herein to "¶__" and "Ex. __" refer, respectively, to paragraphs in, and exhibits to the Block Declaration.

III.   **PLAINTIFF'S COUNSEL ARE ENTITLED TO AN AWARD OF ATTORNEYS' FEES FROM THE COMMON FUND**

The Supreme Court and the Fifth Circuit have consistently recognized that a "litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *accord Barton v. Drummond Co.*, 636 F.2d 978, 982 (5th Cir. 1981) ("[I]t is well settled that the common benefit or common fund equitable doctrine allows for the assessment of attorneys' fees against a common fund created by the attorneys' efforts."); *see also Shaw v. Toshiba Am. Info. Sys., Inc.*, 91 F. Supp. 2d 942, 962 (E.D. Tex. 2000) (same).[3]

Courts have also recognized that in addition to providing just compensation, awards of attorneys' fees from a common fund serve to encourage skilled counsel to represent those who seek redress for damages inflicted on classes of persons and to discourage future misconduct of a similar nature. *See Jenkins v. Trustmark Nat'l. Bank*, 300 F.R.D. 291, 307 (S.D. Miss. 2014) ("The doctrine serves the twin goals of removing a potential financial obstacle to a plaintiff's pursuit of a claim on behalf of a class and of equitably distributing the fees and costs of successful litigation among all who gained from the named plaintiff's efforts."). The Supreme Court has emphasized that private securities cases, such as this one, are "an indispensable tool with which defrauded investors can recover their losses—a matter crucial to the integrity of domestic capital markets." *Tellabs, Inc. v. Makor Issues & Rights. Ltd.*, 551 U.S. 308, 320 n.4 (2007). Thus, common-fund fee awards of the type requested here encourage meritorious class actions, and promote private enforcement of, and compliance with, the securities laws.

---

[3] Unless otherwise noted, all citations and internal quotations are omitted and emphasis is added.

IV.     **THE REQUESTED ATTORNEYS' FEES ARE REASONABLE UNDER EITHER THE PERCENTAGE METHOD OR THE LODESTAR METHOD**

"In common fund cases, courts typically use one of two methods for calculating attorneys' fees: (1) the percentage method, in which the court awards fees as a reasonable percentage of the common fund; or (2) the lodestar method, in which the court computes fees by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate and, in its discretion, applying an upward or downward multiplier." *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 642-43 (5th Cir. 2012) ("*Dell*"). The Fifth Circuit affords "district courts the flexibility to choose between the percentage and lodestar methods," with their analyses under either approach informed by the factors set forth in *Johnson v. Georgia Highway Express*, 488 F.2d 714, 717-19 (5th Cir. 1974), *overruled on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989).

A.      **The Court Should Apply The Percentage Method**

The Supreme Court has consistently held that where a common fund has been created for the benefit of a class as a result of counsel's efforts, the award of counsel's fee should be determined on a percentage-of-the-fund basis. *See, e.g.*, *Trs. v. Greenough*, 105 U.S. 527, 532 (1882); *Cent. R.R. & Banking Co. v. Pettus*, 113 U.S. 116, 124-25 (1885); *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 166-67 (1939); *Boeing*, 444 U.S. at 478-79. Indeed, as the Supreme Court declared in *Blum v. Stenson*, 465 U.S. 886 (1984), "under the common fund doctrine . . . a reasonable fee is based on a percentage of the fund bestowed on the class." *Id*. at 900 n.16.

The Fifth Circuit also has endorsed the percentage method, noting that "district courts in this Circuit regularly use the percentage method blended with a *Johnson* reasonableness check, and for some it is the preferred method." *Dell*, 669 F.3d at 643-44; *see also Shaw*, 91 F. Supp. 2d at 964 (percentage method superior to lodestar method). The percentage method "allows for easy

computation" and "aligns the interests of class counsel with those of the class members." *Dell*, 669 F.3d at 643. Conversely, "[t]he lodestar method voraciously consumes enormous judicial resources, unnecessarily complicates already complex litigation, and inaccurately reflects the value of services performed." *Shaw*, 91 F. Supp. 2d at 964.[4]

Moreover, "[a]s the Fifth Circuit noted, there is 'near-universal adoption of the percentage method in securities cases,' at least in part because it is explicitly contemplated by the [PSLRA.]" *In re Arthrocare Corp. Sec. Litig.*, 2012 WL 12951371, at *4 (W.D. Tex. June 4, 2012) (Sparks, J.) (quoting *Dell*, 669 F3d at 643); *see also Erica P. John Fund, Inc. v. Halliburton Co.*, 2018 WL 1942227, at *8 (N.D. Tex. Apr. 25, 2018) ("*Halliburton*") ("The PSL[R]A expressly contemplates the percentage method, providing that [t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class") (*citing* 15 U.S.C. § 78u–4(a)(6)).

Accordingly, the Court should apply the percentage method.

## B. An Award of 33 1/3% is Appropriate Under the Percentage Method

Pursuant to the percentage method, the court "first determines the actual monetary value conferred to the class by the settlement" and then "applies a benchmark percentage to this value." *Vassallo v. Goodman Networks, Inc.*, 2016 WL 6037847, at *3-4 (E.D. Tex. Oct. 14, 2016). After setting the benchmark, the Court applies the *Johnson* factors "to determine whether the percentage should be adjusted upward or downward." *Id.* at *4. Here, the Settlement is an all-cash settlement and thus the monetary value conferred to the Class is easily identified – $4,875,000.

---

[4] *See also* Report of Third Circuit Task Force: Court Awarded Attorney Fees, 108 F.R.D. 237, 246-49 (1985) (identifying deficiencies with lodestar method); *In re Educ. Testing*, 447 F. Supp. 2d 612, 628-69 (E.D. La. 2006) (discussing pervasive criticism of lodestar method).

While there is no general rule as to what constitutes a reasonable percentage, "district courts in the Fifth Circuit have awarded percentages of approximately one-third" as a reasonable contingency fee. *Burford v. Cargill, Inc.*, 2012 WL 5471985, at *2-3 (W.D. La. Nov. 8, 2012) (customary contingency fee "ranges from 33 1/3% to 50%"); *Al's Pals Pet Care v. Woodforest National Bank, NA*, 2019 WL 387409, at *4 (S.D.Tex. 2019) ("The fee represents one-third of the $15 million settlement fund, which is an oft-awarded percentage in common fund class action settlements in this Circuit").[5] Fees in the range of 25% to 33.34% "have been routinely awarded in class actions" and the average award is "around one-third of the recovery" regardless of which method was used. *Shaw*, 91 F. Supp. 2d at 972.[6]

In addition to finding awards of one-third or more reasonable, courts in the Fifth Circuit have routinely granted such awards. *See, e.g.*, *Halliburton*, 2018 WL 1942227, at *12 (awarding 33 1/3% of $100 million settlement fund and stating "[c]ompared to other common fund cases in this Circuit, Class Counsel is not asking for an unusually large or high fee."); *Singh v. 21Vianet*

---

[5] *Accord Jenkins*, 300 F.R.D. at 307 ("it is not unusual for district courts in the Fifth Circuit to award percentage of approximately one third"); *In re Combustion, Inc.*, 968 F. Supp. 1116, 1133 (W.D. La. 1997) ("district courts in the Fifth Circuit have awarded percentages of approximately one-third contingency fee").

[6] *See also Halliburton*, 2018 WL 1942227, at *12 (considering *Johnson* factors and holding that 33 1/3% contingency was "reasonable and fair."); *City of Omaha Police & Fire Ret. Sys. v. LHC Grp.*, 2015 WL 965696, at *4 (W.D. La. Mar. 3, 2015) (33 1/3% contingency "is common in this geographic area" and "has been approved in other common fund cases"); *Schwartz v TXU Corp.*, 2005 WL 3148350, at *27 (Nov. 8, 2005 N.D. Tex.) (collecting cases and stating that "courts throughout this Circuit regularly award fees of 25% and more often 30% or more of the total recovery under the percentage-of-the recovery method."); *In re Lease Oil Antitrust Litig. (No. II)*, 186 F.R.D. 403, 445 (S.D. Tex. 1999) ("Class counsel and experts both reported to the Court that it is customary in large, complex commercial litigation for contingency fees to be set at 33 to 40%."); *Garza v. Sporting Goods Properties, Inc.*, 1996 WL 56247, at *31 (W.D. Tex. Feb. 6, 1996) ("33 1/3% to 40% is the customary contingency fee range."); *In re Prudential-Bache Energy Income Partnerships Sec. Litig.*, No. 888, 1994 WL 202394, at *6 (E.D. La. May 18, 1994) ("Customary fees in common fund cases appear to range from 20% to 40%.").

*Group, Inc.*, 2018 WL 6427721, at *2 (E.D. Tex. Dec. 7, 2018) (awarding 33.3% of the $9 million

settlement fund); *Parmelee v. Santander Consumer USA Holdings Inc.*, 2019 WL 2352837, at *2

(N.D. Tex. June 3, 2019) (awarding 33 1/3% of the $9.5 million settlement fund); *Al's Pals Pet

Care*, 2019 WL 387409, at *4 (awarding one-third of the $15 million settlement fund); *Williams

v. Go Frac, LLC*, 2017 WL 3699350, at *2–3 (E.D. Tex. Apr. 26, 2017) (awarding 35% of the

settlement, finding the requested fee to be "fair and reasonable").[7] Accordingly, there is ample

Fifth Circuit precedent to support the requested fees of 33 1/3% of the Settlement Fund.

### C.   The Requested Fee is Appropriate Even Under The Lodestar Method

The requested fee is also reasonable when considering counsel's lodestar. Courts in this

Circuit typically perform a lodestar analysis only as a cross-check to confirm that the requested

fee is reasonable. *Vassallo*, 2016 WL 6037847, at *3. Courts recognize that the lodestar cross-

check should not displace a district court's primary reliance on the percentage method. *See*

---

[7] *See also Sims v. Shearson Lehman Bros., Inc.*, 1993 WL 646022, at *3 (N.D. Tex. 1993)
(approving $10 million fee - representing one-third of $30 million settlement); *Vassallo*, 2016 WL
6037847, at *4, *6 (awarding approximately 39.78% of common fund); *Jenkins*, 300 F.R.D. at 307
(awarding one third of settlement fund); *Miller v. Global Geophysical Services Inc., et al.*, No.
4:14-cv-00708, Order, ECF No. 137 (S.D. Tex. Jan. 14, 2016) (awarding one-third of settlement
fund); *Levitin v. A Pea in the Pod, Inc.*, No. 3:94-CV-0247, Final Judgment and Order of Dismissal
With Prejudice, ECF No. 213 (N.D. Tex. Mar. 27, 1998) (fee award equal to 40% of recovery); *In
re Shell Oil Refinery*, 155 F.R.D. 552, 575 (E.D. La. 1993) (awarding aggregate of one-third);
*Combustion*, 968 F. Supp. at 1136, 1142 (awarding 36% on a $127,396,000 settlement fund);
*Faircloth v. Certified Fin. Inc.*, 2001 WL 527489, at *9 (E.D. La. May 16, 2001) (awarding 33.34%
on a $1,534,321 settlement fund); *In re Vioxx Prod. Liab. Litig.*, 2013 WL 5295707, at *4–5 (E.D.
La. Sept. 18, 2013) (awarding 33%); *Barrera v. Nat'l Crane Corp.*, 2012 WL 242828, at *5 (W.D.
Tex. Jan. 25, 2012) (awarding one-third); *Branca v. First USA Paymentech, Inc.*, No. 3:97-CV-
2507-L, Order and Final Judgment, ECF No. 59 (N.D. Tex. Jan. 4. 2001) (fee equal to 33-1/3% of
total recovery); *Wolfe v. Anchor Drilling Fluids USA Inc.*, 2015 WL 12778393, *3 (S.D. Tex. Dec.
7, 2015) (awarding 40% of maximum settlement amount); *Kemp v. Unum Life Insurance Company
of America*, 2015 WL 8526689, at *9 (E.D. La. 2015) (awarding one-third of a $3,738,402
settlement fund); *Fairway Medical Center, L.L.C. v. McGowan Enterprises, Inc.*, 2018 WL
1479222, at *2 (E.D. La. 2018) (awarding one-third of the $3,250,000); *Campton v. Ignite
Restaurant Group, Inc.*, 2015 WL 12766537, at *3 (S.D. Tex. 2015) (awarding one-third of the
$1.8 million settlement fund).

*Halliburton*, 2018 WL 1942227, at *8-*9 ("The lodestar cross-check is usually applied 'to avoid windfall fees' . . . [D]istrict courts need not scrutinize counsel's billing records with the thoroughness required were the lodestar method applied by itself."). In this case, the lodestar method – whether used directly or as a cross-check on the percentage method – strongly demonstrates the reasonableness of the requested fee.

"Under [the lodestar] method, the court takes the recorded hours worked by the attorneys and multiplies them by a reasonable hourly rate," then applies a multiplier upward or downward. *Id.* at *9. Here, Plaintiff's Counsel have each submitted a declaration that includes a schedule identifying the lodestar of each firm (by individual, position, billing rate, and hours billed).[8] The cumulative time expended by Plaintiff's Counsel is 4,676 hours. ¶64. Based on current hourly rates, the resulting lodestar for the services is $2,892,252.[9]

"An attorney's requested hourly rate is *prima facie* reasonable when he requests that the lodestar be computed at his or her customary billing rate, the rate is within the range of prevailing market rates[,] and the rate is not contested." *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1087 (S.D. Tex. 2012) (citing cases). Here, Plaintiff's

---

[8] *See In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1176 (S.D. Cal. May 31, 2007) ("Here, counsel have provided sworn declarations from attorneys attesting to the experience and qualifications of the attorneys who worked on the case, the hourly rates, and the hours expended."); *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306–07 (3d Cir. 2005) ("[t]he district courts [ ] may rely on summaries submitted by the attorneys and need not review actual billing records"); *In re Se. Milk Antitrust Litig.*, 2013 WL 2155387, at *2 n.3 (E.D. Tenn. May 17, 2013).

[9] Courts use current rather historic rates, to "compensate for delay in receiving fees." *In re Enron Corp.*, 586 F.Supp.2d 732, 779 (S.D. Tex. 2008) (citing *Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989); *see also Slipchenko v. Brunel Energy, Inc.*, 2015 WL 338358, at *19 (S.D. Tex. Jan. 23, 2015) (similar); *Halliburton*, 2018 WL 1942227, at *13 (calculating rates using class counsels' firms' current rates).

Counsel's hourly rates are reasonable. As an initial matter, the rates are not contested. Further, Plaintiff's Counsel's hourly rates range from $650 - 960 for partners, $380 - 525 for associates, and $395 per hour for staff attorneys. Plaintiff's Counsel's rates have been approved by other Courts in this Circuit, and they are consistent with the rates charged by other firms engaged in plaintiffs side securities litigation. *See Singh v. 21Vianet Group, Inc.*, 2018 WL 6427721, at *2 (E.D. Tex. Dec. 7, 2018) (blended rate of $577.12); *Parmelee v. Santander Consumer USA Holdings Inc.*, 2019 WL 2352837, at *2 (N.D. Tex. June 3, 2019) (blended rate of $547.80); Order Awarding Attorneys' Fees and Reimbursement of Litigation Expenses, ¶ 5(f), *In re United Development Funding IV Sec. Litig.*, Case No. 3:15-cv-4030-M, (N.D. Tex. Feb. 21, 2019), ECF No. 86 (blended rate of $623.71); *Rahman v. Globalscape, Inc., et al.*, No. 5:18-cv-00753-XR (W.D. Tex. Dec. 18, 2018); *see also* Ex. 1 (law firm billing rate chart reflecting billable rates of defense firms and plaintiffs side securities litigation firms).

Moreover, courts within this Circuit, including this Court, have consistently approved rates similar to Plaintiff's Counsel's rates, finding that they are comparable to the rates charged by attorneys within the legal community in Texas. *See, e.g.*, *Brunel Energy*, 2015 WL 338358, at *19 (***2015*** "billing rates—ranging from $240–$260 for paralegals, $415–$530 for associates, and $635–$775 for partners—are generally comparable to the rates charged by the Texas-based defense counsel" whose "rates range from $275–$700 for associates and $575–$1,125 for partners."); *In re Arthrocare*, 2012 WL 12951371, at *5 (Sparks, J.) (finding, in ***2012***, that $500 per hour rate is reasonable and applying a multiplier to award fees based on a $750 per hour rate); *In re Heartland Payment*, 851 F. Supp. 2d at 1087 (finding reasonable ***2012*** rates ranging from $90/hour for paralegal work to $825/hour for co-lead counsel).

Furthermore, Plaintiff's Counsel's rates are in line with the rates charged by the defense counsel in this Action, Vinson & Elkins LLP, as well as other defense counsel. Ex. 1 (chart of defense firms' billing rates indicating Vinson & Elkins' rates ranging from $450 - $1,550 per hour).

Based on Plaintiff's Counsel's reasonable hourly rates, the requested fee equates to a fractional multiplier of 0.559 – *i.e.*, the requested fee is *less than* Plaintiff's Counsel's lodestar. Courts have routinely recognized that a fractional multiplier strongly supports finding that the fee award is reasonable. *See Halliburton*, 2018 WL 1942227, at *13 ("Because there is a strong presumption that the lodestar represents a reasonable fee . . ., the fact that Class Counsel seeks an award less than the lodestar supports finding that the fee award is reasonable."); *In re Heelys, Inc. Derivative Litig.*, 2009 WL 10704478, at *11 (N.D. Tex. Nov. 17, 2009) ("Because the Fees and Expenses Award results in a negative multiplier as compared to the actual time and labor undertaken by Derivative Plaintiffs' Counsel in the Derivative Action, the Fees and Expenses Award is demonstrably reasonable."); *In re FEMA Trailer Formaldehyde Prod. Liab. Litig.*, 2013 WL 1867117, at 3 (E.D. La. May 2, 2013) (approving the requested fee and finding that the "fees proposed are reasonable in that they are not unreasonably high by any standard" where the lodestar multiplier "will have a value of less than 1.0").[10] Accordingly, the requested fee is also reasonable under the lodestar method.

---

[10] Indeed, multipliers of "1 to 4 [are] typically approved by courts within [the Fifth] circuit" *Burford*, 2012 WL 5471985, at *6 n.1; *see also In re Enron Corp. Sec.*, 586 F. Supp. 2d 732, 751 & n.20 (S.D. Tex. 2008) (awarding percentage fee equal to a multiple of 5.2 times lodestar, and stating that "[m]ultiples from one to four are frequently awarded in common fund cases when the lodestar method is applied"); *DeHoyos v. Allstate Corp.*, 240 F.R.D. 263, 333 (W.D. Tex. 2007) (stating the average range of multiplies in class actions is 1.0 to 4.5 and "multipliers on large and complicated class actions have ranged from at least 2.26 to 4.5."); *Di Giacomo*, 2001 WL 34633373, at *11 (stating same and approving 5.3 multiplier); *Arthrocare Corp.*, 2012 WL 12951371, at *5 (Sparks, J.) (awarding fee equal to a multiple of 1.29 times lodestar).

V.     **FACTORS CONSIDERED BY FIFTH CIRCUIT COURTS CONFIRM THE REASONABLENESS OF THE REQUESTED FEE**

In *Johnson*, the Fifth Circuit stated that the district court should consider several factors in setting a fee award. These twelve *Johnson* factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill required to perform the legal service adequately; (4) the preclusion of other employment by the attorney because he accepted this case; (5) the customary fee for similar work in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Dell*, 669 F.3d at 642 n.25. In addition, courts may consider other factors, such as (1) public policy considerations, (2) plaintiffs' approval of the fee, and (3) the reaction of the class. Consideration of each of the relevant factors weighs in favor of the requested fee.

**A.     The *Johnson* Factors Confirm the Reasonableness of the Requested Fee**

Under either the percentage or lodestar method, the *Johnson* factors confirm that the requested fee award is reasonable.

**1.     The Time and Labor Required**

The time and effort required by Plaintiff's Counsel to effectively prosecute this Action and achieve the Settlement establish that the requested fee is justified. As detailed in the Block Declaration, Plaintiff's Counsel litigated the Action for nearly four years. ¶ 3. In the course of the litigation, Plaintiff's Counsel, among other things:

- conducted a detailed investigation into the allegedly wrongful acts, which entailed (i) a review and analysis of EZCORP, Inc.'s ("EZCORP") filings with the U.S. Securities and Exchange Commission ("SEC"), public reports and news articles concerning EZCORP, and transcripts of EZCORP's investors calls, (ii) retaining and working with private investigators who conducted interviews with former employees and other potential witnesses with relevant information, and (iii) consultation with accounting, damages and market efficiency experts (¶ 4);

- drafted the Amended Class Action Complaint ("AC") and Second Amended Class Action Complaint ("SAC"), based on the investigation (*Id*.);

- engaging in voluminous briefing related to Defendants' motions to dismiss the AC and SAC and largely prevailing against the motion do to dismiss the SAC (*Id*.);

- engaged in an substantial discovery, which entailed (i) serving document production requests to Defendants, (ii) issuing 17 subpoenas on third parties, (iii) reviewing approximately 49,000 documents produced by Defendants and third parties, (iv) conducing four fact depositions of EZCORP employees and other third party witnesses, (v) defending the Lead Plaintiff's deposition and his market efficiency expert's deposition; and (vi) collecting and producing documents in response to document production requests Defendants served on Lead Plaintiff (*Id*.);

- after uncovering new facts during discovery, filed the 94-page Third Amended Complaint ("TAC") reinstating previously dismissed claims (*Id*.);

- fully briefed twice and prevailed on the amended motion for class certification (*Id*.);

- submitted an appellate brief in the Fifth Circuit Court of Appeals opposing Defendants' interlocutory appeal of class certification (¶¶ 4, 6);

- drafted and exchanged two sets of mediations statements (¶ 4);

- participated in two separate, full-day mediation sessions before mediator Robert A. Meyer, Esq., of JAMS (*Id*.);

- engaged in follow-up negotiations to ultimately reach the Settlement (*Id*.);

- negotiated and drafted the Stipulation, including the exhibits thereto (*Id*.); and

- drafted the preliminary and final approval briefs.

The efforts that were required to complete these tasks, as well as others, were extensive and represented an immense risk, given the contingency-based nature of Plaintiff's Counsel's representation. ¶ 4. To date, Plaintiff's Counsel have spent over 4,676 hours litigating this case. ¶64. Plaintiff's Counsel has also incurred $258,570.95 in unreimbursed litigation expenses. ¶ 74.

The substantial time and effort devoted to this case by Plaintiff's Counsel was critical to obtaining the Settlement and, as a result, this factor supports the fee request.

### 2. Novelty and Difficulty of the Issues

The second *Johnson* factor also favors granting Plaintiff's Counsel's request for attorneys' fees. As a general matter, securities litigation is "notoriously difficult and unpredictable" and this case was no exception. *Maher v. Zapata Corp.,* 714 F.2d 436, 455 (5th Cir. 1983). Even before the PSLRA, courts had noted that "a securities case, by its very nature, is a complex animal." *Clark v. Lomas & Nettleton Fin. Corp.*, 79 F.R.D. 641, 654 (N.D. Tex. 1978), *vacated on other grounds*, 625 F.2d 49 (5th Cir. 1980). Following passage of the PSLRA, securities class actions have only become more difficult to prosecute. This is especially true in the Fifth Circuit. *See, e.g.*, *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 235 (5th Cir. 2009) (O'Connor, A.J., sitting by designation) ("To be successful, a securities class-action plaintiff must thread the eye of a needle made smaller and smaller over the years by judicial decree and congressional action."); *TXU Corp.*, 2005 WL 3148350, at *32 (finding approximately 90% of Fifth Circuit PSLRA pleading decisions have upheld dismissal of complaints and recognizing case was risky when lead counsel accepted retention); *In re OCA, Inc. Sec. & Derivative Litig.*, 2009 WL 512081, at *21 (E.D. La. Mar. 2, 2009) ("Moreover, Fifth Circuit decisions on causation, pleading and proof at the class certification stage make PSLRA claims particularly difficult in this circuit.").

Here, although Lead Plaintiff believes that the allegations of the TAC would ultimately translate into a strong case for liability, Lead Plaintiff is also aware that many risks were involved in proving his claims. Indeed, Lead Plaintiff faced numerous hurdles to establishing liability. As detailed in the Block Declaration and the Final Approval Motion, Defendants raised credible arguments challenging the sufficiency of the allegations with regard to materiality, scienter, and loss causation. Lead Plaintiff, of course, bears the burden of proving each of those three elements.

Thus, if Defendants prevailed on any of the elements, it would be fatal to Lead Plaintiff's claims. Even if only some of Defendants arguments were successful and Lead Plaintiff's claims remained, Defendants arguments regarding loss causation and damages further posed a significant threat that the total recoverable damages would be significantly reduced.

The procedural history of this Action further demonstrates the complexity and difficulty of this Action. As an initial matter, Defendants prevailed on two motions to dismiss before the TAC was allowed to proceed. Similarly, Defendants initially avoided Lead Plaintiff's class certification motion and the class was certified only after Lead Plaintiff filed an amended motion for class certification. Even though the Court ultimately granted class certification, the Fifth Circuit granted Defendants' petition for interlocutory appeal. At the time the Settlement was reached, briefing at the Fifth Circuit was pending and thus there was the real and significant risk that Lead Plaintiff would not be able to maintain class action status.

Even assuming that Lead Plaintiff defeated the interlocutory appeal, continued litigation would have involved substantial briefing, extensive and costly expert involvement, and the taking of numerous depositions. The costs and risks associated with litigating this Action to a verdict, not to mention the inevitable appeals, would have been high, and the process would require hundreds of hours of this Court's time and resources. This Action would easily require an additional 2-3 years before a recovery, if any, was obtained for the Class.

In sum, there can be no question that this Action was difficult and complex even for an inherently complex securities fraud class action. Consequently, this factor weighs in favor of approving the requested fee.

### 3. The Skill Required to Perform the Legal Service Adequately and the Experience, Reputation, and Ability of the Attorneys

The third and the ninth *Johnson* factors – the skill required and the experience, reputation, and ability of the attorneys – also support the requested fee award. As demonstrated by their respective firm resumes, Plaintiff's Counsel have many years of experience in complex federal civil litigation, particularly in litigation of shareholder, securities, and other class actions. *See* Block Exs. 2A, 3A. The Settlement is a direct result of Plaintiff's Counsel's skill and experience. Specifically, the attorneys' skills and efforts resulted in defeating Defendants' motion to dismiss in spite of the PSLRA heightened pleading standard, reinstating claims previously dismissed on scienter grounds after conducting discovery, obtaining class certification, and ultimately securing a highly favorable Settlement for the Settlement Class. *See TXU*, 2005 WL 3148350, at *30 (this factor weighs in favor of approval where despite the PSLRA restrictions, due to Lead Counsel's "diligent efforts . . . and their skill and reputations" they "were able to negotiate a very favorable" settlement).

Courts have also recognized that the quality of the opposition faced by plaintiff's counsel should be taken into consideration in assessing the quality of counsel's performance. *See TXU*, 2005 WL 3148350, at *30 ("The ability of plaintiffs' counsel to obtain such a favorable settlement for the Class in the face of such formidable legal opposition confirms the superior quality of their representation"). Here, Defendants were represented by highly experienced lawyers from Vinson & Elkins LLP and Ewell, Brown, Blanke & Knight LLP, prestigious and well-respected defense firms, which vigorously and ably defended the Action for nearly four years. ¶107. The standing of opposing counsel should be weighed in determining the fee, because such standing reflects the challenge faced by Lead Plaintiff's attorneys and "confirms the superior quality of their

representation." *TXU Corp.*, 2005 WL 3148350, at *30. Accordingly, these factors also support the requested fee.

### 4.      The Preclusion of Other Employment

Plaintiff's Counsel spent over 4,676 hours litigating this case on behalf of Lead Plaintiff and the Settlement Class.[11] ¶ 64. This is time counsel could have devoted to other potentially more lucrative matters. This is evident from the fact that, as discussed above, the requested fee results in a fractional multiplier. Accordingly, this factor further supports the requested fee. *See Burford*, 2012 WL 5471985, at *3 ("The affidavits of Class Counsel prove that while this case did not preclude them from accepting other work, they were often times precluded from working on other cases due to the demands of the instant matter. . . . This factor weighs in favor of a substantial fee award.").

### 5.      The Customary Fee for Similar Work in the Community

As discussed in greater detail above, the 33 1/3% requested fee is well within the range of customary fees. *See, e.g.*, *Garza*, 1996 WL 56247, at *31 ("33 1/3% to 40% is the customary contingency fee range."); *Burford*, 2012 WL 5471985, at *3 (customary contingency fee "ranges from 33 1/3% to 50%"); *TXU Corp.*, 2005 WL 3148350, at *31 ("The vast majority of Texas federal courts . . . have awarded fees of 25%–33% in securities class actions."). Therefore, this factor supports approving the requested fee.

### 6.      Whether the Fee is Fixed or Contingent

The contingent nature of the fee requested by counsel and the substantial risk posed by the litigation also weigh in favor of awarding the requested fee. For nearly four years, Plaintiff's

---

[11] If the Settlement is approved, additional time will be spent ensuring that the Settlement is properly distributed to the Settlement Class.

Counsel undertook this class action on a contingency-fee basis, carrying both the substantial out-of-pocket costs of litigation and the risk of not being paid for their services or reimbursed for their costs in connection with the litigation. As the Fifth Circuit has stated, "[l]awyers who are to be compensated only in the event of victory expect and are entitled to be paid more when successful than those who are assured of compensation regardless of result." *Jones v. Diamond*, 636 F.2d 1364, 1382 (5th Cir. 1981), *overruled on other grounds by Int'l Woodworkers of Am., AFL-CIO & Its Local No. 5-376 v. Champion Int'l Corp.*, 790 F.2d 1174 (5th Cir. 1986).

Further, the risk of loss in this case was not illusory. As discussed above, securities fraud cases are extremely complex, subject to the PSLRA's heightened pleading standards, and success is never assured – especially in the Fifth Circuit. *See* Section 2, above. This case was no different. Plaintiff's Counsel faced significant challenges in terms of establishing liability and damages. ¶¶ 47-51. Had Lead Plaintiff won at trial, there was no guarantee that a jury would award a judgment greater than the Settlement, Lead Plaintiff would have faced challenges enforcing a judgment, and there was still a risk of loss on appeal. Consequently, this factor weighs in favor of approving the fee request. *See Jenkins*, 300 F.R.D. at 309 ("[r]ecognizing the contingent risk of nonpayment in [class action] cases, courts have found that class counsel ought to be compensated . . . for risk of loss or nonpayment").

### 7.    Time Limitations Imposed by the Client or the Circumstances

This factor does not pertain to this case.

### 8.    The Amount Involved and the Results Obtained

Another *Johnson* factor is the "overall degree of success achieved." *Roussel v. Brinker Int'l, Inc.*, 2010 WL 1881898, at *3 (S.D. Tex. Jan. 13, 2010), aff'd, 441 F. App'x 222 (5th Cir. 2011). Here, Lead Plaintiff's damages expert estimates that if Lead Plaintiff overcame ***all*** the obstacles to establishing liability, and completely prevailed on ***all*** his loss causation and damages

theories, the $4.875 million settlement would equate to approximately 7.9% of the total *maximum*

damages *potentially* available in this Action. ¶ 56. However, Defendants raised credible arguments

that Lead Plaintiff could not prove his loss causation allegations. If Defendants had prevailed on

these arguments, the total *maximum* damages available would be $30 million, in which case, the

Settlement represents a recovery of approximately 16.25% of the Settlement Class's maximum

total damages. A recovery within the range of 7.9%-16.25% is well above the average recovery in

similar situations. *See* Kendall Declaration in Support of Motion for Preliminary Approval (ECF

No. 138), Ex. D (Stefan Boettrich and Svetlana Starykh, *Recent Trends in Securities Class Action*

*Litigation: 2018 Full-Year Review* (NERA Jan. 29, 2019) at p. 36, Fig. 28)); *see also In re Enron*

*Corp. Sec., Derivative & ERISA Litig.*, 586 F. Supp. 2d 732, 804 (S.D. Tex. 2008) ("The typical

recovery in most class actions generally is three-to-six cents on the dollar."). Accordingly, there

can be no doubt that Plaintiff's Counsel have achieved a highly favorable result and that this factor

weighs in favor of approving the requested feel.

### 9.    The Undesirability of the Case

The undesirability of a case can be a factor in justifying the award of a requested fee.

Securities cases have been recognized as "undesirable" due to the elevated risks, required lengthy

investigations through informal discovery, high out-of-pocket costs, and a possibility of no

recovery. *See Halliburton*, 2018 WL 1942227, at *12 ("[T]he 'risk of non-recovery' and

'undertaking expensive litigation against . . . well financed corporate defendants on a contingent

fee' has been held to make a case undesirable, warranting a higher fee."). This was never an easy

case and the risk of no recovery was always high. *See In re Xcel Energy, Inc., Sec., Deriv. &*

*"ERISA" Litig.*, 364 F. Supp. 2d 980, 1003 (D. Minn. 2005) ("[t]he court needs to look no further

than its own order dismissing [part of] the . . . litigation to assess the risks involved."). When

Plaintiff's Counsel undertook representation of Lead Plaintiff and the putative class in this Action,

it was with the knowledge that they would have to spend substantial time and money and face significant risks without any assurance of being compensated for their efforts. In addition, there was only one other movant for lead plaintiff (Dkt. No. 12), further demonstrating the "undesirability" of the case. Thus, this factor weighs in favor of approval.

### 10. Nature and Length of the Professional Relationship with the Client

Block & Leviton has represented Lead Plaintiff since shortly before filing the motion for appointment for lead plaintiff on his behalf. Block Decl. Ex. 5 ("Rooney Decl.") ¶ 3. Since then, Lead Plaintiff has been actively involved in this litigation and approved and supports the Settlement. *Id.* ¶ 5.

### 11. Awards in Similar Cases

As discussed above, the requested fee of 33 1/3% is consistent with awards granted in class action cases. Hence, this factor supports the requested fee award.

*** 

In sum, all of the applicable *Johnson* factors support Lead Counsel's request for attorneys' fees of 33 1/3% of the Settlement Fund.

### B. Other Factors Considered by Courts Further Support the Requested Fee

Consideration of additional factors Courts examine further confirms that the requested fee award is fair and reasonable under both the percentage and lodestar methods.

### 1. Public Policy Considerations Support the Requested Fee

A strong public policy concern exists for rewarding firms for bringing successful securities litigation. The Supreme Court has emphasized that private securities actions such as this provide "'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action.'" *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (citation omitted); *see also Tellabs*, 551 U.S. at 313. Here, that public policy was advanced,

as Plaintiff's Counsel achieved a meaningful recovery for investors, notwithstanding the absence of any recovery for EZCORP investors from the SEC or any other regulatory agency.

### 2.    Lead Plaintiff Has Approved the Requested Fee

Lead Plaintiff played an active role in the prosecution and resolution of the Action and has sound basis for assessing the reasonableness of the fee request. Lead Plaintiff fully supports and approves the fee request. Rooney Decl. ¶ 8. Lead Plaintiff's endorsement of the fee request in this PSLRA action supports its approval. *See e.g., In re Veeco Instruments Inc. Sec. Litig.*, 2007 WL 4115808, at *8 (S.D.N.Y. Nov. 7, 2007) ("public policy considerations support the award in this case because the Lead Plaintiff . . . conscientiously supervised the work of lead counsel and has approved the fee request"); *In re Lucent Techs., Inc. Sec. Litig.*, 327 F. Supp. 2d 426, 442 (D.N.J. 2004) ("[s]ignificantly, the Lead Plaintiffs, . . . have reviewed and approved Lead Counsel's fees and expenses request").

### 3.    The Reaction of the Class Supports the Requested Fee

The reaction of the Class also supports the requested fee. As of October 31, 2019, the Claims Administrator has disseminated the Notice to 13,741 potential Settlement Class Members informing them of, among other things, Lead Counsel's intention to apply to the Court for an award of attorneys' fees of up one third of the Settlement Fund and reimbursement of up to $300,000 in expenses. *See* Notice ¶¶ 5, 77; Ex. 1 (Cavallo Decl.), ¶ 7. To date, no objections have been received, thus favoring approval of the requested fee.[12] *See, e.g., Go Frac, LLC*, 2017 WL 3699350, at *2–3 (awarding 35% of the settlement where class members had notice of the requested fees and did not object); *In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 515 (W.D. Pa. 2003) ("the absence

---

[12] The deadline for potential Settlement Class Members to object is November 15, 2019. Plaintiff's Counsel will address any objections that may be received in their reply papers to be filed with the Court.

of substantial objections by other class members to the fee application supports the reasonableness of Lead Counsels' request").

## VI.   PLAINTIFF'S COUNSEL'S EXPENSES ARE REASONABLE AND WERE NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED

"Expenses and administrative costs expended by class counsel are recoverable from a common fund in a class action settlement." *Halliburton*, 2018 WL 1942227, at *14. Here, Plaintiff's Counsel expended $258,570.95 in out-of-pocket costs, which are divided into categories and itemized in the declarations submitted by each individual firm. ¶ 74. These expenses are well-documented, based on the books and records maintained by each firm, and reflect the costs of prosecuting this litigation. Moreover, these costs were reasonable and necessary. They include, among other things: fees for experts; online legal research costs; an online document review platform, travel and lodging expenses; copying; mail; telephone; and deposition transcripts. *Id.* Courts routinely permit the reimbursement of similar expenses. *Halliburton*, 2018 WL 1942227, at *14. Additionally, the Notice informed potential Class Members that Lead Counsel would seek reimbursement of expenses up to $300,000, and, to date, no objection to the expense application has been filed. The requested expenses should, therefore, be awarded. *See Go Frac, LLC*, 2017 WL 3699350, at *2–3 (awarding expenses in the absence of objections).

## VII.  THE COURT SHOULD AWARD LEAD PLAINTIFF HIS COSTS AND EXPENSES PURSUANT TO 15 U.S.C. §78U-4(A)(4)

The PSLRA, 15 U.S.C. §78u-4(a)(4), permits Lead Plaintiff to recoup litigation costs (including lost wages) incurred as a result of serving as lead plaintiff in the Action and ensuring that the class was adequately represented. Reimbursement of such costs is allowed because it "encourages participation of plaintiffs in the active supervision of their counsel." *Varljen v. H.J. Meyers & Co., Inc.*, 2000 WL 1683656, at *5 n.2 (S.D.N.Y. Nov. 8, 2000); *Burford*, 2012 WL 5471985, at *6. Here, Lead Plaintiff respectfully requests modest reimbursement in the amount of

$7,500 for the time he has expended on behalf of the Settlement Class. ¶ 82, Rooney Decl. ¶ 11. Such a request is fair and reasonable given Lead Plaintiff's efforts on behalf of the Settlement Class. Indeed, Mr. Rooney fulfilled his duties as Lead Plaintiff by: (a) regularly communicating with B&L attorneys regarding the posture and progress of the case; (b) reviewing pleadings, briefs and court orders filed in the Action and discussing them with counsel; (c) responding to Defendants' requests for discovery, including the collection and production of documents and responding to written discovery; (d) traveling internationally from Ireland to Boston to be deposed by Defendants' counsel; (e) consulting with his attorneys regarding the settlement negotiations; and (f) evaluating and approving the proposed Settlement. ¶ 82, Rooney Decl. ¶ 5. In light of the substantial work done by Lead Plaintiff, the amount requested is eminently reasonable, and is consistent with, or lower than, awards in other cases. *See J.C. Penney Co.*, 2017 WL 6590976, at *6 (awarding compensation awards pursuant to the PSLRA of $10,200 and $1,500); *Global Geophysical Services Inc., et al.*, No. 4:14-cv-00708, Order, ECF No. 137 (S.D. Tex. Jan. 14, 2016) (awarding $15,000 to Lead Plaintiff pursuant to PSLRA); *Simons v. Dynacq Healthcare, Inc.*, No. H-03-5825 (S.D. Tex Jan. 10, 2007) (awarding two Lead Plaintiffs an aggregate of $7,077 pursuant to the PSLRA). Accordingly, Lead Plaintiff respectfully requests that the Court grant his request.[13]

## VIII.   CONCLUSION

For the foregoing reasons, Lead Counsel respectfully requests the Court grant the Motion.[14]

---

[13] *See also In re BankAmerica Corp. Sec. Litig.*, 210 F.R.D. 694, 699 (E.D. Mo. 2002) (approving award to class representative not to exceed $20,000); *In re Xcel Energy, Inc., Sec. Litig. Deriv. & "ERISA" Litig.*, 364 F. Supp. 2d 980, 1000 (D. Minn. 2005) ($100,000 collectively awarded to lead plaintiff group as reimbursement).

[14] A revised proposed Order granting the requested relief will be submitted with Lead Counsel's reply papers after the deadline for objecting to the motion has passed.

Dated: November 1, 2019

By: _/s/ Joe Kendall_
**Kendall Law Group, PLLC**
Joe Kendall (SBN 11260700)
3811 Turtle Creek Blvd., Suite 1450
Dallas, TX 75219
(214) 744-3000 phone
(214) 744-3015 fax
jkendall@kendalllawgroup.com

_Liaison Counsel for the Class_

Jeffrey C. Block, _pro hac vice_
Jacob A. Walker, _pro hac vice_
**Block & Leviton LLP**
155 Federal Street, Suite 400
Boston, Massachusetts 02110
(617) 398-5600 phone
jeff@blockesq.com
jake@blockesq.com

_-and-_

Lionel Z. Glancy, _pro hac vice_
Joseph D. Cohen, _pro hac vice_
**Glancy Prongay & Murray LLP**
1925 Century Park East, Suite 2100
Los Angeles, California 90067
(310) 201-9150 phone
lglancy@glancylaw.com
jcohen@glancylaw.com

_Class Counsel_

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was served upon its filing via this Court's CM/ECF

system on this 1st day of November, 2019 to all counsel of record.


By: _s/ Joe Kendall_
Joe Kendall