# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS

*In re EZCORP, Inc. Securities Litigation*

Master File No. 1:15-cv-00608-SS

**DECLARATION OF JEFFREY C. BLOCK IN SUPPORT OF: (I) LEAD PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION OF SETTLEMENT PROCEEDS; AND (II) LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES**

**TABLE OF EXHIBITS TO DECLARATION**

| EX. | TITLE |
|:---:|:---|
| 1 | Declaration of Lance Cavallo Regarding (A) Mailing of the Notice and Claim Form; (B) Publication of Summary Notice; and (C) Report on Requests for Exclusion Received to Date |
| 2 | Declaration of Jeffrey C. Block in Support of Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses Filed on Behalf of Block & Leviton LLP |
| 3 | Declaration of Lionel Z. Glancy in Support of Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses Filed on Behalf of Glancy Prongay & Murray LLP |
| 4 | Declaration of Joe Kendall in Support of Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses Filed on Behalf of The Kendall Law Group, PLLC |
| 5 | Declaration John Rooney in Support of: (1) Plaintiff's Motion for Final Approval of Class Action Settlement and Plan of Allocation; and (2) Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses |

I, Jeffrey C. Block, Esq., pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1.      I am admitted to practice law before all of the courts of the Commonwealth of Massachusetts and I am admitted *pro hac vice* in this Action. I am the founding partner of the law firm Block & Leviton LLP ("B&L"), counsel of record for Lead Plaintiff John Rooney ("Lead Plaintiff"), and, along with Glancy Prongay & Murray LLP ("GPM"), Court-appointed Lead Counsel for the Settlement Class.[1] I respectfully submit this declaration in support of (a) Lead Plaintiff's motion for final approval of the settlement of this action, which provides for a cash payment of $4,875,000 (the "Settlement"), and the Plan of Allocation of the Settlement proceeds; and (b) Lead Counsel's application for attorneys' fees in the amount of 33.33% of the Settlement Fund, and reimbursement of Plaintiff's Counsel's out-of-pocket expenses in the amount of $258,570.95, plus $7,500 to Lead Plaintiff pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA") for his costs and expenses incured in connection with his representation of the Settlement Class.

2.      I have personally participated in, overseen, and monitored the prosecution of this Action, and have otherwise been kept informed of developments in this litigation by attorneys working with me and under my supervision. Thus, if called upon, I can testify to the matters set forth herein.

## I.      PRELIMINARY STATEMENT

3.      After nearly four years of hard-fought litigation and vigorous arm's-length negotiations with the assistance of a distinguished private mediator, Robert A. Meyer, Esq., of JAMS, Lead Plaintiff has achieved a substantial and valuable Settlement of this Action, which this

---

[1] Unless otherwise noted, capitalized terms have the meanings ascribed to them in the Stipulation and Agreement of Settlement dated July 18, 2019 (ECF No. 137-1) (the "Stipulation").

Court preliminarily approved on August 5, 2019 in its Order Preliminarily Approving Settlement and Providing For Notice ("Preliminary Approval Order"). ECF No. 139. For the reasons set forth below, Lead Counsel believes that final approval of the Settlement and Plan of Allocation is warranted and that the application for an award of attorneys' fees and expenses should be granted.

4.     This case has been vigorously litigated from the outset. The Settlement was achieved only after Lead Counsel, among other things: (i) conducted a comprehensive investigation into the allegedly wrongful acts, which included, among other things, (a) a detailed review and analysis of EZCORP, Inc.'s ("EZCORP" or the "Company") filings with the U.S. Securities and Exchange Commission ("SEC"), public reports and news articles concerning EZCORP, and transcripts of EZCORP's investor calls, (b) interviews with former employees and other potential witnesses with relevant information, and (c) consultation with accounting, damages and market efficiency experts; (ii) drafted three consolidated complaints, including the operative 94-page Third Amended Class Action Complaint for Violations of the Federal Securities Laws (the "Complaint" or "TAC"), based on the foregoing research and investigation; (iii) engaged in voluminous briefing related to Defendants' motions to dismiss the Amended Class Action Complaint ("Amended Complaint") and Second Amended Class Action Complaint ("SAC"); (iv) engaged in substantial discovery, which included reviewing 38,549 documents produced by Defendants and 10,079 documents produced by third parties upon the issuance of 17 subpoenas, responding to Defendants' discovery requests, defending the Lead Plaintiff's deposition and the deposition of Plaintiff's market efficiency expert and taking four fact depositions of EZCORP and other third party witnesses; (v) fully briefed class certification twice; (vi) drafted a substantive opposition brief to Defendants' petition to the United States Court of Appeals for the Fifth Circuit for permission to appeal the Court's order granting class certification on February 19, 2019, under

Federal Rule of Civil Procedure 23(f); (vii) drafted and exchanged two sets of extensive mediation statements, including numerous exhibits; (viii) participated in two separate, full-day mediation sessions before mediator Robert A. Meyer, Esq., of JAMS; and (ix) engaged in extensive negotiations regarding the terms of the proposed Settlement. The efforts that were required to complete these tasks were extensive and represented immense risk given the contingency-based nature of Lead Counsel's representation.

5.      In view of the foregoing, there is no question that the Settlement is the result of negotiations by counsel who possessed a full understanding of both the strengths and weaknesses of their respective cases and takes into consideration the significant risks specific to this Action. When balanced against the significant risks Lead Plaintiff faced in bringing the Action to trial, the overall amount of potential damages involved and defending a favorable verdict against appeals, the Settlement of $4,875,000 represents an excellent result for the Settlement Class, especially considering the circumstances of this case as discussed herein. Substantial investigation, legal research and litigation to date informed Lead Counsel that, while they believed the case was meritorious, there were also weaknesses that had to be carefully evaluated in determining what course of action was in the best interests of the Class (*i.e.*, whether to settle and on what terms, or to continue to litigate through summary judgment, and a trial on the merits). As set forth in further detail below, despite the fact that Lead Plaintiff's allegations and claims were supported by legal authority, expert opinion, and information discovered during extensive pre-trial investigation and discovery, the specific circumstances involved here presented uncertainties with respect to Lead Plaintiff's ability to prevail through summary judgment and trial, and, even in the event of success at trial, to defend a successful verdict against appeal.

6.      Indeed, at the time the proposed Settlement was reached, the Fifth Circuit had granted Defendants' petition for leave to file an interlocutory appeal of the class certification order under Fed. R. Civ. P. 23(f). ECF No. 127. The interlocutory appeal process would have involved substantial briefing, time, and risk that the Court's order granting class certification would be reversed in whole or in part. Moreover, even if the Fifth Circuit upheld class certification, the parties would then continue discovery, brief summary judgment, and prepare for trial. The costs and risks associated with litigating this Action to a verdict, not to mention through the inevitable appeals, would have been high, and the process would require hundreds of hours of this Court's time and resources. If Defendants' interlocutory appeal moved forward, and even if Defendants were unsuccessful, and this case were taken to trial, this Action would easily require an additional 2-3 years before a recovery, if any, was obtained for the Settlement Class.

7.      Further evidence that the Settlement represents an excellent result for the Settlement Class is the fact that, as of the filing of this Declaration, to date, no Settlement Class Members have objected to the Settlement or to opted out of the Settlement Class.

8.      Likewise, the Plan of Allocation of the Net Settlement Fund, which was developed with the assistance of Lead Plaintiff's expert on loss causation and damages, should be approved as it equitably distributes the proceeds of the Settlement among Settlement Class Members. The Plan of Allocation will ensure that each Authorized Claimant will receive his, her, or its *pro rata* share of the Net Settlement Funds. Specifically, an Authorized Claimant's *pro rata* share shall be the Authorized Claimant's Recognized Claim divided by the total of Recognized Claims of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund. Because the Plan of Allocation does not provide preferential treatment to any Settlement Class member,

segment of the Settlement Class, or to Lead Plaintiff, each Authorized Claimant will be treated fairly and equally. To date, no objections to the Plan of Allocation have been filed.

9.      Finally, the requested attorneys' fees of 33.33% of the Settlement Fund and reimbursement of Litigation Expenses in the amount of $266,070.95, are reasonable and appropriate. This fee request is within the range of fee percentages frequently awarded in this type of action and, under the particular facts of this case, is fully justified in light of the substantial benefits that Plaintiff's Counsel[2] conferred on the Settlement Class, the risks they undertook, the quality of their representation, the nature and extent of their legal services, and the fact that they pursued the case, even though this considerable all-cash Settlement was far from guaranteed at its outset. Plaintiff's Counsel have expended considerable time and effort prosecuting the Action on a fully contingent basis and have advanced litigation and investigative expenses in the expectation that, as is customary, they will be paid a percentage of the common fund created by their efforts as attorneys' fees and receive payment for their expenses. As with the Settlement, no Settlement Class Member has objected to Lead Counsel's request for attorneys' fees and reimbursement of Litigation Expenses.

10.      Because this Declaration is submitted in support of a Settlement, it is inadmissible in any subsequent proceeding, other than in connection with the Settlement. In the event that the Settlement is not approved by the Court, this Declaration and the statements contained herein are without prejudice to Lead Plaintiff's position on the merits of this Action.

---

[2] Plaintiff's Counsel consists of B&L, GPM, and The Kendall Law Group, PLLC ("Liaison Counsel").

11.     The following is a summary of the nature of the Settlement Class's claims, the principal events that occurred during the course of the litigation, and the legal services that Plaintiff's Counsel provided.

## II.     FACTUAL BACKGROUND

12.     In a series of disclosures beginning on April 30, 2015 and ending on October 20, 2015, EZCORP revealed that the Company would have to restate its financial results due to accounting irregularities at its subsidiary Grupo Finmart (the "Restatement"). ¶ 3.[3]

13.     EZCORP restated due to two accounting issues: the Asset Sales issue and Non-Performing Loans issue. ¶¶ 7, 13.

### A.     The Asset Sales

14.     As to the Asset Sales, the Complaint alleges EZCORP represented that sales of portions of Grupo Finmart's loan portfolio were true sales and properly recorded as revenue, specifically representing in its earnings releases that the Grupo Finmart third-party debt was "non-recourse to EZCORP." ¶¶ 63, 80, 86, 94.

15.     The Complaint also alleges Defendant Kuchenrither also expressly told research analysts and investors on conference calls that the loan sales were "true asset sales," and that "the risk associated with the loans passed to the buyer of the loans." ¶¶ 11, 89.

16.     The Complaint alleges these statements were all false when made. Indeed, EZCORP belatedly admitted in statements associated with its Restatement that because Grupo Finmart retained certain control rights, the loan sales were actually *with* recourse to EZCORP and thus should not have been recorded as true sales. ¶¶ 112, 119, 120.

---

[3] All (¶_) citations refer to the TAC, the operative complaint in this Action. ECF No. 106.

**B.     The Non-Performing Loans**

17.     With respect to the Non-Performing Loans, the Complaint alleges EZCORP overstated or prematurely recognized revenue from "Consumer loan fees and interest" and understated or improperly delayed recognition of "Consumer loan bad debt" expense from the second quarter of fiscal 2012 through the first quarter of 2015. ¶ 130.

18.     The Complaint further alleges that this allowed Defendants to manipulate the ratio of bad debt expense to loan fees and interest, an important metric for investors because it (a) measures how efficiently the Company can create income from making loans while keeping bad debt expense to a minimum, and (b) measures how well the Company collects on its loans as compared to total income generated from such loans. ¶ 132.

19.     The Complaint alleges that from 1Q 2013 to 1Q 2015, the Restatement resulted in an overall reduction in operating income (income from continuing operations before income taxes) of 21.5% and a total overstatement of 27.3%. ¶ 152.

## III.    PROCEDURAL HISTORY AND CLAIMS

20.     On July 20, 2015, Wu Huang initiated this Action by filing a Class Action Complaint for Violations of the Federal Securities Laws in the Western District of Texas, Austin Division, styled *Huang v. EZCORP, Inc., et al.*, Case No. 1:15-cv-608. ECF No. 1. The Action was assigned to the Honorable Sam Sparks, District Judge.

21.     On August 14, 2015, Plaintiff John Rooney filed a related action captioned *Rooney v. EZCORP, Inc.*, *et al.*, Case No. 1:15-cv-700.

22.     By Order dated November 3, 2015, Judge Sparks appointed Wu Huang and John Rooney as Co-Lead Plaintiffs, approved their selection of Glancy Prongay & Murray LLP and Block & Leviton LLP as Co-Lead Counsel and The Kendall Law Group, PLLC as Liaison

Counsel, and ordered that the cases be consolidated and recaptioned as *In re EZCORP, Inc. Securities Litigation*, No. 1:15-cv-608-SS. ECF No. 24.

23.     On January 11, 2016, Huang and Rooney filed their Amended Complaint, asserting claims against all Defendants under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, and against Defendant Mark E. Kuchenrither under Section 20(a) of the Exchange Act. ECF No. 29.

24.     On February 25, 2016, Defendants filed a motion to dismiss the Amended Complaint. ECF No. 32.

25.     After the motion was fully briefed and the Court held oral argument, the Court granted Defendants' motion to dismiss, without prejudice by Order dated October 18, 2016. ECF No. 44.

26.     Huang and Rooney filed their SAC on November 4, 2016, again asserting claims against all Defendants under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, and against Defendant Kuchenrither under Section 20(a) of the Exchange Act. ECF No. 47. Specifically, Plaintiffs alleged that Defendants made material misstatements and omissions in connection with the sale of six Grupo Finmart loan receivables, including that the loan sales were "true asset sales" and "non-recourse to EZCORP." Plaintiffs alleged that, in fact, the loan sales were *with* recourse to EZCORP, should not have been recorded as sales, and, thus, resulted in EZCORP improperly recognizing revenue on the sales. Plaintiffs also alleged that EZCORP failed to properly write down Grupo Finmart's non-performing loans. Finally, Plaintiffs alleged that as a result of these false and misleading statements, the price of EZCORP's common stock was artificially inflated during the Class Period and declined when the truth was revealed.

27.     On December 5, 2016, Defendants filed and served a motion to dismiss the SAC. Following briefing on Defendants' motion, by Order dated May 8, 2017, the Court granted the motion to dismiss in part and denied it in part. The Court concluded that Plaintiffs' allegations concerning Grupo Finmart's non-performing loans failed to raise a strong inference of scienter, but it permitted Plaintiffs' claims regarding the Grupo Finmart loan sales to proceed. ECF No. 54.

28.     Defendants filed answers on June 9, 2017. ECF Nos. 64-65.

29.     Thereafter, the Parties agreed to participate in mediation to attempt to reach a resolution of the Action. In advance of the mediation, the Parties prepared and exchanged detailed mediation statements. On July 20, 2017, the Parties participated in a full-day mediation session before Robert A. Meyer, Esq. of JAMS, which ended without any agreement being reached.

30.     On December 21, 2017, the Court granted plaintiff Wu Huang's motion to withdraw as Co-Lead Plaintiff. ECF No. 75.

31.     On January 31, 2018, Lead Plaintiff John Rooney moved for class certification (ECF No. 77)[4] and for leave to file a Third Amended Complaint ("TAC") (ECF No. 83).

32.     On July 26, 2018, the Court granted Lead Plaintiff leave to file the TAC. ECF No. 102.

33.     The proposed TAC incorporated additional allegations regarding Defendants' purported failure to properly account for non-performing payroll loans—a theory the Court had previously dismissed on scienter grounds—based on documentation obtained during discovery.

34.     Defendants filed answers to the TAC on August 3, 2018. ECF Nos. 109-10.

---

[4] During the class certification process, Lead Plaintiff John Rooney and his market efficiency expert were both deposed by counsel for Defendants.

35.     Following the Court's decision to grant the motion to amend, the Court instructed the Parties to re-brief class certification. ECF No. 102.

36.     On August 31, 2018, Lead Plaintiff filed an amended motion for class certification. ECF No. 113.

37.     The Parties again attempted to resolve the Action through mediation. In advance of another full-day mediation session on November 1, 2018, the Parties again exchanged detailed briefs concerning liability and damages issues. The session ended without an agreement.

38.     By Order dated February 19, 2019, the Court granted Lead Plaintiff's amended motion for class certification, certifying a class consisting of "all persons and entities that purchased or otherwise acquired EZCORP, Inc. Class A common stock between January 28, 2014 and October 20, 2015, inclusive, and were damaged thereby." The Court further appointed John Rooney as Class Representative, appointed Lead Counsel as Class Counsel, and appointed The Kendall Law Group, PLLC as Liaison Counsel. ECF No. 120.

39.     On March 25, 2019, the Fifth Circuit granted Defendants leave to file an interlocutory appeal of the class certification order under Fed. R. Civ. P. 23(f). ECF No. 127.

40.     While Defendants' appeal was pending before the Fifth Circuit, the Parties continued to conduct settlement discussions with each other. Those discussions ultimately resulted in an agreement in principle to settle the Action, which the Parties memorialized in a Memorandum of Understanding ("MOU") executed on May 30, 2019. The Parties then negotiated the Stipulation and supporting documents. Pursuant to the MOU and the Stipulation, the Parties reached an agreement to settle and release all claims asserted against Defendants in the Action in return for a cash payment of $4,875,000 by or on behalf of Defendants for the benefit of the Settlement Class.

41.     At the time the MOU was executed, Lead Counsel had engaged in substantial discovery, including the review and analysis of 38,549 documents produced by Defendants, the issuance of 17 subpoenas on third parties (who produced 10,079 documents that were reviewed and analyzed by Lead Counsel), and the taking of four fact depositions of EZCORP employees and other third party witnesses.

## IV.   SUMMARY OF THE SETTLEMENT, PLAN OF ALLOCATION & NOTICE PROGRAM

42.     The Settlement consists of $4,875,000 in cash, plus interest earned thereon. The "Settlement Class" or "Class" is defined as all persons and entities that purchased or otherwise acquired EZCORP, Inc. Class A common stock between January 28, 2014 and October 20, 2015, inclusive, and were damaged thereby. Excluded from the Settlement Class are Defendants; the officers and directors of the Company during the Class Period (the "Excluded Officers and Directors"); members of the Immediate Families of the Individual Defendant and of the Excluded Officers and Directors; any entity in which any Defendant, any Excluded Officer or Director, or any of their respective Immediate Family members had during the Settlement Class Period and/or has a controlling interest; and the legal representatives, heirs, successors or assigned of any excluded person or entity, in their respective capacity as such.

43.     As set forth above, the Plan of Allocation is designed to fairly and rationally allocate the Settlement proceeds among Settlement Class Members. Under the Plan of Allocation, each Authorized Claimant will receive his, her, or its *pro rata* share of the Net Settlement Fund. Specifically, an Authorized Claimant's *pro rata* share shall be the Authorized Claimant's Recognized Claim divided by the total of Recognized Claims of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund. The Plan of Allocation does not provide

preferential treatment to any Settlement Class Member, segment of the Settlement Class, or to Lead Plaintiff and is thus fair, reasonable, and adequate.

44.     Pursuant to the Court's Preliminary Approval Order, Lead Counsel, through the Claims Administrator, implemented a comprehensive notice program whereby notice was given to members of the Settlement Class by Postcard Notice, which directed potential Settlement Class Members to the Claims Administrator's website, which contains information regarding the Settlement, the detailed Notice, and a Claim Form, along with instructions on how to submit a Claim Form or objection or request exclusion from the Settlement. *See* Declaration of Lance Cavallo Regarding (A) Mailing of the Notice and Claim Form; (B) Publication of Summary Notice; and (C) Report on Requests for Exclusion Received to Date (the "Cavallo Declaration" or "Cavallo Decl."), ¶ 10 (attached hereto as Exhibit 1). As of October 30, 2019, copies of the Postcard Notice was disseminated to 13,741 potential Settlement Class Members and nominees. *Id.* at ¶ 7. Pursuant to the Court's Preliminary Approval Order, Summary Notice was also published on the internet on *PR Newswire* and in *Investor's Business Daily* on September 9, 2019. *Id.* at ¶ 8 & Ex. B. Furthermore, the Claims Administrator established a toll-free phone line to provide information and to answer potential Settlement Class Members' questions. *Id.* at ¶ 9.

45.     The Notice disclosed, among other things, the following information necessary to evaluate the benefits of the Settlement to Class Members: (i) the rights of Settlement Class Members, including the right to accept, object, or opt out of the Settlement; (ii) the nature, history, and progress of the litigation; (iii) the details of the proposed Settlement; (iv) the process for filing a proof of claim; (v) a description of the Plan of Allocation; (vi) the attorneys' fees and out-of-pocket expenses to be sought by Lead Counsel and reimbursement for Lead Plaintiff's costs and expenses; and (vii) the necessary information for any Settlement Class Member to examine the

Court records should they desire to do so. The Notice also sets forth instructions to securities brokers and other nominee holders for forwarding the Notice to those persons for whom the nominees held shares in street name. Additionally, the Notice explains procedures and deadlines for opting out of the Settlement or submitting comments or objections. *See* Cavallo Decl., Ex. A (Notice).

46.     As set forth in the Preliminary Approval Order, the deadline for Settlement Class Members to object to the Settlement, the Plan of Allocation, or to the application for attorneys' fees and Litigation Expenses – or to exclude themselves from the Settlement Class – is November 15, 2019. While this deadline has not yet passed, to date, not a single Settlement Class Member has objected to, or requested exclusion from, the Settlement. *See* Cavallo Decl. ¶ 11.

## V.     THE STRENGTHS AND WEAKNESS OF THE CASE

47.     Lead Plaintiff believes that he developed substantial evidence during discovery that supports his claims. This is evident from the Court's allowance of the TAC and certification of the class. Lead Plaintiff also realized, however, that continued litigation would have been costly, risky, and drawn out.

48.     Although Lead Plaintiff succeeded in obtaining class certification, he faced the immediate concern of prevailing in Defendants' interlocutory appeal of that decision.

49.     After that, Lead Plaintiff faced the burden of demonstrating liability and damages at trial (and on any subsequent appeal), while Defendants had already raised reasonable arguments regarding loss causation—specifically, calling into question two of Lead Plaintiff's alleged corrective disclosures. If Defendants had been successful at any of these stages, the amount of any potential recovery would have been sharply limited, or even foreclosed altogether.

50.     Lead Plaintiff and Lead Counsel recognize the significant risk, time, and expense involved in prosecuting the claims against Defendants through the appeal on class certification, completion of fact and expert discovery, summary judgment, trial, and subsequent appeals, as well as the inherent difficulties and delays complex litigation like this entails.

51.     In summary, there were multiple procedural hurdles, as well as significant merit-based risks involved in proceeding with the litigation, each of which was carefully considered by Lead Counsel and Lead Plaintiff in making the determination to settle with Defendants on the agreed terms.

## VI.     THE SETTLEMENT IS IN THE BEST INTERESTS OF THE SETTLEMENT CLASS AND WARRANTS APPROVAL

52.     Having considered the foregoing strengths and weaknesses of the claims, and evaluating Defendants' defenses, it is the informed judgment of Lead Counsel, based upon all proceedings to date and their extensive experience in litigating class actions under the federal securities laws, that the Settlement of this matter before this Court and the Plan of Allocation are fair, reasonable, adequate, and in the best interests of the Settlement Class.

## VII.     THE SETTLEMENT CLASS HAS BEEN CERTIFIED

53.     The Court's Preliminary Approval Order certified the Class for settlement purposes only under Fed. R. Civ. P. 23(a) and (b)(3).

## VIII.     LEAD COUNSEL'S APPLICATION FOR ATTORNEYS' FEES IS REASONABLE

### A.     A Reasonable Percentage of the Fund Recovered is the Appropriate Method to Use in Awarding Attorneys' Fees in Common Fund Cases

54.     For their extensive efforts on behalf of the Settlement Class, Lead Counsel are applying for compensation from the Settlement Fund on a percentage basis. Courts have recognized that the percentage method is the appropriate method of fee recovery because, among

other things, it aligns the lawyers' interest in being paid a fair fee with the interest of the Settlement

Class in achieving the maximum recovery.

**B.      Consideration of Relevant Factors Justify an Award of 33.33% Fee in This Case**

55.      The Notice provides that Lead Counsel would apply for a fee award in an amount

up to 33.33% of the Settlement Fund and that Lead Counsel would request reimbursement of

Plaintiff's Counsel's Litigation Expenses in an amount not to exceed $300,000, which may include

an application for reimbursement of the reasonable costs and expenses incurred by Lead Plaintiff

directly related to his representation of the Settlement Class. Lead Counsel submit that such an

award is reasonable and appropriate under the circumstances. Numerous factors are present here

that justify this Court's award of this fee.

**1.      The Settlement Benefit Achieved**

56.      Courts have consistently recognized that the result achieved is a major factor to be

considered in making a fee award. Here, the $4.875 million Settlement is a very good result,

particularly when considered in view of the substantial risks and obstacles to recovery if the Action

was to continue to trial and likely through post-trial motions and appeals. Lead Plaintiff's damages

expert estimates that if Lead Plaintiff overcame ***all*** obstacles to establishing liability, and prevailed

on ***all*** his loss causation and damages theories, the $4.875 million settlement would equate to

approximately 7.9% of the total ***maximum*** damages ***potentially*** available in this Action.

57.      However, Defendants raised credible arguments that Lead Plaintiff could not prove

his loss causation allegations. If Defendants had prevailed on these arguments, the total ***maximum***

damages available would be $30 million, in which case, the Settlement represents a recovery of

approximately 16.25% of the Settlement Class's maximum total damages. A recovery within the

range of 7.9%-16.25% is well above the average recovery in similar situations. *See* Kendall

Declaration in Support of Motion for Preliminary Approval (ECF No. 138), Ex. D (Stefan Boettrich and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2018 Full-Year Review* (NERA Jan. 29, 2019) at p. 36, Fig. 28)).

58.     Had Defendants prevailed on any motion(s) for summary judgment—or had the Court or a jury later accepted Defendants' loss causation arguments—recoverable damages would have been substantially diminished or completely eliminated. As evidenced by the fact that the Court had already dismissed the Action with leave to amend and the Fifth Circuit had granted Defendants' 23(f) petition, these were not hypothetical risks.

59.     This favorable Settlement was achieved as a result of extensive investigative efforts, contentious and complicated motion practice, extensive review of documents produced in discovery, the taking of four depositions, and vigorous, arm's-length settlement negotiations with the assistance of a respected and skilled mediator. Moreover, there is not any evidence that the Settlement was tainted by fraud. As a result of this Settlement, hundreds, if not thousands, of Settlement Class Members will benefit and receive compensation for their losses and avoid the real, and substantial risk of no recovery in the absence of settlement.

### 2.     The Risk of Contingent Class Action Litigation

60.     This Declaration and the memoranda in support of the Settlement and the fee request described the substantial risks of the litigation. Those same difficulties also constituted risks that Lead Counsel might never be paid for their efforts. Indeed, courts in this Circuit have consistently recognized that risk is an important factor in determining an important fee award. There are numerous cases where class counsel in contingent fee cases such as this, after expenditures of thousands of hours and significant out-of-pocket expenditures, have received no compensation whatsoever. Lead Counsel knows from experience that despite the most vigorous

and competent of efforts, attorneys' success in contingent litigation such as this is never assured. In fact, GPM recently lost a six week antitrust jury trial in the Northern District of California after five years of litigation, which included many overseas depositions, the expenditure of millions of dollars of attorney and paralegal time, and the expenditure of more than a million dollars in hard costs. *See In re: Korean Ramen Antitrust Litigation*, Case No. 3:13-cv-04115 (N.D. Cal.). Because the fee to be awarded in this matter is entirely contingent, the only certainty from the outset was that there would be no fee without a successful result, and that such a result would be realized only after a lengthy and difficult effort against Defendants who were represented by one of the most pre-eminent law firms in Texas (and the country).

61.     Moreover, courts have repeatedly recognized that it is in the public interest to have experienced and able counsel enforce the securities laws and regulations pertaining to the duties of officers and directors of public companies. Vigorous private enforcement of the federal securities laws can only occur if private plaintiffs take an active role in protecting the interests of shareholders.

62.     Because the fee to be awarded in this matter is entirely contingent, the only certainty from the outset was that there would be no fee without a successful result and that such a result would be realized only after a lengthy and difficult effort. As discussed in greater detail above, this case was fraught with significant risk factors concerning liability and damages. Lead Plaintiff's success was by no means assured. Defendants disputed whether Lead Plaintiff could even establish liability and raised substantial arguments concerning loss causation and damages, including appealing the Court's granting of class certification to the Fifth Circuit pursuant to Fed. R. Civ. P. 23(f). Even if Lead Plaintiff prevailed at the Fifth Circuit, there is no doubt that

Defendants would continue to press that the amount of damages was substantially lower than Lead Plaintiff alleged.

63.     Indeed, were this Settlement not achieved, and even if Lead Plaintiff prevailed at the Fifth Circuit, on summary judgment, and at trial, Lead Plaintiff and Lead Counsel faced potentially years of costly and risky appellate litigation against Defendants, with ultimate success far from certain and the prospect of no recovery a substantial possibility. It is also possible that a jury could have found no liability or no damages. Lead Counsel therefore believe that based upon the substantial risk factors present that an award of attorneys' fees of 33.33% of the Settlement Fund is reasonable.

### 3.     The Diligent Prosecution of This Case

64.     The requested fee is also warranted in light of the extensive efforts on the part of Lead Counsel, as outlined above, required to produce this result. Plaintiff's Counsel spent approximately 4,676 hours of time on this case, including: (i) conducting a comprehensive investigation into the allegedly wrongful acts, which included, among other things, (a) a review and analysis of EZCORP, Inc.'s filings with the SEC, public reports and news articles concerning EZCORP, and transcripts of EZCORP's investor calls, (b) interviews with former employees and other potential witnesses with relevant information, and (c) consultation with accounting, damages and market efficiency experts; (ii) drafting three consolidated complaints, including the operative 94-page TAC, based on the investigation; (iii) engaging in voluminous briefing related to Defendants' motion to dismiss the Amended Complaint, the SAC and TAC; (iv) engaging in substantial discovery, which included reviewing 38,549 documents produced by Defendants and 10,079 documents produced by third parties upon the issuance of 17 subpoenas, responding to Defendants' discovery requests, defending the Lead Plaintiff's deposition and the deposition of

Lead Plaintiff's market efficiency expert and taking of four fact depositions of EZCORP and other third party witnesses; (v) fully briefing class certification twice; (vi) drafting a substantive opposition brief to Defendants' petition to the United States Court of Appeals for the Fifth Circuit for permission to appeal the Court's order granting class certification under Federal Rule of Civil Procedure 23(f); (vii) drafting and exchanging two sets of extensive mediation statements including numerous exhibits; (viii) participating in two separate, full-day mediation sessions with a respected mediator; (ix) engaging in extensive negotiations regarding the terms of the proposed Settlement; (x) drafting the initial versions of the Stipulation and exhibits; (xi) drafting the preliminary approval brief; and (xii) drafting the final approval brief. *See* Declaration of Jeffrey C. Block in Support of Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses Filed on Behalf of Block & Leviton LLP ("B&L Decl."), ¶ 4 (attached hereto as Exhibit 2); Declaration of Lionel Z. Glancy in Support of Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses Filed on Behalf of Glancy Prongay & Murray LLP ("GPM Decl.") (attached hereto as Exhibit 3), ¶ 4; Declaration of Joe Kendall in Support of Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses Filed on Behalf of The Kendall Law Group, PLLC ("Kendall Decl.") (attached hereto as Exhibit 4), ¶ 6.

65.    Moreover, Lead Counsel will continue to work towards effectuating the Settlement in the event the Court grants final approval. No additional compensation will be sought for this work.

66.     As set forth below, Plaintiff's Counsel's expended a total of 4,676.17 hours prosecuting this Action, equating to a lodestar of $2,892,252.25.[5]

| LAW FIRM: | LODESTAR |
|---|---|
| Block & Levitan LLP | $1,737,216.50 |
| Glancy Prongay & Murray LLP | $1,127,480.75 |
| The Kendall Law Group, PLLC | $27,555.00 |
| TOTAL LODESTAR: | $2,892,252.25 |

67.     The requested fee results in a fractional multiplier of 0.562, a figure demonstrating how vigorously Plaintiff's Counsel fought to achieve the result on behalf of the Settlement Class.

### 4.     The Complexity of This Action's Factual and Legal Questions

68.     Numerous courts have recognized that risk, as well as the novelty and difficulty of the issues presented, are important factors in determining a fee award. There is no question that from its outset, this Action presented a number of sharply-contested issues of both fact and law and that Lead Plaintiff faced formidable defenses to liability and damages. The substantial risks and uncertainties in this case made it far from certain that any recovery, let alone $4.875 million, would ultimately be obtained.

69.     From the outset, this Action was an especially difficult and highly uncertain securities case, with no assurance whatsoever that the Action would survive Defendants' attacks on the pleadings, motions for class certification, interlocutory appeal, motions for summary judgment, trial, and appeal. Indeed, Defendants prevailed on two motions to dismiss before Lead Plaintiff finally prevailed with the TAC. Defendants also defeated Lead Plaintiff's first motion for class certification before Lead Plaintiff prevailed on his amended motion for class certification.

---

[5] The lodestar figure contains only the time of Lead Counsel attorneys and professional staff who billed more than twenty hours to the Action.

Even then, Defendants sought, and were granted their petition for review of the Court's class certification order by the Fifth Circuit pursuant to Fed. R. Civ. P. 23(f). Defendants arguments regarding loss causation and damages posed a significant threat that the total recoverable damages would be significantly reduced. Even if Lead Plaintiff prevailed at the Fifth Circuit on the interlocutory appeal, very difficult issues of proof remained at summary judgment and trial as to key elements of the claims for securities laws violations. Continued litigation would have involved substantial briefing, extensive and costly expert involvement, and the taking of numerous depositions. The costs and risks associated with litigating this Action to a verdict, not to mention the inevitable appeals, would have been high, and the process would require hundreds of hours of this Court's time and resources. This Action would easily require an additional 2-3 years before a recovery, if any, was obtained for the Settlement Class.

### 5.   Plaintiff's Counsel's Work and Experience

70.    As evidenced by its firm resume, B&L has significant experience litigating federal securities fraud class actions throughout the country. *See* B&L Decl. ¶ 6, Ex. A. The same is true of Co-Lead Counsel, GPM. *See* GPM Decl., ¶ 7, Ex. A. Moreover, Liaison Counsel's firm resume demonstrates that The Kendall Law Group, PLLC is also highly experienced. *See* Kendall Decl. ¶ 10, Ex. 3.

71.    The record in this case, along with the matters described in this Declaration, demonstrate the enormous effort and expense that went into successfully resolving this Action. Lead Counsel's declarations outline the amount of time spent by each attorney and paralegal employed by Plaintiff's Counsel, and the lodestar calculation based on current billing rates, demonstrating that a 33.33% fee is reasonable for the extraordinary efforts expended to achieve the result in this case.

### 6.      Standing and Caliber of Opposing Counsel

72.      The quality of work performed by Lead Counsel in attaining the Settlement should also be evaluated in light of the quality of the opposition. Here, Defendants were represented by Vinson & Elkins LLP, a firm with a national reputation for the tenacious defense of class actions and other complex civil matters. The Individual Defendant was represented by Ewell, Brown, Blanke, & Knight LLP, a highly respected Texas litigation firm. In the face of this experienced and formidable opposition, Plaintiffs' Counsel were nonetheless able to persuade Defendants to settle the case on terms that I believe are favorable to the Settlement Class.

## IX.   PAYMENT OF THE REQUESTED EXPENSES AND COSTS IS FAIR AND REASONABLE

73.      Plaintiff's Counsel are also moving for payment of $266,070.95 in Litigation Expenses reasonably and actually incurred in connection with commencing and prosecuting the claims against Defendants, as outlined in the accompanying declarations. Plaintiff's Counsel advanced all of the litigation expenses. *See* B&L Decl. ¶ 5; GPM Decl. ¶ 6; Kendall Decl. Ex. 2.

74.      As detailed below, Plaintiff's Counsel is seeking reimbursement of a total of $258,570.95 in out-of-pocket costs and expenses:

| LAW FIRM: | EXPENSES |
|---|---|
| Block & Levitan LLP | $151,965.64 |
| Glancy Prongay & Murray LLP | $104,412.07 |
| The Kendall Law Group, PLLC | $2,193.24 |
| TOTAL EXPENSES: | $258,570.95 |

75.      From the beginning of the case, Plaintiff's Counsel were aware that they might never recover any of their expenses, and, at the very least, would not recover anything until the Action was successfully resolved. Plaintiff's Counsel also understood that, even assuming the case was ultimately successful, reimbursement for expenses would not compensate them for the lost

use of funds advanced by them to prosecute this Action. Thus, Plaintiff's Counsel were motivated to, and did, take steps to assure that only necessary expenses were incurred for the vigorous and efficient prosecution of the case.

76.     Of the total amount of litigation expenses, approximately $130,365 or 50.5% was expended on Lead Plaintiff's experts and consultants. Lead Plaintiff retained and consulted with experts in the fields of accounting, as well as market efficiency, loss causation and damages to assist in the prosecution of the Action. Lead Plaintiff's experts on accounting, market efficiency and damages also assisted Lead Counsel during the mediation and settlement negotiations with the Defendants and with the development of the proposed Plan of Allocation.

77.     Another substantial component of Plaintiff's Counsel's out-of-pocket litigation expenses was for the services of a private investigator, which included conducting numerous fact interviews with former EZCORP employees and other relevant third parties in preparation of the Amended Complaint, the SAC, and the TAC. The charges for the private investigator's services amounted to $11,951, or 4.6% of the total amount of out-of-pocket litigation expenses.

78.     Additionally, Plaintiff's Counsel paid $17,952 for their share of the mediation fees charged by Mr. Robert Meyer of JAMS, which is 6.9% of Plaintiff's Counsel's total expenses.

79.     Other substantial expenses included $16,965 for the combined costs of on-line legal and factual research that was crucial to researching the claims and opposing Defendants' motions to dismiss; and $18,333.94 for costs related to the document review and litigation support, including costs for an outside vendor to create and maintain the electronic database through which the large volume of documents produced in the Action could be maintained and reviewed.

80.     The other out-of-pocket litigation expenses for which Plaintiff's Counsel seeks reimbursement are the types of expenses that are necessarily incurred in litigation and routinely

charged to clients billed by the hour. Those expenses include, among others, courts fees, costs of out-of-town travel, and copying costs.

81.      In view of the complex nature of the Action, the litigation expenses incurred were reasonable and necessary to pursue the interests of the Class. Accordingly, Lead Counsel respectfully submit that the request for expenses be granted.

## X.      THE REQUESTED PAYMENT FOR LEAD PLAINTIFF IS FAIR AND REASONABLE

82.      Lead Plaintiff John Rooney seeks modest reimbursement for the time he has expended on behalf of the Settlement Class. Reimbursement of a class representative's reasonable costs and expenses is authorized under the PSLRA, 15 U.S.C. § 78u-4(a)(4), and I believe, based on my knowledge of Lead Plaintiff's activity in this case, that the requested amount of $7,500 is reasonable and should be approved by the Court. Throughout this litigation, Mr. Rooney received status reports from B&L on case developments and participated in regular discussions concerning the prosecution of the Action, the strengths of and risks to the claims, and potential settlement. In particular, throughout the course of this Action, Mr. Rooney fulfilled his duties as Lead Plaintiff by: (a) regularly communicating with attorneys at B&L regarding the posture and progress of the case; (b) reviewing pleadings, briefs, and court orders filed in the Action and discussing them with counsel; (c) taking time off from his employment to fly from Ireland to Boston to have his deposition taken by Defendants; (d) consulting with his attorneys regarding the settlement negotiations; and (e) evaluating and approving the proposed Settlement. *See* Declaration John Rooney in Support of: (1) Plaintiff's Motion for Final Approval of Class Action Settlement and Plan of Allocation; and (2) Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses ("Rooney Decl."), ¶ 5 (attached hereto as Exhibit 5).

83.     Moreover, the Notice stated that Lead Counsel would request reimbursement of litigation costs and expenses in an amount not to exceed $300,000, which may include an application for reimbursement of the reasonable costs and expenses incurred by Lead Plaintiff directly related to his representation of the Settlement Class. To date, there have been no objections to such a request. Thus, Lead Counsel believes that an award of $7,500 for the time and effort Mr. Rooney has expended on behalf of the Settlement Class would be fair and reasonable.

## XI.    CONCLUSION

84.     For all of the foregoing reasons, Lead Counsel respectfully requests that the Court: (1) approve the Settlement and Plan of Allocation as fair, reasonable, and adequate; (2) approve the application for an award of attorneys' fees of 33.33% of the Settlement Fund, plus $258,570.95 in litigation expenses that were incurred in connection with the prosecution of the Action; and (3) award $7,500 to compensate Lead Plaintiff for the time he spent on this litigation on behalf of the Settlement Class.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on this 1st day of November 2019, at Boston, Massachusetts.

By: *s/  Jeffrey C. Block*
Jeffrey C. Block, *pro hac vice*
**Block & Leviton LLP**
260 Franklin Street, Suite 1860
Boston, MA 02110
Telephone: (617) 398-5600
Facsimile: (617) 507-6020
jeff@blockesq.com

*Lead Counsel for the Class*

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing was served upon its filing via this Court's CM/ECF system on this 1st day of November, 2019 to all counsel of record.

By: _s/  Jeffrey C. Block_____
       Jeffrey C. Block