# EXHIBIT 1

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

|  |  |
|---|---|
| In re EZCORP, INC. SECURITIES LITIGATION | Lead Case No. 1:15-CV-00608-SS<br><br>Honorable Sam Sparks |

**DECLARATION OF LANCE CAVALLO REGARDING
(A) MAILING OF THE NOTICE AND CLAIM FORM;
(B) PUBLICATION OF SUMMARY NOTICE; AND
(C) REPORT ON REQUESTS FOR EXCLUSION RECEIVED TO DATE**

I, Lance Cavallo, declare and state as follows:

1.      I am a Senior Project Manager of Class Actions at Kurtzman Carson Consultants LLC ("KCC"). Pursuant to the Court's August 5, 2019 Order Preliminarily Approving Settlement and Providing for Notice (the "Preliminary Approval Order"), KCC was appointed as the Claims Administrator in connection with the proposed Settlement of the above-captioned Action.[1] I have personal knowledge of the matters stated herein and, if called upon, could and would testify thereto.

## MAILING OF THE POSTCARD NOTICE

2.      Pursuant to the Preliminary Approval Order, KCC is responsible for disseminating the Postcard Notice and, upon request, the Notice of (I) Pendency of Class Action and Proposed Settlement; (II) Settlement Fairness Hearing; and (III) Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses to potential Settlement Class Members (the "Long Form Notice"), and the Proof of Claim and Release Form (the "Claim Form" and, together with the Long Form Notice, the "Notice Packet") to potential Settlement Class Members. A copy of the Postcard Notice, Long Form Notice, and Claim Form are attached hereto as Exhibit A.

---

[1] All terms with initial capitalization not otherwise defined herein shall have the meanings ascribed to them in the Stipulation of Settlement, dated July 18, 2019 (the "Stipulation").

3.      In accordance with the Stipulation and Preliminary Approval Order, by way of Class Counsel, KCC received from American Stock Transfer and Trust Company, the transfer agent for EZCORP, Inc. ("EZCORP"), a list containing the names and addresses of 17 persons or entities who purchased EZCORP common stock during the period from January 28, 2014 through October 20, 2015, inclusive (the "Settlement Class Period"). On August 28, 2019, KCC disseminated Postcard Notices by first-class mail to the 17 potential Settlement Class Members contained on this list.

4.      As in most class actions of this nature, a large majority of potential Settlement Class Members are beneficial purchasers whose securities were held in "street name" – *i.e.*, the securities were purchased by brokerage firms, banks, institutions and other third-party nominees in the name of the nominee, on behalf of the beneficial purchasers. KCC maintains a proprietary database with the names and addresses of the largest and most common U.S. banks, brokerage firms, and nominees, including national and regional offices of certain nominees (the "Nominee Database"). KCC's Nominee Database is updated from time to time as new nominees are identified, and others merge or cease to exist.  At the time of the initial mailing, the Nominee Database contained 961 mailing records. On August 28, 2019, KCC caused Postcard Notices to be mailed to the 961 mailing records contained in KCC's Nominee Database.

5.      The Long Form Notice directed those who purchased or otherwise acquired publicly traded common stock of EZCORP during the Settlement Class Period, for the beneficial interest of persons or organizations other than themselves, to provide KCC with the name and last known address of each person or entity for whom the Nominee executed such transactions. KCC then caused the Postcard Notice to be mailed promptly to said beneficial owners. Alternatively, Nominees may request additional copies of the Postcard Notice from KCC, in which case the Nominees are required to promptly mail the Postcard Notice directly to the persons for whom the transactions were made.

6.      Following the initial mailing, through October 30, 2019, KCC has received an additional 4,396 unique names and addresses of potential Settlement Class Members from

individuals or nominees requesting that a Postcard Notice be mailed to such persons or entities. Additionally, KCC has received requests from nominees for an additional 8,347 unaddressed Postcard Notices to be forwarded by the nominees to their customers. All such requests have been honored in a timely manner, and KCC will continue to disseminate Postcard Notices upon receipt of any additional requests and/or upon receipt of updated addresses.

7.     As a result of the efforts described above, as of October 30, 2019, KCC has mailed a total of 13,741 Postcard Notices to potential Settlement Class Members and nominees.[2]

## PUBLICATION OF THE SUMMARY NOTICE

8.     Pursuant to the Preliminary Approval Order, on September 9, 2019, KCC caused the Summary Notice to be published in *Investor's Business Daily* and to be transmitted over *PR Newswire*. Attached hereto as Exhibit B are confirmations of publication and transmittal.

## TELEPHONE HOTLINE

9.     KCC established and continues to maintain a toll-free telephone number (1-877-295-8619) for potential Settlement Class Members to call and obtain information about the Settlement, request a Notice Packet, and/or seek assistance from a live operator during regular business hours. The telephone hotline became operational on August 28, 2019.

## SETTLEMENT WEBSITE

10.    To further assist potential Settlement Class Members, KCC, in coordination with Lead Counsel, designed, implemented and currently maintains a website, www.EZCorpSettlement.com, dedicated to the Settlement (the "Settlement Website"). The address for the Settlement Website is set forth in the Postcard Notice, Long Form Notice, Claim Form and Summary Notice. The Settlement Website became operational on August 28, 2019, and is accessible 24 hours a day, 7 days a week. The Settlement Website lists the exclusion, objection, and claim submission deadlines, as well as the date and time of the Court's Settlement Hearing. In

---

[2] This figure includes 20 Postcard Notices that were initially returned as undeliverable by the United States Postal Service, but re-mailed based on updated addresses provided by the United States Postal Service or obtained through a third-party vendor.

DECLARATION OF LANCE CAVALLO REGARDING (A) MAILING OF THE NOTICE AND CLAIM FORM; (B) PUBLICATION OF SUMMARY NOTICE; AND (C) REPORT ON REQUESTS FOR EXCLUSION RECEIVED TO DATE MASTER FILE NO. 1:15-CV-00608-SS

3

addition, the Settlement Website contains links to copies of the Stipulation, the Preliminary Approval Order, and the Notice Packet, all of which can be downloaded by potential Settlement Class Members. The Settlement Website also contains detailed instructions for entities who wish to submit claims electronically. KCC will continue operating, maintaining and, as appropriate, updating the Settlement Website until the conclusion of the administration.

### REPORT ON REQUESTS FOR EXCLUSION RECEIVED TO DATE

11.     The Long Form Notice informs potential Settlement Class Members that requests for exclusion from the Settlement Class must be addressed In re EZCORP, Inc. Securities Litigation, EXCLUSIONS, c/o KCC Class Action Services, 3301 Kerner Blvd, San Rafael, CA 94901, such that they are received no later than November 15, 2019. The Notice also sets forth the information that must be included in each request for exclusion.  As of October 30, 2019, KCC can confirm that it has not received any exclusion requests. KCC will submit a supplemental declaration after the November 15, 2019 deadline for requesting exclusion, that will report on any exclusion requests received.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed in New York, New York on October 31, 2019.

_____
Lance Cavallo

DECLARATION OF LANCE CAVALLO REGARDING (A) MAILING OF THE NOTICE AND CLAIM FORM; (B) PUBLICATION OF SUMMARY NOTICE; AND (C) REPORT ON REQUESTS FOR EXCLUSION RECEIVED TO DATE
MASTER FILE NO. 1:15-CV-00608-SS

4

Exhibit A

In re EZCORP, Inc. Securities Litigation
c/o KCC Class Action Services
P.O. Box 43046
Providence, RI 02940-3046

***COURT-ORDERED
LEGAL NOTICE***

**Important Notice about a
Securities Class Action Settlement.**

**You may be entitled to a CASH payment.
This Notice may affect your legal rights.
Please read it carefully.**

*In re EZCORP, Inc. Class Action Litigation*
Lead Case No. 1:15-CV-00608-SS



Postal Service: Please Do Not Mark Barcode

EIL



# EIL

*THIS CARD PROVIDES ONLY LIMITED INFORMATION ABOUT THE SETTLEMENT.*

*PLEASE VISIT www.EZCORPsettlement.com FOR MORE INFORMATION.*

There has been a proposed Settlement of claims against EZCORP, INC. ("EZCORP") and an executive of EZCORP (collectively, the "Defendants"). The Settlement would resolve a lawsuit in which Plaintiff alleges that Defendants disseminated materially false and misleading information to the investing public about their financials and loan sales, in violation of the federal securities laws. Defendants deny any wrongdoing. You received this Postcard Notice because you or someone in your family may have purchased or otherwise acquired EZCORP Class A Common Stock between <u>January 28, 2014 and October 20, 2015</u>, inclusive, and been damaged thereby.

Defendants have agreed to pay a Settlement Amount of <u>$4.875 million</u>. The Settlement provides that the Settlement Fund, after deduction of any Court-approved attorneys' fees and expenses, notice and administration costs, and taxes, is to be divided among all Settlement Class Members who submit a valid Claim Form, in exchange for the settlement of this case and the Releases by Settlement Class Members of claims related to this case. **For all details of the Settlement, read the Stipulation and full Notice, available at www.EZCORPsettlement.com.**

Your share of the Settlement proceeds will depend on the number of valid claims submitted, and the number, size and timing of your transactions in EZCORP Class A Common Stock. If every eligible Settlement Class Member submits a valid Claim Form, the average recovery will be $0.114 per eligible security before expenses and other Court-ordered deductions. Your award will be determined pro rata based on the number of claims submitted.  This is further explained in the detailed Notice found on the Settlement website.

**To qualify for payment, you must submit a Claim Form.** The Claim Form can be found on the website www.EZCORPsettlement.com, or will be mailed to you upon request to the Claims Administrator 1-877-295-8619. **Claim Forms must be postmarked by January 25, 2020**. If you do not want to be legally bound by the Settlement, you must exclude yourself by November 15, 2019, or you will not be able to sue the Defendants about the legal claims in this case. If you exclude yourself, you cannot get money from this Settlement. If you want to object to the Settlement, you may file an objection by November 15, 2019.  The detailed Notice explains how to submit a Claim Form, exclude yourself or object.

The Court will hold a hearing in this case on December 6, 2019, to consider whether to approve the Settlement and a request by the lawyers representing the Settlement Class for up to one third of the Settlement Fund in attorneys' fees, plus actual expenses up to $300,000 for litigating the case and negotiating the Settlement (which equates to a cost of $0.045 per affected share), and reimbursement of Lead Plaintiff's costs and expenses related to his representation of the Settlement Class in an amount not to exceed $10,000. You may attend the hearing and ask to be heard by the Court, but you do not have to. For more information, call toll-free 1-877-295-8619 or visit the website www.EZCORPsettlement.com and read the detailed Notice.

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| |
|---|
| In re EZCORP, INC.<br>SECURITIES LITIGATION |

Lead Case No. 1:15-CV-00608-SS

Honorable Sam Sparks

**NOTICE OF (I) PENDENCY OF CLASS ACTION AND PROPOSED SETTLEMENT;
(II) SETTLEMENT FAIRNESS HEARING; AND (III) MOTION FOR AN AWARD OF
ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES**

*A Federal Court authorized this Notice. This is not a solicitation from a lawyer.*

**NOTICE OF PENDENCY OF CLASS ACTION:**  Please be advised that your rights may be affected by the above-captioned securities class action (the "Action") pending in the United States District Court for the Western District of Texas (the "Court" or the "Texas Court"), if, during the period between January 28, 2014 and October 20, 2015, inclusive (the "Settlement Class Period"), you purchased or otherwise acquired EZCORP, Inc. Class A Common Stock and were damaged thereby.[1]

**NOTICE OF SETTLEMENT:**  Please also be advised that Court-appointed Lead Plaintiff John Rooney ("Lead Plaintiff"), on behalf of himself and the Settlement Class (as defined in ¶ 33 below), have reached a proposed settlement of the Action for $4,875,000 in cash that, if approved, will resolve all claims in the Action (the "Settlement").

**PLEASE READ THIS NOTICE CAREFULLY.  This Notice explains important rights you may have, including the possible receipt of cash from the Settlement.  If you are a member of the Settlement Class, your legal rights will be affected whether or not you act.**

**If you have any questions about this Notice, the proposed Settlement, or your eligibility to participate in the Settlement, please DO NOT contact EZCORP, any other Defendants in the Action, or their counsel.  All questions should be directed to Class Counsel or the Claims Administrator (*see* ¶ 92 below).**

1.  **Description of the Action and the Settlement Class:**  This Notice relates to a proposed Settlement of claims in a pending securities class action brought by investors alleging, among other things, that defendants EZCORP, Inc. ("EZCORP") and Mark E. Kuchenrither (collectively, the "Defendants") violated the federal securities laws by making false and misleading statements regarding EZCORP's financials and the status of certain loan sales.  A more detailed description of the Action is set forth in paragraphs 11-32 below.  The proposed Settlement, if approved by the Court, will settle claims of the Settlement Class, as defined in paragraph 33 below.

2.  **Statement of the Settlement Class's Recovery:**  Subject to Court approval, Lead Plaintiff, on behalf of himself and the Settlement Class, has agreed to settle the Action in exchange for a settlement payment of $4,875,000 in cash (the "Settlement Amount") to be deposited into an escrow account.  The Net Settlement Fund (*i.e.*, the Settlement Amount plus any and all interest earned thereon (the "Settlement Fund") less (a) any Taxes, (b) any Notice and Administration Costs, (c) any Litigation Expenses awarded by the Court, and (d) any attorneys' fees awarded by the Court) will be distributed in accordance with a plan of allocation that is approved by the Court, which will determine how the Net Settlement Fund shall be allocated among members of the Settlement Class.  The proposed plan of allocation (the "Plan of Allocation") is set forth on pages 9-11 below.

3.  **Estimate of Average Amount of Recovery Per Share:**  Based on Lead Plaintiff's damages expert's estimates of the number of shares of EZCORP Class A common stock purchased during the Settlement Class Period that may have been affected by the conduct at issue in the Action, and assuming that all Settlement Class Members elect to participate in the Settlement, the estimated average recovery (before the deduction of any Court-approved fees, expenses and costs as described herein) per eligible security is $0.114.  Settlement Class Members should note, however, that the foregoing average recovery per share is only an estimate.  Some Settlement Class Members may recover more or less than this estimated amount depending on, among other factors, when and at what prices they purchased/acquired or sold their EZCORP Class A common stock and the total number of valid Claim Forms submitted.  Distributions to Settlement Class Members will be made based on the Plan of Allocation set forth herein (*see* pages 9-11 below) or such other plan of allocation as may be ordered by the Court.

---

[1]  All capitalized terms used in this Notice that are not otherwise defined herein shall have the meanings ascribed to them in the Stipulation and Agreement of Settlement dated July 18, 2019 (the "Stipulation"), which is available at www.EZCORPsettlement.com.

4.      **Average Amount of Damages Per Share**:  The Parties do not agree on the average amount of damages per share that would be recoverable if Lead Plaintiff were to prevail in the Action.  Among other things, Defendants do not agree with the assertion that they violated the federal securities laws or that any damages were suffered by any members of the Settlement Class as a result of their conduct.

5.      **Attorneys' Fees and Expenses Sought**:  Plaintiffs' Counsel, which have been prosecuting the Action on a wholly contingent basis since its inception in 2015, have not received any payment of attorneys' fees for their representation of the Settlement Class and have advanced the funds to pay expenses necessarily incurred to prosecute this Action.  Court-appointed Class Counsel, Block & Leviton LLP and Glancy Prongay & Murray LLP, will apply to the Court for an award of attorneys' fees for all Plaintiff's Counsel in an amount not to exceed one third of the Settlement Fund.  In addition, Class Counsel will apply for reimbursement of Litigation Expenses paid or incurred in connection with the institution, prosecution and resolution of the claims against the Defendants, in an amount not to exceed $300,000, which may include an application for reimbursement of the reasonable costs and expenses incurred by Lead Plaintiff directly related to his representation of the Settlement Class.  Any fees and expenses awarded by the Court, or any Lead Plaintiff award, shall be paid solely from the Settlement Fund and shall be paid to Class Counsel, or with respect to a Lead Plaintiff award, paid to Lead Plaintiff, within five days following an award ordered by the Court, provided that there has been a final approval of the Stipulation of Settlement by the Court.  If there is any appeal of an award of attorneys' fees and expenses, or of a Lead Plaintiff award, Class Counsel shall repay any amount of attorneys' fees or expenses reversed on appeal to the Settlement Fund.  Settlement Class Members are not personally liable for any such fees or expenses.  Estimates of the average cost per affected share of EZCORP Class A common stock, if the Court approves Class Counsel's fee and expense application, is $0.045 per eligible share.

6.      **Identification of Attorneys' Representatives**:  Lead Plaintiff and the Settlement Class are represented by Jacob A. Walker, Esq. of Block & Leviton LLP, 260 Franklin Street, Suite 1860, Boston, MA 02110, (617) 398-5617, jake@blockesq.com and Casey E. Sadler, Esq. of Glancy Prongay & Murray LLP, 1925 Century Park East, Suite 2100, Los Angeles, CA 90067, (310) 201-9150, settlements@glancylaw.com.

7.      **Reasons for the Settlement**:  Lead Plaintiff's principal reason for entering into the Settlement is the substantial immediate cash benefit for the Settlement Class without the risk or the delays inherent in further litigation.  Moreover, the substantial cash benefit provided under the Settlement must be considered against the significant risk that a smaller recovery – or indeed no recovery at all – might be achieved after contested motions, Defendants' appeal of the court's order granting class certification, a trial of the Action, and the likely appeals that would follow a trial.  This process could be expected to last several years.  Defendants, who deny all allegations of wrongdoing or liability whatsoever, are entering into the Settlement solely to eliminate the uncertainty, burden and expense of further protracted litigation.

| YOUR LEGAL RIGHTS AND OPTIONS IN THE SETTLEMENT: | |
|---|---|
| **SUBMIT A CLAIM FORM POSTMARKED NO LATER THAN JANUARY 25, 2020.** | This is the only way to be eligible to receive a payment from the Settlement Fund.  If you are a Settlement Class Member and you remain in the Settlement Class, you will be bound by the Settlement as approved by the Court, and you will give up any Released Plaintiff's Claims (defined in ¶ 42 below) that you have against Defendants and the other Defendants' Releasees (defined in ¶ 43 below), so it is in your interest to submit a Claim Form. |
| **EXCLUDE YOURSELF FROM THE SETTLEMENT CLASS BY SUBMITTING A WRITTEN REQUEST FOR EXCLUSION SO THAT IT IS *RECEIVED* NO LATER THAN NOVEMBER 15, 2019.** | If you exclude yourself from the Settlement Class, you will not be eligible to receive any payment from the Settlement Fund.  This is the only option that allows you ever to be part of any other lawsuit against any of the Defendants or the other Defendants' Releasees concerning the Released Plaintiff's Claims. |
| **OBJECT TO THE SETTLEMENT BY SUBMITTING A WRITTEN OBJECTION SO THAT IT IS *RECEIVED* NO LATER THAN NOVEMBER 15, 2019.** | If you do not like the proposed Settlement, the proposed Plan of Allocation, or the request for attorneys' fees and reimbursement of Litigation Expenses, you may write to the Court and explain why you do not like them.  You cannot object to the Settlement, the Plan of Allocation or the fee and expense request unless you are a Settlement Class Member and do not exclude yourself from the Settlement Class. |
| **GO TO A HEARING ON DECEMBER 6, 2019, AT 10:00 A.M., AND FILE A NOTICE OF INTENTION TO APPEAR SO THAT IT IS *RECEIVED* NO LATER THAN NOVEMBER 15, 2019.** | Filing a written objection and notice of intention to appear by November 15, 2019 allows you to speak in Court, at the discretion of the Court, about the fairness of the proposed Settlement, the Plan of Allocation, and/or the request for attorneys' fees and reimbursement of Litigation Expenses.  If you submit a written objection, you may (but do not have to) attend the hearing and, at the discretion of the Court, speak to the Court about your objection. |
| **DO NOTHING.** | If you are a member of the Settlement Class and you do not submit a valid Claim Form, you will not be eligible to receive any payment from the Settlement Fund.  You will, however, remain a member of the Settlement Class, which means that you give up your right to sue about the claims that are resolved by the Settlement, and you will be bound by any judgments or orders entered by the Court in the Action. |

| WHAT THIS NOTICE CONTAINS |
|---|

Why Did I Get The Postcard Notice?.................................................................................................Page 4

What Is This Case About? .............................................................................................................Page 4-6

How Do I Know If I Am Affected By The Settlement?  Who Is Included In The Settlement Class?..........Page 6

What Are Lead Plaintiff's Reasons For The Settlement? ......................................................................Page 6

What Might Happen If There Were No Settlement?.............................................................................Page 6

How Are Settlement Class Members Affected By The Action And The Settlement?.............................Page 7-8

How Do I Participate In The Settlement?  What Do I Need To Do?........................................................Page 8

How Much Will My Payment Be?.............................................................................................. Page 8-11

What Payment Are The Attorneys For The Settlement Class Seeking?
How Will The Lawyers Be Paid?....................................................................................................Page 12

What If I Do Not Want To Be A Member Of The Settlement Class?  How Do I Exclude Myself?............Page 12

When And Where Will The Court Decide Whether To Approve The Settlement?
Do I Have To Come To The Hearing? May I Speak At The Hearing If I Don't Like The Settlement?............... Page 12-13

What If I Bought Shares On Someone Else's Behalf? .........................................................................Page 13

Can I See The Court File?  Whom Should I Contact If I Have Questions?.............................................Page 14

## WHY DID I GET THE POSTCARD NOTICE?

8.      The Court directed that the Postcard Notice be mailed to you because you or someone in your family or an investment account for which you serve as a custodian may have purchased or otherwise acquired one or more shares of EZCORP Class A common stock during the Settlement Class Period.  The Court also directed that this Notice be posted online at www.EZCORPsettlement.com and mailed to you upon request to the Claims Administrator.  The Court has directed us to disseminate these notices because, as a potential Settlement Class Member, you have a right to know about your options before the Court rules on the proposed Settlement.  Additionally, you have the right to understand how this class action lawsuit may generally affect your legal rights.  If the Court approves the Settlement, and the Plan of Allocation (or some other plan of allocation), the Claims Administrator selected by Lead Plaintiff and approved by the Court will make payments pursuant to the Settlement after any objections and appeals are resolved.

9.      The purpose of this Notice is to inform you of the existence of this case, that it is a class action, how you might be affected, and how to exclude yourself from the Settlement Class if you wish to do so.  It is also being sent to inform you of the terms of the proposed Settlement, and of a hearing to be held by the Court to consider the fairness, reasonableness, and adequacy of the Settlement, the proposed Plan of Allocation and the motion by Class Counsel for an award of attorneys' fees and reimbursement of Litigation Expenses (the "Settlement Hearing").  *See* paragraph 83 below for details about the Settlement Hearing, including the date and location of the hearing.

10.      The issuance of this Notice is not an expression of any opinion by the Court concerning the merits of any claim in the Action, and the Court still has to decide whether to approve the Settlement.  If the Court approves the Settlement and a plan of allocation, then payments to Authorized Claimants will be made after any appeals are resolved and after the completion of all claims processing.  Please be patient, as this process can take some time to complete.

## WHAT IS THIS CASE ABOUT?

11.      This litigation stems from EZCORP's November 9, 2015 Restatement of its financial results for fiscal years 2012, 2013, 2014, and Q1 2015.  Plaintiffs claims arise from Defendants statements regarding the sale of six Grupo Finmart loan receivables and the performance of Grupo Finmart's loan portfolio.

12.      On July 20, 2015, Plaintiff Wu Huang initiated this Action by filing a Class Action Complaint for Violations of the Federal Securities Laws in the Western District of Texas, Austin Division, styled *Huang v. EZCORP, Inc., et al.*, Case No. 1:15-cv-608.  Dkt. 1.  The Action was assigned to United States District Judge Sam Sparks on July 21, 2015.  On August 14, 2015, Plaintiff John Rooney filed a related action captioned *Rooney v. EZCORP, Inc., et al.*, Case No. 1:15-cv-700.

13.      By Order dated November 3, 2015, Judge Sparks appointed Wu Huang and John Rooney as Co-Lead Plaintiffs, approved Co-Lead Plaintiffs' selections of Glancy Prongay & Murray LLP and Block & Leviton LLP as Co-Lead Counsel and The Kendall Law Group, PLLC as Liaison Counsel, and ordered that the cases be consolidated and recaptioned as *In re EZCORP, Inc. Securities Litigation*, No. 1:15-cv-608-SS.

14.      On January 11, 2016, plaintiffs Wu Huang and John Rooney filed their Amended Class Action Complaint (the "Amended Complaint"), asserting claims against all Defendants under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, and against Defendant Mark E. Kuchenrither under Section 20(a) of the Exchange Act.  Dkt. 29.

15.      On February 25, 2016, Defendants filed a motion to dismiss the Amended Complaint.  Dkt. 32.  On April 11, 2016, Plaintiffs filed their papers in opposition and, on May 11, 2016, Defendants filed their reply papers.  By May 11, 2016, all of the briefing on Defendants' motion to dismiss the Amended Complaint had been filed in the Western District of Texas.

16.      By Order dated October 18, 2016, District Judge Sam Sparks granted Defendants' motion to dismiss the Amended Complaint, without prejudice.  Dkt. 44.

17.      Plaintiffs filed their Second Amended Class Action Complaint (the "SAC") on November 4, 2016, again asserting claims against all Defendants under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, and against Defendant Mark E. Kuchenrither under Section 20(a) of the Exchange Act.  Dkt. 47.  Plaintiffs alleged that Defendants made material misstatements and omissions in connection with the sale of six Grupo Finmart loan receivables, including that the loan sales were "true asset sales" and "non-recourse to EZCORP."  Plaintiffs further alleged that the loan sales were *with* recourse to EZCORP, should not have been recorded as sales, and, thus, resulted in EZCORP improperly recognizing revenue on the sales.  Plaintiffs also alleged that EZCORP failed to properly write down Grupo Finmart's non-performing loans.  Finally, Plaintiffs alleged that the price of EZCORP's common stock was artificially inflated during the Class Period and declined when the truth was revealed.

18.      Defendants denied Plaintiffs' allegations—and continue to deny any wrongdoing or that they have committed any act or omission giving rise to any liability or violation of law, including the U.S. securities laws—and on December 5, 2016, Defendants filed a motion to dismiss the SAC.  Dkt. 50.  On January 6, 2017, Plaintiffs filed their papers in opposition

and, on January 20, 2017, Defendants filed their reply papers.  By January 20, 2017, all of the briefing on Defendants' motion to dismiss the SAC had been filed in the Western District of Texas.

19.     By Order dated May 8, 2017, District Judge Sam Sparks granted Defendants' motion to dismiss the SAC in part and denied it in part, concluding that Plaintiffs' allegations concerning Grupo Finmart's non-performing loans failed to raise a strong inference of scienter but permitting Plaintiffs' claims regarding the Grupo Finmart loan sales to proceed.  Dkt. 54.  Defendants filed Answers on June 9, 2017.  Dkts. 64-65.

20.     On July 20, 2017, Class Counsel and Defendants' Counsel participated in a full-day mediation session before Robert A. Meyer, Esq., of JAMS.  In advance of that session, the Parties prepared and exchanged detailed mediation statements and exhibits addressing liability and damages issues.  The session ended without any agreement being reached.

21.     On December 21, 2017, the Court granted Plaintiff Wu Huang's motion to withdraw as Co-Lead Plaintiff.  Dkt. 75.

22.     On January 31, 2018, Lead Plaintiff John Rooney moved for class certification.  Dkt. 77.  On March 16, 2018, Defendants filed their papers in opposition and, on April 20, 2018, Lead Plaintiff filed his reply papers.

23.     On April 20, 2018, Lead Plaintiff moved for leave to file a Third Amended Complaint ("TAC").  Dkt. 83.  The TAC alleged the same causes of action as the SAC, but narrowed the Class Period and incorporated additional allegations regarding Defendants' failure to properly account for non-performing payroll loans—a claim Judge Sparks had previously dismissed on scienter grounds, but which Lead Plaintiff sought to renew based on documentation obtained during discovery.  After briefing on the motion for leave to file a TAC, the Court granted leave to amend on July 26, 2018, and ordered the Parties to re-brief class certification given the changes to Plaintiff's allegations.  Dkt. 102.  Lead Plaintiff filed his TAC on that same day.  Dkt. 106.

24.     Defendants filed Answers to the TAC on August 3, 2018.  Dkts. 109-10.

25.     On August 31, 2018, Lead Plaintiff filed an amended motion for class certification.  Dkt. 113.  On September 28, 2018, Defendants filed their papers in opposition  Dkt. 114.  On October 12, 2018, Lead Plaintiff filed his reply papers (Dkt. 114) and on October 19, 2018, Defendants filed a sur-reply.  Dkt. 116.

26.     After the filing of the TAC, the Parties again attempted to resolve the Action through mediation.  In advance of another full-day mediation session overseen by Mediator Robert A. Meyer Esq. on November 1, 2018, the Parties again exchanged detailed briefs concerning liability and damages issues.  The session ended without an agreement being reached.

27.     By Order dated February 19, 2019, the Court granted Lead Plaintiff's motion, certifying a class consisting of "all persons and entities that purchased or otherwise acquired EZCORP, Inc. Class A common stock between January 28, 2014 and October 20, 2015, inclusive, and were damaged thereby."  The Court further appointed Lead Plaintiff John Rooney as Class Representative, appointed Block & Leviton LLP and Glancy Prongay & Murray LLP as Class Counsel, and appointed The Kendall Law Group, PLLC as Liaison Counsel.  Dkt. 120.

28.     On March 25, 2019, the Fifth Circuit granted Defendants leave to file an interlocutory appeal of the class certification order under Fed. R. Civ. P. 23(f).  Dkt. 127.

29.     While Defendants' appeal was pending before the Fifth Circuit, the Parties continued to conduct discussions with each other and Mediator Robert A. Meyer, Esq.  Those discussions ultimately resulted in an agreement in principle to settle the Action, which the Parties memorialized in a Memorandum of Understanding (the "MOU") executed on May 30, 2019.  The MOU sets forth, among other things, Lead Plaintiff and all members of the Class's agreement to settle and release all claims arising out of, based upon, or related to their purchase or acquisition of EZCORP class A common stock during the Class Period, and the allegations, transactions, facts, matters, occurrences, representations, or omissions involved, set forth, or referred to in the TAC, included but not limited to those allegations, transactions, facts, matters, occurrences, representations, or omissions related to EZCORP's November 2015 Restatement, in return for a cash payment by or on behalf of Defendants of $4,875,000 for the benefit of the Settlement Class, subject to certain terms and conditions and the execution of a customary "long form" stipulation and agreement of settlement and related papers

30.     At the time of MOU was executed, Class Counsel had engaged in substantial discovery, including the targeted review of 38,549 documents produced by Defendants, the issuance of 17 subpoenas on third parties, who produced 10,079 documents that were reviewed by Class Counsel, and the taking of four fact depositions of EZCORP employees and other third-party witnesses.

31.     Defendants are entering into the Settlement solely to eliminate the uncertainty, burden and expense of further protracted litigation.  Each of the Defendants denies any wrongdoing, and the Stipulation shall in no event be construed or deemed to be evidence of or an admission or concession on the part of any of the Defendants, or any other of the Defendants' Releasees (defined in ¶ 43 below), with respect to any claim or allegation of any fault or liability or wrongdoing or damage whatsoever, or any infirmity in the defenses that the Defendants have, or could have, asserted.  Similarly, the Settlement shall in no event be construed or deemed to be evidence of or an admission or concession on the part of Lead Plaintiff of any infirmity in any of the claims asserted in the Action, or an admission or concession that any of the Defendants' defenses to liability had any merit.

32.     On August 5, 2019, the Court preliminarily approved the Settlement, authorized the Postcard Notice to be mailed to potential Settlement Class Members and this Notice to be posted online and mailed to potential Settlement Class Members upon request, and scheduled the Settlement Hearing to consider whether to grant final approval to the Settlement.

## HOW DO I KNOW IF I AM AFFECTED BY THE SETTLEMENT? WHO IS INCLUDED IN THE SETTLEMENT CLASS?

33.     If you are a member of the Settlement Class, you are subject to the Settlement, unless you timely request to be excluded.  The Settlement Class consists of:

> all persons and entities that purchased or otherwise acquired EZCORP, Inc. Class A common stock between January 28, 2014 and October 20, 2015, inclusive, and were damaged thereby.

Excluded from the Settlement Class are Defendants; the officers and directors of the Company during the Settlement Class Period (the "Excluded Officers and Directors"); members of the Immediate Families of the Individual Defendant and of the Excluded Officers and Directors; any entity in which any Defendant, any Excluded Officer or Director, or any of their respective Immediate Family members had during the Settlement Class Period and/or has a controlling interest; and the legal representatives, heirs, successors or assigns of any excluded person or entity, in their respective capacity as such.  Also excluded from the Settlement Class are the persons and entities who or which timely and validly seek exclusion from the Settlement Class or whose request for exclusion is accepted by the Court.  *See* "What If I Do Not Want To Be A Member Of The Settlement Class?  How Do I Exclude Myself," on page 12 below.

**PLEASE NOTE:  RECEIPT OF THE POSTCARD NOTICE DOES NOT MEAN THAT YOU ARE A SETTLEMENT CLASS MEMBER OR THAT YOU WILL BE ENTITLED TO RECEIVE PROCEEDS FROM THE SETTLEMENT.**

**If you are a Settlement Class Member and you wish to be eligible to participate in the distribution of proceeds from the Settlement, you are required to submit the Claim Form that is available online at www.EZCORPsettlement.com or which can be mailed to you upon request to the Claims Administrator, and the required supporting documentation as set forth therein, postmarked no later than January 25, 2020.**

## WHAT ARE LEAD PLAINTIFF'S REASONS FOR THE SETTLEMENT?

34.     Lead Plaintiff and Class Counsel believe that the claims asserted against Defendants have merit.  They recognize, however, the expense and length of continued proceedings necessary to pursue their claims against the remaining Defendants through trial and appeals, as well as the very substantial risks they would face in establishing liability and damages.  Defendants have appealed the district court's order granting class certification, and with respect to Plaintiff's claims generally, Lead Plaintiff and Class Counsel recognized that Defendants had numerous avenues of attack that could preclude a recovery as to that statement.  For example, Defendants would assert that the alleged misstatements were not made with the requisite state of mind to support the securities fraud claims alleged.  Even if the hurdles to establishing liability were overcome, the amount of damages that could be attributed to Defendants' allegedly false statements would be hotly contested.  Plaintiff would have to prevail at several stages – the appeal of class certification, motions for summary judgment, and trial – and if they prevailed at those stages, on the appeals that would likely follow.  Thus, there were very significant risks attendant to the continued prosecution of the Action.

35.     In light of these risks, the amount of the Settlement and the immediacy of recovery to the Settlement Class, Lead Plaintiff and Class Counsel believe that the proposed Settlement is fair, reasonable and adequate, and in the best interests of the Settlement Class.  Lead Plaintiff and Class Counsel believe that the Settlement provides a substantial benefit to the Settlement Class, namely $4,875,000 in cash (less the various deductions described in this Notice), as compared to the risk that the claims in the Action would produce a smaller, or no recovery after summary judgment, trial and appeals, possibly years in the future.

36.     Defendants have denied the claims asserted against them in the Action and deny having engaged in any wrongdoing or violation of law of any kind whatsoever.  Defendants have agreed to the Settlement solely to eliminate the burden and expense of continued litigation.  Accordingly, the Settlement may not be construed as an admission of any wrongdoing by Defendants.

## WHAT MIGHT HAPPEN IF THERE WERE NO SETTLEMENT?

37.     If there were no Settlement and Lead Plaintiff failed to establish any essential legal or factual element of their claims against Defendants, neither Lead Plaintiff nor the other members of the Settlement Class would recover anything from Defendants.  Also, if Defendants were successful in proving any of their defenses, either at summary judgment, at trial or on appeal, the Settlement Class could recover substantially less than the amount provided in the Settlement, or nothing at all.

**HOW ARE SETTLEMENT CLASS MEMBERS AFFECTED BY THE ACTION AND THE SETTLEMENT?**

38.     As a Settlement Class Member, you are represented by Lead Plaintiff and Class Counsel, unless you enter an appearance through counsel of your own choice at your own expense. You are not required to retain your own counsel, but if you choose to do so, such counsel must file a notice of appearance on your behalf and must serve copies of his or her appearance on the attorneys listed in the section entitled, "When And Where Will The Court Decide Whether To Approve The Settlement?," on pages 12-13 below.

39.     If you are a Settlement Class Member and do not wish to remain a Settlement Class Member, you may exclude yourself from the Settlement Class by following the instructions in the section entitled, "What If I Do Not Want To Be A Member Of The Settlement Class?  How Do I Exclude Myself?," on page 12 below.

40.     If you are a Settlement Class Member and you wish to object to the Settlement, the Plan of Allocation, or Class Counsel's application for attorneys' fees and reimbursement of Litigation Expenses, and if you do not exclude yourself from the Settlement Class, you may present your objections by following the instructions in the section entitled, "When And Where Will The Court Decide Whether To Approve The Settlement?," below.

41.     If you are a Settlement Class Member and you do not exclude yourself from the Settlement Class, you will be bound by any orders issued by the Court. If the Settlement is approved, the Court will enter a judgment (the "Judgment"). The Judgment will dismiss with prejudice the claims against Defendants and will provide that, upon the Effective Date of the Settlement, Lead Plaintiff and each of the other Settlement Class Members, on behalf of themselves and their respective heirs, executors, administrators, predecessors, successors, and assigns in their capacities as such, will have fully, finally and forever compromised, settled, released, resolved, relinquished, waived and discharged each and every Released Plaintiff's Claim (as defined in ¶ 42 below) against the Defendants and the other Defendants' Releasees (as defined in ¶ 43 below), and shall forever be barred and enjoined from prosecuting any or all of the Released Plaintiff's Claims against any of the Defendants' Releasees.

42.     "Released Plaintiffs' Claims" means all claims, demands, rights, liabilities, and causes of action of every nature and description (including, but not limited to, any claims for damages, interest, attorneys' fees, expert or consulting fees, and any other costs, expenses or liabilities whatsoever), whether known claims or Unknown Claims, whether arising under federal, state, common or foreign law, or any other law, rule, ordinance, administrative provision or regulation, that Lead Plaintiff or any other member of the Settlement Class: (i) asserted in the TAC; (ii) could have asserted in any forum that arise out of or are based upon the allegations, transactions, facts, matters or occurrences, representations or omissions involved, set forth, or referred to in the TAC and that relate to the purchase of EZCORP Class A common stock during the Settlement Class Period, including but not limited to those allegations, transactions, facts, matters, occurrences, representations, or omissions related to EZCORP's November 2015 Restatement; or (iii) could have asserted in any forum that arise out of or relate in any way to the defense or settlement of the claims asserted in the Action. Released Plaintiffs' Claims do not include: (a) any claims relating to the enforcement of the Settlement;  and (b) any Excluded Claims.

43.     "Defendants' Releasees" means Defendants and their current and former parents, subsidiaries, affiliates, predecessors-in-interest, successors-in-interest, current or former directors, officers, employees, attorneys, accounts, insurers, agents, representatives, principals, assigns, subrogees, stockholders, partners, trustees, heirs, beneficiaries, servants, all persons claiming rights derivatively of them, and all other persons, trusts, partners, entities or corporations in privity with any of them or otherwise affiliated or related to any of them, in their capacities as such.

44.     "Unknown Claims" means any Released Plaintiffs' Claims which Lead Plaintiff or any other Settlement Class Member does not know or suspect to exist in his, her or its favor at the time of the release of such claims, and any Released Defendants' Claims which any Defendant or any other Defendants' Releasee does not know or suspect to exist in his, her, or its favor at the time of the release of such claims, which, if known by him, her or it, might have affected his, her or its decision(s) with respect to this Settlement. With respect to any and all Released Claims, the Parties stipulate and agree that, upon the Effective Date of the Settlement, Lead Plaintiff and Defendants shall expressly waive, and each of the other Settlement Class Members and each of the other Defendants' Releasees shall be deemed to have waived, and by operation of the Judgment or the Alternate Judgment, if applicable, shall have expressly waived, any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law or foreign law, which is similar, comparable, or equivalent to California Civil Code § 1542, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

Lead Plaintiff and Defendants acknowledge, and each of the other Settlement Class Members and each of the other Defendants' Releasees shall be deemed by operation of law to have acknowledged, that the foregoing waiver was separately bargained for and a key element of the Settlement.

45.     The Judgment will also provide that, upon the Effective Date of the Settlement, Defendants, on behalf of themselves and their respective heirs, executors, administrators, predecessors, successors, and assigns in their capacities as such, shall be deemed to have, and by operation of law and of the judgment shall have, fully, finally and forever compromised, settled, released, resolved, relinquished, waived and discharged each and every Released Defendants' Claim against Lead Plaintiff and the other Plaintiffs' Releasees, and shall forever be barred and enjoined from prosecuting any or all of the Released Defendants' Claims against any of the Plaintiffs' Releasees.

46.     "Released Defendants' Claims" means all claims and causes of action of every nature and description (including, but not limited to, any claims for damages, interest, attorneys' fees, expert or consulting fees, and any other costs, expenses or liabilities whatsoever), whether known claims or Unknown Claims, whether arising under federal, state, common or foreign law, or any other law, rule, ordinance, administrative provision or regulation, that arise out of or relate in any way to the institution, prosecution, or settlement of the claims asserted in the Action against the Defendants.  Released Defendants' Claims do not include any claims relating to the enforcement of the Settlement or any claims against any person or entity who or which submits a request for exclusion from the Settlement Class that is accepted by the Court.

47.     "Plaintiffs' Releasees" means Lead Plaintiff, all other plaintiffs in the Action, their respective attorneys, and all other Settlement Class Members, and their respective current and former officers, directors, agents, parents, affiliates, subsidiaries, successors, predecessors, assigns, assignees, employees, and attorneys, in their capacities as such.

## HOW DO I PARTICIPATE IN THE SETTLEMENT?  WHAT DO I NEED TO DO?

48.     To be eligible for a payment from the proceeds of the Settlement, you must be a member of the Settlement Class and you must timely complete and return the Claim Form with adequate supporting documentation **postmarked no later than January 25, 2020**.  A Claim Form is available on the website maintained by the Claims Administrator for the Settlement, www.EZCORPsettlement.com, or you may request that a Claim Form be mailed to you by calling the Claims Administrator toll-free at 1-877-295-8619.  Please retain all records of your ownership of and transactions in EZCORP Class A common stock, as they may be needed to document your Claim.  If you request exclusion from the Settlement Class or do not submit a timely and valid Claim Form, you will not be eligible to share in the Net Settlement Fund.

## HOW MUCH WILL MY PAYMENT BE?

49.     At this time, it is not possible to make any determination as to how much any individual Settlement Class Member may receive from the Settlement.

50.     Pursuant to the Settlement, Defendants have agreed to pay or caused to be paid four million, eight hundred seventy-five thousand dollars ($4,875,000) in cash.  The Settlement Amount will be deposited into an escrow account. The Settlement Amount plus any interest earned thereon is referred to as the "Settlement Fund."  If the Settlement is approved by the Court and the Effective Date occurs, the "Net Settlement Fund" (that is, the Settlement Fund less (a) all federal, state and/or local taxes on any income earned by the Settlement Fund and the reasonable costs incurred in connection with determining the amount of and paying taxes owed by the Settlement Fund (including reasonable expenses of tax attorneys and accountants); (b) the costs and expenses incurred in connection with providing notice to Settlement Class Members and administering the Settlement on behalf of Settlement Class Members; and (c) any attorneys' fees and Litigation Expenses awarded by the Court) will be distributed to Settlement Class Members who submit valid Claim Forms, in accordance with the proposed Plan of Allocation or such other plan of allocation as the Court may approve.

51.     The Net Settlement Fund will not be distributed unless and until the Court has approved the Settlement and a plan of allocation, and the time for any petition for rehearing, appeal or review, whether by certiorari or otherwise, has expired.

52.     Neither Defendants nor any other person or entity that paid any portion of the Settlement Amount on their behalf are entitled to get back any portion of the Settlement Fund once the Court's order or judgment approving the Settlement becomes Final.  Defendants shall not have any liability, obligation or responsibility for the administration of the Settlement, the disbursement of the Net Settlement Fund or the plan of allocation.

53.     Approval of the Settlement is independent from approval of a plan of allocation.  Any determination with respect to a plan of allocation will not affect the Settlement, if approved.

54.     Unless the Court otherwise orders, any Settlement Class Member who fails to submit a Claim Form postmarked on or before January 25, 2020 shall be fully and forever barred from receiving payments pursuant to the Settlement but will in all other respects remain a Settlement Class Member and be subject to the provisions of the Stipulation, including the terms of any Judgment entered and the releases given.  This means that each Settlement Class Member releases the Released Plaintiff's Claims (as defined in ¶ 42 above) against the Defendants' Releasees (as defined in ¶ 43 above) and will be enjoined and prohibited from filing, prosecuting, or pursuing any of the Released Plaintiff's Claims against any of the Defendants' Releasees, whether or not such Settlement Class Member submits a Claim Form.

55.     Participants in and beneficiaries of a plan covered by ERISA ("ERISA Plan") should NOT include any information relating to their transactions in EZCORP Class A common stock held through the ERISA Plan in any Claim Form that they may submit in this Action.  They should include ONLY those shares or notes that they purchased or acquired outside of the ERISA Plan.  Claims based on any ERISA Plan's purchases or acquisitions of EZCORP Class A common stock during the Settlement Class Period may be made by the plan's trustees.  To the extent any of the Defendants or any of the other persons or entities excluded from the Settlement Class are participants in the ERISA Plan, such persons or entities shall not receive, either directly or indirectly, any portion of the recovery that may be obtained from the Settlement by the ERISA Plan.

56.     The Court has reserved jurisdiction to allow, disallow, or adjust on equitable grounds the Claim of any Settlement Class Member.

57.     Each Claimant shall be deemed to have submitted to the jurisdiction of the Court with respect to his, her or its Claim Form.

58.     Only Settlement Class Members, *i.e.*, persons and entities who purchased or otherwise acquired EZCORP Class A common stock during the Settlement Class Period and were damaged as a result of such purchases or acquisitions will be eligible to share in the distribution of the Net Settlement Fund.  Persons and entities that are excluded from the Settlement Class by definition or that exclude themselves from the Settlement Class pursuant to request will not be eligible to receive a distribution from the Net Settlement Fund and should not submit Claim Forms.  The only securities that are included in the Settlement are shares of EZCORP Class A common stock.

## PROPOSED PLAN OF ALLOCATION

59.     The objective of the Plan of Allocation is to equitably distribute the Settlement proceeds to those Settlement Class Members who suffered economic losses as a proximate result of the alleged wrongdoing.  The calculations made pursuant to the Plan of Allocation are not intended to be estimates of, nor indicative of, the amounts that Settlement Class Members might have been able to recover after a trial.  Nor are the calculations pursuant to the Plan of Allocation intended to be estimates of the amounts that will be paid to Authorized Claimants pursuant to the Settlement.  The computations under the Plan of Allocation are only a method to weigh the claims of Authorized Claimants against one another for the purposes of making *pro rata* allocations of the Net Settlement Fund.

60.     The Plan of Allocation generally measures the amount of loss that a Settlement Class Member can claim for purposes of making *pro rata* allocations of the cash in the Net Settlement Fund to Authorized Claimants. The Plan of Allocation is not a formal damage analysis.  Recognized Loss Amounts are based primarily on the price declines observed over the period during which Lead Plaintiff alleges corrective information was entering the market place.  In this case, Lead Plaintiff alleges that Defendants made false statements and omitted material facts between January 28, 2014 and October 20, 2015, which had the effect of artificially inflating the prices of EZCORP Class A common stock.

61.     In order to have recoverable damages, disclosure of the alleged misrepresentations must be the cause of the decline in the price of EZCORP Class A common stock.  Alleged corrective disclosures that removed the artificial inflation from the price of EZCORP Class A common stock occurred between April 30, 2015 and October 20, 2015.  Accordingly, in order to have a Recognized Loss Amount:

(a)     EZCORP Class A common stock purchased or otherwise acquired from January 28, 2014 through and including April 29, 2015 must have been held through the close of trading on April 29, 2015, the day prior to the first corrective disclosure, and must have suffered a loss.

(b)     EZCORP Class A common stock purchased or otherwise acquired from April 30, 2015 through and including October 20, 2015, must have suffered a loss.

62.     To the extent a Claimant does not satisfy one of the conditions set forth in the preceding paragraph, his, her or its Recognized Loss Amount for those transactions will be zero.

63.     The entire Net Settlement Fund shall be distributed to members of the Settlement Class, other than the portion of the Net Settlement Fund that cannot be distributed because of prohibitive administrative costs, which remainder shall be donated to a non-sectarian, non-profit organization.

## CALCULATION OF RECOGNIZED LOSS AMOUNTS

64.     Based on the table set forth below, each share of EZCORP Class A common stock purchased or acquired during the Settlement Class Period, listed in the Proof of Claim Form, and for which adequate documentation is provided is assigned a "Recognized Loss Amount". All dates are inclusive.

| For shares purchased between January 28, 2014 and April 30, 2015 | |
|---|---|
| And sold on or before April 30, 2015 | No recognized loss |
| And sold between May 1, 2015 and May 20, 2015 | $0.89 / share |
| And sold between May 21, 2015 and July 16, 2015 | $1.54 / share |
| And sold between July 17, 2015 and October 19, 2015 | $1.67 / share |
| And sold on or after October 20, 2015 (or still held) | $1.88 / share |
| **For shares purchased between May 1, 2015 and May 20, 2015** | |
| And sold on or before May 20, 2015 | No recognized loss |
| And sold between May 21, 2015 and July 16, 2015 | $0.65 / share |
| And sold between July 17, 2015 and October 19, 2015 | $0.78 / share |
| And sold on or after October 20, 2015 (or still held) | $0.99 / share |
| **For shares purchased between May 21, 2015 and July 16, 2015** | |
| And sold on or before July 16, 2015 | No recognized loss |
| And sold between July 17, 2015 and October 19, 2015 | $0.07 / share |
| And sold on or after October 20, 2015 (or still held) | $0.17 / share |
| **For shares purchased between July 17, 2015 and October 19, 2015** | |
| And sold on or before October 19, 2015 | No recognized loss |
| And sold on or after October 20, 2015 (or still held) | $0.10 / share |

## ADDITIONAL PROVISIONS

65.     The Net Settlement Fund will be allocated among all Authorized Claimants whose Distribution Amount (defined in paragraph 68 below) is $10.00 or greater.

66.     If a Settlement Class Member has more than one purchase/acquisition or sale of EZCORP Class A common stock, all purchases/acquisitions and sales of the like security shall be matched on a First In, First Out ("FIFO") basis. Settlement Class Period sales will be matched first against any holdings at the beginning of the Settlement Class Period, and then against purchases/acquisitions in chronological order, beginning with the earliest purchase/acquisition made during the Settlement Class Period.

67.     A Claimant's "Recognized Claim" under the Plan of Allocation shall be the sum of his, her or its Recognized Loss Amounts for all of the shares of EZCORP Class A common stock.

68.     The Net Settlement Fund will be distributed to Authorized Claimants on a *pro rata* basis based on the relative size of their Recognized Claims.  Specifically, a "Distribution Amount" will be calculated for each Authorized Claimant, which shall be the Authorized Claimant's Recognized Claim divided by the total Recognized Claims of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund.  If any Authorized Claimant's Distribution Amount calculates to less than $10.00, it will not be included in the calculation and no distribution will be made to such Authorized Claimant.

69.     Purchases or acquisitions and sales of EZCORP Class A common stock shall be deemed to have occurred on the "contract" or "trade" date as opposed to the "settlement" or "payment" date.  The receipt or grant by gift, inheritance or operation of law of EZCORP Class A common stock during the Settlement Class Period shall not be deemed a purchase, acquisition or sale of EZCORP Class A common stock for the calculation of an Authorized Claimant's Recognized Loss Amount, nor shall the receipt or grant be deemed an assignment of any claim relating to the purchase/acquisition of any EZCORP Class A common stock unless (i) the donor or decedent purchased or otherwise acquired such EZCORP Class A common stock during the Settlement Class Period; (ii) no Claim Form was submitted by or on behalf of the donor, on behalf of the decedent, or by anyone else with respect to such EZCORP Class A common stock; and (iii) it is specifically so provided in the instrument of gift or assignment.

70.     The date of covering a "short sale" is deemed to be the date of purchase or acquisition of the EZCORP Class A common stock share(s).  The date of a "short sale" is deemed to be the date of sale of the EZCORP Class A common stock share(s).  Under the Plan of Allocation, however, the Recognized Loss Amount on "short sales" is zero.  In the event that a Claimant has an opening short position in EZCORP Class A common stock, the earliest Settlement Class Period purchases or acquisitions of that security shall be matched against such opening short position, and not be entitled to a recovery, until that short position is fully covered.

71.     Option contracts are not securities eligible to participate in the Settlement.  With respect to EZCORP Class A common stock purchased or sold through the exercise of an option, the purchase/sale date of the EZCORP Class A common stock is the exercise date of the option and the purchase/sale price of the EZCORP Class A common stock is the exercise price of the option.

72.     To the extent a Claimant had a market gain with respect to his, her, or its overall transactions in EZCORP Class A common stock during the Settlement Class Period, the value of the Claimant's Recognized Claim shall be zero.  Such Claimants shall in any event be bound by the Settlement.  To the extent that a Claimant suffered an overall market loss with respect to his, her, or its overall transactions in EZCORP Class A common stock during the Settlement Class Period, but that market loss was less than the total Recognized Claim calculated above, then the Claimant's Recognized Claim shall be limited to the amount of the actual market loss.

73.     For purposes of determining whether a Claimant had a market gain with respect to his, her, or its overall transactions in EZCORP Class A common stock during the Settlement Class Period or suffered a market loss, the Claims Administrator shall determine the difference between (i) the Total Purchase Amount[2] and (ii) the sum of the Total Sales Proceeds[3] and Total Holding Value.[4]  This difference shall be deemed a Claimant's market gain or loss with respect to his, her, or its overall transactions in EZCORP Class A common stock during the Settlement Class Period.

74.     After the initial distribution of the Net Settlement Fund, the Claims Administrator shall make reasonable and diligent efforts to have Authorized Claimants cash their distribution checks.  To the extent any monies remain in the fund nine (9) months after the initial distribution, if Class Counsel, in consultation with the Claims Administrator, determines that it is cost-effective to do so, the Claims Administrator shall conduct a re-distribution of the funds remaining after payment of any unpaid fees and expenses incurred in administering the Settlement, including for such re-distribution, to Authorized Claimants who have cashed their initial distributions and who would receive at least $10.00 from such re-distribution.  Additional re-distributions to Authorized Claimants who have cashed their prior checks and who would receive at least $10.00 on such additional re-distributions may occur thereafter if Class Counsel, in consultation with the Claims Administrator, determines that additional re-distributions, after the deduction of any additional fees and expenses incurred in administering the Settlement, including for such re-distributions, would be cost-effective.  At such time as it is determined that the re-distribution of funds remaining in the Net Settlement Fund is not cost-effective, the remaining balance shall be contributed to non-sectarian, not-for-profit organization(s), to be recommended by Class Counsel and approved by the Court.

75.     Payment pursuant to the Plan of Allocation, or such other plan of allocation as may be approved by the Court, shall be conclusive against all Authorized Claimants.  No person shall have any claim against Lead Plaintiff, Plaintiff's Counsel, Lead Plaintiff's damages expert, Defendants, Defendants' Counsel, or any of the other Releasees, or the Claims Administrator or other agent designated by Class Counsel arising from distributions made substantially in accordance with the Stipulation, the plan of allocation approved by the Court, or further Orders of the Court.  Lead Plaintiff, Defendants and their respective counsel, and all other Defendants' Releasees, shall have no responsibility or liability whatsoever for the investment or distribution of the Settlement Fund, the Net Settlement Fund, the plan of allocation, or the determination, administration, calculation, or payment of any Claim Form or nonperformance of the Claims Administrator, the payment or withholding of taxes owed by the Settlement Fund, or any losses incurred in connection therewith.

76.     The Plan of Allocation set forth herein is the plan that is being proposed to the Court for its approval by Lead Plaintiff after consultation with their damages expert.  The Court may approve this plan as proposed or it may modify the Plan of Allocation without further notice to the Settlement Class.  Any Orders regarding any modification of the Plan of Allocation will be posted on the Settlement website, www.EZCORPsettlement.com.

---

[2] The "Total Purchase Amount" is the total amount the Claimant paid (excluding commissions and other charges) for all EZCORP Class A common stock purchased or acquired during the Settlement Class Period.

[3] The Claims Administrator shall match any sales of EZCORP Class A common stock during the Settlement Class Period, first against the Claimant's opening position in the same security (the proceeds of those sales will not be considered for purposes of calculating market gains or losses).  The total amount received (excluding commissions and other charges) for the remaining sales of EZCORP Class A common stock sold during the Settlement Class Period shall be the "Total Sales Proceeds."

[4] The Claims Administrator shall ascribe a holding value to EZCORP Class A common stock purchased or acquired during the Settlement Class Period and still held as of the close of trading on October 20, 2015, which shall be $6.32 per share.

| **WHAT PAYMENT ARE THE ATTORNEYS FOR THE SETTLEMENT CLASS SEEKING? HOW WILL THE LAWYERS BE PAID?** |
|---|

77.     Plaintiff's Counsel have not received any payment for their services in pursuing claims against the Defendants on behalf of the Settlement Class, nor have Plaintiff's Counsel been reimbursed for their out-of-pocket expenses.  Before final approval of the Settlement, Class Counsel will apply to the Court for an award of attorneys' fees for all Plaintiff's Counsel in an amount not to exceed one-third of the Settlement Fund.  At the same time, Class Counsel also intends to apply for reimbursement of Litigation Expenses in an amount not to exceed $300,000, which may include an application for reimbursement of the reasonable costs and expenses incurred by Lead Plaintiff directly related to their representation of the Settlement Class.  The Court will determine the amount of any award of attorneys' fees or reimbursement of Litigation Expenses.  Such sums as may be approved by the Court will be paid from the Settlement Fund.  Settlement Class Members are not personally liable for any such fees or expenses.

| **WHAT IF I DO NOT WANT TO BE A MEMBER OF THE SETTLEMENT CLASS? HOW DO I EXCLUDE MYSELF?** |
|---|

78.     Each Settlement Class Member will be bound by all determinations and judgments in this lawsuit, whether favorable or unfavorable, unless such person or entity mails or delivers a written Request for Exclusion from the Settlement Class, addressed to *In re EZCORP, Inc. Securities Litigation*, EXCLUSIONS, c/o KCC Class Action Services, 3301 Kerner Blvd, San Rafael, CA 94901.  The exclusion request must be *received* no later than November 15, 2019.  You will not be able to exclude yourself from the Settlement Class after that date.  Each Request for Exclusion must: (a) state the name, address and telephone number of the person or entity requesting exclusion, and in the case of entities the name and telephone number of the appropriate contact person; (b) state that such person or entity "requests exclusion from the Settlement Class in *In re EZCORP, Inc. Securities Litigation*", Lead Case No. 1:15-CV-00608"; (c) identify and state the number of shares of EZCORP Class A common stock that the person or entity requesting exclusion purchased/acquired and/or sold during the Settlement Class Period (*i.e.*, between January 28, 2014 and October 20, 2015, inclusive), as well as the dates and prices of each such purchase/acquisition and sale; and (d) be signed by the person or entity requesting exclusion or an authorized representative.  A Request for Exclusion shall not be valid and effective unless it provides all the information called for in this paragraph and is received within the time stated above, or is otherwise accepted by the Court.

79.     If you do not want to be part of the Settlement Class, you must follow these instructions for exclusion even if you have pending, or later file, another lawsuit, arbitration, or other proceeding relating to any Released Plaintiff's Claim against any of the Defendants' Releasees.

80.     If you ask to be excluded from the Settlement Class, you will not be eligible to receive any payment out of the Net Settlement Fund.

81.     Defendants have the right to terminate the Settlement if valid requests for exclusion are received from persons and entities entitled to be members of the Settlement Class in an amount that exceeds an amount agreed to by Lead Plaintiff and Defendants.

| **WHEN AND WHERE WILL THE COURT DECIDE WHETHER TO APPROVE THE SETTLEMENT?  DO I HAVE TO COME TO THE HEARING? MAY I SPEAK AT THE HEARING IF I DON'T LIKE THE SETTLEMENT?** |
|---|

82.     **Settlement Class Members do not need to attend the Settlement Hearing.  The Court will consider any submission made in accordance with the provisions below even if a Settlement Class Member does not attend the hearing.  You can participate in the Settlement without attending the Settlement Hearing**.

83.     The Settlement Hearing will be held on December 6, 2019, at 10:00 a.m., before the Honorable Sam Sparks at the United States District Court for the Western District of Texas, United States Courthouse, 501 West 5th Street, Suite 4120, Austin, TX 78701.  The Court reserves the right to approve the Settlement, the Plan of Allocation, Class Counsel's motion for an award of attorneys' fees and reimbursement of Litigation Expenses and/or any other matter related to the Settlement at or after the Settlement Hearing without further notice to the members of the Settlement Class.

84.     Any Settlement Class Member who or which does not request exclusion may object to the Settlement, the proposed Plan of Allocation or Class Counsel's motion for an award of attorneys' fees and reimbursement of Litigation Expenses.  Objections must be in writing.  You must file any written objection, together with copies of all other papers and briefs supporting the objection, with the Clerk's Office at the United States District Court for the Western District of Texas at the address set forth below on or before November 15, 2019.  You must also serve the papers on Class Counsel and on Defendants' Counsel at the addresses set forth below so that the papers are *received* **on or before November 15, 2019**.

| **Clerk's Office** | **Class Counsel** | **Defendants' Counsel** |
|---|---|---|
| United States District Court | **Block & Leviton LLP** | **Vinson & Elkins LLP** |
| Western District of Texas | Jacob A. Walker, Esq. | Attn:  Jennifer B. Poppe, Esq. |
| Clerk of the Court | 260 Franklin Street, Suite 1860 | 2801 Via Fortuna, Suite 100 |
| United States Courthouse | Boston, MA 02110 | Austin, TX 78746 |
| 501 West 5th Street, Suite 1100 | | |
| Austin, TX 78701 | **Glancy Prongay & Murray LLP** | **Ewell, Brown, Blanke & Knight LLP** |
| | Casey E. Sadler, Esq. | Attn:  Gary Ewell, Esq. |
| | 1925 Century Park East, Suite 2100 | 111 Congress Avenue, Suite 2800 |
| | Los Angeles, CA 90067 | Austin, TX 78701 |

85.     Any objection: (a) must state the name, address and telephone number of the person or entity objecting and must be signed by the objector; (b) must contain a statement of the Settlement Class Member's objection or objections, and the specific reasons for each objection, including any legal and evidentiary support the Settlement Class Member wishes to bring to the Court's attention; and (c) must include documents sufficient to prove membership in the Settlement Class, including the number of shares of EZCORP Class A common stock that the objecting Settlement Class Member purchased/acquired and/or sold during the Settlement Class Period (*i.e.*, between January 28, 2014 and October 20, 2015, inclusive), as well as the dates and prices of each such purchase/acquisition and sale.  You may not object to the Settlement, the Plan of Allocation or Class Counsel's motion for attorneys' fees and reimbursement of Litigation Expenses if you exclude yourself from the Settlement Class or if you are not a member of the Settlement Class.

86.     You may file a written objection without having to appear at the Settlement Hearing.  You may not, however, appear at the Settlement Hearing to present your objection unless you first file and serve a written objection in accordance with the procedures described above, unless the Court orders otherwise.

87.     If you wish to be heard orally at the hearing in opposition to the approval of the Settlement, the Plan of Allocation or Class Counsel's motion for an award of attorneys' fees and reimbursement of Litigation Expenses, and if you timely file and serve a written objection as described above, you must also file a notice of appearance with the Clerk's Office and serve it on Class Counsel and Defendants' Counsel at the addresses set forth above so that it is *received* **on or before November 15, 2019**.  Persons who intend to object and desire to present evidence at the Settlement Hearing must include in their written objection or notice of appearance the identity of any witnesses they may call to testify and exhibits they intend to introduce into evidence at the hearing.  Such persons may be heard orally at the discretion of the Court.

88.     You are not required to hire an attorney to represent you in making written objections or in appearing at the Settlement Hearing.  However, if you decide to hire an attorney, it will be at your own expense, and that attorney must file a notice of appearance with the Court and serve it on Class Counsel and Defendants' Counsel at the addresses set forth in ¶ 84 above so that the notice is *received* **on or November 15, 2019**.

89.     The Settlement Hearing may be adjourned by the Court without further written notice to the Settlement Class. If you intend to attend the Settlement Hearing, you should confirm the date and time with Class Counsel.

90.     **Unless the Court orders otherwise, any Settlement Class Member who does not object in the manner described above will be deemed to have waived any objection and shall be forever foreclosed from making any objection to the proposed Settlement, the proposed Plan of Allocation or Class Counsel's motion for an award of attorneys' fees and reimbursement of Litigation Expenses.  Settlement Class Members do not need to appear at the Settlement Hearing or take any other action to indicate their approval.**

| **WHAT IF I BOUGHT SHARES ON SOMEONE ELSE'S BEHALF?** |
|---|

91.     If you purchased or otherwise acquired any EZCORP Class A common stock between January 28, 2014 and October 20, 2015, inclusive, for the beneficial interest of persons or organizations other than yourself, you must either: (a) within seven (7) calendar days of receipt of the Postcard Notice, request from the Claims Administrator sufficient copies of the Postcard Notice to forward to all such beneficial owners and within seven (7) calendar days of receipt of those Postcard Notices forward them to all such beneficial owners; or (b) within seven (7) calendar days of receipt of the Postcard Notice, provide a list of the names and addresses of all such beneficial owners to Nominees@EZCORPsettlement.com, or via mail to *In re EZCORP, Inc. Securities Litigation*, c/o KCC Class Action Services, Nominees, 3301 Kerner Blvd, San Rafael, CA 94901.  If you choose the second option, the Claims Administrator will send a copy of the Postcard Notice to the beneficial owners.  Upon full compliance with these directions, such nominees may seek reimbursement of their reasonable expenses actually incurred, up to a maximum of $0.10 per notice, plus actual cost of postage, by providing the Claims Administrator with proper documentation supporting the expenses for which reimbursement is sought.  Any dispute concerning the reasonableness of reimbursement costs shall be resolved by the Court.  Copies of this Notice and the Claim Form may be obtained from the website maintained by the Claims Administrator, www.EZCORPsettlement.com, or by calling the Claims Administrator toll-free at 1-877-295-8619.

**CAN I SEE THE COURT FILE?  WHOM SHOULD I CONTACT IF I HAVE QUESTIONS?**

92.     This Notice contains only a summary of the terms of the proposed Settlement.  For more detailed information about the matters involved in this Action, you are referred to the papers on file in the Action, including the Stipulation, which may be inspected during regular office hours at the Office of the Clerk, United States District Court for the Western District of Texas, United States Courthouse, 501 West 5th Street, Suite 1100, Austin, TX 78701.  Additionally, copies of the Stipulation and any related orders entered by the Court will be posted on the website maintained by the Claims Administrator, www.EZCORPsettlement.com.

All inquiries concerning this Notice and the Claim Form should be directed to the Claims Administrator or Class Counsel at:

<table>
<tr><td><i>In re EZCORP, Inc. Securities Litigation</i><br>c/o KCC Class Action Services<br>P.O. Box 43046<br>Providence, RI 02940-3046<br>1-877-295-8619<br>www.EZCORPsettlement.com</td><td>and/or</td><td><b>Block & Leviton LLP</b><br>Attn: Jacob A. Walker, Esq.<br>260 Franklin Street, Suite 1860<br>Boston, MA 02110<br>Telephone:  (617) 398-5617<br>Email: jake@blockesq.com<br><br><b>Glancy Prongay & Murray LLP</b><br>Attn:  Casey E. Sadler, Esq.<br>1925 Century Park East, Suite 2100<br>Los Angeles, CA 90067<br>Telephone:  (310) 201-9150<br>Email: settlements@glancylaw.com</td></tr>
</table>

**DO NOT CALL OR WRITE THE COURT, THE OFFICE OF THE CLERK OF THE COURT, DEFENDANTS OR THEIR COUNSEL REGARDING THIS NOTICE.**

Dated: August 5, 2019

By Order of the Court
United States District Court
Western District of Texas

**In re EZCORP, INC. SECURITIES LITIGATION**
**c/o KCC Class Action Services**
**P.O. Box 43046**
**Providence, RI 02940-3046**
**Toll-Free Number: 1-877-295-8619**
**Email: Info@EZCORPsettlement.com**
**Settlement Website: www.EZCORPsettlement.com**

## PROOF OF CLAIM AND RELEASE FORM

To be eligible to receive a share of the Net Settlement Fund in connection with the Settlement of this Action, you must complete and sign this Proof of Claim and Release Form ("Claim Form") and mail it by first-class mail to the above address, **postmarked no later than January 25, 2020**, or email it to the Claims Administrator at the above email address no later than January 25, 2020.

Failure to submit your Claim Form by the date specified will subject your claim to rejection and may preclude you from being eligible to receive any money in connection with the Settlement.

**Do not mail or deliver your Claim Form to the Court, the parties to the Action, or their counsel. Submit your Claim Form only to the Claims Administrator at the address set forth above.**

| TABLE OF CONTENTS | PAGE # |
|---|---|
| **PART I – GENERAL INSTRUCTIONS** | **2** |
| **PART II – CLAIMANT IDENTIFICATION** | **5** |
| **PART III – SCHEDULE OF TRANSACTIONS IN EZCORP, INC. CLASS A COMMON STOCK** | **6** |
| **PART IV – RELEASE OF CLAIMS AND SIGNATURE** | **7** |

## PART I – GENERAL INSTRUCTIONS

1.      It is important that you completely read and understand the Notice of (I) Pendency of Class Action and Proposed Settlement; (II) Settlement Fairness Hearing; and (III) Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses (the "Notice") that accompanies this Claim Form, including the Plan of Allocation of the Net Settlement Fund set forth in the Notice.  The Notice describes the proposed Settlement, how Settlement Class Members are affected by the Settlement, and the manner in which the Net Settlement Fund will be distributed if the Settlement and Plan of Allocation are approved by the Court.  The Notice also contains the definitions of many of the defined terms (which are indicated by initial capital letters) used in this Claim Form.  By signing and submitting this Claim Form, you will be certifying that you have read and that you understand the Notice, including the terms of the releases described therein and provided for herein.

2.      By submitting this Claim Form, you will be making a request to share in the proceeds of the Settlement described in the Notice.  IF YOU ARE NOT A SETTLEMENT CLASS MEMBER (see the definition of the Settlement Class in paragraph 33 of the Notice, which sets forth who is included in and who is excluded from the Settlement Class), OR IF YOU, OR SOMEONE ACTING ON YOUR BEHALF, SUBMITTED A REQUEST FOR EXCLUSION FROM THE SETTLEMENT CLASS, DO NOT SUBMIT A CLAIM FORM.  **YOU MAY NOT, DIRECTLY OR INDIRECTLY, PARTICIPATE IN THE SETTLEMENT IF YOU ARE NOT A SETTLEMENT CLASS MEMBER.**  THUS, IF YOU ARE EXCLUDED FROM THE SETTLEMENT CLASS, ANY CLAIM FORM THAT YOU SUBMIT, OR THAT MAY BE SUBMITTED ON YOUR BEHALF, WILL NOT BE ACCEPTED.

3.      **Submission of this Claim Form does not guarantee that you will share in the proceeds of the Settlement.  The distribution of the Net Settlement Fund will be governed by the Plan of Allocation set forth in the Notice, if it is approved by the Court, or by such other plan of allocation as the Court approves.**

4.      Use the Schedule of Transactions in Part III of this Claim Form to supply all required details of your transaction(s) (including free transfers and deliveries) in and holdings of EZCORP, Inc. Class A common stock.  On this schedule, please provide all of the requested information with respect to your holdings, purchases, acquisitions, and sales of EZCORP, Inc. Class A common stock, whether such transactions resulted in a profit or a loss.  **Failure to report all transaction and holding information during the requested time period may result in the rejection of your claim.**

5.      You are required to submit genuine and sufficient documentation for all of your transactions in and holdings of EZCORP, Inc. Class A common stock set forth in the Schedule of Transactions in Part III of this Claim Form.  Documentation may consist of copies of brokerage confirmation slips or monthly brokerage account statements, or an authorized statement from your broker containing the transactional and holding information found in a broker confirmation slip or account statement.  The Parties and the Claims Administrator do not independently have information about your investments in EZCORP, Inc. Class A common stock. IF SUCH DOCUMENTS ARE NOT IN YOUR POSSESSION, PLEASE OBTAIN COPIES OR EQUIVALENT DOCUMENTS FROM YOUR BROKER.  FAILURE TO SUPPLY THIS DOCUMENTATION MAY RESULT IN THE REJECTION OF YOUR CLAIM.  DO NOT SEND ORIGINAL DOCUMENTS.  **Please keep a copy of all documents that you send to the Claims Administrator. Also, please do not highlight any portion of the Claim Form or any supporting documents.**

6.      Separate Claim Forms should be submitted for each separate legal entity (*e.g.*, a claim from joint owners should not include separate transactions of just one of the joint owners, and an individual should not combine his or her IRA transactions with transactions made solely in the individual's name). Conversely, a single Claim Form should be submitted on behalf of one legal entity including all transactions made by that entity on one Claim Form, no matter how many separate accounts that entity has (*e.g.*, a corporation with multiple brokerage accounts should include all transactions made in all accounts on one Claim Form).

7.      All joint beneficial owners must each sign this Claim Form and their names must appear as "Claimants" in Part IV of this Claim Form.  If you purchased EZCORP, Inc. Class A common stock during the Settlement Class Period and held the shares in your name, you are the beneficial owner as well as the record owner and you must sign this Claim Form to participate in the Settlement.  If, however, you purchased EZCORP, Inc. Class A common stock during the relevant time period and the securities were registered in the name of a third party, such as a nominee or brokerage firm, you are the beneficial owner of these shares, but the third party is the record owner.  The beneficial owner, not the record owner, must sign this Claim Form to be eligible to participate in the Settlement.

8.      Agents, executors, administrators, guardians, and trustees must complete and sign the Claim Form on behalf of persons represented by them, and they must:

> (a)      expressly state the capacity in which they are acting;

> (b)      identify the name, account number, Social Security Number (or taxpayer identification number), address and telephone number of the beneficial owner of (or other person or entity on whose behalf they are acting with respect to) the EZCORP, Inc. Class A common stock; and

> (c)      furnish herewith evidence of their authority to bind to the Claim Form the person or entity on whose behalf they are acting.  (Authority to complete and sign a Claim Form cannot be established by stockbrokers demonstrating only that they have discretionary authority to trade securities in another person's accounts.)

9.      By submitting a signed Claim Form, you will be swearing that you:

> (a)      own(ed) the EZCORP, Inc. Class A common stock you have listed in the Claim Form; or

> (b)      are expressly authorized to act on behalf of the owner thereof.

10.      By submitting a signed Claim Form, you will be swearing to the truth of the statements contained therein and the genuineness of the documents attached thereto, subject to penalties of perjury under the laws of the United States of America.  The making of false statements, or the submission of forged or fraudulent documentation, will result in the rejection of your claim and may subject you to civil liability or criminal prosecution.

11.      If the Court approves the Settlement, payments to eligible Authorized Claimants pursuant to the Plan of Allocation (or such other plan of allocation as the Court approves) will be made after any appeals are resolved, and after the completion of all claims processing.  The claims process will take substantial time to complete fully and fairly.  Please be patient.

12.      **PLEASE NOTE:**  As set forth in the Plan of Allocation, each Authorized Claimant shall receive his, her or its *pro rata* share of the Net Settlement Fund.  If the prorated payment to any Authorized Claimant calculates to less than $10.00, it will not be included in the calculation and no distribution will be made to that Authorized Claimant.

13.      If you have questions concerning the Claim Form, or need additional copies of the Claim Form or the Notice, you may contact the Claims Administrator, KCC Class Action Services, at the above address, by email at Info@EZCORPsettlement.com, or by toll-free phone at 1-877-295-8619, or you can visit the Settlement website, www.EZCORPsettlement.com, where copies of the Claim Form and Notice are available for downloading.

14.     NOTICE REGARDING ELECTRONIC FILES:   Certain claimants with large numbers of transactions may request, or may be requested, to submit information regarding their transactions in electronic files.  To obtain the mandatory electronic filing requirements and file layout, you may visit the Settlement website at www.EZCORPsettlement.com  or you may email the Claims Administrator's electronic filing department at Nominees@EZCORPsettlement.com.  Any file not in accordance with the required electronic filing format will be subject to rejection.  No electronic files will be considered to have been properly submitted unless the Claims Administrator issues an email to that effect after processing your file with your claim numbers and respective account information.  **Do not assume that your file has been received or processed until you receive this email.  If you do not receive such an email within 10 days of your submission, you should contact the electronic filing department at Nominees@EZCORPsettlement.com to inquire about your file and confirm it was received and acceptable.**

**IMPORTANT: PLEASE NOTE**

**YOUR CLAIM IS NOT DEEMED FILED UNTIL YOU RECEIVE AN ACKNOWLEDGEMENT POSTCARD. THE CLAIMS ADMINISTRATOR WILL ACKNOWLEDGE RECEIPT OF YOUR CLAIM FORM BY MAIL, WITHIN 60 DAYS.  IF YOU DO NOT RECEIVE AN ACKNOWLEDGEMENT POSTCARD WITHIN 60 DAYS, PLEASE CALL THE CLAIMS  ADMINISTRATOR TOLL-FREE AT 1-877-295-8619.**

**Must Be Postmarked or Received
No Later Than January 25, 2020**

Official
Office
Use
Only

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

*In re EZCORP, INC. SECURITIES LITIGATION*

Lead Case No. 1:15-CV-00608-SS

**EIL**

**PROOF OF CLAIM AND RELEASE**

<u>Please Type or Print in the Boxes Below</u>
Do <u>NOT</u> use Red Ink, Pencil, or Staples

## PART II: CLAIMANT IDENTIFICATION

The Claims Administrator will use this information for all communications regarding this Claim Form. If this information changes, you MUST notify the Claims Administrator in writing at the address above.

Claimant Name(s) (as the name(s) should appear on check, if eligible for payment; if the shares are jointly owned, the names of all beneficial owners must be provided)

Last Name

M.I.

First Name

Last Name (Co-Beneficial Owner)

M.I.

First Name (Co-Beneficial Owner)

Name of Person the Claims Administrator Should Contact Regarding this Claim Form (Must Be Provided)

Last Name

M.I.

First Name

Last Four Digits of Claimant Social Security Number        or        Taxpayer Identification Number[1]

Daytime Telephone Number

Evening Telephone Number

Email Address (E-mail address is not required, but if you provide it you authorize the Claims Administrator to use it in providing you with information relevant to this claim.)

[1] The last four digits of the taxpayer identification number (TIN), consisting of a valid Social Security Number (SSN) for individuals or Employer Identification Number (EIN) for business entities, trusts, estates, etc., and the telephone number of the beneficial owner(s) may be used in verifying this claim.

## MAILING INFORMATION

Mailing Address – Line 1: Street Address/P.O. Box

Mailing Address – Line 2 (If Applicable): Apartment/Suite/Floor Number

City

State

Zip Code

Foreign Province

Foreign Postal Code

Foreign Country Name/Abbreviation

| FOR CLAIMS PROCESSING ONLY | OB | CB | ○ ATP ○ KE ○ ICI | ○ BE ○ DR ○ EM | ○ FL ○ ME ○ ND | ○ OP ○ RE ○ SH | M M / D D / Y Y Y Y | FOR CLAIMS PROCESSING ONLY |
|---|---|---|---|---|---|---|---|---|

5

**PART III: SCHEDULE OF TRANSACTIONS IN EZCORP, INC. CLASS A COMMON STOCK**

Please be sure to include proper documentation with your Claim Form as described in detail in Part I – General Instructions, Paragraph 5, above. Do not include information regarding securities other than EZCORP, Inc. Class A common stock.

1. **HOLDINGS AS OF JANUARY 28, 2014 -** State the total number of shares of EZCORP, Inc. Class A common stock held as of the opening of trading on January 28, 2014. (Must be documented.)  If none, write "zero" or "0." 

   Proof Enclosed?  ◯ Y  ◯ N

2. **PURCHASES/ACQUISITIONS BETWEEN JANUARY 28, 2014 AND OCTOBER 20, 2015 -** Separately list each and every purchase/acquisition (including free receipts) of EZCORP, Inc. Class A common stock from after the opening of trading on January 28, 2014 through and including the close of trading on October 20, 2015.  (Must be documented.)

| PURCHASES | | | |
|---|---|---|---|
| Date of Purchase/ Acquisition (List Chronologically) | Number of Shares Purchased/Acquired | Total Purchase/Acquisition Price (excluding taxes, commissions, and fees). Please round off to the nearest whole dollar | Proof of Purchase Enclosed? |
| M M / D D / Y Y Y Y | | $ . 00 | ◯ Y ◯ N |
| 1. __/__/____ | | $ . 00 | ◯ Y ◯ N |
| 2. __/__/____ | | $ . 00 | ◯ Y ◯ N |
| 3. __/__/____ | | $ . 00 | ◯ Y ◯ N |
| 4. __/__/____ | | $ . 00 | ◯ Y ◯ N |
| 5. __/__/____ | | $ . 00 | ◯ Y ◯ N |

3. **SALES/DISPOSITIONS BETWEEN JANUARY 28, 2014 AND OCTOBER 20, 2015 -** Separately list each and every sale/disposition (including gift) of EZCORP, Inc. Class A common stock from after the opening of trading on January 28, 2014 through and including the close of trading on October 20, 2015.  (Must be documented.)

| SALES | | | |
|---|---|---|---|
| Trade Date(s) of Shares (List Chronologically) | Number of Shares Sold | Total Sales Price (Excluding Commissions, Taxes and Fees). Please round off to the nearest whole dollar | Proof of Sales Enclosed? |
| M M / D D / Y Y Y Y | | $ . 00 | ◯ Y ◯ N |
| 1. __/__/____ | | $ . 00 | ◯ Y ◯ N |
| 2. __/__/____ | | $ . 00 | ◯ Y ◯ N |
| 3. __/__/____ | | $ . 00 | ◯ Y ◯ N |
| 4. __/__/____ | | $ . 00 | ◯ Y ◯ N |
| 5. __/__/____ | | $ . 00 | ◯ Y ◯ N |

4. **HOLDINGS AS OF OCTOBER 20, 2015 -** State the total number of shares of EZCORP, Inc. Class A common stock held as of the close of trading on October 20, 2015. (Must be documented.)  If none, write "zero" or "0." 

   Proof Enclosed?  ◯ Y  ◯ N

If you require additional space, attach extra schedules in the same format as above.  Sign and print your name on each additional page.

**YOU MUST READ AND SIGN THE RELEASE ON PAGES 7-8.  FAILURE TO SIGN THE RELEASE MAY RESULT IN A DELAY IN PROCESSING OR THE REJECTION OF YOUR CLAIM.**





## PART IV - RELEASE OF CLAIMS AND SIGNATURE

**YOU MUST ALSO READ THE RELEASE AND CERTIFICATION BELOW AND SIGN ON PAGES 7-8 OF THIS CLAIM FORM.**

I (we) hereby acknowledge that, pursuant to the terms set forth in the Stipulation, without further action by anyone, upon the Effective Date of the Settlement, I (we), on behalf of myself (ourselves), and my (our) heirs, executors, administrators, predecessors, successors, and assigns, in their capacities as such, shall be deemed to have, and by operation of law and of the judgment shall have, fully, finally, and forever compromised, settled, released, resolved, relinquished, waived and discharged each and every Released Plaintiff's Claims (including, without limitation, any Unknown Claims) against the Defendants and the other Defendants' Releasees, and shall forever be barred and enjoined from prosecuting any or all of the Released Plaintiff's Claims against any of the Defendants' Releasees.

### CERTIFICATION

By signing and submitting this Claim Form, the claimant(s) or the person(s) who represent(s) the claimant(s) agree(s) to the release above and certifies (certify) as follows:

1.  that I (we) have read and understand the contents of the Notice and this Claim Form, including the releases provided for in the Settlement and the terms of the Plan of Allocation;

2.  that the claimant(s) is a (are) Settlement Class Member(s), as defined in the Notice, and is (are) not excluded by definition from the Settlement Class as set forth in the Notice;

3.  that the claimant has **not** submitted a request for exclusion from the Settlement Class;

4.  that I (we) own(ed) the EZCORP, Inc. Class A common stock identified in the Claim Form and have not assigned the claim against any of the Defendants or any of the other Defendants' Releasees to another, or that, in signing and submitting this Claim Form, I (we) have the authority to act on behalf of the owner(s) thereof;

5.  that the claimant(s) has (have) not submitted any other claim covering the same purchases of EZCORP, Inc. Class A common stock and knows (know) of no other person having done so on the claimant's (claimants') behalf;

6.  that the claimant(s) submit(s) to the jurisdiction of the Court with respect to claimant's (claimants') claim and for purposes of enforcing the releases set forth herein;

7.  that I (we) agree to furnish such additional information with respect to this Claim Form as Class Counsel, the Claims Administrator or the Court may require;

8.  that the claimant(s) waive(s) the right to trial by jury, to the extent it exists, and agree(s) to the Court's summary disposition of the determination of the validity or amount of the claim made by this Claim Form;

9.  that I (we) acknowledge that the claimant(s) will be bound by and subject to the terms of any judgment(s) that may be entered in the Action; and

10.  that the claimant(s) is (are) NOT subject to backup withholding under the provisions of Section 3406(a)(1)(C) of the Internal Revenue Code because (a) the claimant(s) is (are) exempt from backup withholding or (b) the claimant(s) has (have) not been notified by the IRS that he/she/it is subject to backup withholding as a result of a failure to report all interest or dividends or (c) the IRS has notified the claimant(s) that he/she/it is no longer subject to backup withholding. **If the IRS has notified the claimant(s) that he/she/it is subject to backup withholding, please strike out the language in the preceding sentence indicating that the claim is not subject to backup withholding in the certification above.**

UNDER THE PENALTIES OF PERJURY, I (WE) CERTIFY THAT ALL OF THE INFORMATION PROVIDED BY ME (US) ON THIS CLAIM FORM IS TRUE, CORRECT, AND COMPLETE, AND THAT THE DOCUMENTS SUBMITTED HEREWITH ARE TRUE AND CORRECT COPIES OF WHAT THEY PURPORT TO BE.

_____          _____
Signature of claimant                        Dated (mm/dd/yyyy)

_____
Print your name here

_____          _____
Signature of joint claimant, if any          Dated (mm/dd/yyyy)

_____
Print your name here



*If the claimant is other than an individual, or is not the person completing this form, the following also must be provided:*

_____                    _____
Signature of person signing on behalf of claimant                                     Dated (mm/dd/yyyy)

_____
Print your name here

## ACCURATE CLAIMS PROCESSING TAKES A SIGNIFICANT AMOUNT OF TIME.
## THANK YOU FOR YOUR PATIENCE.

Reminder Checklist:

1. Please sign the above release and certification. If this Claim Form is being made on behalf of joint claimants, then both must sign.

2. Remember to attach only **copies** of acceptable supporting documentation as these documents will not be returned to you.

3. Please do not highlight any portion of the Claim Form or any supporting documents.

4. Keep copies of the completed Claim Form and documentation for your own records.

5. The Claims Administrator will acknowledge receipt of your Claim Form by mail, within 60 days. Your claim is not deemed filed until you receive an acknowledgement postcard. If you do not receive an acknowledgement postcard within 60 days, please call the Claims Administrator toll-free at 1-877-295-8619.

6. If your address changes in the future, or if this Claim Form was sent to an old or incorrect address, please send the Claims Administrator written notification of your new address. If you change your name, please inform the Claims Administrator.

7. If you have any questions or concerns regarding your claim, please contact the Claims Administrator at the address below, by email at Info@EZCORPsettlement.com, or by toll-free phone at 1-877-295-8619, or you may visit www.EZCORPsettlement.com. Please DO NOT call EZCORP, Inc. or any other Defendant or their counsel with questions regarding your claim.

THIS CLAIM FORM MUST BE MAILED, OR EMAILED, TO THE CLAIMS ADMINISTRATOR BY FIRST-CLASS MAIL, **POSTMARKED NO LATER THAN JANUARY 25, 2020**, ADDRESSED AS FOLLOWS:

In re EZCORP, INC. SECURITIES LITIGATION
c/o KCC Class Action Services
P.O. Box 43046
Providence, RI 02940-3046
1-877-295-8619
www.EZCORPsettlement.com

A Claim Form received by the Claims Administrator shall be deemed to have been submitted when posted, if a postmark date on or before January 25, 2020 is indicated on the envelope and it is mailed First Class, and addressed in accordance with the above instructions. In all other cases, a Claim Form shall be deemed to have been submitted when actually received by the Claims Administrator.

You should be aware that it will take a significant amount of time to fully process all of the Claim Forms. Please be patient and notify the Claims Administrator of any change of address.



# Exhibit B

INVESTOR'S BUSINESS DAILY                                                                WEEK OF SEPTEMBER 9, 2019   B1

# INVESTOR'S BUSINESS DAILY

















## IBD 50

**SMARTSELECT® COMPOSITE RATING**

| Rank | Company | Price | EPS Rtg | Rel Str Rtg | Acc/ EPS Est % Chg | Last Qtr % Chg | NxtQtr EPS % Chg | Last Qtr Sales % Chg | Pretax Mrgn | Mgt Own % |
|------|---------|-------|---------|-------------|--------------------|----------------|------------------|----------------------|-------------|-----------|
| | **COMPANIES 1-15** | | | | | | | | | |
| 1 | PagSeguro Digital | 51.67 | 99 | 99 | 99 | +29 | +33 | +23 | +39 | 29 | .. 1 |
| | ▶ Brazil company offers small-merchant payment services, like Square. | | | | | | | | | |
| 2 | Kirkland Lake Gold | 47.34 | 99 | 99 | 98 | +72 | +67 | +124 | +31 | 15 | 27 | 4 |
| | Mines for gold and minerals in sites in Canada and Australia. | | | | | | | | | |
| 3 | Universal Display | 224.8 | 97 | 98 | 98 | +119 | +300 | +19 | +110 | 9 | 25 | 4 |
| | Sees rising pipeline of products using organic light-emitting diodes. | | | | | | | | | |
| 4 | Paycom Software | 249.6 | 99 | 98 | 97 | +26 | +27 | +29 | +31 | 51 | 37 | 10 |
| | ▶ One of the fastest-growing cloud-based human resources software firms. | | | | | | | | | |
| 5 | Veeva Systems | 157.3 | 97 | 99 | 95 | +29 | +41 | +20 | +27 | 24 | 37 | 1 |
| | ▶ Cloud computing company serves top pharmaceuticals, biotechs. | | | | | | | | | |
| 6 | Paylocity | 107.4 | 99 | 99 | 94 | +29 | +20 | +50 | +25 | 29 | 20 | 41 |
| | ▶ Cloud-based model offers payroll, human capital management services. | | | | | | | | | |
| 7 | Atlassian | 132.2 | 99 | 99 | 94 | +18 | +43 | +20 | +36 | 29 | 22 | 3 |
| | ▶ Team collaboration software innovator shows big annual free cash flow. | | | | | | | | | |
| 8 | Heico | 142.9 | 99 | 98 | 96 | +39 | +34 | +30 | +34 | 18 | 20 | 14 |
| | Company serves aerospace, industrial and defense segments. | | | | | | | | | |
| 9 | Copart | 81.38 | 99 | 98 | 94 | +43 | +43 | +17 | +21 | 31 | 31 | 16 |
| | Auctioned vehicles are sold to dismantlers, rebuilders and others. | | | | | | | | | |
| 10 | Baozun | 48.57 | 98 | 99 | 92 | +38 | +42 | +58 | +45 | 8 | 8 | 11 |
| | ▶ Company aids exporters wishing to sell in the China e-commerce market. | | | | | | | | | |
| 11 | MasTec | 63.67 | 94 | 97 | 96 | +43 | +54 | +22 | +20 | 21 | 6 | 21 |
| | Expert in building, maintenance services for utilities, telcos. | | | | | | | | | |
| 12 | Epam | 192.9 | 99 | 97 | 93 | +20 | +27 | +15 | +12 | 15 | 11 | 8 |
| | ▶ IT outsourcer focuses on Central, Eastern Europe, where rivals lag. | | | | | | | | | |
| 13 | Lululemon | 203.1 | 98 | 96 | 96 | +21 | +35 | +20 | +22 | 34 | 21 | 1 |
| | ▶ Continues to innovate in field of yogawear, athletic apparel. | | | | | | | | | |
| 14 | CDW | 126.8 | 92 | 96 | 92 | +13 | +16 | +11 | +11 | 45 | 8 | 1 |
| | ▶ Chicago suburban firm provides hardware, software and tech solutions. | | | | | | | | | |
| 15 | Edwards Lifesciences | 226.3 | 99 | 93 | 95 | +13 | +11 | +14 | +15 | 33 | 31 | 2 |
| | Company is a leader in heart valve replacements. | | | | | | | | | |

## How To Succeed With IBD 50

The IBD 50 is a weekly computer-generated watch list of market leading growth stocks. We use earnings, sales plus other basics & price action. Don't buy a stock solely on it being in the list. Scan charts for ones near buy points, in price bases or at support areas like a 10-week moving average. See Investors.com for further research. Be sure to read an archived story & analyze your stock with IBD's Stock Checkup.

---

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

In re EZCORP, INC. SECURITIES LITIGATION                     Lead Case No. 1:15-CV-00608-SS
                                                             Honorable Sam Sparks

**SUMMARY NOTICE OF (I) PENDENCY OF CLASS ACTION AND PROPOSED SETTLEMENT; (II) SETTLEMENT FAIRNESS HEARING; AND (III) MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES**

**TO: All persons and entities who, during the period between January 28, 2014 and October 20, 2015, inclusive, purchased or otherwise acquired EZCORP's Class A common stock and were injured thereby (the "Settlement Class"):**

**PLEASE READ THIS NOTICE CAREFULLY. YOUR RIGHTS WILL BE AFFECTED BY A CLASS ACTION LAWSUIT PENDING IN THIS COURT.**

YOU ARE HEREBY NOTIFIED, pursuant to Rule 23 of the Federal Rules of Civil Procedure and an Order of the United States District Court for the Western District of Texas, that the above-captioned litigation (the "Action") has been certified as a class action on behalf of the Settlement Class, except for certain persons and entities who are excluded from the Settlement Class by definition as set forth in the full Notice of (I) Pendency of Class Action and Proposed Settlement; (II) Settlement Fairness Hearing; and (III) Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses (the "Notice").

YOU ARE ALSO NOTIFIED that Lead Plaintiff in the Action has reached a proposed settlement of the Action for $4,875,000 in cash (the "Settlement"), that, if approved, will resolve all claims in the Action.

A hearing will be held on December 6, 2019 at 10:00 a.m., before the Honorable Sam Sparks at the United States District Court for the Western District of Texas, United States Courthouse, 501 West 5th Street, Suite 4120, Austin, TX 78701, to determine (i) whether the proposed Settlement should be approved as fair, reasonable, and adequate; (ii) whether the Action should be dismissed with prejudice against Defendants, and the Releases specified and described in the Stipulation and Agreement of Settlement (and in the Notice) (and in the Notice) should be granted; (iii) whether the proposed Plan of Allocation should be approved as fair and reasonable; and (iv) whether Lead Counsel's application for an award of attorneys' fees and reimbursement of expenses should be approved.

**If you are a member of the Settlement Class, your rights will be affected by the pending Action and the Settlement, and you may be entitled to share in the Settlement Fund.** The Notice and Proof of Claim and Release Form ("Claim Form"), can be downloaded from the website maintained by the Claims Administrator, www.EZCORPsettlement.com. You may also obtain copies of the Notice and Claim Form by contacting the Claims Administrator at *In re EZCORP, Inc. Securities Litigation*, c/o KCC Class Action Services, P.O. Box 43046, Providence, RI 02940-3046, 1-877-295-8619.

If you are a member of the Settlement Class, in order to be eligible to receive a payment under the proposed Settlement, you must submit a Claim Form postmarked no later than January 25, 2020. If you are a Settlement Class Member and do not submit a proper Claim Form, you will not be eligible to share in the distribution of the net proceeds of the Settlement, but you will nevertheless be bound by any judgments or orders entered by the Court in the Action.

If you are a member of the Settlement Class and wish to exclude yourself from the Settlement Class, you must submit a request for exclusion such that it is received no later than November 15, 2019, in accordance with the instructions set forth in the Notice. If you properly exclude yourself from the Settlement Class, you will not be bound by any judgments or orders entered by the Court in the Action, and you will not be eligible to share in the proceeds of the Settlement.

Any objections to the proposed Settlement, the proposed Plan of Allocation, or Class Counsel's motion for attorneys' fees and reimbursement of expenses, must be filed with the Court and delivered to Class Counsel and Defendants' Counsel such that they are received no later than November 15, 2019, in accordance with the instructions set forth in the Notice.

**Please do not contact the Court, the Clerk's office, EZCORP, or its counsel regarding this notice. All questions about this notice, the proposed Settlement, or your eligibility to participate in the Settlement should be directed to Class Counsel or the Claims Administrator.**

Inquiries, other than requests for the Notice and Claim Form, should be made to Class Counsel:

Glancy Prongay & Murray LLP                          Block & Leviton LLP
Attn: Casey E. Sadler, Esq.                          Attn: Jacob A. Walker, Esq.
1925 Century Park East, Suite 2100                   260 Franklin Street, Suite 1860,
Los Angeles, CA 90067                                Boston, MA 02110
Telephone: (310) 201-9150                            Telephone: (617) 398-5617
Email: settlements@glancylaw.com                     Email: jake@blockesq.com

Requests for the Notice and Claim Form should be made to:
*In re EZCORP, Inc. Securities Litigation*
c/o KCC Class Action Services
P.O. Box 43046
Providence RI 02940-3046
1-877-295-8619
www.EZCORPsettlement.com

DATED: August 5, 2019                                                By Order of the Court



**TRADING SUMMIT**
By Investor's Business Daily

**Become a better investor. We'll show you how!**

Seating is limited and these FREE events will fill up fast!

Sep 14, 2019 ......... Denver
Sep 28, 2019 ......... Los Angeles
Oct 5, 2019 ..........Houston

Register now: Call 1.800.831.2525
or go to: www.investors.com/TradingSummit

**INVESTOR'S BUSINESS DAILY**
© 2019 Investor's Business Daily, Inc. Investor's Business Daily, IBD, CAN SLIM, Leaderboard and corresponding logos are registered trademarks owned by Investor's Business Daily, Inc. MarketSmith® is a registered trademark of MarketSmith, Incorporated.

**ATTENTION RETIREMENT INVESTORS!**

**VectorVest's Top Safety Pick Heico Corp Up 72% since Buy Recommendation on 1/30/19!**

Only VectorVest provides precision guidance to help you make money in up and down markets.

Heico Corp (HEI)
Top Rated Safety Pick
Aerospace & Defense (OEM)

UP 72% in 6½ months

Buy 1/30/19

Every day, VectorVest experts hand-select 10 Hot Stocks in the Color Guard Report Video. It includes guidance on when and how to trade the new selections. It's FREE with your subscription.

Watch VectorVest's Expert Panel discuss Heico Corp in this video.
*Visit www.VectorVest.com/HEICO*

**Don't miss out. Get your Safe Stock Picks today—**
**★★★SAVE 50% with our Labor Day Special!★★★**

30-DAY, RISK-FREE TRIAL, ONLY $4.95
www.VectorVest.com/IBD

**VectorVest**
1-888-658-7638

| | |
|---|---|
| **From:** | sfhubs@prnewswire.com |
| **Subject:** | PR Newswire: Press Release Distribution Confirmation for Block & Leviton LLP and Glancy Prongay & Murray LLP. ID#2570122-1-1 |
| **Date:** | Monday, September 9, 2019 8:01:36 AM |

Hello

Your press release was successfully distributed at: 09-Sep-2019 08:00:00 AM ET

Release headline: Proposed settlement of In re EZCorp, Inc. Securities Litigation announced by Block & Leviton LLP and Glancy Prongay & Murray LLP
Word Count: 852
Product Selections:
US1
Visibility Reports Email
Complimentary Press Release Optimization
PR Newswire ID: 2570122-1-1

View your release:* http://www.prnewswire.com/news-releases/proposed-settlement-of-in-re-ezcorp-inc-securities-litigation-announced-by-block--leviton-llp-and-glancy-prongay--murray-llp-300912984.html?tc=eml_cleartime

Thank you for choosing PR Newswire!

Regards,

Your 24/7 Content Services Team
888-776-0942
PRNCS@prnewswire.com

Achieve your communications goals every time you distribute content, with these tips for crafting your next perfect press release:
https://www.cision.com/us/resources/tip-sheets/easy-pr-sharing-guide/?sf=false

US Members, find audience, engagement and other key metrics for your release by accessing your complimentary Visibility Reports in the Online Member Center: https://portal.prnewswire.com/Login.aspx

* If the page link does not load immediately, please refresh and try again after a few minutes.

CISION
PR Newswire

Resources | Blog | Journalists

Log In | Sign Up | GDPR | Send a Release

News | Products | Contact

Search

News in Focus | Business & Money | Science & Tech | Lifestyle & Health | Policy & Public Interest | People & Culture

# Proposed settlement of In re EZCorp, Inc. Securities Litigation announced by Block & Leviton LLP and Glancy Prongay & Murray LLP

NEWS PROVIDED BY
**Block & Leviton LLP and Glancy Prongay & Murray LLP →**
Sep 09, 2019, 08:00 ET

SHARE THIS ARTICLE



AUSTIN, Texas, Sept. 9, 2019 /PRNewswire/ --

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| In re EZCORP, INC. SECURITIES LITIGATION | Lead Case No. 1:15-CV-00608-SS<br>Honorable Sam Sparks |
| --- | --- |

SUMMARY NOTICE OF (I) PENDENCY OF CLASS ACTION AND
PROPOSED SETTLEMENT; (II) SETTLEMENT FAIRNESS HEARING;
AND (III) MOTION FOR AN AWARD OF ATTORNEYS' FEES
AND REIMBURSEMENT OF LITIGATION EXPENSES

TO:  All persons and entities who, during the period between January 28, 2014 and October 20, 2015, inclusive, purchased or otherwise acquired EZCORP's Class A common stock and were injured thereby (the "Settlement Class"):

**PLEASE READ THIS NOTICE CAREFULLY. YOUR RIGHTS WILL BE AFFECTED BY A CLASS ACTION LAWSUIT PENDING IN THIS COURT.**

YOU ARE HEREBY NOTIFIED, pursuant to Rule 23 of the Federal Rules of Civil Procedure and an Order of the United States District Court for the Western District of Texas, that the above-captioned litigation (the "Action") has been certified as a class action on behalf of the Settlement Class, except for certain persons and entities who are excluded from the Settlement Class by definition as set forth in the full Notice of (I) Pendency of Class Action and Proposed Settlement, (II) Settlement Fairness Hearing, and (III) Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses (the "Notice").

YOU ARE ALSO NOTIFIED that Lead Plaintiff in the Action has reached a proposed settlement of the Action for $4,875,000 in cash (the "Settlement"), that, if approved, will resolve all claims in the Action.

A hearing will be held on December 6, 2019 at 10:00 a.m., before the Honorable Sam Sparks at the United States District Court for the Western District of Texas, United States Courthouse, 501 West 5th Street, Suite 4120, Austin, TX 78701, to determine (i) whether the proposed Settlement should be approved as fair, reasonable, and adequate; (ii) whether the Action should be dismissed with prejudice against Defendants, and the Releases specified and described in the Stipulation and Agreement of Settlement dated July 18, 2019 (and in the Notice) should be granted; (iii) whether the proposed Plan of Allocation should be approved as fair and reasonable; and (iv) whether Class Counsel's application for an award of attorneys' fees and reimbursement of expenses should be approved.

**If you are a member of the Settlement Class, your rights will be affected by the pending Action and the Settlement, and you may be entitled to share in the Settlement Fund.**  The Notice and Proof of Claim and Release Form ("Claim Form"), can be downloaded from the website maintained by the Claims Administrator, www.EZCORPsettlement.com. You may also obtain copies of the Notice and Claim Form by contacting the Claims Administrator at In re EZCORP, Inc. Securities Litigation, c/o KCC Class Action Services, P.O. Box 43046, Providence, RI 02940-3046, 1-877-295-8619.

If you are a member of the Settlement Class, in order to be eligible to receive a payment under the proposed Settlement, you must submit a Claim Form postmarked no later than January 25, 2020.  If you are a Settlement Class Member and do not submit a proper Claim Form, you will not be eligible to share in the distribution of the net proceeds of the Settlement, but you will nevertheless be bound by any judgments or orders entered by the Court in the Action.

If you are a member of the Settlement Class and wish to exclude yourself from the Settlement Class, you must submit a request for exclusion such that it is received no later than November 15, 2019, in accordance with the instructions set forth in the Notice.  If you properly exclude yourself from the Settlement Class, you will not be bound by any judgments or orders entered by the Court in the Action, and you will not be eligible to share in the proceeds of the Settlement.

Any objections to the proposed Settlement, the proposed Plan of Allocation, or Class Counsel's motion for attorneys' fees and reimbursement of expenses, must be filed with the Court and delivered to Class Counsel and Defendants' Counsel such that they are received no later than November 15, 2019, in accordance with the instructions set forth in the Notice.

**Please do not contact the Court, the Clerk's office, EZCORP, or its counsel regarding this notice.  All questions about this notice, the proposed Settlement, or your eligibility to participate in the Settlement should be directed to Class Counsel or the Claims Administrator.**

Inquiries, other than requests for the Notice and Claim Form, should be made to Class Counsel:

Block & Leviton LLP
Attn:  Jacob A. Walker, Esq.
260 Franklin Street, Suite 1860
Boston, MA 02110
Telephone:  (617) 398-5617
Email:  jake@blockesq.com

Glancy Prongay & Murray LLP
Attn:   Casey E. Sadler, Esq.
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone:  (310) 201-9150
Email:  settlements@glancylaw.com

Requests for the Notice and Claim Form should be made to:

In re EZCORP, Inc. Securities Litigation
c/o KCC Class Action Services
P.O. Box 43046
Providence RI  02940-3046
1-877-295-8619
www.EZCORPsettlement.com

DATED:  August 5, 2019          By Order of the Court

SOURCE Block & Leviton LLP and Glancy Prongay & Murray LLP

You just read

## Proposed settlement of In re EZCorp, Inc. Securities Litigation announced by Block & Leviton LLP and Glancy Prongay & Murray LLP

NEWS PROVIDED BY
**Block & Leviton LLP and Glancy Prongay & Murray LLP →**
Sep 09, 2019, 08:00 ET

SHARE THIS ARTICLE



https://www.prnewswire.com/news-releases/proposed-settlement-of-in-re-ezcorp-inc-securities-litigation-announced

Contact PR Newswire

888-776-0942
from 8 AM - 10 PM ET
Contact Us ›

Products
Cision Communication Cloud®
For Marketers
For Public Relations
For IR & Compliance
For Agency
For Small Business
All Products

About
About PR Newswire
About Cision
Become a Publishing Partner
Become a Channel Partner
Careers
Global Sites ›

My Services
All New Releases
Online Member Center
ProfNet™

Terms of Use | Privacy Policy | Information Security Policy | Site Map | Cookie Settings

Copyright © 2019 PR Newswire Association LLC. All Rights Reserved. A Cision company.

# EXHIBIT 2

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**

| | |
|---|---|
| *In re EZCORP, Inc. Securities Litigation* | Master File No. 1:15-cv-00608-SS |

**DECLARATION OF JEFFREY C. BLOCK IN SUPPORT OF LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES**
**FILED ON BEHALF OF BLOCK & LEVITON LLP**

I, Jeffrey C. Block, Esq., pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1.      I am admitted to practice law before all of the courts of the Commonwealth of Massachusetts and I am admitted *pro hac vice* in this Action. I am the founding partner of the law firm Block & Leviton LLP ("Lead Counsel"), counsel of record for Lead Plaintiff John Rooney ("Lead Plaintiff"), and to the Class. I respectfully submit this declaration in support of Lead Counsel's application for an award of attorneys' fees in connection with services rendered in the Action, as well as for reimbursement of litigation expenses incurred in connection with the Action.

2.      I have personally participated in, overseen, and monitored the prosecution of this Action, and have otherwise been kept informed of developments in this Litigation by attorneys working with me and under my supervision. Thus, if called upon, I can testify to the matters set forth herein.

3.      As Lead Counsel, my firm was involved in all aspects of the litigation and its settlement as set forth in the Declaration of Jeffrey C. Block in Support of Lead Plaintiff's Motion for: (1) Final Approval of Class Action Settlement and Plan of Allocation of Settlement Proceeds; (2) Award of Attorneys' Fees and Reimbursement of Class Expenses; and (3) Award of Contribution Award to Lead Plaintiff.

4.      Attorneys at my firm billed the following aggregate hours to this matter as of the date of filing, with fees applied at the firm's current billing rates:

| Timekeeper | Type | Hours | Hourly Rate | Total |
|---|---|---|---|---|
| Block, Jeffrey | P | 705.3 | $950 | $670,035.00 |
| Davey, Elizabeth | PL | 42.3 | $250 | $10,575.00 |
| Fleming, Joel | P | 26.6 | $725 | $19,285.00 |
| Jordy, Brooke | PL | 26.4 | $235 | $6,204.00 |
| Langsen, Erica | A | 186.8 | $525 | $98,070.00 |
| Silver, Nathaniel | A | 409.0 | $450 | $184,050.00 |
| Walker, Jacob | P | 1033.1 | $725 | $748,997.50 |
| **Total** | | | | **$1,737,216.50** |

P = Partner; A = Associate; PL = Paralegal

5.      Block & Leviton directly incurred the following expenses directly related to the litigation of this action (which have been summarized in categories):

| Category | Expense |
|---|---|
| Expert Witnesses | $71,440.14 |
| Travel (Flights, Lodging, Meals) | $24,296.74 |
| Document Review Software | $16,933.57 |
| Legal Research | $13,445.32 |
| Mediation Fees | $11,418.58 |
| Court Reporters / Depositions | $10,394.97 |
| Printing | $2,347.23 |
| Process Servers | $1,499.35 |
| Shipping & Postage | $189.74 |
| **Total Expenses** | **$151,965.64** |

6.      Attached as Exhibit A is a true and correct copy of Block & Leviton LLP's firm resume.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on this 1st day of November, 2019, at Boston, Massachusetts.

By:  *s/ Jeffrey C. Block*
Jeffrey C. Block, *pro hac vice*
**Block & Leviton LLP**
260 Franklin Street, Suite 1860
Boston, MA 02110
Telephone: (617) 398-5600
Facsimile: (617) 507-6020
jeff@blockesq.com

*Lead Counsel for the Class*

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing was served upon its filing via this Court's CM/ECF system on this 1st day of November, 2019 to all counsel of record.


By: _s/ Jeffrey C. Block_
        Jeffrey C. Block

Exhibit A

# BLOCK & LEVITON LLP

260 Franklin Street, Suite 1860 | Boston, MA 02110
100 Pine Street, Suite 1250 | San Francisco, CA 94111
1735 20th St NW | Washington, DC 20009

T. (617) 398-5600 | F. (617) 507-6020

**www.blockesq.com**

Firm Resume

**BLOCK & LEVITON LLP**

### FIGHT FOR A LEVEL PLAYING FIELD.

Block & Leviton believes investors, pensioners, consumers and employees deserve an advocate who will take a stand to protect their rights. We value our role not only in recovering our clients' immediate losses, but in protecting their long-term interests by helping to shape corporate policy. We genuinely enjoy our work, which each day offers an opportunity to tackle novel problems and unique challenges in a continuously evolving economy. We concur with Aristotle's observation that pleasure in the job puts perfection in the work. We believe this is reflected in our track record, which includes our ability to take a case to trial and win, as well as our appointment as lead or co-lead counsel in many dozens of high profile matters, including:

*In re BP Securities Litig.*, Case No. 4:10-MD-02185 (S.D. Tex.) (settled for $175 million), *In re Google Class C Shareholder Litig.*, Case No. 7469-CS (Del. Ch.) (settled for $522 million), *In re Drywall Antirust Litig.,* Case No. 13-md-02437 (E.D. Pa.) (settled for approximately $17 million), *In re Volkswagen "Clean Diesel" Marketing, Sales Practices and Products Liability Litig.*, Case No. 3:15-md- 02672 (N.D. Cal.) (settlement valued at approximately $15 billion), *Pfeifer v. Wawa,* Case No. 2:16-cv-00497 (E.D. Pa.) ($25 million settlement in ESOP litigation), and *Allman v. American Airlines, Inc. Pilot Retirement Program Variable Income Plan, et al.,* Case No. 14-cv-10138-IT (D. Mass) (settlement provided 100% of damages to servicemembers).

Our attorneys have successfully recovered billions for our clients and class members and have done so even under adverse conditions, including successfully litigating against bankrupt and foreign-based corporations.

### DEFY CONVENTION.

Instrumental to our philosophy is the willingness to embrace new ways of seeing, and solving, our clients' problems. For example, we challenged Google Inc.'s plan to issue a new class of non-voting stock that threatened to diminish the value of minority investors' holdings in the company. With trial set to begin in less than two days, Block & Leviton brokered a settlement with Google Inc. and its directors that provided for a forwardlooking payment ladder (valued at up to $7.5 billion) to protect minority investors against future diminution in their stock value. As a result of the payment ladder, shareholders ultimately recovered $522 million in cash and stock in May 2015. Appreciation of the fact that each of our clients has a unique viewpoint allows us to tailor our advice and representation accordingly to achieve superior results, and to do so with maximum efficiency.

### SURROUND YOURSELF WITH THE BEST.

The Firm credits its success to its entire team of extremely talented, dedicated attorneys, the majority of whom have significant litigation experience. An in-depth curriculum vitae highlighting each attorney's areas of expertise, unique experience, recognition in the field and education credentials follows.



## JEFFREY C. BLOCK
*Partner*

 jeff@blockesq.com

### EDUCATION
- Brooklyn Law School, J.D., *cum laude* 1986
- State University of New York, B.A., Political Science, *cum laude* 1983

### BAR ADMISSIONS
- New York
- Massachusetts

### COURT ADMISSIONS
- United States Supreme Court
- First, Second, Third, Ninth, and Eleventh Circuit Courts of Appeal
- D. Mass.
- S.D.N.Y. and E.D.N.Y.

### PUBLICATIONS | SPEAKING EVENTS
- ALI-ABA Conference for Insurance and Financial Services Industry Litigation, July 2009, Lecturer and Panelist
- Damages in Securities Litigation, sponsored by Law Seminars International at the Harvard Club, Panelist
- Litigation to Remedy Meltdown Damages: What Can Be Gained?, Harvard Law School's Capital Matters Conference, Speaker
- Guest commentator on NBC
- International Strategies Recoveries for Foreign Investments, Post Morrison, San Francisco Bar Association, Panel Moderator

Jeffrey Block is a co-founding partner of Block & Leviton. With a career spanning thirty years, Jeff is recognized as one of the nation's preeminent class action attorneys and is recognize as a "Super Lawyer" by Massachusetts Super Lawyers. Jeff was one of the lead attorneys representing the Ohio Public Employees Retirement System in *In re BP Sec. Litig.*, No. 4:10-MD-02185 (S.D. Tex.), charging that BP misled investors as to the amount of oil leaking from the Macondo well after the explosion aboard the Deepwater Horizon oil rig in the Gulf of Mexico in 2010. Jeff, on behalf of the plaintiffs, successfully argued against defendants' motions to dismiss, in favor of class certification, in opposition to summary judgment, and helped secure a settlement of $175 million for the class, which represents more than 60% of the class' actual losses. Jeff also represented the Brockton Retirement System in an action challenging Google's attempt to split its stock into voting and non-voting shares. *See In re Google, Inc. Class C S'holder Litig.*, Case No. 7469-CS (Del. Ch. Ct.). Two days before the start of trial, the action settled for significant corporate governance changes and a payment ladder valued up to $7.5 billion, which was designed to protect shareholders against any diminution in the value of their shares during the first year of trading. Because of the payment ladder, shareholders ultimately recovered $522 million in cash and stock in May 2015.

In addition, Jeff represents some of the country's largest institutional investors, including the Massachusetts Pension Reserves Investment Management Board (PRIM), the Ohio Public Employees Retirement System, the Ohio State Teachers Retirement System, the Washington State Investment Board, the New Mexico Educational Retirement Board, the New Mexico Public Employees Retirement System, the New Mexico State Investment Council and the Oklahoma Police Pension and Retirement System.

Some of the major class actions that Jeff has either led, or played a significant role in, include: *In re First Executive Corp. Securities Litig.*, 89-cv-7135 (C.D. Cal.) (settled for $100 million); *In re Xerox Corp. Sec. Litig.*, 3:00-cv- 01621 (D. Co11nn.) (settled for $750 million); *In re Bristol Myers Squibb Sec. Litig.*, 02-cv-2251 (S.D.N.Y.) (settled for $300 million); *In re Lernout & Hauspie Sec. Litig.*, 1:00-cv-11589 (D. Mass.) (settled for $180 million); *In re Symbol Technologies Sec. Litig.*, 2:02-cv-1383 (E.D.N.Y.) (settled for $127 million); *In re Prison Realty Corp. Sec. Litig.*, 3:99-cv-0452 (M.D. Tenn.) (settled for over $100 million); *In re Philip Services Corp. Sec. Litig.*, 98-cv-835 (S.D.N.Y.) (settled for $79.75 million); *In re American Home Mortgage Sec. Litig.*, 07-MD-1898 (E.D.N.Y.) (settled for $50.5 million); *In re Force Protection Sec. Litig.*, 2:08-cv-845 (D.S.C.) ($24 million settlement); *In re Swisher Hygiene, Inc., Securities and Derivative Litig.*, 3:12-md-2384 GCM (W.D.N.C.) ($5.5 million settlement).

**BLOCK & LEVITON LLP**

Jeff has a proven record of overcoming significant challenges to obtain substantial recoveries on behalf of his clients. For example, in the Philip Services securities litigation, Jeff persuaded the United States Court of Appeals for the Second Circuit to reverse the District Court's dismissal of the action on the grounds of forum non conveniens. *See Dirienzo v. Philip Services Corp.*, 294 F.3d 21 (2d. Cir. 2002).

Upon reversal, Jeff led the team of attorneys in taking more than 40 depositions and, upon the eve of trial, the action settled for $79.50 million, among the largest recoveries ever in a securities action from a Canadian accounting firm. Jeff's skills were discussed in great lengths by the court, specifically noting that counsel:



> pursued this fact-intensive and legally complex litigation vigorously over a nine-year period, rejected offers of settlement for amounts inferior to the amounts upon which the parties ultimately agreed, and assumed significant risks of non-recovery. Co-Lead Counsel had to overcome the disclaimers and uncertainties of insurance coverage, and vigorous advocacy of extremely able and deeply-staffed defense counsel. … And **they did their work efficiently, with minimal duplication, and maximum effectiveness.**

**I was careful to choose attorneys who have great ability [and] great reputation… And I think you've undertaken the representation of these people, you've done an excellent job, you've reached a settlement that I think is fair and in their benefit .**

**Honorable C. Weston Houck**

*In re Force Protection Sec. Litig., 2:08-cv-845 CWH (D.S.C.)*
($24 million settlement)

*In re Philip Servs. Corp. Sec. Litig.*, 2007 U.S. Dist. LEXIS 101427, 13-14 (S.D.N.Y. Mar. 27, 2007) (Honorable Alvin K. Hellerstein). Similarly, in *Lernout & Hauspie Sec. Litig.*, Jeff was the lead attorney in securing over $180 million for defrauded investors. The action involved an accounting fraud of a company headquartered in both the United States and Belgium.

Recently, Jeff led a team of litigators, private investigators and a forensic accountant through a complex accounting fraud case. Jeff settled the case on terms extremely beneficial to the class, as recognized by the court. *See In re Swisher Hygiene, Inc., Securities and Derivative Litig.*, 3:12-md-2384 GCM (W.D.N.C.).



## JASON M. LEVITON
*Partner*

✉ jason@blockesq.com

### EDUCATION
- Georgetown University Law Center, LL.M., Securities and Financial Regulations - Dean's Award (1 of 6)
- Gonzaga University School of Law, J.D., *cum laude*, Moot Court Council, International Law Review
- Gonzaga University, B.A., Philosophy and Political Science

### BAR ADMISSIONS
- Massachusetts
- District of Columbia
- Washington (voluntarily inactive)
- Florida (voluntarily inactive)

### COURT ADMISSIONS
- First Circuit Court of Appeals
- D. Mass.
- D. D.C.
- W.D. Wash.

### PUBLICATIONS | SPEAKING EVENTS
- Guest on Rights Radio
- Law360 Securities Law Editorial Advisory Board
- SEC Litigation Release No. 18638, primary author
- Contributor, After the Ball is Over: Investor Remedies in the Wake of the Dot-Com Crash and Recent Scandals, Nebraska Law Review,
- 2005
- Speaker at Georgetown University Law Center on prosecution of securities class action lawsuits
- Presenter at Business Law Symposium entitled Shareholder Rights: An Idea Whose Time has Come, November 2013
- Presenter at National Conference on Public Employee Retirement Systems

Jason is a co-founding partner of Block & Leviton and focuses his practice on investor protection and shareholder rights matters. He serves as Co-Chair of the Firm's New Case Investigation and Monitoring Team and Chair of the Merger and Acquisition/Deal Litigation Team.

In 2011 and each year thereafter, Jason was named either a "Super Lawyer" or "Rising Star" by Massachusetts Super Lawyers, an honor given to only 3% and 5% of all lawyers, respectively. Jason also has a Martindale-Hubbell AV Preeminent Rating, the highest rating possible. In 2014, Jason was named as a Top 100 Trial Lawyer by the National Trial Lawyer Association. After receiving his law degree from Gonzaga University School of Law, *cum laude*, Jason attended the Georgetown University Law Center and received a Master of Laws (LL.M.) in Securities and Financial Regulation (Dean's Award, 1 of 6). During that time, he was the inaugural LL.M. student selected for an externship with the S.E.C., Enforcement Division. Jason is now a member of the Association of Securities and Exchange Commission Alumni.

Jason has focused his practice on claims alleging breaches of fiduciary duty against officers and directors of publicly traded companies. Indeed, in just the last few years alone, his litigation efforts have led to hundreds of millions of dollars being returned to aggrieved stockholders. More specifically, Jason served as lead or co-lead counsel in the following breach of fiduciary duty actions: *In re Plains Exploration & Production Co. Stockholder Litig.*, Case No. 8090-VCN (Del. Ch.) (litigation led to an increase of approximately $400 million to the original merger amount); *In re Onyx Pharmaceuticals Inc. Shareholder Litigation*, Case No. CIV523789 (Cal. Sup. Ct) (settled for $30 million; at the time, the largest M&A class action in California state court history); *In re Handy & Harman, Ltd., S'holders Litig.*, Case No. 2017-0882-TMR (Del. Ch.) (settled for $30 million, making it one of the largest sell-side premiums ever achieved for stockholders through Delaware litigation; pending court approval); *In re Rentrak Shareholders Litig.,* Case No. 15CV27429 (Ore. Sup.) ($19 million settlement and with the related action, $23.75 million; the largest Oregon M&A settlement); and *In re Cybex Int'l Shareholders Litig.,* Case No. 653794/2012 (N.Y. Sup. Ct) (settlement involved substantial dividend payment to shareholders).

Moreover, Jason served as lead counsel in an action to invalidate certain provisions in three companies' certificates of incorporation that limited the forum in which investors could file suit under the Securities Act of 1933. See *Sciabucucchi v. Salzberg*, C.A. no. 2017-0931-JTL (Del. Ch. Dec. 19, 2018). The Court's opinion was described by Reuters as a "Delaware death blow" to mandatory arbitration.

In addition to his class action experiences, Jason has litigated other forms of complex litigation. For instance, he worked with a former State of New York Attorney General in the defense of an attorney accused of insider trading, which included a criminal referral to the United States Department of Justice.

He was also heavily involved in the representation of four detainees being held at the Guantánamo Bay Naval Station in Cuba. Moreover, Jason has represented former employee whistleblowers before the S.E.C. where, in one instance, he successfully argued that his clients should receive the maximum whistleblower award of 30% pursuant to the Dodd-Frank Act, which equated to nearly $1 million. He also represented the same whistleblower in a retaliation claim against several Oppenheimer-related entities. *See John Doe v. Oppenheimer Asset Management, Inc., et al.*, Case No. 1:14-cv-00779-LAP (S.D.N.Y.).

Jason has considerable experience litigating consumer class action cases involving deceptive business practices. For example, Jason, as co-lead counsel, successfully recovered 100% of the class's alleged damages stemming from the overcharging of scooped coffee beans at Starbucks stores throughout the country. *See In re Starbucks Consumer Litig.*, Case No. 2:11-cv-01985-MJP (W.D. Wa.).

Prior to forming Block & Leviton, Jason was an attorney at three other preeminent class action firms. There, he was instrumental in recovering $10.5 million in the *Welmon v. Chicago Bridge & Iron*, Case No. 06-cv- 01283, securities class action litigation. In that case, Jason represented Fortis Investments, a major European asset management company and, in addition to the monetary settlement, was able to institute several corporate governance changes at the company. In granting the Chicago Bridge & Iron settlement, the Honorable John Sprizzo stated that **"Plaintiffs' counsel have conducted the litigation and achieved the settlement with skill, perserversance and diligent advocacy."** *Chicago Bridge & Iron* ( June 3, 2008).

Moreover, in the *Ong v. Sears Roebuck & Co.*, Case No. 03 C 4142 (N.D. Ill.), securities class action, Jason represented the State Universities Retirement System of Illinois (SURS) and helped settle the action for $15.5 million. He also represented the Iowa Public Employees' Retirement System, the Policemen's Annuity & Benefit Fund of Chicago, the Central States, Southeast and Southwest Areas Pension Fund in the securities class action against MF Global that settled for $90.0 million. *Rubin v. MF Global, LTD., et al.*, Case No. 08-cv- 02233 (S.D.N.Y.). Likewise, he was a member of the *In re VeriSign Securities Litigation*, Case No. C-02-2270 (N.D. Cal.) team that recovered more than $78.0 million for investors.



> **The settlement is – gosh. . . . the fact that it's occurring within the context of a securities case, which is very difficult for plaintiffs to win, is extremely impressive to me. . . . [T]his is a matter which has been fairly litigated by people.**

Honorable Graham C. Mullen,

*In re Swisher Hygiene, Inc., Securities and Derivative Litig.,* 3:12-md-2384 GCM (W.D.N.C.) ($5.5 million settlement)



## WHITNEY E. STREET
*Partner*

 whitney@blockesq.com

### EDUCATION
- University of Virginia School of Law, J.D.
- University of Virginia, B.A., Economics and Literature

### BAR ADMISSIONS
- California
- New York
- Massachusetts
- Texas

### COURT ADMISSIONS
- N.D. Cal. and E.D. Cal.
- S.D.N.Y. and E.D.N.Y.
- D. Mass.

### PROFESSIONAL ACTIVITIES
- Founder and former Co-Chair of the AAJ Antitrust Litigation Group
- Member of the Steering Committee for the Complex Litigation E-Discovery Forum

### PUBLICATIONS | SPEAKING EVENTS
- Moderator, Introduction to the Use of Regression Analysis in Antitrust Class Action Litigation, American Association for Justice Webinar (August 2016)
- Co-Author, What Lies Ahead in High Stakes Pay-For-Delay Antitrust Litigation, American Association of Justice Business Torts Newsletter (May 2015)
- Author, Technology Assisted Review: the Disclosure of Training Sets and Related Transparency Issues, Georgetown Law Advanced eDiscovery Institute (Fall 2014)
- Faculty, Georgetown University Law Advanced eDiscovery Institute (November 2014)
- Co-Author, Decision Re-Affirms Critical Role of Shareholders Benefits and Pensions Monitor (October 2014)

Block & Leviton Partner Whitney Street has over fifteen years of complex litigation experience and significant expertise in antitrust and securities class action litigation. Whitney, who serves as Chair of the Firm's Competition Law Group, was appointed Co-Lead Counsel on behalf of a class of indirect purchasers in *In re Domestic Drywall Antitrust Litig.,* 13-md-02437 (E.D.Pa.), which involved allegations of price fixing and other forms of concerted conduct in violation of the antitrust laws. Whitney recovered approximately $17 million on behalf of the class of indirect purchasers in that action.

In addition, Whitney represents the City of Providence and a class of indirect purchasers in an antitrust class action suit against Celgene Corp. for unlawfully excluding generic competition for vital cancer treatment drugs. See *In re Thalomid and Revlimid Antitrust Litig.*, 14-cv-06997 (D.N.J.). Whitney was also appointed to the Plaintiffs' Steering Committee in *In re Packaged Seafood Antitrust Litig.,* 15-md-02670 (S.D.Cal.) (alleging price fixing in the market for shelf-stable seafood products) and in *In re Liquid Aluminum Sulfate Antitrust Litig.,* 16-md-02687 (D.N.J.) (alleging bid rigging, market allocation, and price fixing in the market for aluminum sulfate). Whitney is also a member of the litigation team representing direct purchasers in *In re Broiler Chicken Antitrust Litig.,* No. 16-cv-8637 (N.D.Ill.), a class action alleging that broiler chicken producers engaged in a price fixing conspiracy.

Whitney was an integral part of the litigation teams in the following antitrust class actions: *Air Cargo Shipping Services Antitrust Litigation,* 06-md- 1775 (E.D.N.Y.) (settlements totaling more than $270.0 million); *In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litigation*, 3:03-md-1542 (D. Conn.) (partial settlements totaling $87.0 million); *In re Methyl Methacrylate (MMA) Antitrust Litigation,* 06-md-01768 (E.D. Pa.) (settled for $15.0 million); and *In re Hydrogen Peroxide Antitrust Litigation*, 05-civ-666 (E.D. Pa.) (partial settlements of more than $4.0 million).

Whitney received her training at prominent litigation firms in New York and Boston where she represented clients in antitrust and securities class actions. She began her career at Pillsbury Winthrop Shaw Pittman, one of the largest law firms in California.

**BLOCK & LEVITON LLP**

## R. JOSEPH BARTON

*Partner*

 joe@blockesq.com

### EDUCATION
- College of William & Mary, Marshall-Wythe Law School, J.D. Order of the Coif
- College of William & Mary, B.A., History and Classical Studies

### BAR ADMISSIONS
- California
- District of Columbia

### COURT ADMISSIONS
- First, Second, Fourth, Fifth, Seventh, Eighth, Ninth, Tenth, and Eleventh Circuit Courts of Appeal
- D. D.C.
- N.D. Cal., C.D. Cal., and S.D. Cal.
- N.D. Ill.
- D. Md.
- D. Neb.
- N.D. Tex. and W.D. Tex.
- D. Col.
- E.D. Mich.
- D. N.D
- E.D. Wis. and W.D. Wis.

### PROFESSIONAL ACTIVITIES
- Co-Chair of the Civil Procedure Subcommittee for the ABA Employee Benefits Committee
- Co-Chair of AAJ Publications Committee
- Chair of Employment Rights Section of the AAJ from 2013 to 2014

R. Joseph Barton is the Chair of the Firm's Employee Benefits Group and the Firm's Veterans/Servicemember Rights Group at the Firm. Joe has significant experience handling a diverse array of complex and class litigation. Joe has a Martindale-Hubbell AV Preeminent Rating, has been selected every year since 2013 as a Washington, D.C. Super Lawyer, has a 10.0 rating from Avvo, and is listed in the Marquis' Who's Who in American Law.

### Notable ERISA Cases

Since 2001, Joe has handled a wide variety of employee benefit (i.e. ERISA) cases. He has been trial counsel in four ERISA cases. He was lead trial counsel in a case challenging a complex transaction involving the Trachte ESOP and the Alliance ESOP on behalf of a class of employees of *Trachte, Chesemore v. Alliance Holdings, Inc.*, No. 3:09-cv-00413 (W.D. Wis.). In that case, Joe obtained a favorable trial decision on a liability and remedies of $17.2 million (plus prejudgment interest) for the Class which was affirmed by the Seventh Circuit. In *Severstal Wheeling Inc. Ret. Comm. v. WPN Corporation*, No. 10-cv-954 (S.D.N.Y.), Joe was lead trial counsel representing the fiduciaries of two pension plan suing their former investment manager for improper investments and obtained a judgment for plaintiffs of over $15 million which was affirmed by the Second Circuit.

Joe is among a handful of lawyers who regularly represent participants in litigation involving ESOPs holding privately held stock. In addition to the Alliance/Trachte ESOP litigation, Joe has litigated and is litigating a number of private ESOP cases, including the Azon Corporation ESOP, the Jeld-Wen ESOP, the Tharaldson Motels, Inc. ESOP and the Wawa ESOP.

Joe has also been involved in a number of cases involving breaches of fiduciary duty and self-dealing, including improperly investing 401k plan assets in artificially inflated stock of publicly traded companies, in improper and risky investments such as hedge funds or private equity. He litigated one of the earliest cases challenging the prudence of investment and fees of the pension and 401k plans sponsored by New York Life Insurance Company.

Joe has also litigated cases involving the failure to properly pay benefits. In *Slipchenko v. Brunel*, No. 4-11-cv- 01465 (S.D. Tex.), Joe obtained a settlement in a COBRA class action which resulted in the largest per classmember recovery in any reported COBRA class action. In *Simpson v. Fireman's Fund Insurance Company* (N.D. Cal.), Joe represented a class employees alleging that FFIC's policy of terminated persons on disability violated the discrimination provisions of ERISA, and obtained a settlement restoring their right to benefits for a period of years and also reimbursement of past expenses.

**BLOCK & LEVITON LLP**

### Notable Cases Involving Veterans & Servicemembers

In cases involving the rights of veterans and servicemembers, Joe is proud to have achieved results which one court described as **"outstanding, worthy of being emulated by class representatives and counsel in other comparable litigation."** In that case, *Tuten v. United Airlines*, No. 12-cv-1561-WJM-MEH (D. Col.), he was lead counsel for a class of United Airlines Pilots alleging USERRA violations in connection with their pension contributions. The case was settled for an amount that provided the Class with 100% of their actual damages.

In *Bush v. Liberty Life Assurance Co.*, Joe was lead class counsel on behalf of a class participants whose long term disability benefits were insured by Liberty Life alleging that those benefits should not have been reduced by the amount of benefits provided through the Department of Veterans Affairs. As part of the settlement, Liberty Life agreed to return 60% of the monies imposed as offsets and to cease imposing such reductions/offsets unless and until the state departments of insurance had approved them.

### Notable Other Cases

Joe has been significantly involved in litigating antitrust cases. In *In re Mercedes-Benz Antitrust Litigation* (D.N.J.), a class action alleging price-fixing of new Mercedes-Benz vehicles in the New York Region, Joe briefed, argued and obtained summary judgment on an issue of first impression that established that lessee-plaintiffs had standing to sue as direct purchasers under the federal antitrust laws. That case later settled for $17.5 million. Joe was a part of the team that engaged in intensive trial preparations in *In re High Fructose Corn Syrup Antitrust Litigation* (C.D. Ill.), a class action alleging price-fixing by the manufacturers of high fructose corn syrup, which settled for more than $500 million shortly before trial.

In a case alleging securities fraud, Joe represented limited partners of Lipper Convertibles, a defunct hedge fund, in an arbitration against the fund's former general partners, and in litigation against the outside auditor in federal district court. He has also litigated securities fraud cases involving publicly traded companies.

### Pro Bono Cases

Joe considers pro bono representation an important part of his practice and has represented clients in actions concerning their employer's failure to pay wages and/or overtime. In one such case, the Judge in D.C. Superior Court described his work: **"everything done on behalf of the Plaintiff has been professional, timely and thorough."**

### Clerkship

After graduating law school, Joe served as a judicial law clerk to the Honorable Lenore C. Nesbitt, United States District Judge for Southern District of Florida (2000-2001).



## JOEL FLEMING

*Partner*

 joel@blockesq.com

### EDUCATION
- Harvard Law School, J.D., *cum laude*
- Wilfrid Laurier University, B.A., Political Science with high distinction

### BAR ADMISSIONS
- California
- Massachusetts

### COURT ADMISSIONS
- First and Ninth Circuit Courts of Appeal
- N.D. Cal., C.D. Cal, and S.D. Cal.
- D. Mass.

### PUBLICATIONS
- Co-author, Decision Re-Affirms Critical Role of Shareholders, Benefits and Pensions Monitor (October 2014)
- Co-author, Meltdowns crank up muni-bond litigation, Daily Journal (September 18, 2013)
- Co-author, SEC takes hard line on 'cyber incidents', Daily Journal (April 5, 2013)
- Co-author, Lower Courts Interpret The Supreme Court's Decision In Janus Capital Group, Inc. v. First Derivative Traders, Financial Fraud Law Report 4:5 (May 2012)

### PROFESSIONAL ACTIVITIES
- Visiting Lecturer, Tufts University: Experimental College (2013-2015)

Block & Leviton Partner Joel Fleming has significant experience in stockholder litigation. Since graduating with honors from the Harvard Law School, Joel has spent his entire career practicing stockholder litigation and has been recognized as a "Rising Star" in securities litigation by Super Lawyers magazine for four years in a row.

Joel was a lead attorney in *In re Handy & Harman, Ltd., S'holders Litig.,* No. 2017-0882-TMR (Del. Ch.), where the parties have reached an agreement in principle to settle the action for $30,000,000. The proposed settlement is a 33% premium to the deal price, which is one of largest sell-side premiums ever achieved for stockholders through Delaware litigation.

Joel was also a lead attorney in *In re Rentrak Corporation Shareholders Litigation,* 15CV27429 (Ore. Cir. Ct.) and *Nathan v. Matta,* No. 16CV32458 (Ore. Cir. Ct.)—two related actions which resulted in settlements that returned $23.75 million to a class of former shareholders of Rentrak Corporation. The *In re Rentrak* settlement is believed to be the largest settlement of merger litigation in Oregon state court history. It was also one of the top five largest settlements, since 2010, of merger litigation arising from transactions valued at less than $1 billion.

Joel helped lead *Sciabucucchi v. Salzberg,* C.A. No. 2017-0931-JTL (Del. Ch.), where he wrote and argued the successful summary judgment motion in a case that Reuters has described as striking a "Delaware death blow" to mandatory arbitration of federal securities claims.

Prior to joining the firm, Joel was a member of the Securities Litigation and Enforcement group at Wilmer Cutler Pickering Hale and Dorr—a large defense firm headquartered in Boston and Washington, D.C. While at WilmerHale, he served as a member of the trial team in *AATI v. Skyworks,* the first-ever arbitration to go to trial before the Delaware Chancery Court, in a case involving a merger-related dispute between two companies in the high technology industry. Joel represented both companies in a subsequent shareholder class action that ended with the dismissal with prejudice of all counts.

**BLOCK & LEVITON LLP**



# JACOB WALKER

*Partner*

 jake@blockesq.com

## EDUCATION
- University of Michigan Law School, J.D., *cum laude*
- Babson College, B.S., Business Administration

## BAR ADMISSIONS
- Massachusetts
- California

## COURT ADMISSIONS
- Supreme Court
- First and Ninth Circuit Courts of Appeal
- D. Mass.
- N.D. Cal. and C.D. Cal.

## PROFESSIONAL CERTIFICATIONS
- Certified Information Privacy Professional (CIPP/US)

## PUBLICATIONS
- Co-author, PLI's Securities Litigation treatise – chapters on loss causation and securities trials

Among other cases, Jake is currently the lead attorney in *Karth v. Keryx Biopharmaceuticals, Inc.,* (D. Mass.), a federal securities class action alleging Defendants hid from investors their reliance on a single contract manufacturer, who was having consistent, significant problems producing the company's only drug. The market learned these facts only when the company experienced a total interruption in its drug supply. Jake is serving as co-lead counsel in *In re Tezos Securities Litigation* (N.D. Cal.), a case involving a so-called "initial coin offering" (or ICO) of the Tezos cryptocurrency. Jake is also supporting the firm's lead counsel role in *In re Trevena Securities Litigation* (E.D. Pa.), where Defendants made materially false statements about their interactions with the Food and Drug Administration which went undisclosed from the market for years.

Jake has helped lead numerous cases to favorable settlements: *In re EZCORP Securities Litigation* (W.D. Tex.) (arising from an accounting restatement); *In re Atossa Genetics, Inc.,* and *In re Amicus Therapeutics Securities Litigation* (D. N.J.) (both securities fraud class actions concerning misrepresentations made to investors about the companies' interactions with the Food and Drug Administration). Jake is part of a team appealing a motion to dismiss decision to the Fifth Circuit in *Budde v. Global Power Equipment Inc.,* (N.D. Tex.) (accounting restatement). Jake was also a key member of the team that represented the Louisiana Municipal Police Employees' Retirement System in *In re Onyx Pharmaceuticals Inc. Shareholder Litigation,* (Cal. Sup. Ct.), obtaining a $30 million settlement for shareholders in a matter arising out of Onyx's $11-billion-dollar merger with Amgen. Jake has also successfully litigated several consumer fraud class actions at the firm.

Prior to joining Block & Leviton in 2015, Jake was an associate at two of the country's top defense firms: Gibson Dunn in Palo Alto, California and Skadden, Arps in Boston. There, he represented boards of directors, corporate acquisition targets, and acquirers in litigation related to mergers and acquisitions. For example, Jake represented defendants in litigation related to the $5.3 billion private equity acquisition of Del Monte Foods Company in state and federal courts in California and in the Delaware Court of Chancery, as well as in litigation related to Intel's $7.7 billion acquisition of McAfee Inc. in the Superior Court of California, Santa Clara County. He has represented numerous third-parties, including various investment banks, in M&A litigation in California and Delaware courts.

While Jake's legal career has centered on securities and corporate governance litigation, Jake also has significant experience representing large technology companies, including in the defense of consumer class actions related to privacy and technology issues. He is a Certified Information Privacy Professional and has a deep understanding of technology and privacy issues. Jake has also represented companies in antitrust class actions and investigations, stockholder derivative actions, securities class actions, and in investigations before the F.T.C. and the Massachusetts Attorney General's office.

Jake has been named a "Rising Star" in securities litigation by Massachusetts Super Lawyers for four years in a row (2016-2019).

**BLOCK & LEVITON LLP**

# VINCENT CHENG
*Senior Associate*

✉ vincent@blockesq.com

## EDUCATION
- University of California Berkeley School of Law, J.D.
- University of California, Berkeley, B.A., Philosophy and Mathematics

## BAR ADMISSIONS
- California

## PUBLICATIONS
- Author, "National Railroad Passenger Corporation v. Morgan: A Problematic Formulation of the Continuing Violation Theory," California Law Review (October 2003)

Vincent Cheng is an associate at the firm and a member of the Employee Benefits Group and Veterans/Servicemember Rights Group. Since graduating from law school, Vincent has focused his work on advocating for the rights of employees and retirees and of veterans and servicemembers. Prior to joining Block & Leviton, he had over 8 years of experience in litigating a variety of lawsuits on behalf of employees. These lawsuits included cases brought under the Employee Retirement Income Security Act (ERISA) involving breach of fiduciary duty and benefit denial claims and cases brought under the Uniformed Services Employment and Reemployment Rights Act (USERRA) involving veterans' employment rights and benefits, as well as employment cases involving unpaid overtime wages under the Fair Labor Standards Act and the California Labor Code and race and gender discrimination under Title VII and the California Fair Employment and Housing Act (FEHA).

## Notable Employee Benefits Cases

- *Carlson v. Northrop Grumman Severance Plan*, No. 13-cv-02635 (N.D. Ill.): represent a putative class of employees who were laid off from Northrop Grumman alleging that they improperly denied cash severance under the severance plan.

- *Aguilar v. Melkonian Enterprises, Inc.*, No. 05-cv-00032 (E.D. Cal.): represented a class of participants in two pension plans alleging that the fiduciaries failed to prudently invest the plan assets; obtained a settlement that provided for recovery of more than 85% of the losses to the plans.

- *Simpson v. Fireman's Fund Insurance Company*, No. C 05- 000225 (N.D. Cal.): represented disabled employee-participants alleging that FFIC terminated them in violation of ERISA § 510 to prevent them from continuing to receive medical benefits; obtained a settlement that provided for restoration of their right to benefits for a period of years and reimbursement of past medical expenses.

- *Paulsen v. CNF Inc.*, No. C 03-3960 (N.D. Cal.): represented a group of employees alleging that the fiduciaries breached their duties under ERISA in connection with the spinoff of a division of CNF, and that the CNF pension plan's actuary breached its duty of care under state law in valuing the plan liabilities to be transferred at spinoff and certifying postspinoff that the new plan was adequately funded.

- *Hurlic v. Southern California Gas Company*, No. 05-5027 (C.D. Cal.): represented a group of participants alleging that the pension benefit accrual formula under SCGC's cash balance defined benefit plan violated ERISA's prohibition against age discrimination and ERISA's anti-backloading rules.



**BLOCK & LEVITON LLP**

## Notable Cases Involving Veterans and Servicemembers Rights

- *Allman v. American Airlines, Inc. Pilot Retirement Benefit Program Variable Income Plan*, No. 14-cv-10138 (D. Mass.), where American Airlines allegedly violated USERRA and ERISA by making deficient pension contributions for a class of pilots who took military leave.

- *Bush v. Liberty Life Assurance Company of Boston*, No. 14-cv-01507 (N.D. Cal.), where Liberty Life agreed to return significant portions of reduced long-term disability benefits to veteran-claimants and not to reduce future benefits absent state approval.

- *Munoz v. InGenesis STGi Partners, LLC*, No. 14-cv-1547 (S.D. Cal.), a USERRA discrimination and failure-to-reemploy case where we obtained through settlement the full amount of the plaintiff's lost pay and benefits plus interest and a sizable amount of liquidated damages.

## Notable Employment Cases

- *Gutierrez v. Schmid Insulation Contractors, Inc.*, No. 07-cv-5852 (C.D. Cal.), a wage-and-hour class action alleging that the defendants failed to pay for travel time from offices to construction sites, provide meal and rest breaks, and pay overtime to a group of Spanish-speaking, immigrant workers.

- *Wynne v. McCormick & Schmick's Seafood Restaurants, Inc.*, 06-cv-03153 (N.D. Cal.), a Title VII and FEHA class action alleging race discrimination in hiring and job assignments, which resulted in a consent decree through settlement that provided for significant injunctive relief to promote equal employment opportunity in defendants' employment practices.

- *Holloway v. Best Buy Co., Inc.*, No. 05-5056 (N.D. Cal.), a Title VII and FEHA class action alleging raceand gender discrimination by Best Buy in hiring, promotions, and job assignments.



## STEPHEN TETI

*Senior Associate*

 steti@blockesq.com

### EDUCATION
- Quinnipiac University School of Law, J.D., *magna cum laude*
- Fairfield University, B.A., Political Science and French, *cum laude*

### BAR ADMISSIONS
- Massachusetts
- Connecticut

### COURT ADMISSIONS
- Ninth Circuit Court of Appeals
- D. Mass.
- D. Conn.
- D. Colo.
- S.D.N.Y. and W.D.N.Y.

Stephen Teti is a senior associate at Block & Leviton LLP, focusing his practice on antitrust litigation. Steve's antitrust matters include *In re Thalomid & Revlimid Antitrust Litigation,* No. 14-cv-6997 (D.N.J.), a class action alleging that the defendant's extensive anticompetitive conduct excluded generic alternatives for Thalomid and Revlimid, two drugs used to treat rare but deadly conditions, from entering the market, causing end payors to incur millions of dollars in overcharges. Steve is also a member of the team representing direct purchasers in *In re Broiler Chicken Antitrust Litig.,* No. 16-cv-8637 (N.D. Ill.)*,* a class action alleging that broiler chicken producers engaged in a price fixing conspiracy. Steve is also a member of the team representing direct purchasers in *In re Pork Antitrust Litig.,* No. 18-cv-1776 (D. Minn.), a class action alleging that pork producers engaged in a price fixing conspiracy.

Steve joined Block & Leviton after practicing securities, derivative, and consumer class litigation for six years at a nationally-recognized plaintiffs' law firm in Connecticut. He previously clerked for the judges of the Connecticut Superior Court. During law school, Steve served as Publications Editor of the Quinnipiac Law Review, a judicial extern to the Honorable Stefan R. Underhill in the United States District Court for the District of Connecticut, an intern for the State of Connecticut Office of the Attorney General, and as a legislative extern to the Judiciary Committee of the Connecticut General Assembly.

## Notable Cases

- Obtained a significant decision for consumers in *Friedman v. Maspeth Fed. Loan & Savings Ass'n*, 30 F. Supp. 3d 183 (E.D.N.Y. 2014). In a case before the Honorable Jack B. Weinstein, raising "issues of first impression on the reach of the Real Estate Settlement Procedures Act," Steve defeated a motion to dismiss, and later obtained a settlement that reimbursed consumers for 100% of their losses in the case which involved wrongful imposition of late charges on timely received mortgage payments;

- Lead associate in cases achieving notable recoveries under the Securities Act of 1933, including *City of Birmingham Retirement & Relief System v. MetLife, Inc.*, Case No. CV-2012-902101 (Ala. Cir. Ct.) ($9.75 million settlement); *Rosenberg v. Cliffs Natural Resources, Inc.*, No. 2014 CV 828140 (Ohio Ct. Com. Pleas) ($10 million settlement); and *Niitsoo v. Alpha Natural Resources, Inc.*, No. AD-303-2014 (Pa. Ct. Com. Pleas) ($3.6 million settlement);

- Lead associate in several successful appeals, including *Cottrell v. Duke*, 737 F.3d 1238 (8th Cir. 2013); *Westmoreland County Employee Retirement System v. Parkinson*, 737 F.3d 719 (7th Cir. 2013); and *Chavez v. Nestlé USA, Inc.*, 511 Fed. Appx. 606 (9th Cir. 2013);

**BLOCK & LEVITON LLP**

- Achieved several favorable decisions regarding the improper removal of class actions under the Securities Act of 1933, including *Niitsoo v. Alpha Natural Resources, Inc.*, 902 F. Supp. 2d 797 (S.D. W. Va. 2012); *Rosenberg v. Cliffs Natural Resources, Inc.*, 2015 WL 1534033 (N.D. Ohio Mar. 25, 2015); and *Rajasekaran v. CytRx Corp.*, 2014 WL 4330787 (C.D. Cal. Aug. 21, 2014);

- Represented banks and other financial institutions in *In re Home Depot Inc. Customer Data Security Breach Litig.*, 14-md-2583 (N.D. Ga.) ($27.25 million settlement; served on Plaintiffs' Coordination & Discovery Committee); *In re Target Corp. Customer Data Security Breach Litig.,* 14-md-2522 (D. Minn.) ($59 million settlement); and *WinSouth Credit Union v. Mapco Express, Inc.,* No. 14-cv-1573 (M.D. Tenn.) (largest dollar-per-card settlement obtained on behalf of financial institutions involving data breach of credit and debit card information).



## NATE SILVER

*Associate*

 nate@blocksq.com

Nate Silver is an associate at Block & Leviton LLP, focusing his practice on securities litigation. Nate recently joined Block & Leviton from the Boston firm of J. W. Carney, Jr. & Associates, LLC, where he practiced criminal defense and appeals in state and federal court.

Nate also represented indigent individuals accused of crimes in state court as a member of Middlesex Defense Attorneys, Inc., a non-profit organization that administers criminal defense services to those who cannot afford legal services. While attending law school, Nate served as a senior editor for the Boston College Law Review.

### EDUCATION

- Boston College Law School, J.D.,
  *magna cum laude*
- Suffolk University, B.A., History,
  *magna cum laude*

### BAR ADMISSIONS

- Massachusetts
- New York

### COURT ADMISSIONS

- First Circuit Court of Appeals
- D. Mass

### PUBLICATIONS

- Contributing author to Massachusetts Evidence: A Courtroom Reference (MCLE)

**BLOCK & LEVITON LLP**

## COLIN M. DOWNES

*Associate*

 colin@blockesq.com

Colin M. Downes is an associate with the firm who focuses his practice on defending the rights and benefits of workers and retirees. His experience includes cases brought under the Employee Retirement Income Security Act (ERISA) involving employee stock ownership plans, excessive 401k and 403b fees, pension plan underfunding, and the ERISA obligations of religiously affiliated nonprofits. He has also provided pro bono representation to indigent clients in contested asylum and child custody matters.

Prior to joining the firm, Colin practiced as an associate with Groom Law Group (an employer-side employment benefits boutique) and with the international law firm Clifford Chance. Colin served on the editorial board of the Virginia Law Review while in law school.

### EDUCATION
- University of Virginia School of Law, J.D
- University of Massachusetts, B.A., Philosophy

### BAR ADMISSIONS
- District of Columbia
- New York

### COURT ADMISSIONS
- D. D.C.
- S.D.N.Y
- First Circuit Court of Appeals

### PUBLICATIONS
- *Appointing Chapter 11 Trustees in Reorganizations of Religious Institutions,* 101 Va. L. Rev. 2225 (2015)

**BLOCK & LEVITON LLP**

# MATTHEW SMITH

*Associate*

 matt@blocksq.com

**EDUCATION**

- Duke Law School, J.D., L.L.M, *magna cum laude* & Order of the Coif
- Columbia University, B.A., History

**BAR ADMISSIONS**

- California
- New York (inactive)
- District of Columbia (inactive)

**COURT ADMISSIONS**

- Second and Third Circuit Court of Appeals
- N.D. Cal. and C.D. Cal.
- E.D. Mich.
- D. Colo.

Matt is an associate in the Firm's Employee Benefits practices. After graduating *magna cum laude* from Duke Law School, Matt served as a law clerk to the Honorable Rosemary Barkett on the Eleventh Circuit Court of Appeals.

Before joining Block and Leviton, Matt practiced at nationally recognized plaintiffs' firms based in Washington, D.C., and Seattle, Washington, where his practice concentrated on antitrust and employee benefits cases. Matt collaborated with R. Joseph Barton in *Severstal Wheeling, Inc. Retirement Committee et al. v. WPN Corp., et. al. (*2d. Circuit). As part of a two-attorney trial team, they won a $15 million judgment on behalf of thousands of retired steelworkers. Matt has valuable experience serving as lead associate in a myriad of successful litigation, ranging from cases where military veterans were wrongfully denied long-term disability benefits (*Bush v. Liberty Life Assurance Co. of Boston et. al.* (N.D. Cal.)), to nationally-contested issues of federal pension regulation (*Kaplan v. Saint Peter's Healthcare System, et. al.* (3d Circuit)).

**BLOCK & LEVITON LLP**



## AMANDA R. CRAWFORD

*Associate*

 amanda@blockesq.com

Amanda Crawford is an associate in Block & Leviton LLP's shareholder litigation practice.

Before joining Block & Leviton, Amanda gained practical corporate work experience in finance and employment law. During law school, she served as Executive Editor of the North Carolina Journal of International Law, Co-chair of the Craven Moot Court Board, a research assistant to the Assistant Dean of the Writing and Learning Resources at UNC School of law, a law clerk at TIAA, and a summer associate at Mayer Brown LLP.

### EDUCATION

- University of North Carolina School of Law, J.D.
- Eugene Gressman and Daniel H. Pollitt Oral Advocacy Award for Best Overall Argument
- Certificate of Merit for highest grade in Legal Research, Reasoning, Writing, and Advocacy
- California State University, Fullerton, Criminal Justice, *cum laude*

### BAR ADMISSIONS

- Massachusetts

### COURT ADMISSIONS

- D. Mass

**BLOCK & LEVITON LLP**

## JOSEPH MCCLELLAN

*Associate*

 jmcclellan@blockesq.com

**EDUCATION**

- Boston University Law School, J.D.
- CUNY Brooklyn College, B.A., Philiosophy and History, *summa cum laude*

**BAR ADMISSIONS**

- Massachusetts

Joseph McClellan is an associate in Block & Leviton LLP's shareholder litigation practice.

Before joining Block & Leviton, Joseph gained securities litigation experience as an Enforcement Attorney at the Massachusetts Securities Division, where he was the lead attorney on a number of cases involving dishonest and unethical conduct and breaches of fiduciary duties.

During law school, he was a student prosecutor at Boston University School of Law's criminal clinic and won an award for best brief in the Edward C. Stone Moot Court Competition.

**BLOCK & LEVITON LLP**



## JEFFREY GRAY

*Associate*

 jgray@blockesq.com

### EDUCATION

- Suffolk University Law School, J.D.
- Sawyer Business School, Suffolk University, M.B.A.
- Connecticut College, B.A., Economics

### BAR ADMISSIONS

- Massachusetts

Jeff Gray joined Block & Leviton as an associate in 2016, where his practice focuses on consumer class action litigation. Jeff is experienced in conducting large scale document review projects.

Jeff is a member of the Block & Leviton LLP litigation team representing members of the class in the matter *Volkswagen "Clean Diesel" MDL*. Prior to joining Block & Leviton, Jeff also received valuable experience with class action shareholder suits, breach of contract cases, and defense of trademark infringement claims, as well as SEC and DOJ investigations of pharmaceutical companies and hedge funds.

Earlier in his career, Jeff was a management consultant at a financial services firm in the Boston area and, prior to that, was a project manager in commercial lending at FleetBoston Financial. While in law school, he completed internships with MFS and with The Nature Conservancy and was a law clerk at CT Corporation System.

**BLOCK & LEVITON LLP**

**ELIZABETH NEWMAN**
*Associate*

 enewman@blockesq.com

**EDUCATION**
- Golden Gate University School of Law, J.D., Business Law Concentration
- University of California, Berkeley, B.A., History

**BAR ADMISSIONS**
- California

**COURT ADMISSIONS**
- E.D. Cal.

Elizabeth Newman joined Block & Leviton LLP as an associate in 2018.  Her practice focuses on securities, antitrust, and class action litigation. She is currently a member of the litigation team representing shareholders in the *In re McKesson Corporation Derivative Litigation* matter.  Prior to joining Block & Leviton LLP, Elizabeth was a member of litigation teams on numerous cases including: *In Re TFT-LCD (Flat Panel) Antitrust Litigation*, M-07-1827 SI, MDL 1827 (N.D.Cal.) (alleging price fixing of TFT panels, resulting in approximately $1.1 billion in settlements); *In re Optical Disk Drive Products Antitrust Litigation,* M:10-cv-2143-RS (N.D.Cal.) (alleging price fixing of electronic components used in DVDs, Blu-rays and CDs, resulting in  $37 million in settlements); *In re Lithium Ion Batteries Antitrust Litigation,* 13-md-02420-YGR (DMR) (N.D.Cal.) (alleging price fixing of Li-Ion batteries, resulting in $64.45 million in settlements to date); *Hamilton v. Barnes, et al. (Advanced Micro Devices),* 4:15-cv-01890-YGR (N.D.Cal.) (alleging false and misleading statements and omissions, resulting in a $29.5 million settlement); *In re Apple Iphone/Ipod Warranty Litigation,* CV-10-01610 (N.D.Cal.) (alleging failure to honor warranties, resulting in a $53 million settlement); *In re Anthem Inc. Data Breach Litigation*, 15-MD-02617-LHK (N.D.Cal.) (alleging a data security breach compromising the records of 79 million members, and resulting in a $115 million settlement).

While in law school, Elizabeth received the Witkin Award for Securities Regulation, the CALI Award for Appellate Advocacy, the CALI Award for Contracts II, and was a member of the Moot Court Board.  Prior to her legal career, Elizabeth worked in Contracts and Licensing at Oracle Corporation.

Contact Us

# BLOCK & LEVITON LLP

260 Franklin Street, Suite 1860 | Boston, MA 02110
100 Pine Street, Suite 1250 | San Francisco, CA 94111
1735 20th St NW | Washington, DC 20009

T. (617) 398-5600 | F. (617) 507-6020

**www.blockesq.com**

# EXHIBIT 3

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS

| | |
|---|---|
| *In re EZCORP, Inc. Securities Litigation* | Master File No. 1:15-cv-00608-SS |

**DECLARATION OF LIONEL Z. GLANCY IN SUPPORT OF LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES FILED ON BEHALF OF GLANCY PRONGAY & MURRAY LLP**

I, Lionel Z. Glancy, Esq., pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1.      I am admitted to practice law before the Central District of California and state courts of California, and I am admitted *pro hac vice* in the above-captioned action (the "Action"). I am the founding partner of the law firm of Glancy Prongay & Murray LLP ("GPM"), one of the Court-appointed Lead Counsel in the Action, and counsel of record for the Settlement Class. I respectfully submit this declaration in support of Lead Counsel's application for an award of attorneys' fees in connection with services rendered in the Action, as well as for reimbursement of litigation expenses incurred in connection with the Action.

2.      I have personally participated in, overseen, and monitored the prosecution of this Action, and have otherwise been kept informed of developments in this litigation by attorneys working with me and under my supervision. Thus, if called upon, I can testify to the matters set forth herein.

3.      As one of the Lead Counsel in this Action, my firm was involved in all aspects of the litigation and its settlement as set forth in the Declaration of Jeffrey C. Block in Support of: (I) Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Plan of Allocation of Settlement Proceeds; and (II) Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses.

4.      The following Lodestar Chart sets forth the amount of time for each attorney and paraprofessionals at GPM who billed more than 20 hours to this matter as of October 30, 2019, with fees applied at the firm's current billing rates:

2

**GPM Lodestar Chart**

| GPM LLP LODESTAR | STATUS | HOURS | RATE | LODESTAR |
|---|---|---:|---:|---:|
| **ATTORNEYS:** | | | | |
| Lionel Z. Glancy | Partner | 44.50 | 960.00 | 42,720.00 |
| Joseph Cohen | Partner | 118.75 | 935.00 | 111,031.25 |
| Kara Wolke | Partner | 39.70 | 775.00 | 30,767.50 |
| Casey Sadler | Partner | 434.37 | 650.00 | 282,340.50 |
| Stanislav Karas | Of Counsel | 87.70 | 775.00 | 67,967.50 |
| Elaine Chang | Associate | 272.40 | 425.00 | 115,770.00 |
| Natalie S. Pang | Associate | 21.20 | 380.00 | 8,056.00 |
| Christopher Thoms | Staff Attorney | 621.40 | 395.00 | 245,453.00 |
| Jennifer S. Trenery | Staff Attorney | 545.50 | 395.00 | 215,472.50 |
| **TOTAL ATTORNEY** | **TOTAL** | **2,185.52** | | **1,119,578.25** |
| **PARALEGALS:** | | | | |
| Harry Kharadjian | Senior Paralegal | 27.25 | 290.00 | 7,902.50 |
| **TOTAL PARALEGAL** | **TOTAL** | **27.25** | | **7,902.50** |
| **TOTAL LODESTAR** | **TOTAL** | **2,212.77** | | **1,127,480.75** |

5.      These, or substantially similar, hourly rates have been accepted by courts throughout the country in numerous other securities class action settlements, including within the Western District of Texas.

6.      GPM incurred the following out-of-pocket expenses directly related to the litigation of this Action (which have been summarized in categories and include estimated costs of attending the final approval hearing in the amount of $1,200):

3

### GPM Expense Chart

| GPM LLP TABLE OF EXPENSES: | AMOUNT |
|---|---|
| COURIER & SPECIAL POSTAGE | 291.90 |
| COURT FILING FEES | 455.35 |
| DOCUMENT MANAGEMENT | 1,400.37 |
| EXPERTS | 58,925.63 |
| INVESTIGATIONS | 11,951.29 |
| MEDIATION | 6,534.09 |
| ONLINE RESEARCH | 3,498.22 |
| PRESS RELEASES | 145.00 |
| TELEPHONE | 12.00 |
| TRANSCRIPTS | 4,542.35 |
| TRAVEL AIRFARE | 6,968.33 |
| TRAVEL AUTO | 1,623.89 |
| TRAVEL HOTEL | 6,243.27 |
| TRAVEL MEALS | 1,711.48 |
| TRAVEL PARKING | 108.90 |
| **GRAND TOTAL** | **104,412.07** |

7.      Attached as Exhibit A is a true and correct copy of GPM's firm resume.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on this 31st day of October 2019, at Los Angeles, California.

_Lionel Z. Glancy_

4

# EXHIBIT A



1925 Century Park East, Suite 2100
Los Angeles, CA 90067
T: 310.201.9150

## FIRM RESUME

**Glancy Prongay & Murray LLP** (the "Firm") has represented investors, consumers and employees for over 25 years. Based in Los Angeles, with offices in New York City and Berkeley, the Firm has successfully prosecuted class action cases and complex litigation in federal and state courts throughout the country. As Lead Counsel, Co-Lead Counsel, or as a member of Plaintiffs' Counsel Executive Committees, the Firm's attorneys have recovered billions of dollars for parties wronged by corporate fraud, antitrust violations and malfeasance. Indeed, the Institutional Shareholder Services unit of RiskMetrics Group has recognized the Firm as one of the top plaintiffs' law firms in the United States in its Securities Class Action Services report for every year since the inception of the report in 2003. The Firm's efforts have been publicized in major newspapers such as the *Wall Street Journal*, the *New York Times*, and the *Los Angeles Times*.

Glancy Prongay & Murray's commitment to high quality and excellent personalized services has boosted its national reputation, and we are now recognized as one of the premier plaintiffs' firms in the country. The Firm works tenaciously on behalf of clients to produce significant results and generate lasting corporate reform.

The Firm's integrity and success originate from our attorneys, who are among the brightest and most experienced in the field. Our distinguished litigators have an unparalleled track record of investigating and prosecuting corporate wrongdoing. The Firm is respected for both the zealous advocacy with which we represent our clients' interests as well as the highly-professional and ethical manner by which we achieve results. We are ideally positioned to pursue securities, antitrust, consumer, and derivative litigation on behalf of our clients. The Firm's outstanding accomplishments are the direct result of the exceptional talents of our attorneys and employees.

### SECURITIES CLASS ACTION SETTLEMENTS

Appointed as Lead or Co-Lead Counsel by judges throughout the United States, Glancy Prongay & Murray has achieved significant recoveries for class members in numerous securities class actions, including:

*In re Mercury Interactive Corporation Securities Litigation*, USDC Northern District of California, Case No. 05-3395-JF, in which the Firm served as Co-Lead Counsel and achieved a settlement valued at over $117 million.

*In re Real Estate Associates Limited Partnership Litigation*, USDC Central District of California, Case No. 98-7035-DDP, in which the Firm served as local counsel and

New York     |     Los Angeles     |     Berkeley
www.glancylaw.com

plaintiffs achieved a $184 million jury verdict after a complex six week trial in Los Angeles, California and later settled the case for $83 million.

*In Re Yahoo! Inc. Securities Litigation*,  USDC Northern District of California, Case No. 5:17-cv-00373-LHK, in which the Firm served as Co-Lead Counsel and achieved an $80 million settlement.

*The City of Farmington Hills Employees Retirement System v. Wells Fargo Bank, N.A.*, USDC District of Minnesota, Case No. 10-cv-04372-DWF/JJG, in which the Firm served as Co-Lead Counsel and achieved a settlement valued at $62.5 million.

*Schleicher v. Wendt*, (Conseco Securities Litigation), USDC Southern District of Indiana, Case No. 02-1332-SEB, a securities fraud class action in which the Firm served as Lead Counsel for the Class and achieved a settlement of over $41 million.

*Robb v. Fitbit, Inc.*, USDC Northern District of California, Case No. 3:16-cv-00151, a securities fraud class action in which the Firm served as Lead Counsel for the Class and achieved a settlement of $33 million.

*Yaldo v. Airtouch Communications*, State of Michigan, Wayne County, Case No. 99-909694-CP, in which the Firm served as Co-Lead Counsel and achieved a settlement valued at over $32 million for defrauded consumers.

*Lapin v. Goldman Sachs*, USDC Southern District of New York, Case No. 03-0850-KJD, a securities fraud class action in which the Firm served as Co-Lead Counsel for the Class and achieved a settlement of $29 million.

*In re Heritage Bond Litigation*, USDC Central District of California, Case No. 02-ML-1475-DT, where as Co-Lead Counsel, the Firm recovered in excess of $28 million for defrauded investors and continues to pursue additional defendants.

*In re Livent, Inc. Noteholders Litigation*, USDC Southern District of New York, Case No. 99 Civ 9425-VM, a securities fraud class action in which the Firm served as Co-Lead Counsel for the Class and achieved a settlement of over $27 million.

*In re ECI Telecom Ltd. Securities Litigation*, USDC Eastern District of Virginia, Case No. 01-913-A, in which the Firm served as sole Lead Counsel and recovered almost $22 million for defrauded ECI investors.

*Senn v. Sealed Air Corporation*, USDC New Jersey, Case No. 03-cv-4372-DMC, a securities fraud class action, in which the Firm acted as co-lead counsel for the Class and achieved a settlement of $20 million.

*In re Gilat Satellite Networks, Ltd. Securities Litigation*, USDC Eastern District of New York, Case No. 02-1510-CPS, a securities fraud class action in which the Firm served as Co-Lead Counsel for the Class and achieved a settlement of $20 million.

*In re Lumenis, Ltd. Securities Litigation*, USDC Southern District of New York, Case No.02-CV-1989-DAB, in which the Firm served as Co-Lead Counsel and achieved a settlement valued at over $20 million.

*In re Infonet Services Corporation Securities Litigation*, USDC Central District of California, Case No. CV 01-10456-NM, in which as Co-Lead Counsel, the Firm achieved a settlement of $18 million.

*In re ESC Medical Systems, Ltd. Securities Litigation*, USDC Southern District of New York, Case No. 98 Civ. 7530-NRB, a securities fraud class action in which the Firm served as sole Lead Counsel for the Class and achieved a settlement valued in excess of $17 million.

*In re Musicmaker.com Securities Litigation*, USDC Central District of California, Case No. 00-02018-CAS, a securities fraud class action in which the Firm was sole Lead Counsel for the Class and recovered in excess of $13 million.

*In re Lason, Inc. Securities Litigation*, USDC Eastern District of Michigan, Case No. 99 76079-AJT, in which the Firm was Co-Lead Counsel and recovered almost $13 million for defrauded Lason stockholders.

*In re Inso Corp. Securities Litigation*, USDC District of Massachusetts, Case No. 99 10193-WGY, a securities fraud class action in which the Firm served as Co-Lead Counsel for the Class and achieved a settlement valued in excess of $12 million.

*In re National TechTeam Securities Litigation*, USDC Eastern District of Michigan, Case No. 97-74587-AC, a securities fraud class action in which the Firm served as Co-Lead Counsel for the Class and achieved a settlement valued in excess of $11 million.

*Taft v. Ackermans (KPNQwest Securities Litigation)*, USDC Southern District of New York, Case No. 02-CV-07951-PKL, a securities fraud class action in which the Firm served as Co-Lead Counsel for the Class and achieved a settlement worth $11 million.

*Jenson v. First Trust Corporation*, USDC Central District of California, Case No. 05-cv-3124-ABC, in which the Firm was appointed sole lead counsel and achieved an $8.5 million settlement in a very difficult case involving a trustee's potential liability for losses incurred by investors in a Ponzi scheme. Kevin Ruf of the Firm also successfully defended in the 9th Circuit Court of Appeals the trial court's granting of class certification in this case.

*In re Ramp Networks, Inc. Securities Litigation*, USDC Northern District of California, Case No. C-00-3645-JCS, a securities fraud class action in which the Firm served as Co-Lead Counsel for the Class and achieved a settlement of nearly $7 million.

*Capri v. Comerica, Inc.*, USDC Eastern District of Michigan, Case No. 02-CV-60211-MOB, a securities fraud class action in which the Firm served as Co-Lead Counsel for the Class and achieved a settlement of $6.0 million.

*Plumbing Solutions Inc. v. Plug Power, Inc.*, USDC Eastern District of New York, Case No. CV 00 5553-ERK, a securities fraud class action in which the Firm served as Co-Lead Counsel for the Class and achieved a settlement of over $5 million.

*Ree v. Procom Technologies, Inc.*, USDC Southern District of New York, Case No. 02-CV-7613-JGK, a securities fraud class action in which the Firm served as Co-Lead Counsel for the Class and achieved a settlement of $2.7 million.

*Tatz v. Nanophase Technologies Corp.*, USDC Northern District of Illinois, Case No. 01-C-8440-MCA, a securities fraud class action in which the Firm served as Co-Lead Counsel for the Class and achieved a settlement of $2.5 million.

*In re F & M Distributors Securities Litigation*, USDC Eastern District of Michigan, Case No. 95 CV 71778-DT, a securities fraud class action in which the Firm served on the Executive Committee and helped secure a $20.25 million settlement.

## ANTITRUST PRACTICE GROUP AND ACHIEVEMENTS

Glancy Prongay & Murray's Antitrust Practice Group focuses on representing individuals and entities that have been victimized by unlawful monopolization, price-fixing, market allocation, and other anti-competitive conduct. The Firm has prosecuted significant antitrust cases and has helped individuals and businesses recover billions of dollars. Prosecuting civil antitrust cases under federal and state laws throughout the country, the Firm's Antitrust Practice Group represents consumers, businesses, and Health and Welfare Funds and seeks injunctive relief and damages for violations of antitrust and commodities laws. The Firm has served, or is currently serving, as Lead Counsel, Co-Lead Counsel or Class Counsel in a substantial number of antitrust class actions, including:

*In re Nasdaq Market-Makers Antitrust Litigation*, USDC Southern District of New York, Case No. 94 C 3996-RWS, MDL Docket No. 1023, a landmark antitrust lawsuit in which the Firm filed the first complaint against all of the major NASDAQ market makers and served on Plaintiffs' Counsel's Executive Committee in a case that recovered $900 million for investors.

*Sullivan v. DB Investments*, USDC District of New Jersey, Case No. No. 04-cv-2819, where the Firm served as Co-Lead Settlement Counsel in an antitrust case against DeBeers relate to the pricing of diamonds that settled for $295 million.

*In re Korean Air Lines Antitrust Litig.*, USDC Central District of California, Master File No. CV 07-05107 SJO(AGRx), MDL No. 07-0189, where the Firm served as Co-Lead Counsel in a case related to fixing of prices for airline tickets to Korea that settled for $86 million.

New York   |   Los Angeles   |   Berkeley

www.glancylaw.com

*In re Urethane Chemical Antitrust Litig.*, USDC District of Kansas, Case No. MDL 1616, where the Firm served as Co-Lead counsel in an antitrust price fixing case that settled $33 million.

*In re Western States Wholesale Natural Gas Litig.*, USDC District of Nevada, Case No. MDL 1566, where the Firm served as Class Counsel in an antitrust price fixing case that settled $25 million.

*In re Aggrenox Antitrust Litig.,* USDC District of Connecticut, Case No. 14-cv-2516, where the Firm played a major role in achieving a settlement of $54,000,000.

*In re Solodyn Antitrust Litig.,* USDC District of Massachusetts, Case No. MDL 2503, where the Firm played a major role in achieving a settlement of $43,000,000.

*In re Generic Pharmaceuticals Pricing Antitrust Litig.*, USDC Eastern District of Pennsylvania, Case No. 16-md-2427, where the Firm is representing a major Health and Welfare Fund in a case against a number of generic drug manufacturers for price fixing generic drugs.

*In re Actos End Payor Antitrust Litig.*, USDC Southern District of New York, Case No. 13-cv-9244, where the Firm is serving on Plaintiffs' Executive Committee.

*In re Heating Control Panel Direct Purchaser* Action, USDC Eastern District of Michigan, Case No. 12-md-02311, representing a recreational vehicle manufacturer in a price-fixing class action involving direct purchasers of heating control panels.

*In re Instrument Panel Clusters Direct Purchaser Action,* USDC Eastern District of Michigan, Case No. 12-md-02311, representing a recreational vehicle manufacturer in a price-fixing class action involving direct purchasers of instrument panel clusters.

In addition, the Firm is currently involved in the prosecution of many market manipulation cases relating to violations of antitrust and commodities laws, including *Sullivan v. Barclays PLC* (manipulation of Euribor rate), *In re Foreign Exchange Benchmark Rates Antitrust Litig.*, *In re LIBOR-Based Financial Instruments Antitrust Litig.*, *In re Gold Futures & Options Trading Litig.*, *In re Platinum & Palladium Antitrust Litig.*, *Sonterra Cap. Master Fund v. Credit Suisse Group AG* (Swiss Libor rate manipulation), *Twin City Iron Pension Fund v. Bank of Nova Scotia* (manipulation of treasury securities), and *Ploss v. Kraft Foods Group* (manipulation of wheat prices).

Glancy Prongay & Murray has been responsible for obtaining favorable appellate opinions which have broken new ground in the class action or securities fields, or which have promoted shareholder rights in prosecuting these actions.  The Firm successfully argued the appeals in a number of cases:

In *Smith v. L'Oreal*, 39 Cal.4th 77 (2006), Firm partner Kevin Ruf established ground-breaking law when the California Supreme Court agreed with the Firm's position that

waiting penalties under the California Labor Code are available to *any* employee after termination of employment, regardless of the reason for that termination.

## OTHER NOTABLE ACHIEVEMENTS

Other notable Firm cases are: *Silber v. Mabon I*, 957 F.2d 697 (9th Cir. 1992) and *Silber v. Mabon II*, 18 F.3d 1449 (9th Cir. 1994), which are the leading decisions in the Ninth Circuit regarding the rights of opt-outs in class action settlements. In *Rothman v. Gregor*, 220 F.3d 81 (2d Cir. 2000), the Firm won a seminal victory for investors before the Second Circuit Court of Appeals, which adopted a more favorable pleading standard for investors in reversing the District Court's dismissal of the investors' complaint. After this successful appeal, the Firm then recovered millions of dollars for defrauded investors of the GT Interactive Corporation. The Firm also argued *Falkowski v. Imation Corp.*, 309 F.3d 1123 (9th Cir. 2002), *as amended*, 320 F.3d 905 (9th Cir. 2003), and favorably obtained the substantial reversal of a lower court's dismissal of a cutting edge, complex class action initiated to seek redress for a group of employees whose stock options were improperly forfeited by a giant corporation in the course of its sale of the subsidiary at which they worked.

The Firm is also involved in the representation of individual investors in court proceedings throughout the United States and in arbitrations before the American Arbitration Association, National Association of Securities Dealers, New York Stock Exchange, and Pacific Stock Exchange. Mr. Glancy has successfully represented litigants in proceedings against such major securities firms and insurance companies as A.G. Edwards & Sons, Bear Stearns, Merrill Lynch & Co., Morgan Stanley, PaineWebber, Prudential, and Shearson Lehman Brothers.

One of the Firm's unique skills is the use of "group litigation" - the representation of groups of individuals who have been collectively victimized or defrauded by large institutions. This type of litigation brought on behalf of individuals who have been similarly damaged often provides an efficient and effective economic remedy that frequently has advantages over the class action or individual action devices. The Firm has successfully achieved results for groups of individuals in cases against major corporations such as Metropolitan Life Insurance Company, and Occidental Petroleum Corporation.

Glancy Prongay & Murray LLP currently consists of the following attorneys:

## PARTNERS

**LEE ALBERT**, a partner, was admitted to the bars of the Commonwealth of Pennsylvania, the State of New Jersey, and the United States District Courts for the Eastern District of Pennsylvania and the District of New Jersey in 1986. He received his B.S. and M.S. degrees from Temple University and Arcadia University in 1975 and 1980, respectively, and received his J.D. degree from Widener University School of Law in 1986. Upon graduation from law school, Mr. Albert spent several years working as a

New York    |    Los Angeles    |    Berkeley
www.glancylaw.com

civil litigator in Philadelphia, PA. Mr. Albert has extensive litigation and appellate practice experience having argued before the Supreme and Superior Courts of Pennsylvania and has over fifteen years of trial experience in both jury and non-jury cases and arbitrations. Mr. Albert has represented a national health care provider at trial obtaining injunctive relief in federal court to enforce a five-year contract not to compete on behalf of a national health care provider and injunctive relief on behalf of an undergraduate university.

Currently, Mr. Albert represents clients in all types of complex litigation including matters concerning violations of federal and state antitrust and securities laws, mass tort/product liability and unfair and deceptive trade practices. Some of Mr. Albert's current major cases include *In Re Automotive Wire Harness Systems Antitrust Litigation* (E.D. Mich*.); In Re Heater Control Panels Antitrust Litigation* (E.D. Mich.); *Kleen Products, et al. v. Packaging Corp. of America* (N.D. Ill.); *and In re Class 8 Transmission Indirect Purchaser Antitrust Litigation* (D. Del.). Previously, Mr. Albert had a significant role in *Marine Products Antitrust Litigation* (C.D. Cal.); *Baby Products Antitrust Litigation* (E.D. Pa.); *In re ATM Fee Litigation* (N.D. Cal.); *In re Canadian Car Antitrust Litigation* (D. Me.); *In re Broadcom Securities Litigation* (C.D. Cal.); and has worked on *In re Avandia Marketing, Sales Practices and Products Liability Litigation* (E.D. Pa.); *In re Ortho Evra Birth Control Patch Litigation* (N.J. Super. Ct., Middlesex County); *In re AOL Time Warner, Inc. Securities Litigation* (S.D.N.Y.); *In re WorldCom, Inc. Securities Litigation* (S.D.N.Y.); and *In re Microsoft Corporation Massachusetts Consumer Protection Litigation* (Mass. Super. Ct.).

**PETER A. BINKOW** has prosecuted lawsuits on behalf of consumers and investors in state and federal courts throughout the United States. He served as Lead or Co-Lead Counsel in many class action cases, including: *In re Mercury Interactive Securities Litigation* ($117.5 million recovery); *The City of Farmington Hills Retirement System v Wells Fargo* ($62.5 million recovery); *Schleicher v Wendt* (Conseco Securities litigation - $41.5 million recovery); *Lapin v Goldman Sachs* ($29 million recovery); *In re Heritage Bond Litigation* ($28 million recovery); *In re National Techteam Securities Litigation* ($11 million recovery for investors); *In re Lason Inc. Securities Litigation* ($12.68 million recovery), *In re ESC Medical Systems, Ltd. Securities Litigation* ($17 million recovery); and many others. In *Schleicher v Wendt*, Mr. Binkow successfully argued the seminal Seventh Circuit case on class certification, in an opinion authored by Chief Judge Frank Easterbrook. He has argued and/or prepared appeals before the Ninth Circuit, Seventh Circuit, Sixth Circuit and Second Circuit Courts of Appeals.

Mr. Binkow joined the Firm in 1994. He was born on August 16, 1965 in Detroit, Michigan. Mr. Binkow obtained a Bachelor of Arts degree from the University of Michigan in 1988 and a Juris Doctor degree from the University of Southern California in 1994.

**JOSEPH D. COHEN** has extensive complex civil litigation experience, and currently oversees the firm's settlement department, negotiating, documenting and obtaining court approval of the firm's securities, merger and derivative settlements.

Prior to joining the firm, Mr. Cohen successfully prosecuted numerous securities fraud, consumer fraud, antitrust and constitutional law cases in federal and state courts throughout the country. Cases in which Mr. Cohen took a lead role include: *Jordan v. California Dep't of Motor Vehicles*, 100 Cal. App. 4th 431 (2002) (complex action in which the California Court of Appeal held that California's Non-Resident Vehicle $300 Smog Impact Fee violated the Commerce Clause of the United States Constitution, paving the way for the creation of a $665 million fund and full refunds, with interest, to 1.7 million motorists); *In re Geodyne Res., Inc. Sec. Litig.* (Harris Cty. Tex.) (settlement of securities fraud class action, including related litigation, totaling over $200 million); *In re Cmty. Psychiatric Centers Sec. Litig.* (C.D. Cal.) (settlement of $55.5 million was obtained from the company and its auditors, Ernst & Young, LLP); *In re McLeodUSA Inc., Sec. Litig.* (N.D. Iowa) ($30 million settlement); *In re Arakis Energy Corp. Sec. Litig.* (E.D.N.Y.) ($24 million settlement); *In re Metris Cos., Inc., Sec. Litig.* (D. Minn.) ($7.5 million settlement); *In re Landry's Seafood Rest., Inc. Sec. Litig.* (S.D. Tex.) ($6 million settlement); and *Freedman v. Maspeth Fed. Loan and Savings Ass'n*, (E.D.N.Y) (favorable resolution of issue of first impression under RESPA resulting in full recovery of improperly assessed late fees).

Mr. Cohen was also a member of the teams that obtained substantial recoveries in the following cases: *In re: Foreign Exchange Benchmark Rates Antitrust Litig.* (S.D.N.Y.) (partial settlements of approximately $2 billion); *In re Washington Mutual Mortgage-Backed Sec. Litig.* (W.D. Wash.) (settlement of $26 million); *Mylan Pharm., Inc. v. Warner Chilcott Public Ltd. Co.* (E.D. Pa.) ($8 million recovery in antitrust action on behalf of class of indirect purchasers of the prescription drug Doryx); *City of Omaha Police and Fire Ret. Sys. v. LHC Group, Inc.* (W.D. La.) (securities class action settlement of $7.85 million); and *In re Pacific Biosciences of Cal., Inc. Sec. Litig.* (Cal. Super. Ct.) ($7.6 million recovery).

In addition, Mr. Cohen was previously the head of the settlement department at Bernstein Litowitz Berger & Grossmann LLP. While at BLB&G, Mr. Cohen had primary responsibility for overseeing the team working on the following settlements, among others: *In Re Merck & Co., Inc. Sec., Deriv. & "ERISA" Litig.* (D.N.J.) ($1.062 billion securities class action settlement); *New York State Teachers' Ret. Sys. v. General Motors Co.* (E.D. Mich.) ($300 million securities class action settlement); *In re JPMorgan Chase & Co. Sec. Litig.* (S.D.N.Y.) ($150 million settlement); *Dep't of the Treasury of the State of New Jersey and its Division of Inv. v. Cliffs Natural Res. Inc., et al.* (N.D. Ohio) ($84 million securities class action settlement); *In re Penn West Petroleum Ltd. Sec. Litig.* (S.D.N.Y.) ($19.76 million settlement); and *In re BioScrip, Inc. Sec. Litig.* ($10.9 million settlement).

**JOSHUA L. CROWELL**, a partner in the firm's Los Angeles office, concentrates his practice on prosecuting complex securities cases on behalf of investors.

Recently, he was co-lead counsel in *In re Yahoo! Inc. Securities Litigation*, No. 17-CV-00373-LHK (N.D. Cal.), which resulted in an $80 million settlement for the class. He also led the prosecution of *In re Akorn, Inc. Securities Litigation*, No. 1:15-cv-01944 (N.D. Ill.), achieving a $24 million class settlement.

Prior to joining Glancy Prongay & Murray LLP, Joshua was an Associate at Labaton Sucharow LLP in New York, where he substantially contributed to some of the firm's biggest successes. There he helped secure several large federal securities class settlements, including:

- *In re Countrywide Financial Corp. Securities Litigation*, No. CV 07-05295 MRP (MANx) (C.D. Cal.) – $624 million

- *In re Schering-Plough Corp. / ENHANCE Securities Litigation*, No. 08-397 (DMC) (JAD) (D.N.J.) – $473 million

- *In re Broadcom Corp. Class Action Litigation*, No. CV-06-5036-R (CWx) (C.D. Cal.) – $173.5 million

- *In re Fannie Mae 2008 Securities Litigation*, No. 08-civ-7831-PAC (S.D.N.Y.) – $170 million

- *Oppenheimer Champion Fund* and *Core Bond Fund* actions, Nos. 09-cv-525-JLK-KMT and 09-cv-1186-JLK-KMT (D. Colo.) – $100 million combined

He began his legal career as an Associate at Paul, Hastings, Janofsky & Walker LLP in New York, primarily representing financial services clients in commercial litigation.

Super Lawyers has selected Joshua as a Rising Star in the area of Securities Litigation from 2015 through 2017.

Prior to attending law school, Mr. Joshua was a Senior Economics Consultant at Ernst & Young LLP, where he priced intercompany transactions and calculated the value of intellectual property. Joshua received a J.D., cum laude, from The George Washington University Law School. During law school, he was a member of The George Washington Law Review and the Mock Trial Board. He was also a law intern for Chief Judge Edward J. Damich of the United States Court of Federal Claims. Joshua earned a B.A. in International Relations from Carleton College.

**LIONEL Z. GLANCY**, a graduate of University of Michigan Law School, is the founding partner of the Firm. After serving as a law clerk for United States District Judge Howard McKibben, he began his career as an associate at a New York law firm concentrating in securities litigation. Thereafter, he started a boutique law firm specializing in securities litigation, and other complex litigation, from the Plaintiff's perspective. Mr. Glancy has established a distinguished career in the field of securities litigation over the last fifteen years, having appeared and been appointed lead counsel on behalf of aggrieved investors in securities class action cases throughout the country. He has appeared and argued before dozen of district courts and a number of appellate courts. His efforts have resulted in the recovery of hundreds of millions of dollars in settlement proceeds for huge classes of shareholders. Well known in securities law, he has lectured on its developments and practice, including having lectured before Continuing Legal Education seminars and law schools.

Mr. Glancy was born in Windsor, Canada, on April 4, 1962. Mr. Glancy earned his undergraduate degree in political science in 1984 and his Juris Doctor degree in 1986,

both from the University of Michigan.  He was admitted to practice in California in 1988, and in Nevada and before the U.S. Court of Appeals, Ninth Circuit, in 1989.

**MARC L. GODINO** has extensive experience successfully litigating complex, class action lawsuits as a plaintiffs' lawyer. Since joining the firm in 2005, Mr. Godino has played a primary role in cases resulting in settlements of more than $100 million.  He has prosecuted securities, derivative, merger & acquisition, and consumer cases throughout the country in both state and federal court, as well as represented defrauded investors at FINRA arbitrations.  Mr. Godino manages the Firm's consumer class action department.

While a senior associate with Stull Stull & Brody, Mr. Godino was one of the two primary attorneys involved in *Small v. Fritz Co.*, 30 Cal. 4th 167 (April 7, 2003), in which the California Supreme Court created new law in the State of California for shareholders that held shares in detrimental reliance on false statements made by corporate officers.  The decision was widely covered by national media including *The National Law Journal*, the *Los Angeles Times*, the *New York Times*, and the *New York Law Journal*, among others, and was heralded as a significant victory for shareholders.

Mr. Godino's successes with Glancy Prongay & Murray LLP include: *Good Morning To You Productions Corp., et al., v. Warner/Chappell Music, Inc., et al.*, Case No. 13-04460 (C.D. Cal.) (In this highly publicized case that attracted world-wide attention, Plaintiffs prevailed on their claim that the song "Happy Birthday" should be in the public domain and achieved a $14,000,000 settlement to class members who paid a licensing fee for the song); *Ord v. First National Bank of Pennsylvania,* Case No. 12-766 (W. D. Pa.) ($3,000,000 settlement plus injunctive relief); *Pappas v. Naked Juice Co. of Glendora, Inc.,* Case No. 11-08276 (C.D. Cal.) ($9,000,000 settlement plus injunctive relief); *Astiana v. Kashi Company,* Case No. 11-1967 (S.D. Cal.) ($5,000,000 settlement); *In re Magma Design Automation, Inc. Securities Litigation*, Case No. 05-2394 (N.D. Cal.) ($13,500,000 settlement); *In re Hovnanian Enterprises, Inc. Securities Litigation*, Case No. 08-cv-0099 (D.N.J.) ($4,000,000 settlement); *In re Skilled Healthcare Group, Inc. Securities Litigation*, Case No. 09-5416 (C.D. Cal.) ($3,000,000 settlement); *Kelly v. Phiten USA, Inc.*, Case No. 11-67 (S.D. Iowa) ($3,200,000 settlement plus injunctive relief); (*Shin et al., v. BMW of North America*, 2009 WL 2163509 (C.D. Cal. July 16, 2009) (after defeating a motion to dismiss, the case settled on very favorable terms for class members including free replacement of cracked wheels); *Payday Advance Plus, Inc. v. MIVA, Inc.*, Case No. 06-1923 (S.D.N.Y.) ($3,936,812 settlement); *Esslinger, et al. v. HSBC Bank Nevada, N.A.*, Case No. 10-03213 (E.D. Pa.) ($23,500,000 settlement); *In re Discover Payment Protection Plan Marketing and Sales Practices Litigation*, Case No. 10-06994 ($10,500,000 settlement ); *In Re: Bank of America Credit Protection Marketing and Sales Practices Litigation,* Case No. 11-md-02269 (N.D. Cal.) ($20,000,000 settlement).

Mr. Godino was also the principal attorney in the following published decisions: *In re Zappos.com, Inc., Customer Data Sec. Breach Litigation*, 714 Fed Appx. 761 (9th Cir. 2018) (reversing order dismissing class action complaint); *Small et al., v. University Medical Center of Southern Nevada, et al.*, 2017 WL 3461364 (D. Nev. Aug. 10, 2017)

(denying motion to dismiss); *Sciortino v. Pepsico, Inc.*, 108 F.Supp. 3d 780 (N.D. Cal.. June 5, 2015) (motion to dismiss denied); *Peterson v. CJ America, Inc.*, 2015 WL 11582832 (S.D. Cal. May 15, 2015) (motion to dismiss denied); *Lilly v. Jamba Juice Company*, 2014 WL 4652283 (N. D. Cal. Sep 18, 2014) (class certification granted in part); *Kramer v. Toyota Motor Corp.*, 705 F. 3d 1122 (9th Cir. 2013) (affirming denial of Defendant's motion to compel arbitration); *Sateriale, et al. v. R.J. Reynolds Tobacco Co.*, 697 F. 3d 777 (9th Cir. 2012) (reversing order dismissing class action complaint); *Shin v. BMW of North America*, 2009 WL 2163509 (C.D. Cal. July 16, 2009) (motion to dismiss denied); *In re 2TheMart.com Securities Litigation*, 114 F. Supp. 2d 955 (C.D. Cal. 2002) (motion to dismiss denied); *In re Irvine Sensors Securities Litigation*, 2003 U.S. Dist. LEXIS 18397 (C.D. Cal. 2003) (motion to dismiss denied).

The following represent just a few of the cases Mr. Godino is currently litigating in a leadership position: *Small v. University Medical Center of Southern Nevada*, Case No. 13-00298 (D. Nev.); *Courtright, et al., v. O'Reilly Automotive Stores, Inc., et al.*, Case No. 14-334 (W.D. Mo); *Keskinen v. Edgewell Personal Care Co., et al.*, Case No. 17-07721 (C.D. CA); *Ryan v. Rodan & Fields, LLC*, Case No. 18-02505 (N.D. Cal)

**MATTHEW M. HOUSTON**, a partner in the firm's New York office, graduated from Boston University School of Law in 1988. Mr. Houston is an active member of the Bar of the State of New York and an inactive member of the bar for the Commonwealth of Massachusetts. Mr. Houston is also admitted to the United States District Courts for the Southern and Eastern Districts of New York and the District of Massachusetts, and the Second, Seventh, Ninth, and Eleventh Circuit Court of Appeals of the United States. Mr. Houston repeatedly has been selected as a New York Metro Super Lawyer.

Mr. Houston has substantial courtroom experience involving complex actions in federal and state courts throughout the country. Mr. Houston was co-lead trial counsel in one the few ERISA class action cases taken to trial asserting breach of fiduciary duty claims against plan fiduciaries, *Brieger et al. v. Tellabs, Inc.*, No. 06-CV-01882 (N.D. Ill.), and has successfully prosecuted many ERISA actions, including *In re Royal Ahold N.V. Securities and ERISA Litigation*, Civil Action No. 1:03-md-01539. Mr. Houston has been one of the principal attorneys litigating claims in multi-district litigation concerning employment classification of pickup and delivery drivers and primarily responsible for prosecuting ERISA class claims resulting in a $242,000,000 settlement; *In re FedEx Ground Package Inc. Employment Practices Litigation*, No. 3:05-MD-527 (MDL 1700). Mr. Houston recently presented argument before the Eleventh Circuit Court of Appeals on behalf of a class of Florida pickup and delivery drivers obtaining a reversal of the lower court's grant of summary judgment. Mr. Houston represented the interests of Nevada and Arkansas drivers employed by FedEx Ground obtaining significant recoveries on their behalf. Mr. Houston also served as lead counsel in multi-district class litigation seeking to modify insurance claims handling practices; *In re UnumProvident Corp. ERISA Benefits Denial Actions*, No. 1:03-cv-1000 (MDL 1552).

Mr. Houston has played a principal role in numerous derivative and class actions wherein substantial benefits were conferred upon plaintiffs: *In re: Groupon Derivative Litigation*, No. 12-cv-5300 (N.D. Ill. 2012) (settlement of consolidated derivative action

resulting in sweeping corporate governance reform estimated at $159 million) *Bangari v. Lesnik, et al.*, No. 11 CH 41973 (Illinois Circuit Court, County of Cook) (settlement of claim resulting in payment of $20 million to Career Education Corporation and implementation of extensive corporate governance reform); *In re Diamond Foods, Inc. Shareholder Litigation*, No. CGC-11-515895 (California Superior Court, County of San Francisco) ($10.4 million in monetary relief including a $5.4 million clawback of executive compensation and significant corporate governance reform); *Pace American Shareholder Litigation*, 94-92 TUC-RMB (securities fraud class action settlement resulting in a recovery of $3.75 million); *In re Bay Financial Securities Litigation*, Master File No. 89-2377-DPW, (D. Mass.) (J. Woodlock) (settlement of action based upon federal securities law claims resulting in class recovery in excess of $3.9 million); *Goldsmith v. Technology Solutions Company*, 92 C 4374 (N.D. Ill. 1992) (J. Manning) (recovery of $4.6 million as a result of action alleging false and misleading statements regarding revenue recognition).

In addition to numerous employment and derivative cases, Mr. Houston has litigated actions asserting breach of fiduciary duty in the context of mergers and acquisitions. Mr. Houston has been responsible for securing millions of dollars in additional compensation and structural benefits for shareholders of target companies: *In re Instinet Group, Inc. Shareholders Litigation*, C.A. No. 1289 (Delaware Court of Chancery); *Jasinover v. The Rouse Company*, Case No. 13-C-04-59594 (Maryland Circuit Court); *McLaughlin v. Household International, Inc.*, Case No. 02 CH 20683 (Illinois Circuit Court); *Sebesta v. The Quizno's Corporation*, Case No. 2001 CV 6281 (Colorado District Court); *Crandon Capital Partners v. Sanford M. Kimmel*, C.A. No. 14998 (Del. Ch.); and *Crandon Capital Partners v. Kimmel*, C.A. No. 14998 (Del. Ch. 1996) (J. Chandler) (settlement of an action on behalf of shareholders of Transnational Reinsurance Co. whereby acquiring company provided an additional $10.4 million in merger consideration).

**JASON L. KRAJCER** is a partner in the firm's Los Angeles office. He specializes in complex securities cases and has extensive experience in all phases of litigation (fact investigation, pre-trial motion practice, discovery, trial, appeal).

Prior to joining Glancy Prongay & Murray LLP, Mr. Krajcer was an Associate at Goodwin Procter LLP where he represented issuers, officers and directors in multi-hundred million and billion dollar securities cases. He began his legal career at Orrick, Herrington & Sutcliffe LLP, where he represented issuers, officers and directors in securities class actions, shareholder derivative actions, and matters before the U.S. Securities & Exchange Commission.

Mr. Krajcer is admitted to the State Bar of California, the Bar of the District of Columbia, the United States Supreme Court, the Ninth Circuit Court of Appeals, and the United States District Courts for the Central and Southern Districts of California.

**SUSAN G. KUPFER** is the founding partner of the Firm's Berkeley office. Ms Kupfer joined the Firm in 2003. She is a native of New York City, and received her A.B. degree from Mount Holyoke College in 1969 and her Juris Doctor degree from Boston

University School of Law in 1973. She did graduate work at Harvard Law School and, in 1977, was named Assistant Dean and Director of Clinical Programs at Harvard, supervising and teaching in that program of legal practice and related academic components.

For much of her legal career, Ms. Kupfer has been a professor of law. Her areas of academic expertise are Civil Procedure, Federal Courts, Conflict of Laws, Constitutional Law, Legal Ethics, and Jurisprudence. She has taught at Harvard Law School, Hastings College of the Law, Boston University School of Law, Golden Gate University School of Law, and Northeastern University School of Law. From 1991 through 2002, she was a lecturer on law at the University of California, Berkeley, Boalt Hall, teaching Civil Procedure and Conflict of Laws. Her publications include articles on federal civil rights litigation, legal ethics, and jurisprudence. She has also taught various aspects of practical legal and ethical training, including trial advocacy, negotiation and legal ethics, to both law students and practicing attorneys.

Ms. Kupfer previously served as corporate counsel to The Architects Collaborative in Cambridge and San Francisco, and was the Executive Director of the Massachusetts Commission on Judicial Conduct. She returned to the practice of law in San Francisco with Morgenstein & Jubelirer and Berman DeValerio LLP before joining the Firm.

Ms. Kupfer's practice is concentrated in complex antitrust litigation. She currently serves, or has served, as Co-Lead Counsel in several multidistrict antitrust cases: *In re Photochromic Lens Antitrust Litig.* (MDL 2173, M.D. Fla. 2010); *In re Fresh and Process Potatoes Antitrust Litig.* (D. ID. 2011); *In re Korean Air Lines Antitrust Litig.* (MDL No. 1891, C.D. Cal. 2007); *In re Urethane Antitrust Litigation* (MDL 1616, D. Kan. 2004); *In re Western States Wholesale Natural Gas Litigation* (MDL 1566, D. Nev. 2005); and *Sullivan et al v. DB Investments et al* (D. N.J. 2004). She has been a member of the lead counsel teams that achieved significant settlements in: *In re Sorbates Antitrust Litigation* ($96.5 million settlement); *In re Pillar Point Partners Antitrust Litigation* ($50 million settlement); and *In re Critical Path Securities Litigation* ($17.5 million settlement).

Ms. Kupfer is a member of the bar of Massachusetts and California, and is admitted to practice before the United States District Courts for the Northern, Central, Eastern and Southern Districts of California, the District of Massachusetts, the Courts of Appeals for the First and Ninth Circuits, and the U.S. Supreme Court.

**GREGORY B. LINKH** works out of the New York office, where he litigates antitrust, securities, shareholder derivative, and consumer cases. Greg graduated from the State University of New York at Binghamton in 1996 and from the University of Michigan Law School in 1999. While in law school, Greg externed with United States District Judge Gerald E. Rosen of the Eastern District of Michigan. Greg was previously associated with the law firms Dewey Ballantine LLP, Pomerantz Haudek Block Grossman & Gross LLP, and Murray Frank LLP.

Previously, Greg had significant roles in *In re Merrill Lynch & Co., Inc. Research Reports Securities Litigation* (settled for $125 million); *In re Crompton Corp. Securities Litigation* (settled $11 million); *Lowry v. Andrx Corp.* (settled for $8 million); *In re*

*Xybernaut Corp. Securities MDL Litigation* (settled for $6.3 million); and *In re EIS Int'l Inc. Securities Litigation* (settled for $3.8 million). Greg also represented the West Virginia Investment Management Board ("WVIMB") in *WVIMB v. Residential Accredited Loans, Inc., et al.*, relating to the WVIMB's investment in residential mortgage-backed securities.

Currently, Greg is litigating various antitrust and securities cases, including *In re Korean Ramen Antitrust Litigation*, *In re Automotive Parts Antitrust Litigation*, and *In re Horsehead Holding Corp. Securities Litigation*.

Greg is the co-author of Inherent Risk In Securities Cases In The Second Circuit, NEW YORK LAW JOURNAL (Aug. 26, 2004); and Staying Derivative Action Pursuant to PSLRA and SLUSA, NEW YORK LAW JOURNAL, P. 4, COL. 4 (Oct. 21, 2005).

**BRIAN MURRAY** is the managing partner of the Firm's New York Park Avenue office and the head of the Firm's Antitrust Practice Group. He received Bachelor of Arts and Master of Arts degrees from the University of Notre Dame in 1983 and 1986, respectively. He received a Juris Doctor degree, *cum laude*, from St. John's University School of Law in 1990. At St. John's, he was the Articles Editor of the ST. JOHN'S LAW REVIEW. Mr. Murray co-wrote: *Jurisdição Estrangeira Tem Papel Relevante Na De Fiesa De Investidores Brasileiros,* ESPAÇA JURÍDICO BOVESPA (August 2008); *The Proportionate Trading Model: Real Science or Junk Science?,* 52 CLEVELAND ST. L. REV. 391 (2004-05); *The Accident of Efficiency: Foreign Exchanges, American Depository Receipts, and Space Arbitrage,* 51 BUFFALO L. REV. 383 (2003); *You Shouldn't Be Required To Plead More Than You Have To Prove,* 53 BAYLOR L. REV. 783 (2001); *He Lies, You Die: Criminal Trials, Truth, Perjury, and Fairness,* 27 NEW ENGLAND J. ON CIVIL AND CRIMINAL CONFINEMENT 1 (2001); *Subject Matter Jurisdiction Under the Federal Securities Laws: The State of Affairs After Itoba,* 20 MARYLAND J. OF INT'L L. AND TRADE 235 (1996); *Determining Excessive Trading in Option Accounts: A Synthetic Valuation Approach,* 23 U. DAYTON L. REV. 316 (1997); *Loss Causation Pleading Standard,* NEW YORK LAW JOURNAL (Feb. 25, 2005); *The PSLRA 'Automatic Stay' of Discovery,* NEW YORK LAW JOURNAL (March 3, 2003); and *Inherent Risk In Securities Cases In The Second Circuit,* NEW YORK LAW JOURNAL (Aug. 26, 2004). He also authored *Protecting The Rights of International Clients in U.S. Securities Class Action Litigation,* INTERNATIONAL LITIGATION NEWS (Sept. 2007); Lifting the PSLRA "Automatic Stay" of Discovery, 80 N. DAK. L. REV. 405 (2004); *Aftermarket Purchaser Standing Under § 11 of the Securities Act of 1933,* 73 ST. JOHN'S L. REV.633 (1999); *Recent Rulings Allow Section 11 Suits By Aftermarket Securities Purchasers,* NEW YORK LAW JOURNAL (Sept. 24, 1998); and *Comment, Weissmann v. Freeman: The Second Circuit Errs in its Analysis of Derivative Copyrights by Joint Authors,* 63 ST. JOHN'S L. REV. 771 (1989).

Mr. Murray was on the trial team that prosecuted a securities fraud case under Section 10(b) of the Securities Exchange Act of 1934 against Microdyne Corporation in the Eastern District of Virginia and he was also on the trial team that presented a claim under Section 14 of the Securities Exchange Act of 1934 against Artek Systems Corporation and Dynatach Group which settled midway through the trial.

Mr. Murray's major cases include *In re Horsehead Holding Corp. Sec. Litig.*, No. 16-cv-292, 2018 WL 4838234 (D. Del. Oct. 4, 2018) (recommending denial of motion to dismiss securities fraud claims where company's generic cautionary statements failed to adequately warn of known problems); *In re Deutsche Bank Sec. Litig.*, --- F.R.D. ---, 2018 WL 4771525 (S.D.N.Y. Oct. 2, 2018) (granting class certification for Securities Act claims and rejecting defendants' argument that class representatives' trading profits made them atypical class members); *Robb v. Fitbit Inc.*, 216 F. Supp. 3d 1017 (N.D. Cal. 2016) (denying motion to dismiss securities fraud claims where confidential witness statements sufficiently established scienter); *In re Eagle Bldg. Tech. Sec. Litig.*, 221 F.R.D. 582 (S.D. Fla. 2004), 319 F. Supp. 2d 1318 (S.D. Fla. 2004) (complaint against auditor sustained due to magnitude and nature of fraud; no allegations of a "tip-off" were necessary); *In re Turkcell Iletisim A.S. Sec. Litig.*, 209 F.R.D. 353 (S.D.N.Y. 2002) (defining standards by which investment advisors have standing to sue); *In re Turkcell Iletisim A.S. Sec. Litig.*, 202 F. Supp. 2d 8 (S.D.N.Y. 2001) (liability found for false statements in prospectus concerning churn rates); *Feiner v. SS&C Tech., Inc.*, 11 F. Supp. 2d 204 (D. Conn. 1998) (qualified independent underwriters held liable for pricing of offering); *Malone v. Microdyne Corp.*, 26 F.3d 471 (4th Cir. 1994) (reversal of directed verdict for defendants); and *Adair v. Bristol Tech. Systems, Inc.*, 179 F.R.D. 126 (S.D.N.Y. 1998) (aftermarket purchasers have standing under section 11 of the Securities Act of 1933). Mr. Murray also prevailed on an issue of first impression in the Superior Court of Massachusetts, in Cambridge Biotech Corp. v. Deloitte and Touche LLP, in which the court applied the doctrine of continuous representation for statute of limitations purposes to accountants for the first time in Massachusetts. 6 Mass. L. Rptr. 367 (Mass. Super. Jan. 28, 1997). In addition, in *Adair v. Microfield Graphics, Inc.* (D. Or.), Mr. Murray settled the case for 47% of estimated damages. *In the Qiao Xing Universal Telephone* case, claimants received 120% of their recognized losses.

Among his current cases, Mr. Murray represents a class of investors in a securities litigation involving preferred shares of Deutsche Bank and is lead counsel in a securities class action against Horsehead Holdings, Inc. in the District of Delaware.

Mr. Murray served as a Trustee of the Incorporated Village of Garden City (2000-2002); Commissioner of Police for Garden City (2000-2001); Co-Chairman, Derivative Suits Subcommittee, American Bar Association Class Action and Derivative Suits Committee, (2007-2010); Member, Sports Law Committee, Association of the Bar for the City of New York, 1994-1997; Member, Litigation Committee, Association of the Bar for the City of New York, 2003-2007; Member, New York State Bar Association Committee on Federal Constitution and Legislation, 2005-2008; Member, Federal Bar Council, Second Circuit Committee, 2007-present.

Mr. Murray has been a panelist at CLEs sponsored by the Federal Bar Council and the Institute for Law and Economic Policy, at the German-American Lawyers Association Annual Meeting in Frankfurt, Germany, and is a frequent lecturer before institutional investors in Europe and South America on the topic of class actions.

**LESLEY F. PORTNOY** represents domestic and international clients in securities litigation and class actions. Mr. Portnoy focuses his practice on recovering losses suffered by investors resulting corporate fraud and other wrongdoing.

Mr. Portnoy has extensive experience litigating complex cases in state and federal courts nationwide, and previously served as counsel to investors in the Bernard L. Madoff securities, assisting the SIPC trustee Irving Picard in recovering assets on behalf of defrauded investors. During law school, he worked in the New York Supreme Court Commercial Division, the Second Circuit Court of Appeals, and the New York City Law Department. Mr. Portnoy has represented pro bono clients in New York and California.

**ROBERT V. PRONGAY** is a partner in the Firm's Los Angeles office where he focuses on the investigation, initiation, and prosecution of complex securities cases on behalf of institutional and individual investors. Mr. Prongay's practice concentrates on actions to recover investment losses resulting from violations of the federal securities laws and various actions to vindicate shareholder rights in response to corporate and fiduciary misconduct.

Mr. Prongay has extensive experience litigating complex cases in state and federal courts nationwide. Since joining the Firm, Mr. Prongay has successfully recovered millions of dollars for investors victimized by securities fraud and has negotiated the implementation of significant corporate governance reforms aimed at preventing the recurrence of corporate wrongdoing.

Mr. Prongay was recently recognized as one of thirty lawyers included in the Daily Journal's list of Top Plaintiffs Lawyers in California for 2017. Several of Mr. Prongay's cases have received national and regional press coverage. Mr. Prongay has been interviewed by journalists and writers for national and industry publications, ranging from *The Wall Street Journal* to the *Los Angeles Daily Journal*. Mr. Prongay has appeared as a guest on Bloomberg Television where he was interviewed about the securities litigation stemming from the high-profile initial public offering of Facebook, Inc.

Mr. Prongay received his Bachelor of Arts degree in Economics from the University of Southern California and his Juris Doctor degree from Seton Hall University School of Law. Mr. Prongay is also an alumnus of the Lawrenceville School.

**DANIELLA QUITT**, a partner in the firm's New York office, graduated from Fordham University School of Law in 1988, is a member of the Bar of the State of New York, and is also admitted to the United States District Courts for the Southern and Eastern Districts of New York and the United States Court of Appeals for the Second, Fifth, and Ninth Circuits.

Ms. Quitt has extensive experience in successfully litigating complex class actions from inception to trial and has played a significant role in numerous actions wherein substantial benefits were conferred upon plaintiff shareholders, such as *In re Safety-Kleen Corp. Stockholders Litigation*, (D.S.C.) (settlement fund of $44.5 million); *In re*

*Laidlaw Stockholders Litigation*, (D.S.C.) (settlement fund of $24 million); *In re UNUMProvident Corp. Securities Litigation*, (D. Me.) (settlement fund of $45 million); *In re Harnischfeger Industries* (E.D. Wisc.) (settlement fund of $10.1 million); *In re Oxford Health Plans, Inc. Derivative Litigation*, (S.D.N.Y.) (settlement benefit of $13.7 million and corporate therapeutics); *In re JWP Inc. Securities Litigation*, (S.D.N.Y.) (settlement fund of $37 million); *In re Home Shopping Network, Inc., Derivative Litigation*, (S.D. Fla.) (settlement benefit in excess of $20 million); *In re Graham-Field Health Products, Inc. Securities* Litigation, (S.D.N.Y.) (settlement fund of $5.65 million); *Benjamin v. Carusona*, (E.D.N.Y.) (prosecuted action on behalf of minority shareholders which resulted in a change of control from majority-controlled management at Gurney's Inn Resort & Spa Ltd.); *In re Rexel Shareholder Litigation*, (Sup. Ct. N.Y. County) (settlement benefit in excess of $38 million); and *Croyden Assoc. v. Tesoro Petroleum Corp., et al.*, (Del. Ch.) (settlement benefit of $19.2 million).

In connection with the settlement of *Alessi v. Beracha*, (Del. Ch.), a class action brought on behalf of the former minority shareholders of Earthgrains, Chancellor Chandler commented: "I give credit where credit is due, Ms. Quitt. You did a good job and got a good result, and you should be proud of it.""

Ms. Quitt has focused her practice on shareholder rights and ERISA class actions but also handles general commercial and consumer litigation. Ms. Quitt serves as a member of the S.D.N.Y. ADR Panel and has been consistently selected as a New York Metro Super Lawyer.

**JONATHAN M. ROTTER** leads the Firm's intellectual property litigation practice. He recently served for three years as the first Patent Pilot Program Law Clerk at the United States District Court for the Central District of California, both in Los Angeles and Orange County. There, he assisted the Honorable S. James Otero, Andrew J. Guilford, George H. Wu, John A. Kronstadt, and Beverly Reid O'Connell with hundreds of patent cases in every major field of technology, from complaint to post-trial motions. Mr. Rotter also served as a law clerk for the Honorable Milan D. Smith, Jr. on the United States Court of Appeals for the Ninth Circuit.

Before his service to the court, Mr. Rotter practiced at an international law firm, where he argued appeals at the Federal Circuit, Ninth Circuit, and California Court of Appeal, tried cases, argued motions, and managed all aspects of complex litigation. He also served as a volunteer criminal prosecutor for the Los Angeles City Attorney's Office. His cases have involved diverse technologies in both "wet" and "dry" disciplines, and he excels at the critical skill of translating complex subject matter into a coherent story that can be digested by judges and juries.

In addition to intellectual property matters, Mr. Rotter litigates consumer protection, healthcare, antitrust, and securities class actions. Mr. Rotter handles cases on contingency, partial contingency, and hourly bases. He works collaboratively with other lawyers and law firms across the country.

Mr. Rotter graduated with honors from Harvard Law School in 2004.  He served as an editor of the Harvard Journal of Law & Technology, and was a Fellow in Law and Economics at the John M. Olin Center for Law, Economics, and Business, and a Fellow in Justice, Welfare, and Economics at the Weatherhead Center For International Affairs. He graduated with honors from the University of California, San Diego in 2000 with a B.S. in molecular biology and a B.A. in music.

Mr. Rotter serves on the Merit Selection Panel for Magistrate Judges in the Central District of California, and the Model Patent Jury Instructions and Model Patent Local Rules subcommittees of the American Intellectual Property Law Association.  He has written extensively on intellectual property issues, and has been honored for his work with legal service organizations.  He is admitted to practice before the United States Patent & Trademark Office, the United States Courts of Appeals for the Second, Ninth and Federal Circuits, and the United States District Courts for the Northern, Central, and Southern Districts of California.

**KEVIN F. RUF** graduated from the University of California at Berkeley with a Bachelor of Arts in Economics and earned his Juris Doctor degree from the University of Michigan. He was an associate at the Los Angeles firm Manatt Phelps and Phillips from 1988 until 1992, where he specialized in commercial litigation.  In 1993, he joined the firm Corbin & Fitzgerald (with future federal district court Judge Michael Fitzgerald) specializing in white collar criminal defense work.  Kevin joined the Glancy firm in 2001 and is the head of the firm's Labor practice.

Kevin has successfully argued a number of important appeals, including in the 9th Circuit Court of Appeals.  He has twice argued cases before the California Supreme Court – winning both.  In *Smith v. L'Oreal* (2006), the California Supreme Court established a fundamental right of all California workers to immediate payment of all earnings at the conclusion of their employment. The second California Supreme Court case, *Lee v. Dynamex* (2018), has been called a "blockbuster" and "bombshell" as it altered 30 years of California law and established a new definition of employment that brings more workers within the protections of California's Labor Code.

Kevin has been named one of California's "Top 75 Employment Lawyers" by the Daily Journal.  He has consistently been named a "Super Lawyer."

Since 2014, Kevin has been an elected member of the Ojai Unified School District Board of Trustees.  Kevin was also a Main Company Member of the world-famous Groundlings improv and sketch comedy troupe – "where everyone else got famous."

**BENJAMIN I. SACHS-MICHAELS**, a partner in the firm's New York office, graduated from Benjamin N. Cardozo School of Law in 2011. His practice focuses on shareholder derivative litigation and class actions on behalf of shareholders and consumers.

While in law school, Mr. Sachs-Michaels served as a judicial intern to Senior United States District Judge Thomas J. McAvoy in the United States District Court for the

Northern District of New York and was a member of the Cardozo Journal of Conflict Resolution.

Mr. Sachs-Michaels is a member of the Bar of the State of New York. He is also admitted to the United States District Courts for the Southern and Eastern Districts of New York and the United States Court of Appeals for the Second Circuit.

**CASEY E. SADLER** is a native of New York, New York. After graduating from the University of Southern California, Gould School of Law, Mr. Sadler joined the Firm in 2010. While attending law school, Mr. Sadler externed for the Enforcement Division of the Securities and Exchange Commission, spent a summer working for P.H. Parekh & Co. – one of the leading appellate law firms in New Delhi, India – and was a member of USC's Hale Moot Court Honors Program.

Mr. Sadler's practice focuses on securities and consumer litigation. A partner in the Firm's Los Angeles office, Mr. Sadler is admitted to the State Bar of California and the United States District Courts for the Northern, Southern, and Central Districts of California.

**EX KANO S. SAMS II** earned his Bachelor of Arts degree in Political Science from the University of California Los Angeles. Mr. Sams earned his Juris Doctor degree from the University of California Los Angeles School of Law, where he served as a member of the *UCLA Law Review*. After law school, Mr. Sams practiced class action civil rights litigation on behalf of plaintiffs. Subsequently, Mr. Sams was a partner at Coughlin Stoia Geller Rudman & Robbins LLP (currently Robbins Geller Rudman & Dowd LLP), where his practice focused on securities and consumer class actions on behalf of investors and consumers.

During his career, Mr. Sams has served as lead counsel in dozens of securities class actions and complex-litigation cases throughout the United States. Mr. Sams was one of the counsel for respondents in *Cyan, Inc. v. Beaver Cty. Employees Ret. Fund*, No. 15-1439, 2018 WL 1384564 (U.S. Mar. 20, 2018), 583 U.S. ___ (2018), in which the United States Supreme Court ruled unanimously in favor of respondents, holding that: (1) the Securities Litigation Uniform Standards Act of 1998 ("SLUSA") does not strip state courts of jurisdiction over class actions alleging violations of only the Securities Act of 1933; and (2) SLUSA does not empower defendants to remove such actions from state to federal court. Mr. Sams also participated in a successful appeal before a Fifth Circuit panel that included former United States Supreme Court Justice Sandra Day O'Connor sitting by designation, in which the court unanimously vacated the lower court's denial of class certification, reversed the lower court's grant of summary judgment, and issued an important decision on the issue of loss causation in securities litigation: *Alaska Electrical Pension Fund v. Flowserve Corp.*, 572 F.3d 221 (5th Cir. 2009). The case settled for $55 million.

Mr. Sams has also obtained other significant results. Notable examples include: *In re King Digital Entm't plc S'holder Litig.*, No. CGC-15-544770 (San Francisco Superior Court) (case settled for $18.5 million); *In re Castlight Health, Inc. S'holder Litig.*, Lead

Case No. CIV533203 (California Superior Court, County of San Mateo) (case settled for $9.5 million); *Wiley v. Envivio, Inc.*, Master File No. CIV517185 (California Superior Court, County of San Mateo) (case settled for $8.5 million); *In re CafePress Inc. S'holder Litig.*, Master File No. CIV522744 (California Superior Court, County of San Mateo) (case settled for $8 million); *Robinson v. Audience, Inc.*, Case No. 1:12-cv-232227 (California Superior Court, County of Santa Clara) (case settled for $6,050,000); *Estate of Gardner v. Continental Casualty Co.*, No. 3:13-cv-1918 (JBA), 2016 WL 806823 (D. Conn. Mar. 1, 2016) (granting class certification); *Forbush v. Goodale*, No. 33538/2011, 2013 WL 582255 (N.Y. Sup. Feb. 4, 2013) (denying motions to dismiss in a shareholder derivative action); *Curry v. Hansen Med., Inc.*, No. C 09-5094 CW, 2012 WL 3242447 (N.D. Cal. Aug. 10, 2012) (upholding securities fraud complaint; case settled for $8.5 million); *Wilkof v. Caraco Pharm. Labs., Ltd.*, 280 F.R.D. 332 (E.D. Mich. 2012) (granting class certification); *Puskala v. Koss Corp.*, 799 F. Supp. 2d 941 (E.D. Wis. 2011) (upholding securities fraud complaint); *Mishkin v. Zynex Inc.*, Civil Action No. 09-cv-00780-REB-KLM, 2011 WL 1158715 (D. Colo. Mar. 30, 2011) (denying defendants' motion to dismiss securities fraud complaint); and *Tsirekidze v. Syntax-Brillian Corp.*, No. CV-07-02204-PHX-FJM, 2009 WL 2151838 (D. Ariz. July 17, 2009) (granting class certification; case settled for $10 million).

Additionally, Mr. Sams has successfully represented consumers in class action litigation. Mr. Sams worked on nationwide litigation and a trial against major tobacco companies, and in statewide tobacco litigation that resulted in a $12.5 billion recovery for California cities and counties in a landmark settlement. He also was a principal attorney in a consumer class action against one of the largest banks in the country that resulted in a substantial recovery and a change in the company's business practices. Mr. Sams also participated in settlement negotiations on behalf of environmental organizations along with the United States Department of Justice and the Ohio Attorney General's Office that resulted in a consent decree requiring a company to perform remediation measures to address the effects of air and water pollution. Additionally, Mr. Sams has been an author or co-author of several articles in major legal publications, including "9th Circuit Decision Clarifies Securities Fraud Loss Causation Rule" published in the February 8, 2018 issue of the *Daily Journal*, and "Market Efficiency in the World of High-Frequency Trading" published in the December 26, 2017 issue of the *Daily Journal.*

**KARA M. WOLKE** is a partner in the firm's Los Angeles office. Ms. Wolke specializes in complex litigation, including the prosecution of securities fraud, derivative, consumer, and wage and hour class actions. She has extensive experience in written appellate advocacy in both State and Federal Circuit Courts of Appeals, and has successfully argued before the Court of Appeals for the State of California.

With over a decade of experience in financial class action litigation, Ms. Wolke has helped to recover hundreds of millions of dollars for injured investors, consumers, and employees. Notable cases include: *Farmington Hills Employees' Retirement System v. Wells Fargo Bank*, Case No. 10-4372 (D. Minn.) ($62.5 million settlement on behalf of participants in Wells Fargo's securities lending program. The settlement was reached on the eve of trial and ranked among the largest recoveries achieved in a securities

lending class action stemming from the 2008 financial crisis.); *Schleicher, et al. v. Wendt, et al.* (Conseco), Case No. 02-cv-1332 (S.D. Ind.) ($41.5 million securities class action settlement); *Lapin v. Goldman Sachs*, Case No. 03-850 (S.D.N.Y.) ($29 million securities class action settlement); *In Re: Mannkind Corporation Securities Litigation*, Case No. 11-929 (C.D. Cal) (approximately $22 million settlement - $16 million in cash plus stock); *Jenson v. First Trust Corp.*, Case No. 05-3124 (C.D. Cal.) ($8.5 million settlement of action alleging breach of fiduciary duty and breach of contract against trust company on behalf of a class of elderly investors); and *Pappas v. Naked Juice Co.*, Case No. 11-08276 (C.D. Cal.) ($9 million settlement in consumer class action alleging misleading labeling of juice products as "All Natural").

With a background in intellectual property, Ms. Wolke was a part of the team of lawyers who successfully challenged the claim of copyright ownership to the song "Happy Birthday to You" on behalf of artists and filmmakers who had been forced to pay hefty licensing fees to publicly sing the world's most famous song. In the resolution of that action, the defendant music publishing company funded a settlement of $14 million and, significantly, agreed to relinquish the song to the public domain. Previously, Ms. Wolke penned an article regarding the failure of U.S. Copyright Law to provide an important public performance right in sound recordings, 7 Vand. J. Ent. L. & Prac. 411, which was nationally recognized and received an award by the American Bar Association and the Grammy® Foundation.

Committed to the provision of legal services to the poor, disadvantaged, and other vulnerable or disenfranchised individuals and groups, Ms. Wolke also oversees the Firm's pro bono practice. Ms. Wolke currently serves as a volunteer attorney for KIND (Kids In Need of Defense), representing unaccompanied immigrant and refugee children in custody and deportation proceedings, and helping them to secure legal permanent residency status in the U.S.

Ms. Wolke graduated summa cum laude with a Bachelor of Science in Economics from The Ohio State University in 2001. She subsequently earned her J.D. (with honors) from Ohio State, where she was active in Moot Court and received the Dean's Award for Excellence during each of her three years.

Ms. Wolke is admitted to the State Bar of California, the Ninth Circuit Court of Appeals, as well as the United States District Courts for the Northern, Southern, and Central Districts of California. She lives with her husband and two sons in Los Angeles.

## OF COUNSEL

**MARK S. GREENSTONE** specializes in consumer, financial fraud and employment-related class actions. Possessing significant law and motion and trial experience, Mr. Greenstone has represented clients in multi-million dollar disputes in California state and federal courts, as well as the Court of Federal Claims in Washington, D.C.

Mr. Greenstone received his training as an associate at Sheppard, Mullin, Richter & Hampton LLP where he specialized in complex business litigation relating to investment management, government contracts and real estate. Upon leaving Sheppard Mullin, Mr. Greenstone founded an internet-based company offering retail items on multiple platforms nationwide. He thereafter returned to law bringing a combination of business and legal skills to his practice.

Mr. Greenstone graduated Order of the Coif from the UCLA School of Law. He also received his undergraduate degree in Political Science from UCLA, where he graduated Magna Cum Laude and was inducted into the Phi Beta Kappa honor society.

Mr. Greenstone is a member of the Consumer Attorneys Association of Los Angeles, the Santa Monica Bar Association and the Beverly Hills Bar Association. He is admitted to practice in state and federal courts throughout California.

**ROBERT I. HARWOOD**, Of Counsel to the firm, graduated from William and Mary Law School in 1971, and has specialized in securities law and securities litigation since beginning his career in 1972 at the Enforcement Division of the New York Stock Exchange. Mr. Harwood was a founding member of Harwood Feffer LLP. He has prosecuted numerous securities, class, derivative, and ERISA actions. He is a member of the Trial Lawyers' Section of the New York State Bar Association and has served as a guest lecturer at trial advocacy programs sponsored by the Practicing Law Institute. In a statewide survey of his legal peers published by Super Lawyers Magazine, Mr. Harwood has been consistently selected as a "New York Metro Super Lawyer." Super Lawyers are the top five percent of attorneys in New York, as chosen by their peers and through the independent research. He is also a Member of the Board of Directors of the MFY Legal Services Inc., which provides free legal representation in civil matters to the poor and the mentally ill in New York City. Since 1999, Mr. Harwood has also served as a Village Justice for the Village of Dobbs Ferry, New York.

Commenting on Mr. Harwood's abilities, in *In re Royal Dutch/Shell Transport ERISA Litigation*, (D.N.J.), Judge Bissell stated:

> the Court knows the attorneys in the firms involved in this matter and they are highly experienced and highly skilled in matters of this kind. Moreover, in this case it showed. Those efforts were vigorous, imaginative and prompt in reaching the settlement of this matter with a minimal amount of discovery . . . . So both skill and efficiency were brought to the table here by counsel, no doubt about that.

Likewise, Judge Hurley stated in connection with *In re Olsten Corporation Securities Litigation*, No. 97 CV-5056 (E.D.N.Y. Aug. 31, 2001), wherein a settlement fund of $24.1 million was created: "The quality of representation here I think has been excellent." Mr. Harwood was lead attorney in *Meritt v. Eckerd*, No. 86 Civ. 1222 (E.D.N.Y. May 30, 1986), where then Chief Judge Weinstein observed that counsel conducted the litigation with "speed and skill" resulting in a settlement having a value "in the order of $20 Million Dollars." Mr. Harwood prosecuted the *Hoeniger v. Aylsworth* class action litigation in

the United States District Court for the Western District of Texas (No. SA-86-CA-939), which resulted in a settlement fund of $18 million and received favorable comment in the August 14, 1989 edition of *The Wall Street Journal* ("*Prospector Fund Finds Golden Touch in Class Action Suit*" p. 18, col. 1). Mr. Harwood served as co-lead counsel in *In Re Interco Incorporated Shareholders Litigation*, Consolidated C.A. No. 10111 (Delaware Chancery Court) (May 25, 1990), resulting in a settlement of $18.5 million, where V.C. Berger found, "This is a case that has an extensive record that establishes it was very hard fought. There were intense efforts made by plaintiffs' attorneys and those efforts bore very significant fruit in the face of serious questions as to ultimate success on the merits."

Mr. Harwood served as lead counsel in *Morse v. McWhorter* (Columbia/HCA Healthcare Securities Litigation), (M.D. Tenn.), in which a settlement fund of $49.5 million was created for the benefit of the Class, as well as *In re Bank One Securities Litigation*, (N.D. Ill.), which resulted in the creation of a $45 million settlement fund. Mr. Harwood also served as co-lead counsel in *In re Safety-Kleen Corp. Stockholders Litigation*, (D.S.C.), which resulted in a settlement fund of $44.5 million; *In re Laidlaw Stockholders Litigation*, (D.S.C.), which resulted in a settlement fund of $24 million; *In re AIG ERISA Litigation*, (S.D.N.Y.), which resulted in a settlement fund of $24.2 million; *In re JWP Inc. Securities Litigation*, (S.D.N.Y.), which resulted in a $37 million settlement fund; *In re Oxford Health Plans, Inc. Derivative Litigation*, (S.D.N.Y.), which resulted in a settlement benefit of $13.7 million and corporate therapeutics; and *In re UNUMProvident Corp. Securities Litigation*, (D. Me.), which resulted in the creation of settlement fund of $45 million. Mr. Harwood has also been one of the lead attorneys in litigating claims in *In re FedEx Ground Package Inc. Employment Practices Litigation*, No. 3:05-MD-527 (MDL 1700), a multi-district litigation concerning employment classification of pickup and delivery drivers which resulted in a $242,000,000 settlement.

**STAN KARAS** of counsel in the Los Angeles office, is an experienced class action attorney, who works on every stage of such cases from pleading challenges to class certification proceedings to trial and appeal. He is also an experienced trial lawyer, including as first chair. Among other successes, he obtained a $3 million jury verdict for a client, along with a finding that the defendant was liable for punitive damages. In another trial, the court granted non-suit in favor of Stan's client after he delivered the opening argument.

Mr. Karas started his legal career at Paul Hastings Janofsky and Walker, where he handled complex commercial and real estate litigation. Subsequently, he joined Quinn Emanuel Urquhart & Sullivan, where he specialized in class actions, both on the plaintiff and the defense side, as well as intellectual property litigation. Mr. Karas then worked at a plaintiff-side class action firm where he obtained tens of millions of dollars in settlements on behalf of his clients.

Mr. Karas is a graduate of Stanford University, where he received a degree in History and Literature and was elected to Phi Beta Kappa. He graduated from Boalt Hall School of Law at UC Berkeley. In law school, Mr. Karas served as Articles Editor of the *California Law Review* and Notes and Comments Editor of the *Berkeley Technology*

*Law Journal.* Mr. Karas has published on class action and privacy law issues including *Privacy, Identity, Databases*, 52 Am. U. L. Rev. 393 (2002) and *The Role of Fluid Recovery in Consumer Protection Litigation*, 90 Cal. L. Rev. 959 (2002).

## ASSOCIATES

**GRAHAM CLEGG** received his LLB in 1988 from the Manchester University School of Law in England, with Honors.  He was admitted to the New York State Bar in 2002.  Mr. Clegg has significant experience in the prosecution of class claims, including *In re Bristol-Myers Squibb Securities Litigation,* which settled for $185 million.

**CHRISTOPHER FALLON** focuses on securities, consumer, and anti-trust litigation.  Prior to joining the firm, Mr. Fallon was a contract attorney with O'Melveny & Myers LLP working on anti-trust and business litigation disputes. He is a Certified E-Discovery Specialist through the Association of Certified E-Discovery Specialists (ACEDS).

Mr. Fallon earned his J.D. and a Certificate in Dispute Resolution from Pepperdine Law School in 2004. While attending law school, Christopher worked at the Pepperdine Special Education Advocacy Clinic and interned with the Rhode Island Office of the Attorney General. Prior to attending law school, he graduated from Boston College with a Bachelor of Arts in Economics and a minor in Irish Studies, then served as Deputy Campaign Finance Director on a U.S. Senate campaign.

**ROBERT H. GRUBER** is an associate in the firm's Los Angeles office and focuses on class action litigation.  He has experience with all stages of complex litigation, including extensive trial and arbitration experience.

Mr. Gruber started his career at Greenberg Traurig, LLP, where he litigated class actions, intellectual property disputes, and products liability suits (both on the plaintiff and the defense side).  Mr. Gruber also focused on building the firm's "drone law" practice group, assisting clients seeking authorization to conduct research and development involving unmanned aircraft.

Mr. Gruber received his B.A. from Yale University and his J.D. from the UCLA School of Law.  In law school, he served as Managing Articles Editor for the Journal of Law and Technology and worked as an extern for the Honorable Margaret M. Morrow, U.S. District Judge for the Central District of California.

**MEHRDAUD JAFARNIA** received his J.D. in 2001 from Southwestern University School of Law, having earlier earned a B.A. in Political Science/International Relations from the University of California at Los Angeles (UC Regents Merit Scholarship Award and the Vance Burch Scholarship).  Mr. Jafarnia served as a Staff Attorney for the 9th Circuit Court of Appeals and has represented financial institutions in adversary and evidentiary proceedings in the Bankruptcy Courts.

**THOMAS J. KENNEDY** works out of the New York office, where he focuses on securities, antitrust, mass torts, and consumer litigation.  He received a Juris Doctor

degree from St. John's University School of Law in 1995.  At St. John's, he was a member of the ST. JOHN'S JOURNAL OF LEGAL COMMENTARY.  Mr. Kennedy graduated from Miami University in 1992 with a Bachelor of Science degree in Accounting and has passed the CPA exam.  Mr. Kennedy was previously associated with the law firm Murray Frank LLP.

**JENNIFER M. LEINBACH** served for nearly five years as a judicial law clerk for a number of judges in the Central District of California.  As a judicial law clerk, Ms. Leinbach was responsible for assisting these judges with case management, preparing for hearings and trial, and drafting rulings.  Ms. Leinbach worked on a variety of different cases, including cases involving financial fraud, insolvency and complex civil litigation. Ms. Leinbach was also responsible for assisting those judges, sitting by designation, on appellate cases.

Ms. Leinbach graduated magna cum laude from Vermont Law School and was a member of Vermont Law Review, where she focused on environmental law issues. During law school, Ms. Leinbach served as a judicial extern in the District of Vermont. She obtained her undergraduate degree cum laude from Pepperdine University.

**CHARLES H. LINEHAN** graduated summa cum laude from the University of California, Los Angeles with a Bachelor of Arts degree in Philosophy and a minor in Mathematics. Mr. Linehan received his Juris Doctor degree from the UCLA School of Law, where he was a member of the UCLA Moot Court Honors Board.  While attending law school, Mr. Linehan participated in the school's First Amendment Amicus Brief Clinic (now the Scott & Cyan Banister First Amendment Clinic) where he worked with nationally recognized scholars and civil rights organizations to draft amicus briefs on various Free Speech issues.

**DANIELLE L. MANNING** is a litigation associate in the firm's Los Angeles office.  Ms. Manning specializes in prosecuting complex class action lawsuits in state and federal courts nationwide, including consumer and securities fraud class actions.  She has particular experience litigating automobile defect and Telephone Consumer Protection Act ("TCPA") cases and excels at managing multiple significant matters at once.  Ms. Manning has experience in all phases of pre-trial litigation, including conducting fact investigation, drafting pleadings, researching and drafting briefs in the context of law and motion practice, drafting and responding to discovery requests, assisting with deposition preparation, and preparing for and negotiating settlements.  Ms. Manning is admitted to the State Bar of California, the Ninth Circuit Court of Appeals, United States District Courts for the Central and Northern Districts of California, and the Eastern District of Michigan.

A few of the matters Ms. Manning is currently taking an active role in are: *Gann et. al. v. Nissan North America*, Case No. 3:18-cv-00966 (M.D. Tenn.) (preliminary approval granted July 16, 2019); *Salcedo v. Häagen-Dazs Shoppe Company Inc.*, Case No. 5:17-cv-03504 (N.D. Cal.); *Andre Damico et. al. v. Hyundai Motor America Inc.*, Case No. 30-2018-01008552-CU-BC-CXC (Cal. Super. Ct.) (demurrer overruled); *Elaine Hall et al. v. General Motors LLC*, Case No. 4:19-cv-10186 (E.D. Mich.) (motion to dismiss

pending); *Mark Mina v. Red Robin International Inc., et al.*, Case No. 2:18-cv-09472 (C.D. Cal.)(motion to dismiss pending) and *Kohna et al. v. Subaru of America Inc.*, Case No. 1:19-cv-09323 (D.N.J.)

Ms. Manning received her Juris Doctor degree from the University of California Los Angeles School of Law, where she served as Chief Managing Editor of the *Journal of Environmental Law and Policy*. While attending law school, Ms. Manning externed for the Honorable Laurie D. Zelon in the California Court of Appeal and interned for the California Department of Justice, Office of the Attorney General. Ms. Manning received her Bachelor of Arts degree with honors in Environmental Analysis from Claremont McKenna College.

**VAHE MESROPYAN** joined the firm in 2018 and focuses his practice on litigating securities class actions. Immediately prior to joining the firm, Mr. Mesropyan served as a judicial law clerk for multiple judges in the U.S. District Court for the Central District of California. Prior to his clerkship, Mr. Mesropyan was an associate at Crowell & Moring LLP, where he represented Fortune 500 companies in complex antitrust matters.

Mr. Mesropyan received his J.D. from the University of California, Irvine School of Law as a Dean's Merit Scholarship recipient. While in law school, he clerked for the Federal Trade Commission, Consumer Protection Unit and served as an extern for the Internal Revenue Service, Office of Chief Counsel.

**NATALIE S. PANG** is an associate in the firm's Los Angeles office. Ms. Pang has advocated on behalf of thousands of consumers during her career. Ms. Pang has extensive experience in case management and all facets of litigation: from a case's inception through the discovery process--including taking and defending depositions and preparing witnesses for depositions and trial--mediation and settlement negotiations, pretrial motion work, trial and post-trial motion work.

Prior to joining the firm, Ms. Pang lead the mass torts department of her last firm, where she managed the cases of over two thousand individual clients. There, Ms. Pang worked on a wide variety of complex state and federal matters which included cases involving pharmaceutical drugs, medical devices, auto defects, toxic torts, false advertising, and uninhabitable conditions. Ms. Pang was also trial counsel in the notable case, *Celestino Acosta et al. v. City of Long Beach et al.* (BC591412) which was brought on behalf of residents of a mobile home park built on a former trash dump and resulted in a $39.5 million verdict after an eleven-week jury trial in Los Angeles Superior Court.

Ms. Pang received her J.D. from Loyola Law School. While in law school, Ms. Pang received a Top 10 Brief Award as a Scott Moot Court competitor, was chosen to be a member of the Scott Moot Court Honor's Board, and competed as a member of the National Moot Court Team. Ms. Pang was also a Staffer and subsequently an Editor for Loyola's Entertainment Law Review as well as a Loyola Writing Tutor. During law school, Ms. Pang served as an extern for: the Hon. Rolf Treu (Los Angeles Superior Court), the Los Angeles City Attorney's Office, and the Federal Public Defender's Office.

Ms. Pang obtained her undergraduate degree from the University of Southern California and worked in the healthcare industry prior to pursuing her career in law.

**JARED F. PITT** focuses on securities, consumer, and anti-trust litigation. Prior to joining the firm, Mr. Pitt was an associate at Willoughby Doyle LLP and was a senior financial statement auditor for KMPG LLP where he earned his CPA license.

Mr. Pitt earned his J.D. from Loyola Law School in 2010. Prior to attending law school he graduated with honors from both the University of Michigan's Ross School of Business and USC's Marshall School of Business where he received a Masters of Accounting.

**PAVITHRA RAJESH** is an associate in the firm's Los Angeles office. Ms. Rajesh graduated from University of California, Santa Barbara with a Bachelor of Science degree in Mathematics and a Bachelor of Arts degree in Psychology. She received her Juris Doctor degree from UCLA School of Law. Ms. Rajesh has unique writing experience from her judicial externship for the Patent Pilot Program in the United States District Court for the Central District of California, where she worked closely with the Clerk and judges in the program on patent cases. While in law school, Ms. Rajesh was an Associate Editor for the UCLA Law Review.

**NOREEN R. SCOTT** received her J.D. in 2002 from Tulane Law School and earned a B.A. in Economics from Emory University in 1999. She served as a law clerk to the Hon. Charles R. Jones on the Louisiana State Court of Appeal, and has extensive experience prosecuting complex class action cases.

**LEANNE HEINE SOLISH** is an associate in GPM's Los Angeles office.  Her practice focuses on complex securities litigation.

Ms. Solish has extensive experience litigating complex cases in federal courts nationwide.  Since joining GPM in 2012, Ms. Solish has helped secure several large class action settlements for injured investors, including: *The City of Farmington Hills Employees Retirement System v. Wells Fargo Bank*, Case No. 10-4372--DWF/JJG (D. Minn.) ($62.5 million settlement on behalf of participants in Wells Fargo's securities lending program.  The settlement was reached on the eve of trial and ranked among the largest recoveries achieved in a securities lending class action stemming from the 2008 financial crisis.); *In re Penn West Petroleum Ltd. Securities Litigation*, Case No. 1:14-cv-06046-JGK (S.D.N.Y.) ($19 million settlement for the U.S. shareholder class as part of a $39 million global settlement); *In re ITT Educational Services, Inc. Securities Litigation (Indiana)*, Case No. 1:14-cv-01599-TWP-DML ($12.5375 million settlement); *In re Doral Financial Corporation Securities Litigation*, Case No. 3:14-cv-01393-GAG (D.P.R.) ($7 million settlement); *Larson v. Insys Therapeutics Incorporated, et al.*, Lead Case No. 14-cv-01043-PHX-GMS (D. Ariz.) ($6.125 million settlement); *In re Unilife Corporation Securities Litigation*, Case No. 1:16-cv-03976-RA ($4.4 million settlement); and *In re Provectus Biopharmaceuticals, Inc. Securities Litigation*, Case No. 3:14-cv-00338-PLR-HBG (E.D. Tenn.) ($3.5 million settlement).

*Super Lawyers Magazine* has selected Ms. Solish as a "Rising Star" in the area of Securities Litigation for the past three consecutive years, 2016 through 2018.

Ms. Solish is admitted to the State Bar of California, the Ninth Circuit Court of Appeals, and the United States District Courts for the Central, Northern, and Southern Districts of California. Ms. Solish is also a Registered Certified Public Accountant in Illinois.

Ms. Solish received her J.D. from the University of Texas School of Law in 2011, where she was an editor of the Texas International Law Journal, represented clients in both the Immigration and Worker Rights student clinics, and interned with MALDEF and the Texas Civil Rights Project. Ms. Solish graduated *summa cum laude* from Tulane University with a B.S.M. in Accounting and Finance in 2007, where she was a member of the Beta Alpha Psi honors accounting organization and was inducted into the Beta Gamma Sigma Business Honors Society.

**GARTH A. SPENCER** is based in the New York office. His work includes securities, antitrust, and consumer litigation. Mr. Spencer also works on whistleblower matters.

Mr. Spencer received his B.A. in Mathematics from Grinnell College in 2006. He received his J.D. in 2011 from Duke University School of Law, where he was a staff editor on the Duke Law Journal. From 2011 until 2014 he worked in the tax group of a large, international law firm. Since 2014 he has worked on tax whistleblower matters. Mr. Spencer received his LL.M. in Taxation from New York University in 2016 immediately prior to joining the firm.

**DANA K. VINCENT** received her J.D. in 2002 from Georgetown University Law Center in Washington D.C. and her B.A. cum laude from Spellman College in 1995. Dana also earned an M.A. in Economics from the New School in 1999, where she was the Aaron Diamond Fellow. Ms. Vincent has served as a Law Clerk to the Hon. Sterling Johnson, Jr. of Brooklyn, NY, and has significant experience in the New York Office of the Attorney General where she served as an Assistant Attorney General from 2003-2006. She was a consultant to the Marshall Project, an online journalism organization focusing on U.S. Criminal Justice issues.

**MELISSA WRIGHT** is a litigation associate in the firm's Los Angeles office. Ms. Wright specializes in complex litigation, including the prosecution of securities fraud and consumer class actions. She has particular expertise in all aspects of the discovery phase of litigation, including drafting and responding to discovery requests, negotiating protocols for the production of Electronically Stored Information (ESI) and all facets of ESI discovery, and assisting in deposition preparation. She has managed multiple document production and review projects, including the development of ESI search terms, overseeing numerous attorneys reviewing large document productions, drafting meet and confer correspondence and motions to compel where necessary, and coordinating the analysis of information procured during the discovery phase for utilization in substantive motions or settlement negotiations.

Ms. Wright received her J.D. from the UC Davis School of Law in 2012, where she was a board member of Tax Law Society and externed for the California Board of Equalization's Tax Appeals Assistance Program focusing on consumer use tax issues. Ms. Wright also graduated from NYU School of Law, where she received her LL.M. in Taxation in 2013.

New York    |    Los Angeles    |    Berkeley
www.glancylaw.com

# EXHIBIT 4

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| In re EZCORP, INC. SECURITIES LITIGATION | Lead Case No. 1:15-CV-00608-SS |
| | Honorable Sam Sparks |

**DECLARATION OF JOE KENDALL, ESQ. IN SUPPORT OF LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES FILED ON BEHALF OF THE KENDALL LAW GROUP, PLLC**

I, JOE KENDALL, declare as follows:

1.   I am a partner at The Kendall Law Group, PLLC (the "Kendall Law Group").[1]  The Kendall Law Group was appointed local counsel in the above-captioned action (the "Action").  I submit this declaration in support of Lead Counsel's application for an award of attorneys' fees in connection with services rendered in the Action, as well as for reimbursement of litigation expenses incurred in connection with the Action.  I have personal knowledge of the facts set forth herein and, if called upon, could and would testify thereto.

2.   In its capacity as local counsel in this Action, the Kendall Law Group, among other things, reviewed and commented on draft pleadings, facilitated filings with the Court, ensured that Lead Counsel complied with local rules, customs, and practices, and attended Court hearing.

3.   The schedule attached hereto as Exhibit 1 is a detailed summary indicating the amount of time spent by attorneys and professional support staff employees of my firm who, from inception of the Action through and including October 25, 2019, billed time to the Action, and the lodestar calculation for those individuals based on my firm's current billing rates.  For personnel who are no longer employed by my firm, the lodestar calculation is based upon the billing rates for such personnel in his or her final year of employment by my firm.  The schedule was prepared from contemporaneous daily time records regularly prepared and maintained by my firm.

4.   I am the partner who oversaw or conducted the day-to-day activities in the Action and I reviewed these daily time records in connection with the preparation of this declaration. The purpose of this review was to confirm both the accuracy of the records as well as the necessity for, and reasonableness of, the time committed to the litigation.  As a result of this review, I made

---

[1] Unless otherwise defined herein, capitalized terms shall have the meanings ascribed to them in the Stipulation and Agreement of Settlement, dated July 18, 2019 (ECF No. 137-1).

reductions to certain of my firm's time entries such that the time included in Exhibit 1 reflect that exercise of billing judgment.  Based on this review and the adjustments made, I believe that the time of Kendall Law Group attorneys and staff reflected in Exhibit 1 was reasonable and necessary for the effective and efficient prosecution and resolution of the Action.  No time expended on the application for fees and reimbursement of expenses has been included.

5.      The hourly rates for the attorneys and professional support staff included in Exhibit 1 are consistent with the rates approved by courts in other litigation.

6.      The total number of hours reflected in Exhibit 1 is 33.9.  The total lodestar reflected in Exhibit 1 is $27,555.00, consisting of $27,555.00 for attorneys' time and $0 for professional support staff time.

7.      My firm's lodestar figures are based upon the firm's billing rates, which rates do not include charges for expense items.  Expense items are billed separately and such charges are not duplicated in my firm's billing rates.

8.      As detailed in Exhibit 2, my firm is seeking reimbursement of a total of $2193.24 in expenses incurred in connection with the prosecution of this Action.

9.      The litigation expenses incurred in the Action are reflected on the books and records of my firm.  These books and records are prepared from expense vouchers, check records, and other source materials and are an accurate record of the expenses incurred.  The expenses reflected in Exhibit 2 are the expenses actually incurred by my firm

10.      Attached hereto as Exhibit 3 is a brief biography of the Kendall Law Group, including the attorneys who were involved in the Action.

I declare, under penalty of perjury, that the foregoing is true and correct.  Executed on this October 31, 2019, in Dallas, Texas.

/s/ *Joe Kendall*
JOE KENDALL

**EXHIBIT 1**

*In re EZCORP, Inc. Securities Litigation*
Lead Case No. 1:15-CV-00608-SS

**THE KENDALL LAW GROUP**

**LODESTAR REPORT**
**FROM INCEPTION THROUGH OCTOBER 25, 2019**

| TIMEKEEPER/CASE | STATUS | HOURS | RATE | LODESTAR |
|---|---|---|---|---|
| **ATTORNEYS:** | | | | |
| Joe Kendall | Partner | 30.3 | $850.00 | $25,755.00 |
| Jamie McKey | Associate | 3.6 | $500.00 | $1800.00 |
| **TOTAL ATTORNEY** | | **33.9** | | |
| **TOTAL LODESTAR** | | | | **$27,555.00** |

**EXHIBIT 2**

*In re EZCORP, Inc. Securities Litigation*
Lead Case No. 1:15-CV-00608-SS

**THE KENDALL LAW GROUP**

**EXPENSE REPORT**

**FROM INCEPTION THROUGH OCTOBER 25, 2019**

| ITEM | AMOUNT |
|------|--------|
| SPECIAL POSTAGE | $67.33 |
| ONLINE RESEARCH | $22.20 |
| COURT FILING FEES | $2061.71 |
| PARKING | $42.00 |
| GRAND TOTAL | $2193.24 |

EXHIBIT 3



## FIRM RESUME

Kendall Law Group was founded by former federal judge Joe Kendall.  It is a boutique trial law firm.  Led by Judge Kendall, the firm brings value-added assistance to their clients in complex class action, securities, and business litigation matters.

Since 2002, in class action securities fraud cases, the lawyers at Kendall Law Group have participated in obtaining over $1 billion dollar for shareholders.  The Kendall Law Group has served as lead, co-lead, or local counsel in numerous merger & acquisition, derivative, and securities fraud class action matters, including: *The George Leon Family Trust, Individually and on Behalf of All Others Similarly Situated v. Chicago Bridge & Iron Company N.V., et al.*, Lead Case No. 4:18-cv-0273 (S.D.Tex.); *Mona Abouzied, Individually and on Behalf of All Others Similarly Situated v. Applied Optoelectronics, Inc., et al.*, Civil Action No. 4:17-cv-02399 (S.D. Tex.); *Pedro Ramirez, Jr. Individually and on Behalf of All Others Similarly Situated v. Exxon Mobil Corporation, et al.*, Case No. 3-16-cv-3111-K (N.D. Tex.); *Anthony Giovagnoli, Individually and on Behalf of All Others Similarly Situated v. GlobalSCAPE, et al.*, Case No. 5:17-cv-00753 (S.D. Tex.); *City of Pontiac General Employees' Retirement System, Individually and On Behalf of All Others Similarly Situated v. Hanger, Inc., et al.*, Case No. A-14-CA-1026-SS (W.D. Tex.); *Mary McCloskey, Individually and On Behalf of All Others Similarly Situated v. Match Group, Inc., et al.*, Civil Action No. 3:16-cv-00549-S (N.D. Tex.);  *Anton Steyn, Derivatively on Behalf of 3D Systems Corporation v. Abraham N. Reichental, et al.*, Case No. 2015-CP-46-2225 (16th Judicial Circuit Court of Common Pleas, South Carolina);  *In re United*

*Development Funding IV Securities Litigation*, Master File No. 3:15-cv-4030-M (N.D. Tex.); *Richard J. Isolde, Individually and on Behalf of all Others Similarly Situated, v. Trinity Industries, Inc., et al.*, Civil No. 3:15-CV-2093-K, (N.D. Tex.); *In re EZCORP, Inc. Securities Litigation*, Master File No. 1:15-cv-00608-SS, (W.D. Tex.); *Yochanan Markman, Individually and on Behalf of All Others Similarly Situated, v. Whole Foods Market, Inc., et al.*, Civil Action No. 1:15-cv-00681-LY, (W.D. Tex.);   *In re BP plc Securities Litigation*, Civil Action Nos. 4:10-md-02185, 4:12-cv-3714, 4:12-cv-3715, 4:15-cv-02704, (S.D. Tex.); *Edward Ogden, Derivatively on Behalf of Cobalt International Energy Inc. v. Joseph H. Bryant, et al.*, Civil Action No. 4:15-cv-00139 (S.D. Tex.); *City of Pontiac General Employees' Retirement System v. Dell Inc., et al.*, Civil Action No. 1:15-cv-00374-LY (W.D. Tex.); *Margaret Budde and Daniel Ream, Individually and On Behalf of All Others Similarly Situated v. Global Power Equipment Group, Inc.*, et al., Civil Action No. 3:15-cv-1679-M (W.D. Tex.); *City of Pontiac General Employees' Retirement System v. Hanger, Inc., et al.*, Civil Action No. 1:14-cv-01026-SS (W.D. Tex.); *Jan Buettgen, on Behalf of Himself and All Others Similarly Situated v. Katherine J. Harless, et al.*, Civil Action No. 3:09-cv-00791-K (N.D. Tex.); *In re Key Energy Services, Inc. Securities Litigation*, Civil Action No. 4:14-cv-2368 (S.D. Tex.); *In re Kosmos Energy Ltd Securities Litigation*, Civil Action No. 3:12-cv-373 (N.D. Tex.); *Nasser Moradi, et al., v. Sheldon Gary Adelson, et al.*, Case No. 2:11-cv-490 (D. Nevada); *In re Life Partners Holdings, Inc. Derivative Litigation*, Civil Action No. 2:11-cv-00043 (W.D. Tex.); *Mary K. Jones v. Pfizer Inc., et al.*, Civil Action No. 1:10-cv-03864 (S.D.N.Y.); *Richard Steck v. Santander Consumer USA Holdings Inc., et al.*, Civil Action No. 3:15-cv-2129 (N.D. Tex.); *Justin Pierce and Hillary Kay, Derivatively on Behalf of AT&T Inc. v. Randall L. Stephenson, et al.*, Cause No. DC-14-13645, (193rd District Court, Dallas County, Texas); *Jacob Hulsebus, et al. v. Belo Corp., et al.*, Cause No. DC-13-06601, (68th District Court,

Dallas County, Texas); *Ron Phillips and Scott Moorehead, Derivatively on Behalf of CLST Holdings, Inc., v. Timothy S. Durham, et al.*, Cause No. DC-10-07655 (134th District Court, Dallas County, Texas); *Regan Held, et al., v. C. Kelly Hall, et al.*, Cause No. CC-11-05258-D, (County Court No. 4, Dallas County, Texas); *David Flecker, Individually and on Behalf of All Others Similarly Situated and Derivatively on Behalf of Pioneer Southwest Energy Partners L.P.*, Cause No. DC-13-05371-G (134th District Court, Dallas County, Texas); *In re U.S. Home Systems, Inc. Shareholder Litigation*, Cause No. CC-12-04962-B (County Court No. 2, Dallas County, Texas); *Terry Neff, Derivatively on Behalf of Weatherford International Ltd., et al., v. Nicholas F. Brady, et al.*, Cause No. 2010-40764 (270th District Court, Harris County, Texas); *In re Burlington Northern Santa Fe Corporation Shareholder Class Action Litigation,* Cause No. 348-241465-09, (348th District Court, Tarrant County, Texas)  *In re Affiliated Computer Services Derivative Litigation*, Master File No. 3:06-cv-1110-M (N.D. Tex.); *In re Cablevision Systems Corp. Shareholder Derivative Litigation*, Master File No. CV-06-4130 (E.D.N.Y.); *Ryan v. Flowserve Corp.,* Civil Action No. 3:03-CV-01769 (N.D. Tex.); *Blackmoss Investments v. Gravity Corp., et. al.,* Civil Action No. 1:05-CV-04804-LAP (S.D.N.Y.); *In re Guidant Corp. Securities Litigation*, Master File No. 1:05- CV-01658-SEB-WTL (S.D. Ind.); *In re 7-Eleven Shareholders Litigation*, No. 05-089344-M (District Court Dallas County, Texas); *In re Impac Mortgage Holdings, Inc., Case No.* 8:06-cv-00091-CJC-RNB (C.D. Cal.);  *In re Fossil Derivative Litigation*, Cause No. 3:06-cv-01672-P (N.D. Tex.);  *Dillingham v. Schmitz,* Cause No. 2005C119934 (288th District Court, Bexar County, Texas);  *Alaska Electrical Pension Fund v. Brown, et al.*, Cause No. 6:04-CV-464 (E.D. Tex.); *Holowach v. Gilliland, et al.*, Cause No. 017-221963-07 (17th District Court, Tarrant County, Texas); *Levy Investments v. Donald Steen, et al.,* Cause No. DC-07-00208 (101st District Court Dallas County, Texas); *In re Petco Animal Supplies, Inc., Shareholder Litigation,*

Case No. GIC 869399 (Superior Court, San Diego, California); *Frank Capovilla v. Lone Star Technologies, Inc., et al.,* Cause No. DC-07-002979 (14th District Court, Dallas County, Texas); *Louis Dudas v. Encore Medical Corporation, et al.,* Cause No. D-1-GN-002495 (345th District Court, Travis County, Texas); *Waggoner v. Ryan, et al,* Cause No. CC-05-13893 (County Court at Law No. 2, Dallas County, Texas); *Evans v. Paulson, et al.,* Cause No. 05-01818-JMR-FLN (D. Minn.); In *re Accuray, Inc. Shareholder Derivative* Litigation, Case No. C 09 05580 CW (N.D. Cal.); *In re Microtune, Inc. Litigation,* Cause No. 219-03729-2010 (219th District Court, Collin County, Texas); *Edward Ferguson v. Louis Raspino, et al*., Cause No. 2010-23805 (281st District Court, Harris County, Texas); *In re Duncan Energy Partners L.P. Shareholder Litigation*, Cause No. 2011-13981 (269th District Court, Harris County, Texas); and others.

**JOE KENDALL**

Former United States District Judge Joe Kendall is the managing partner of Kendall Law Group.  Mr. Kendall served on the federal bench in the Northern District of Texas from 1992-2002, appointed by President George Herbert Walker Bush.  He was unanimously confirmed by the U.S. Senate. At the time of his appointment, he was the youngest U.S. District Judge in the country.  He also served as a state district judge on the 195th Judicial District Court in Dallas from 1987-1992.  In his judicial career, he has presided over approximately 500 jury trials and disposed of over 11,000 cases.  Mr. Kendall has a B.B.A. from the Cox School of Business at Southern Methodist University and a law degree from Baylor University.  Mr. Kendall served as a Commissioner on the United States Sentencing Commission from 1999 through 2002, appointed by President Bill Clinton.

Since leaving the bench and returning to trial work, Mr. Kendall has had tremendous success at the prosecution of patent, consumer and securities class action litigation either as lead, co-lead or local counsel.

While on the federal bench, Mr. Kendall handled numerous class actions of various types and presided over in excess of 100 civil jury trials, including complex litigation, securities, antitrust, qui tam, medical malpractice, products liability, and patent infringement cases.  He presided over a multi-district litigation case, and also handled environmental and CERCLA cases.  Author of more than 250 judicial opinions published in the federal reporters or legal research databases, his more notable cases include, *Ozee v. American Council on Gift Annuities* (an antitrust class action against the most prominent charities in the nation), *SBC Communications v. AT&T* (to determine the constitutionality of certain provisions of the Telecommunications Act of 1996), *American Airlines, Inc. v. Allied Pilots Association* (the pilots sickout dispute in 1999), and

*Johnson v. City of Dallas* (a case brought by homeless persons to determine the constitutionality of a city ordinance prohibiting sleeping in public).   In his career as a lawyer, Mr. Kendall has tried more than 100 jury trials to judgment.

Additionally, Mr. Kendall taught new federal judges for the Federal Judicial Center in Washington, D.C. and has taught docket management techniques to experienced federal judges throughout the country.  He is a former board member of the Federal Judges Association and was editor of *In Camera*, the newsletter of the Federal Judges Association.

## SIGNIFICANT DECISIONS OF JUDGE JOE KENDALL

| | |
|---|---|
| 1. *Sharju Ltd. Partnership v. Choice Hotels International, Inc.*, Case No. 3:01-CV-2605-X | 2. *Smith v. Nine West Group, Inc.*, Case No. 3:98-CV-1331-X. |
| 3.  *BKS Properties v. Shumate*, 271 B.R. 794. | 4. *Jones v. Prime, Inc.*, Case No. 3:99-CV-1514-X. |
| 5. *Kennedy v. Barnhart*, Case No. 3:00-CV-2472-X. | 6. *Sentry Insurance Co. v. Greenleaf Software, Inc.*, Case No. 3:99-CV-1232-X. |
| 7. *Loosier v. Anderson*, Case No. 3:00-CV-2528-X. | 8. *Poindexter v. R.J. Reynolds Tobacco Co.*, Case No. 3:99-CV-0262-X. |
| 9. *Gibson v. Atlantic Southeast Airlines*, Case No. 3:00-CV-2712-X. | 10. *Whitworth v. TNT Bestway Transportation, Inc.*, Case No. 3:96-CV-0382-X. |
| 11. *Methodist Hospitals v. Prudential Healthcare*, Case No. 3:01-CV-1999-X. | 12. *Media Farm, Inc. v. eToll, Inc.*, Case No. 3:99-CV-2578-X. |
| 13. *McMillon v. Fleming*, Case No. 4:01-CV-815-X. | 14. *In re Great Southern Life Insurance Co. Sales Practices Litigation*, MDL No. 1214. |
| 15. *United States v. Morris*, 176 F. Supp.2d 668. | 16. *Martin v. United States Postal Service*, Case No. 3:99-CV-0670-X. |
| 17. *Smith v. Tarrant County*, Case No. 4:99-CV-0657-X. | 18. *Taylor v. Underwood*, Case No. 3:99-CV-2632-X. |
| 19. *Wilkerson v. Wells Fargo Bank*, Case No. 3:01-CV-0117-X. | 20. *Harrison v. City of Dallas*, Case No. 3:99-CV-1209-X. |
| 21. *Martinez v. 291st Judicial District Court*, Case No. 3:01-CV-1907-X. | 22. *Kondos Employee Health Care Plan v. First Integrated Health, Inc.*, Case No. 3:99-CV-2190-X. |
| 23. *Ventura Vera v. Estrada*, Case No. 3:01-CV-1044-X. | 24. *Jones v. Fujitsu Network Communications, Inc.*, 81 F. Supp.2d 688. |
| 25. *Patt v. Sweetheart Cup Co.*, Case No. 3:99-CV-2443-X. | 26. *Sims v. Ware*, Case No. 3:95-CV-177-X. |
| 27. *Ross v. Massanari*, Case No. 3:00-CV-2454-X. | 28. *United States v. Hughes*, 71 F. Supp.2d 605. |
| 29. *Cunningham v. Gibson*, Case No. 3:01-CV-1522-X. | 30. *American Airlines, Inc. v. Allied Pilots Association*, 53 F. Supp.2d 909. |
| 31. *Ramirez v. Cornet Enterprises, Inc.*, Case No. 3:01-CV-1317-X. | 32. *Barrett v. Clarendon National Insurance Co.*, Case No. 3:93-CV-1451-X. |
| 33. *Collins v. Merck-Medco Prescription Services of Texas*, LLC, Case No. 3:00-CV-1852-X. | 34. *Heritage Worldwide, Inc. v. World Color Press, Inc.*, Case No. 3:96-CV-3356-X. |
| 35. *Cunningham v. Bienfang*, Case No. 3:00-CV-0448-X. | 36. *Seawright v. Charter Furniture Rental, Inc.*, 39 F. Supp.2d 795. |

| | |
|---|---|
| 37. *Transamerica Equipment Financial Services Corp. v. Amwest Surety Insurance Co.*, Case No. 3:00-CV-2321-X. | 38. *Lockhart v. AT&T*, Case No. 3:97-CV-3021-X. |
| 39. *Securities & Exchange Commission v. Bachani*, Case No. 3:01-CV-1744. | 40. *Golman-Hayden Co. v. Fresh Source Produce*, 27 F. Supp.2d 723. |
| 41. *Rogers v. Paquet*, Case No. 3:01-CV-0969-X. | 42. *Mayes v. LIN TV*, Case No. 3:96-CV-0396-X. |
| 43. *PriceWaterhouse Coopers, LLP v. Litzler (In re Harbor Financial Group, Inc.)*, Case No. 3:00-CV-1283-X. | 44. *Gossom v. J.O.S., Inc.*, Case No. 3:96-CV-0374-X. |
| 45. *Washington International v. Industry Insurance Co.*, Case No.3:00-CV-0196-X. | 46. *Morse v. Escobedo*, Case No. 3:98-CV-0686-X. |
| 47. *Estep v. Dallas County*, Case No.  3:95-CV-0799-X. | 48. *Richardson v. Apfel*, 9 F. Supp.2d 666. |
| 49. *Seppy v. City of Irving*, Case No.3:00-CV-0386-X. | 50. *Myers v. Top Tobacco Co., L.P.*, Case No. 3:97-CV-2464-X. |
| 51. *Friday v. Halter*, Case No. 3:01-CV-0901X. | 52. *Colbert v. Georgia-Pacific Corp.*, 995 F. Supp. 697. |
| 53. *Rodriguez v. Snider*, Case No. 3:01-CV-0688-X. | 54. *ARA Automobile Group v. Central Garage*, Case No. 3:89-CV-1389. |
| 55. *Kisiel v. RAS Securities Corp.*, Case No. 3:01-CV-0294-X. | 56. *Hanafy v. United States*, 991 F. Supp. 794. |
| 57. *Compana, L.L.C. v. Agile Software Corp.*, Case No. 3:01-CV-1164-X. | 58. *SBC Communications. v. Federal Communications Commission*, 981 F. Supp. 996. |
| 59. *Guan v. Harrington*, Case No. 3:00-CV-2347-X. | 60. *Gonzales v. Johnson*, 994 F. Supp. 759. |
| 61. *Management Insights, Inc. v. APG, Inc.*, Case No. 3:00-CV-2779-X. | 62. *Dippin' Dots v. Mosey*, Case No. 3:96-CV-1959-X. |
| 63. *Zurich Automobile Insurance Co. v. Boyes (In re Zurich Automobile Insurance Co.)*, Case No. 3:99-CV-2350-X. | 64. *Waste Control Specialists v. United States Department of Energy*, Case No. 7:97-CV-202-X. |
| 65. *Dalfort Aerospace, Inc. v. Airline Division of the International Brotherhood of Teamsters*, Case No. 3:01-CV-006-X. | 66. *In re Future Communications, Inc. Securities Litigation*, Case No. 3:93CV-2064X. |
| 67. *Martin Marietta Materials Southwest, Ltd v. St. Paul Guardian Insurance Co.*, 145 F. Supp. 2d 794. | 68. *Venable v. Keever*, Case No. 3:96-CV-0580-X. |
| 69. *Hooks v. Hilite Industries*, Case No. 3:00-CV-2358-X. | 70. *Richie v. American Council on Gift Annuities*, 943 F. Supp. 685. |
| 71. *Weinberg v. Silber*, 140 F. Supp.2d 712. | 72. *Joseph N. Main P.C. v. Electronic Data Systems Corp.*, Case No. 3: 95-CV-1993-X. |
| 73. *Johnson v. City of Dallas*, 141 F. Supp.2d 645. | 74. *United States v. Grant*, 933 F. Supp. 610. |
| 75. *Rose v. Digital Convergence Communications, Inc.*, Case No. 3:00-CV-2057-X. | 76. *Calmes v. United States*, 926 F. Supp. 582. |
| 77. *Bell Helicopter Textron, Inc. v. C&C Helicopter Sales, Inc.*, Case No. 3:00-CV-1516-X. | 78. *Roberts v. Dayton Hudson Corp.*, 914 F. Supp. 1421. |
| 79. *Johnson v. Dillard Department Stores, Inc.*, Case No.3:00-CV-2674-X. | 80. *McDaniel v. Southern Pacific Transportation*, 932 F. Supp. 163. |
| 81. *Bank One Arizona, N.A. v. Wilton Partners Hurst, et al*, Case No. 3:00-CV-2254-X. | 82. *Burnett Plaza Associates v. NCNB Texas National Bank*, Case No. 3:89-CV-1290-X. |
| 83. *Williams v. GTE*, Case No. 3:00-CV-2380-X. | 84. *Holdbrook v. California Federal Bank*, 905 F. Supp. 367. |
| 85. *Harrison v. GMC*, Case No. 3:00-CV-1272-X. | 86. *Nelson v. Reddy*, 898 F. Supp. 409. |
| 87. *Alfaro v. Leather Center, Inc.*, Case No. 3:00-CV-2107-X. | 88. *Maxus Energy Corp. v. United States*, 898 F. Supp. 399. |

| | |
|---|---|
| 89. *Transamerica Equipment Financial Services Corp. v. Amwest Surety Insurance Co.*, Case No. 3:00-CV-2321-X. | 90. *DSC Communications Corp. v. DGI Technologies*, 898 F. Supp. 1183. |
| 91. *Hines v. AC & S, Inc.*, Case No. 3:00-CV-2637X. | 92. *Trinity Industries v. United Steelworkers*, 891 F. Supp. 342. |
| 93. *Chambless v. Travelers Lloyds of Texas Insurance Co.*, Case No. 3:00-CV-784-X. | 94. *Bluebonnet Savings Bank v. Federal Deposit Insurance Corporation*, 891 F. Supp. 332. |
| 95. *Mayfield-George v. Texas Rehabilitation Commission*, Case No. 3:99-CV-2735-X. | 96. *McCratic v. Bristol-Myers Squibb & Co.*, Case No. 3:95-CV-1122-X. |
| 97. *Southwest Materials Handling Co. v. Nissan Motor Co.*, Case No. 3:98-CV-2367-X. | 98. *Finlan v. City of Dallas*, 888 F. Supp. 779. |
| 99. *Foster v. Simpson*, Case No. 3:99-CV-2293-X. | 100. *Ozee v. American Council on Gift Annuities*, 888 F. Supp. 1318. |
| 101. *Fina Technologies, Inc. v. Ewen*, Case No. 3:93-CV-2529-X. | 102. *Dallas Fire Fighters Association v. City of Dallas*, 885 F. Supp. 915. |
| 103. *Vation v. Gainey Transportation Services*, Case No.3:99-CV-2388-X. | 104. *Maryland Casualty Co. v. Texas Commerce Bancshares*, 878 F. Supp. 939. |
| 105. *Hulett v. City of Dallas*, Case No. 3:98-CV-2301-X. | 106. *Thornton v. Micrografx*, 878 F. Supp. 931. |
| 107. *Doherty v. Center for Assisted Reproduction, P.A.*, 108 F. Supp.2d 672. | 108. *Scott v. City of Dallas*, 876 F. Supp. 852. |
| 109. *Aegis v. Shared Medical Systems Corp.*, Case No. 3:99-CV-2697-X. | 110. *Johnson v. J.C. Penney Co.*, 876 F. Supp. 135. |
| 111. *Payne v. Powers*, Case No. 3:99-CV-2182-X. | 112. *Black v. Callahan*, 876 F. Supp. 131 |
| 113. *Clear Entertainment, L.L.C. v. KPMG, L.L.P.*, Case No. 3:99-CV-2518-X. | 114. *Clark v. Collins*, 870 F. Supp. 132. |
| 115. *Searcy v. Texas Universal Health Plan, Inc.*, Case No. 3:99-CV-2380-X. | 116. *Figari & Davenport, L.L.P. v. Continental Casualty Co.*, 864 F. Supp. 11. |

## JAMIE J. MCKEY

Jamie J. McKey graduated Magna Cum Laude from St. Mary's University School of Law in 2006. During her second year of law school, Jamie clerked for the Honorable Barbara Hervey at the Texas Court of Criminal Appeals, Texas' highest criminal court. Following graduation, Jamie pursued her legal career as a Briefing Attorney for Judge Hervey at the Texas Court of Criminal Appeals.

After the one year commitment to the Court of Criminal Appeals, Jamie worked in San Antonio, Texas, practicing criminal law as well as civil law. In 2008, Jamie moved to Dallas and joined The Bassett Firm, in Dallas as a litigation appellate attorney for many high-profile clients. The bulk of Jamie's practice focused on Business and Commercial Litigation.

In 2010, Jamie joined the Kendall Law Group focusing almost exclusively on complex business litigation matters, merger & acquisition, shareholder derivative, and securities fraud class actions. Jamie is admitted to practice before all Texas state courts, as well as all Federal District Courts of Texas and the Fifth Circuit Court of Appeals.

# EXHIBIT 5

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**

| | |
|---|---|
| *In re EZCORP, Inc. Securities Litigation* | Master File No. 1:15-cv-00608-SS |

**DECLARATION OF LEAD PLAINTIFF JOHN ROONEY IN SUPPORT OF:**
**(1) PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION**
**SETTLEMENT AND PLAN OF ALLOCATION; AND**
**(2) LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES**
**AND REIMBURSEMENT OF LITIGATION EXPENSES**

I, John Rooney, declare as follows:

1. I am the Court appointed Lead Plaintiff in the above-captioned securities class action (the "Action").[1]  I respectfully submit this declaration in support of (i) Plaintiffs' motion for final approval of the proposed Settlement and approval of the proposed Plan of Allocation; and (ii) Lead Counsel's motion for an award of attorneys' fees and reimbursement of Litigation Expenses, including approval of my request to recover the reasonable costs and expenses I incurred in connection with my representation of the Settlement Class in the prosecution of this Action.

2. I am aware of and understand the requirements and responsibilities of a representative plaintiff in a securities class action, including those set forth in the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §§ 78u-4; 77z-1.  I have personal knowledge of the matters set forth in this declaration, as I have been directly involved in monitoring and

---

[1] Unless otherwise defined herein, capitalized terms shall have the meanings ascribed to them in the Stipulation and Agreement of Settlement dated July 18, 2019 (ECF No. 137-1).

overseeing the prosecution of the Action, as well as the negotiations leading to the Settlement, and I could and would testify competently to these matters.

## I.   LEAD PLAINTIFF'S OVERSIGHT OF THE LITIGATION

3.     The initial complaint in this Action was filed on July 20, 2015. (ECF No. 1). I have been actively involved in the prosecution of this case since I filed my initial complaint in the Action on August 18, 2015. *See Rooney v. EZCORP, Inc., et al*, No. 1:15-cv-00700-SS (ECF No. 1). On November 3, 2015, pursuant to a stipulation, the Court appointed me to serve as Co-Lead Plaintiff with fellow movant Wu Winfred Huang ("Huang"). (ECF No. 24). One other individual moved to serve as Lead Plaintiff in the Action. (ECF No. 12). Huang withdrew as Co-Lead Plaintiff on December 26, 2017 (ECF No. 75), and I have served as sole Lead Plaintiff since.

4.     In fulfillment of my responsibilities as Lead Plaintiff on behalf of all class members in this Action, I have worked closely with Lead Counsel Block & Leviton ("B&L") regarding all aspects of the litigation and resolution of this case.

5.     Throughout the litigation, I received periodic status reports from B&L on case developments, and participated in regular discussions concerning the prosecution of the Action, the strengths of and risks to the claims, and potential settlement. In particular, throughout the course of this Action, I: (a) regularly communicated with my attorneys regarding the posture and progress of the case, as well as strategy; (b) produced documents to my attorneys; (c) traveled to Boston, prepared for, and sat for a deposition; (d) reviewed significant pleadings and briefs filed in the Action; (e) consulted with my attorneys regarding the settlement negotiations; and (f) evaluated and approved the proposed Settlement.

## II.   APPROVAL OF THE SETTLEMENT

6.     Through my active participation, I was kept informed of the progress of the settlement negotiations in this litigation. Before, during and after the mediation process presided

Doc ID: f01afc8412be3dd70e241a137b5fe9565e391e2d

over by Robert Meyer, I conferred with my attorneys regarding the parties' respective positions and the mediator's recommendation.

7.      Based on my involvement throughout the prosecution and resolution of the claims asserted in the Action, I believe that the Settlement provides an excellent recovery for the Settlement Class, particularly in light of the risks of continued litigation. Thus, I believe that the proposed Settlement is fair, reasonable, and adequate to the Settlement Class and I strongly endorse approval of the Settlement by the Court.

## III.   LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES

8.      I believe that Lead Counsel's request for an award of attorneys' fees in the amount of 33 1/3% of the Settlement Fund is fair and reasonable in light of the work Lead Counsel performed on behalf of the Settlement Class. I have evaluated Lead Counsel's fee request by considering the work performed, the recovery obtained for the Settlement Class, and the risks of the Action, and have authorized this fee request for the Court's ultimate determination.

9.      I further believe that the litigation expenses being requested for reimbursement to Lead Counsel are reasonable, and represent costs and expenses necessary for the prosecution and resolution of the claims in the Action. Based on the foregoing, and consistent with my obligation to the Settlement Class to obtain the best result at the most efficient cost, I fully support Lead Counsel's motion for an award of attorneys' fees and reimbursement of litigation expenses.

10.     I understand that reimbursement of a class representative's reasonable costs and expenses is authorized under the PSLRA, 15 U.S.C. §§ 77z-1(a)(4); 78u-4(a)(4). For this reason, in connection with Lead Counsel's request for reimbursement of Litigation Expenses, I am seeking reimbursement for the costs and expenses that I incurred directly relating to my representation of the Settlement Class in the Action.

Doc ID: f01afc8412be3dd70e241a137b5fe9565e391e2d

11.     The time that I devoted to the representation of the Settlement Class in this Action was time that I otherwise would have spent at my job or engaged on other activities and, thus, represented a cost to me. I seek reimbursement in the amount of $7,500 for the time I devoted to participating in this Action.  I make this request based on the conservative effort that I devoted at least 60 hours in the litigation-related activities described above, including travel to and from Boston for my deposition, based on a rate of $125 per hour.  It is my belief that its request for reimbursement is fair and reasonable.

## IV.     CONCLUSION

12.     In conclusion, I was closely involved throughout the prosecution and settlement of the claims in this Action, strongly endorse the Settlement as fair, reasonable, and adequate, and believe that the Settlement represents a significant recovery for the Settlement Class. I appreciate the Court's attention to the facts presented in my declaration and respectfully request that the Court approve: (a) Plaintiff's motion for final approval of the proposed Settlement and approval of the Plan of Allocation; (b) Lead Counsel's motion for an award of attorneys' fees and reimbursement of litigation expenses; and (c) my request for reimbursement of the reasonable costs and expenses incurred in prosecuting the Action on behalf of the Settlement Class.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed on _____ at Dublin, Ireland.
10 / 29 / 2019

_____
John Rooney

4

Doc ID: f01afc8412be3dd70e241a137b5fe9565e391e2d

 **HELLOSIGN**

Audit Trail

| | |
|---|---|
| **TITLE** | Declaration |
| **FILE NAME** | Rooney Declaration.pdf |
| **DOCUMENT ID** | f01afc8412be3dd70e241a137b5fe9565e391e2d |
| **AUDIT TRAIL DATE FORMAT** | MM / DD / YYYY |
| **STATUS** | ● Completed |

## Document History

**SENT**
**10 / 29 / 2019**
11:39:43 UTC-5
Sent for signature to John Rooney (rooneyjw@gmail.com) from jake@blockesq.com
IP: 38.32.8.74

**VIEWED**
**10 / 29 / 2019**
13:16:04 UTC-5
Viewed by John Rooney (rooneyjw@gmail.com)
IP: 213.233.132.157

**SIGNED**
**10 / 29 / 2019**
15:11:58 UTC-5
Signed by John Rooney (rooneyjw@gmail.com)
IP: 213.233.132.137

**COMPLETED**
**10 / 29 / 2019**
15:11:58 UTC-5
The document has been completed.